PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF

HABEAS CORPUS BY A PERSON IN STATE CUSTODY

OG cv 356

| UNITED STATES DISTRICT COURT OF DELAWARE | |
|---|---|
| DAMONE FLOWERS | No. 9808000280 |
| DELAWARE CORRECTIONAL CENTER | SBI # 303627 |
| 1181 PADDOCK ROAD | |
| SMYRNA, DELAWARE 19977 | |
| DAMONE FLOWERS DEFENDANT BELOW, PETITIONER.    V. | WARDON THOMAS CARROLL, STATE OF DELAWARE |

CARL DANBERG - ATTORNEY GENERAL FOR THE STATE OF DELAWARE.

IN SUPPORT OF PETITION UNDER 28 U.S.C. § 2254

FOR WRIT OF HABEAS CORPUS

APPENDIX TO PETITIONER'S

OPENING BRIEF

DATE: MAY 24, 2006

FILED

MAY 3 1 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Damone Flowers,

DAMONE FLOWERS

D.C.C.

1181 PADDOCK RD.

SMYRNA, DE. 19977

## TABLE OF CONTENTS

PAGE

Docket Entries _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-1-12.

Letter from EUGENE J. MAURER JR., P.A. _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-13.

Letter from CYNTHIA KELSEY, D.A.G. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-14.

Map drawn by BRUCE DUNCAN _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-15-16.

Letter to CYNTHIA KELSEY, D.A.G. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-17.

Letter from THOMAS A. PEDERSEN, ESQ. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-18.

Letter to JAMES RAMBO, D.A.G. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-19-20.

Letter from THOMAS A. PEDERSEN, ESQ. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-21.

Letter from THOMAS A. PEDERSEN, ESQ. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-22.

Motion to Withdraw by THOMAS A. PEDERSEN, ESQ. _ _ _ _ _ _ _ _ _ _ A-23-25.

Discovery Request sent to State prosecutors _ _ _ _ _ _ _ _ _ _ _ _ A-26-29.

Letter to State prosecutors _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-30-32.

Letter to the HONORABLE HAILE L. ALFORD _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-33.

Motion for Production of Brady Material _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-34-38

Motion to Compel Production of Discoverable Materials _ _ _ _ _ _ _ _ _ _ A-39-45.

Motion for New Trial, November 6, 2002 _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-46-52.

Motion for New Trial, December 18, 2002 _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-53-58.

Letter from EUGENE J. MAURER JR., P.A. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-59.

Withdrawal of Motion for New Trial _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-60.

Letter from EUGENE J. MAURER JR., P.A. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-61-62.

ORDER DENYING Motion for New Trial _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-63-71.

Letter to Fred Tate of TATE INVESTIGATIVE SERVICE _ _ _ _ _ _ _ _ _ _ _ A-72-76.

Letter from EUGENE J. MAURER JR., P.A. _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-77.

Letter to WARDEN RAPHAEL WILLIAMS _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-78.

Letter and ORDER to the HONORABLE HAILE L. ALFORD _ _ _ _ _ _ _ _ _ A-79-80.

Letter from EUGENE J. MAURER JR., P.A. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-81.

Excerpts from redacted copy of Police Report _ _ _ _ _ _ _ _ _ _ _ _ A-82-87, 206.

Excerpts from Preliminary Hearing _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-88-94.

Letter from THOMAS A. PEDERSEN, ESQ. _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-95.

Reported case concerning MARVIN SWANSON _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-96.

Excerpts from state's opening statement _ _ _ _ _ _ _ _ _ _ _ _ A-97-98, 182.

Excerpts from state's closing statement _ _ _ _ _ _ _ _ _ _ A-163-167,  203.

Excerpts from direct examination
of James Howell _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-99-101.

Excerpts from cross examination
of James Howell _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-181

Excerpts from direct examination
of Vernon Mays _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-102-104, 118-121.

Excerpts from cross examination
of Vernon Mays _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-109-117.

Excerpts from cross examination
of Dt. Brock _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-105-107, 126.

Excerpts from direct examination
of Dt. Brock _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-108, 158-159.

Excerpts from direct examination
of Officer James Peiffer _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-122-123.

Excerpts from cross examination
of Officer James Peiffer _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-123.

Excerpts from direct examination
of Officer Joseph Sammons _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-124.

Excerpts from cross examination
of Officer Joseph Sammons _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-183.

Excerpts from direct examination
of Ronnetta Sudler _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-125, 184, 186.

Excerpts from cross examination
of Ronnetta Sudler _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-127-128, 185, 187, 189.

Excerpts from direct examination
of Mathew Chamblee _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-129-130.

Excerpts from cross examination
of Mathew Chamblee _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-131-138.

Excerpts demostrating bailiff's
unauthorized ejections _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-139-141.

Excerpts from direct examination
of Othello Predoux _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-142-145,  193-194.

Excerpts from cross examination
of Othello Predoux _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-146-153, 192, 204.

Excerpts from direct examination
of Tyshiek McDougal _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-154-156, 195-198.

Excerpts from cross examination
of Tyshiek McDougal _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-157.

Defense statement _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-161-162.

Excerpts from office conference hearing _ _ _ _ _ _ _ _ _ _ _ _ A-168-171.

Brief in opposition of disqualification
of defense counsel _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-172-179.

Voir dire questionaire to jury _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-180.

Excerpts from direct examination
of Adrienne Dawson _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-190-191.

Excerpts from state's attempt
to introduce prejudicial photographs_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-199-201.

Affidavit by petitioner_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ A-205.

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page     1
                          ( as of  02/03/2006 )

State of Delaware v.  DAMONE E FLOWERS                      DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.          AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.             DAMONE FLOWERS


Co-Defendants:  DAMONE FLOWERS

Assigned Judge: JOHNSTON MARY MILLER

Charges:
Count     DUC#         Crim.Action#    Description      Dispo.     Dispo. Date
---------------------------------------------------------------------------
001   9808000280A    IN00020633R2   MURDER 1ST        TG       10/30/2002
002   9808000280A    N00020634      ATT. FELONY A     NOLP     04/25/2003
003   9808000280A    N00020635      ATT. FELONY A     NOLP     04/25/2003
004   9808000280A    IN00020636R2   PFDCF             TG       10/30/2002
005   9808000280A    IN00020637     PFBPP             SEV      10/22/2002

      Event
No.   Date         Event                              Judge
---------------------------------------------------------------------------
1    02/14/2000
      CASE ACCEPTED IN SUPERIOR COURT.
      ARREST DATE: 02/02/2000
      PRELIMINARY HEARING DATE:
      BAIL:
      HELD ON SECURED BAIL            160000.00 100
      HELD WITHOUT BAIL                    0.00
2    03/13/2000
      SUMMONS MAILED.
      03/29/2000                           GEBELEIN RICHARD S.
      FAST TRACK CALENDAR:  NEW TRACK ASSIGNED.
      NEW TRACK: CASE REVIEW
      DATE: 050100
3    04/24/2000
      INDICTMENT, TRUE BILL FILED.  #153
      CASE REVIEW 05122000.
      05/01/2000                           SILVERMAN FRED S.
      CASE REVIEW CALENDAR RESCH.FOR 053000 ARS
4    05/04/2000
      CONFLICT LETTER FILED BY  DAVID J.J. FACCIOLO
6    05/05/2000                            RIDGELY HENRY DUPONT
      MEMO SPECIALLY ASSIGNING MURDER CASE.
      TO: JUDGE ALFORD   FROM JUDGE RIDGELY
      THIS NON-CAPITAL FIRST DEGREE MURDER CASE IS SPECIFICALLY ASSIGNED TO
      YOU FOR ALL PURPOSES UNTIL FINAL DISPOSITION. DEFENDANT FLOWERS WAS
      ARRESTED ON FEBRUARY 2, 2000 AND INDICTED BY THE GRAND JURY ON APRIL
      24, 2000.
5    05/08/2000                            BARRON NORMAN A.
```

```
                   SUPERIOR COURT CRIMINAL DOCKET              Page    2
                      ( as of  02/03/2006 )


State of Delaware v.  DAMONE E FLOWERS                    DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.        AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.           DAMONE FLOWERS


       Event
No.    Date          Event                              Judge
-----------------------------------------------------------------------------
       ORDER: THOMAS A. PEDERSEN, APPOINTED TO REPRESENT DEFENDANT.
 7     05/18/2000
       ACKNOWLEDGEMENT SIGNED BY COUNSEL:  IT IS MY UNDERSTANDING THAT I AM
       TO REPRESENT DEFENDANT.
       ATTORNEY: THOMAS A. PEDERSEN, ESQ.
 8     05/30/2000                            REYNOLDS MICHAEL P.
       ARRAIGNMENT CALENDAR, CONTINUED.
       060600
 9     06/06/2000                            REYNOLDS MICHAEL P.
       ARRAIGNMENT CALENDAR, ARRAIGNED.
10     06/06/2000                            REYNOLDS MICHAEL P.
       ARRAIGNMENT CALENDAR, ARRAIGNED.
12     06/26/2000                            ALFORD HAILE L.
       OFFICE CONFERENCE PROCEEDING HELD REGARDING SCHEDULING OF A TRIAL DATE
       LENGTH SHOULD BE ABOUT 4 OR 5 DAYS
       TUESDAY THE 10TH OF APRIL 2001.  DEFENDANT HAS UNTIL 8/1 TO REQUEST
       DISCOVERY .
11     06/27/2000                            ALFORD HAILE L.
       LETTER/ORDER ISSUED BY JUDGE ALFORD TO COUNSEL.
       RE: AN OFFICE CONFERENCE WAS HELD ON MONDAY, JUNE 26, 2000 REGARDING
       THE ABOVE REFERENCED NON-CAPITAL MURDER CASE. THIS LETTER CONFIRMS AND
       SETS FORTH MATTERS DISCUSSED.
       1.   STATUS CONFERENCE SCHEDULED ON AUGUST 25, 2000 @ 9:15 AM.
       2.   JURY SELECTION WILL BEGIN ON TUESDAY, APRIL 10, 2001,
            AND TRIAL IS EXPECTED TO LAST THROUGH APRIL 16, 2001.
       IT IS SO ORDERED.
13     08/28/2000
       STATUS CONFERENCE SCHEDULED-==RESCHEDULED NO DATE GIVEN
14     11/08/2000
       MOTION FOR AUTHORIZATION TO INCUR EXPENSES FILED.
       THOMAS PEDERESEN, ESQ.
       REFERRED TO JUDGE ALFORD.
15     11/17/2000                            ALFORD HAILE L.
       LETTER FROM JUDGE ALFORD   TO JUSTICE WALSH.
       RE: THE NON-CAPITAL MURDER TRIAL DEFENDANT IN THE ABOVE REFERENCE
       MATTER IS CURRENTLY SCHEDULED FOR TRIAL APRIL 10, 2001. ENCLOSED IS AN
       ORDER SUBMITTED FOR APPROVAL. THE ORDER IS TO PERMIT DEFENDANT'S COURT
       APPOINTED ATTORNEY TO RETAIN THE SERVICES OF A PRIVATE INVESTIGATOR.
       SHOULD YOU HAVE ANY QUESTIONS, PLEASE HAVE YOUR SECRETARY FORWARD A
       SIGNED COPY TO MY OFFICE.
16     01/17/2001
       MOTION FOR TRANSCRIPTS (PRO SE)  FILED. REFERRED TO JUDGE ALFORD.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                      ( as of  02/03/2006 )

State of Delaware v.  DAMONE E FLOWERS                    DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.          AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.             DAMONE FLOWERS

        Event
No.   Date          Event                              Judge
-----------------------------------------------------------------------------
        1/22/01
22    01/19/2001
        MOTION FOR AUTHORIZATION TO INCUR EXPENSES FILED.
        PRO SE
17    02/05/2001                               ALFORD HAILE L.
        ORDER:_AUTHORIZING PAYMENT.
        RE:  FOR NON-LEGAL SERVICES (E.G. PSYCHIATRIC, INVESTIGATIVE,
        TRANSCRIPTS, INTERPRETERS, ETC.) UPON PRIOR APPLICATION.
        IT IS HEREBY ORDERED:
        THAT THE SUM OF $165.00 BE PAID TO:
        SERVICE PROVIDER: THOMAS A. PEDERSEN, ESQ.
        TYPE OF SERVICE: TRANSCRIPTS OF PRELIMINARY HEARING
23    02/05/2001                               ALFORD HAILE L.
        MEMORANDUM FILED TO: TOM PEDERESEN  FROM:  JUDGE ALFORD
        RE:  DEFENDANT'S PRO SE MOTION FOR AUTHORIZATION TO INCUR EXPENSES.
18    02/09/2001
        TRANSCRIPT OF PRELIMINARY HEARING FROM FEBRUARY 11, 2000.
19    02/09/2001
        DISCOVERY REQUEST FILED BY DEFENDANT
24    02/13/2001                               ALFORD HAILE L.
        ORDER AUTHORIZING PAYMENT.
        FOR NON-LEGAL SERVICES UPON PRIOR APPLICATION, IT IS HEREBY ORDERED:
        THAT THE SUM OF 134.75 BE PAID TO:  CHERYL SIMMONS FOR TRASNCRIPT.
21    02/26/2001
        REFERRAL TO COUNSEL MEMORANDUM FILED.
        ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
        AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
        COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
        CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
        DIRECTED TO YOU. THOMAS PEDERSEN, ESQ
        REFERRED BY:  (AMH)
        MOTION FOR AUTHORIZATION TO INCUR EXPENSES.
25    04/25/2001
        OFFICE CONFERENCE PROCEEDING HELD.
        TRIAL SCHEDULED FOR 10/23/01 TO LAST THROUGH 10/31/01.
26    07/26/2001                               ALFORD HAILE L.
        LETTER/ORDER ISSUED BY JUDGE ALFORD.    TO JAMES RAMBO, AG., CYNTHIA
        KELSEY, AG., AND THOMAS PEDERSEN, ESQ.
        RE: STATE V. DAMONE FLOWERS
        AN OFFICE CONFERENCE WAS HELD ON TUESDAY, MAY 15, 2001 REGARDING THE
        ABOVE-REFERENCED NON-CAPITAL MURDER CASE. THIS LETTER COMFIRMS AND
        SETS FORTH MATTERS DISCUSSED.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    4
                       ( as of  02/03/2006 )
```

State of Delaware v.  DAMONE E FLOWERS                    DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.        AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.           DAMONE FLOWERS

```
      Event
No.   Date          Event                              Judge
--------------------------------------------------------------------------
      2. JURY SELECTION WILL BEGIN ON TUESDAY, OCTOBER 23, 2001, AND THE
      TRIAL IS EXPECTED TO LAST THROUGH OCTOBER 31, 2001.
      IT IS SO ORDERED.
27    08/21/2001
      MOTION TO WITHDRAW AS COUNSEL FILED.
      BY THOMAS PEDERSON
      REFERRED TO JUDGE ALFORD ON 8/22
30    09/18/2001
      DEFENDANT'S LETTER FILED. DEFENDANT IS IN THE PROCESS OF HIRING A
      PRIVATE ATTORNEY. REFERRED TO JUDGE ALFORD.
28    09/21/2001                                 ALFORD HAILE L.
      OFFICE CONFERENCE PROCEEDING HELD.
      DEFENSE MOTION TO WITHDRAW AS COUNSEL. MOTION GRANTED.
      AG/RAMBO AND KELSEY - PD/PEDERSEN - CR/BRILL - CC/CARUSO.
29    09/21/2001                                 ALFORD HAILE L.
      ORDER:
      AND NOW, TO WIT, THIS 21ST DAY OF SEPTEMBER, A.D., 2001, THE FOREGOING
      MOTION HAVING BEEN HEARD AND CONSIDERED, IT IS HEREBY; ORDERED,
      GRANTED - DEFENSE COUNSEL'S MOTION TO WITHDRAW.
31    09/28/2001                                 ALFORD HAILE L.
      LETTER/ORDER ISSUED BY JUDGE: ALFORD  TO MR. FLOWERS.
      THE COURT HAS RECEIVED YOUR LETTER DATED SEPT. 16, 2001 REGARDING YOUR
      OBTAINING COUNSEL. YOU HAVE 30 DAYS TO OBTAIN AN ATTORNEY AND HAVE
      THAT PERSON ENTER HIS/HER APPEARANCE ON YOUR BEHALF. IF YOU DO NOT
      OBTAIN COUNSEL WITHIN 30 DAYS TO REPRESENT YOU, A COURT APPOINTED
      ATTORNEY WILL BE ASSIGNED TO YOUR CASE.
      IT IS SO ORDERED.
32    10/09/2001
      SUBPOENA(S) MAILED.
33    10/09/2001
      SUBPOENA(S) MAILED.
34    10/10/2001                                 ALFORD HAILE L.
      LETTER FROM EUGENE J. MAURER, JR., P.A. TO JUDGE ALFORD
      RE: I HAVE BEEN CONSULTED BY THE ABOVE DEFENDANT AND HIS FAMILY AND
      THEY HAVE RETAINED ME TO REPRESENT HIM IN CONNECTION WITH THE HOMICIDE
      CHARGE PRESENTLY PENDING AGAINST HIM. I UNDERSTAND THAT THE CASE PRE-
      SENTLY HAS A SCHEDULED TRIAL DATE OF OCTOBER 23, 2001. OBVIOUSLY, I
      WOULD NOT BE IN A POSITION TO TRY THE CASE AT THAT TIME IF I WERE TO
      BECOME INVOLVED. I HAVE LEARNED THAT THOMAS PEDERSEN, ESQ. HAS
      RECENTLY WITHDRAWN AS COUNSEL ON BEHALF OF THE DEFENDANT SO THAT IT
      WOULD IN ALL LIKELIHOOD BE NECESSARY TO APPOINT OTHER COUNSEL FOR THE
      DEFENDANT AND TO CONTINUE THE TRIAL DATE IN ANY EVENT. I AM WRITING AT
```

```
                      SUPERIOR COURT CRIMINAL DOCKET              Page    5
                          ( as of  02/03/2006 )

State of Delaware v.  DAMONE E FLOWERS                        DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.        AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.           DAMONE FLOWERS


      Event
No.   Date          Event                                 Judge
-----------------------------------------------------------------------------
      THIS TIME TO REQUEST AN OFFICE CONFERENCE ON THIS MATTER SO THAT I
      MIGHT FORMALLY ENTER MY APPEARANCE AND SO THAT SCHEDULING CAN BE
      DISCUSSED.
      * REQUSET GRANTED OC SCHED. ON 10/26/01 AT 9:15 A.M. HAILE ALFORD
      10/02/01
35    10/11/2001
      ENTRY OF APPEARANCE BY EUGENE J.MAURER,JR,ESQ.
36    10/17/2001
      STATE'S WITNESS SUBPOENA ISSUED.
      TO JAMES L. HOWELL, HALLOWED DAVIS, AND OFFICER BROCK.
37    10/23/2001
      SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
38    10/26/2001                                    ALFORD HAILE L.
      LETTER/ORDER ISSUED BY JUDGE ALFORD. AN OFFICE CONFERENCE WAS HELD ON
      FRIDAY, OCTOBER 26, 2001 REGARDING THE ABOVE-REFERENCED NON-CAPITAL
      MURDER CASE. THIS LETTER CONFIRMS AND SETS FORTH MATTERS DISCUSSED.
      1. DISCOVERY CUT-OFF DATE: NOVEMBER 2, 2001
      2. MOTION CUT-OFF DATE:   NOVEMBER 30, 2001
      3. SUBMISSION OF SPECIAL VOIRE DIRE: APRIL 19, 2002.
      4. JURY SELECTION WILL BEGIN ON TUESDAY,MAY 7, 2002 AND THE TRIAL IS
         EXPECTED TO LAST THROUGH MAY 17, 2002.
      IT IS SO ORDERED.
39    10/26/2001
      SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
40    03/25/2002
      NOTICE OF SERVICE - DISCOVERY REQUEST.
      REQUESTED BY: EUGENE MAURER ESQ.
41    04/15/2002
      MOTION FOR PRODUCTION OF BRADY MATERIAL.
      BY EUGENE MAURER
      REFERRED TO JUDGE ALFORD 4/22/02
42    04/15/2002
      MOTION TO COMPEL FILED.
      BY EUGENE MAURER
      REFERRED TO JUDGE ALFORD 4/22/02
43    04/22/2002                                    ALFORD HAILE L.
      STATUS CONFERENCE PROCEEDING HELD BEFORE JUDGE ALFORD.
      JUDGE GRANTED ORDER FOR DISCOVERY TO BE DELIVERDED BY 04/26/02.
44    04/24/2002
      SUBPOENA(S) MAILED.
45    04/24/2002
      SUBPOENA(S) MAILED.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    6
                       ( as of  02/03/2006 )

State of Delaware v.  DAMONE E FLOWERS                      DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.        AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.           DAMONE FLOWERS


    Event
No.  Date          Event                                   Judge
-----------------------------------------------------------------------------
46   04/29/2002
     STATE'S WITNESS SUBPOENA ISSUED.
47   04/29/2002
     LETTER FROM EUGENE J. MAURER, JR.               TO JUDGE ALFORD
     ENCLOSED HEREIN PLEASE FIND AN ORDER WHICH I PREPARED IN CONNECTION
     WITH THE ABOVE CASE. YOUR HONOR HAD INDICATED THAT YOU WOULD SIGN THIS
     UPON PRESENTATION SO THAT COUNSEL'S INVESTIGATOR CAN INTERVIEW
     WITNESSES IN THE PRISON.
     * SEE FULL LETTER IN FILE.
48   04/29/2002                                     ALFORD HAILE L.
     ORDER:
     AND NOW, TO WIT, THIS 29TH DAY OF APRIL, 2002, IT APPEARING THAT IT IS
     NECESSARY FOR THE DEFENSE IN THIS CASE TO INTERVIEW CERTAIN WITNESSES
     WHO ARE INCARCERATED, IT IS HEREBY
     ORDERED AS FOLLOWS:
     1.  FRED TATE, INVESTIGATOR FOR EUGENE J. MAURER, JR., ATTORNEY FOR
     THE DEFENDANT MAY ENTER THE GANDER HILL PRISON AND INTERVIEW THE BELOW
     WITNESSES:
     (A)  BENNY WRIGHT;
     (B)  BRUCE DUNCAN.
49   05/01/2002
     STATE'S WITNESS SUBPOENA ISSUED.
50   05/07/2002                                     ALFORD HAILE L.
     TRIAL CALENDAR- WENT TO TRIAL JURY
51   05/07/2002                                     ALFORD HAILE L.
     TRIAL CALENDAR-CONTINUED. DEFENSE REQUEST.
     DEFENSE CONFLICT.
53   05/22/2002
     LETTER FROM EUGENE MAURER, ESQ    TO JUDGE ALFORD.
     RE: IN RESPONSE TO STATE'S MOTION TO DISQUALIFY DEFENSE COUNSEL.
52   06/25/2002                                     ALFORD HAILE L.
     ORDER: UPON STATE'S MOTION TO DISQUALIFY DEFENSE COUNSEL: DENIED.
     * SEE FULL ORDER IN FILE
54   06/25/2002
     DOCUMENTS FILED, SEALED BY ORDER OF JUDGE ALFORD.
56   07/17/2002                                     ALFORD HAILE L.
     LETTER/ORDER ISSUED BY JUDGE: ALFORD               TO: COUNSEL
     AN OFFICE CONFERENCE WAS HELD ON FRIDAY, JUNE 28, 2002 REGARDING THE
     ABOVE-REFERENCED NON-CAPITAL MURDER CASE. THIS LETTER CONFIRMS AND
     SETS FORTH MATTERS DISCUSSED.
     1.  JURY SELECTION WILL BEGIN ON TUESDAY, OCTOBER 22, 2002, AND THE
         TRIAL IS EXPECTED TO LAST THROUGH NOVEMBER 1, 2002.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    7
                         ( as of  02/03/2006 )

State of Delaware v.  DAMONE E FLOWERS                     DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.        AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.           DAMONE FLOWERS


      Event
No.   Date           Event                                Judge
---------------------------------------------------------------------------
      IT IS SO ORDERED.
55    07/26/2002
      MOTION TO TRANSFER DEFENDANT'S CUSTODY FILED.
      BY EUGENE MAURER, ESQ.
      REFERRED TO JUDGE ALFORD (CATEGORY 1) 7/29/02.
57    08/07/2002
      ORDER: AND NOW, TO WIT, THIS 7TH DAT OF AUGUST, 2002, THE FOREGOING
      MOTION TO TRANSFER DEFENDANT'S CUSTODY HAVING BEEN HEARD AND
      CONSIDERED, IT IS HEREBY ORDERED.
      GRANTED. THE DEFENDANT DAMONE FLOWERS IS TO BE HOUSED AT GANDER HILL
      PENDING TRIAL AND DURING TRIAL.
58    10/02/2002
      STATE'S WITNESS SUBPOENA ISSUED.
59    10/04/2002
      MOTION TO SEVER FILED.
      BY EUGENE MAURER, ESQ.
      REFERRED TO JUDGE ALFORD (SPECIALLY ASSIGNED JUDGE) 10/7/02.
60    10/09/2002
      SUBPOENA(S) MAILED.
61    10/09/2002
      SUBPOENA(S) MAILED.
63    10/18/2002
      TRANSCRIPT FILED.
      OFFICE CONFERENCE TRANSCRIPT.  MAY 8, 2002.
      BEFORE JUDGE ALFORD.
62    10/22/2002                              ALFORD HAILE L.
      TRIAL CALENDAR- WENT TO TRIAL JURY
77    10/22/2002                              ALFORD HAILE L.
      JURY TRIAL HELD ON 10/22/02 THRU 10/30/02. THE JURY WAS SWORN. DEFT'S
      MOTION TO SEVER COUNT#3- POSSESSION OF A DEADLY WEAPON BY PERSON
      PROHIBITED(0637) WAS GRANTED. DEFT'S MOTION TO SUPPRESS VIDEOTAPE OF
      LOIS RONETTA SUDLER WAS DENIED. DEFT'S MOTION FOR MISTRIAL WAS DENIED.
      THE JURY FOUND DEFT. GUILTY AS TO: MURDER 1ST(0633), AND GUILTY AS TO
      PFDCF(0636). A PSI WAS ORDERED, AND SENTENCING WILL BE ON THE 20TH
      DAY OF DECEMBER. 2002 @9:30. EXHIBITS RETAINED.
      DAG: CYNTHIA KELSEY/JAMES RAMBO
      DEF. ATTY.: EUGENE MAURER
      CR: ROLFE/DONNELLY
      CC: ARRINGTON
64    10/23/2002
      SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
65    10/23/2002
```

```
                    SUPERIOR COURT CRIMINAL DOCKET            Page     8
                       ( as of  02/03/2006 )

State of Delaware v.  DAMONE E FLOWERS                   DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.         AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.            DAMONE FLOWERS

      Event
No.   Date           Event                          Judge
--------------------------------------------------------------------------
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
66   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
67   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
68   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
69   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
70   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
71   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
72   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
73   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
74   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
75   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
76   10/23/2002
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
78   10/28/2002                                ALFORD HAILE L.
        CHARGE TO THE JURY FILED.
79   11/06/2002
        MOTION FOR NEW TRIAL FILED.
        BY EUGENE MAURER, ESQ.
        REFERRED TO JUDGE ALFORD.
80   12/11/2002
        STATE'S RESPONSE TO THE DEFENDANT'S MOTION FOR A NEW TRIAL FILED.
        BY CYNTHIA KELSEY, DAG AND JAMES RAMBO, DAG
        REFERRED TO JUDGE ALFORD
82   12/19/2002
        MOTION FOR NEW TRIAL FILED.
        BY EUGENE MAURER, ESQ.
        REFERRED TO JUDGE ALFORD.
81   12/20/2002                                ALFORD HAILE L.
        LETTER FROM:  JAMES A RAMBO DAG & CYNTHIA KELSEY DAG
        TO:  JUDGE ALFORD      RE:  THE STATE MOVES ACCORDINGLY THAT THIS
        SECOND MOTION FOR A NEW TRIAL BE DENIED AND THAT, PENDING YOUR HONOR'S
        DECISION ON THE DEFENDANT'S FIRST MOTION FOR A NEW TRIAL, SENTENCING
```

```
                     SUPERIOR COURT CRIMINAL DOCKET              Page    9
                       ( as of  02/03/2006 )


State of Delaware v.  DAMONE E FLOWERS                   DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.         AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.            DAMONE FLOWERS


        Event
No.  Date          Event                            Judge
-------------------------------------------------------------------------
        PROCEED TOMORROW AS SCHEDULED.
        (SEE LETTER IN FILE)
83   12/20/2002                              ALFORD HAILE L.
        SENTENCING CALENDAR CONTINUED.
        DEFENDANT'S REQUEST-AWAITING DECISION ON MOTION.
84   01/27/2003
        LETTER FROM: COUNSEL               TO: JUDGE ALFORD
        RE: REQUESTING WHAT PARAMETERS THE JANUARY 31, 2003 HEARING AT 3:30
        WILL BE THEY ARE UNCLEAR.     (SEE FULL LETTER IN FILE)
85   01/27/2003                              ALFORD HAILE L.
        LETTER FROM: JUDGE ALFORD         TO: COUNSEL
        RE: THIS LETTER IS IN RESPONSE TO MS. KELSEY'S LETTER OF INQUIRY
        DATED JANUARY 31, 2003 AT 3:30 P.M. FOR THE PURPOSE OF CONSIDERING THE
        SECOND MOTION FOR NEW TRIAL FILED BY DEFENDANT.
87   02/04/2003
        TRANSCRIPT FILED.
        TRANSCRIPT OF STATE'S CLOSING REMARKS.  OCTOBER 28, 2002
        BEFORE JUDGE ALFORD AND JURY.
86   02/05/2003
        MOTION FOR NEW TRIAL DENIED.
88   02/21/2003
        LETTER FROM EUGENE MAURER  TO: JUDGE ALFORD.
        RE: I NOTED IN THE COURT'S DECISION DENYING THE DEFENDANT'S MOTION FOR
        NEW TRIAL THAT SENTENCING HAS BEEN SCHEDULED FOR MARCH 21, 2003. I DO
        NOT BELIEVE THAT I HAD PREVIOUSLY BEEN NOTIFIED OF THIS DATE.
        I AM GOING TO BE OUT OF THE STATE ON VACATION WITH MY FAMILY ON MARCH
        19TH THROUGH THE 21ST. ACCORDINGLY, I AM REQUESTING A CONTINUANCE OF
        THE SENTENCING FOR PERHAPS A WEEK.
        WE CONTACTED THE ATTORNEY GENERAL'S OFFICE CONCERNING THIS AND AS OF
        THIS WRITING HAVE NOT HEARD BACK FROM MR. RAMBO.
89   02/21/2003                              ALFORD HAILE L.
        ORDER: CONTINUANCE FOR NEW SENTENCING DATE IS GRANTED. THE NEW DATE
        WILL BE 4/25/02 @ 9:30 A.M.
        IT IS SO ORDERED.
        JUDGE ALFORD.
90   04/25/2003                              ALFORD HAILE L.
        SENTENCING CALENDAR: DEFENDANT SENTENCED.
91   05/29/2003
        LETTER FROM SUPREME COURT TO KATHLEEN FELDMAN, COURT REPORTER
        RE: A NOTICE OF APPEAL WAS FILED ON 05/21/03.
        THE TRANSCRIPT IS DUE 06/30/03.
        264, 2003
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page   10
                        ( as of  02/03/2006 )

State of Delaware v.  DAMONE E FLOWERS                    DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.        AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.           DAMONE FLOWERS


     Event
No.  Date            Event                              Judge
------------------------------------------------------------------------
92   06/03/2003                                  ALFORD HAILE L.
        SENTENCE: ASOP ORDER SIGNED AND FILED 6/3/03
93   07/07/2003
        LETTER FROM SUPREME COURT TO MICHELE HONAKER, COURT REPORTER
        RE: YOUR EXTENSION IS GRANTED. THE TRANSCRIPT IS NOW DUE
        JULY 30, 2003.
        264, 2003.
94   07/28/2003
        TRANSCRIPT FILED.
        APRIL 25, 2003 SENTENCING BEFORE THE HONORABLE HAILE L. ALFORD.
95   07/28/2003
        TRANSCRIPT FILED.
        OCTOBER 28, 2002 TRIAL TESTIMONY BEFORE THE HONORABLE HAILE L. ALFORD
        AND JURY.
96   07/30/2003
        TRANSCRIPT FILED.
        OCTOBER 23, 2003 TRIAL BEFORE THE HONORABLE HAILE L. ALFORD AND JURY.
97   07/30/2003
        TRANSCRIPT FILED.
        OCTOBER 24, 2003 TRIAL BEFORE THE HONORABLE HAILE L. ALFORD AND JURY.
98   07/30/2003
        TRANSCRIPT FILED.
        OCTOBER 25, 2003 TRIAL BEFORE THE HONORABLE HAILE L. ALFORD AND JURY.
99   07/31/2003
        TRANSCRIPT FILED.
        TRIAL ON OCTOBER 22, 2002 BEFORE JUDGE ALFORD.
     07/31/2003
        RECORDS SENT TO SUPREME COURT.
100  01/29/2004
        LETTER FROM PRESIDENT JUDGE RIDGELY TO JUDGE JOHNSTON
        RE: THIS MURDER CASE PREVIOUSLY ASSIGNED TO JUDGE ALFORD IS
        SPECIALLY ASSIGNED TO YOU FOR ALL PURPOSES UNTIL FINAL DISPOSITION.
101  09/20/2004
        MANDATE FILED FROM SUPREME COURT:  SUPERIOR COURT JUDGMENT AFFIRMED.
        SUPREME COURT CASE NO: 264, 2003
        SUBMITTED: MAY 25, 2004
        DECIDED: AUGUST 31, 2004
        BEFORE STEELE, CHIEF JUSTICE, HOLLAND, BERGER, JACOBS, JUSTICES AND
        CHANDLER, CHANCELLOR,*CONSTITUTING THE COURT EN BAC.
102  04/27/2005                                  JOHNSTON MARY MILLER
        NOTICE OF NON-COMPLIANCE TO RULE 61 (MOTION FOR POSTCONVICTION RELIEF)
        SENT TO DEFENDANT.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page   11
                       ( as of  02/03/2006 )

State of Delaware v.  DAMONE E FLOWERS                       DOB: 02/20/1976
State's Atty: JAMES A RAMBO , Esq.        AKA: DAMONE FLOWERS
Defense Atty: EUGENE J MAURER , Esq.            DAMONE FLOWERS


      Event
 No.  Date           Event                              Judge
-----------------------------------------------------------------------------
      MOTION MUST CONTAIN MOVANT'S ORIGINAL SIGNATURE.
 103  05/03/2005
      MOTION FOR POSTCONVICTION RELIEF FILED. PRO SE
      REFERRED TO JUDGE JOHNSTON
 104  05/03/2005
      MEMORANDUM OF LAW FILED IN SUPPORT OF MOTION FOR POSTCONVICTION RELIEF
 105  05/03/2005
      DEFENDANT'S LETTER FILED. IN REFERENCE TO MOTION FOR POSTCONVICTION
      RELIEF. MR. FLOWERS SUGGEST THAT THE FILING DATE BE CLARIFIED TO AVOID
      CONFUSION.
      ORIGINAL MOTION RETURN TO MR. FLOWERS WITH A NOTICE OF NON-COMPLIANCE
      MOTION DID NOT CONTAIN ORIGINAL SIGNATURE. AMH
 106  06/28/2005                                JOHNSTON MARY MILLER
      ORDER: UPON DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF: DENIED
 107  07/18/2005
      DEFENDANT'S LETTER FILED.
      TO: JUDGE JOHNSTON
      LETTER REGARDING RULE 61
 108  09/20/2005
      MOTION FOR POSTCONVICTION RELIEF FILED. PRO SE
      REFERRED TO JUDGE JOHNSTON
 109  09/23/2005
      LETTER FROM  ANGELA HAIRSTON, PROTHONOTARY OFFICE  TO STEVEN WOOD,DAG
      RE: NOTICE OF MOTION FOR POSTCONVICTION RELIEF. ATTACHED COPY OF
      MOTION
 110  12/13/2005                                JOHNSTON MARY MILLER
      ORDER: UPON DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF: DENIED
      IT IS SO ORDERED
 111  12/14/2005
      DEFENDANT'S REQUEST FILED.
      TO: JUDGE JOHNSTON
      REQUEST FOR TRANSCRIPTS

              *** END OF DOCKET LISTING AS OF  02/03/2006 ***
                   PRINTED BY: CSCVMOA
```

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

January 3, 2002

Damone Flowers
Gander Hill Prison
P.O. Box 9561
Wilmington, DE   19809

Dear Damone:

The State has uncovered another witness who is indicating that you were not the shooter on the evening in question.   I am enclosing herein copies of a letter which I received from the State together with a copy of interview notes with a Mr. Bruce Duncan.   Do you know this individual?

I anticipate that I will come over to the prison to meet with you in the not-too-distant future.   Should you have any questions in the meantime please feel free to contact me.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br
Encs.



M. JANE BRADY
ATTORNEY GENERAL

**STATE OF DELAWARE**
DEPARTMENT OF JUSTICE

NEW CASTLE COUNTY
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

KENT COUNTY
102 West Water Street
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

SUSSEX COUNTY
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-4698

PLEASE REPLY TO :    New Castle County

December 21, 2001

Eugene J. Maurer, Jr., P.A.
Attorney At Law
1201-A King Street
Wilmington, DE 19801

> RE:    **State of Delaware v. Damone Flowers**
>        I.D. #9802009823

Dear Gene:

We have interviewed another prisoner who says that your defendant was not the shooter. Attached is the map he drew at the interview. The interview was taped but it also contains substantial amounts of information unrelated to this case. If you would like a copy of the redacted tape, I will provide a copy but I need lots of notice. Thanks.

Very truly yours,

Cynthia Kelsey
Deputy Attorney General

CK/sph

Attachment

cc:    James Rambo, Deputy Attorney General
c:\shannon\kelsey\maurereugene.ltr

A-14.



Potter's house

Dimode

Empty

179

Lot

Store

Church

p.p26

Lomont

Interview Bruce Duncan - 12/19/01
present Pat Connor, Dave Simmons + me
interview taped · this is the
map · Duncan drew

A-15



House

B

C

h

a

r

a

c

t

e

r

WALL

Corne

Left

Right

VAN

VAN

A-16

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

January 2, 2002

Cynthia Kelsey, Esq.
Deputy Attorney General
820 N. French Street
Wilmington, DE    19801

RE:    **State of Delaware v. Damone Flowers**
       **ID #9802009823**

Dear Cynthia:

Thank you for your letter dated December 21, 2001, and thank you for
providing to me the additional *Brady* material enclosed therein. I will of course
want a copy of the redacted tape as soon as possible so that I am providing you with
notice immediately upon the receipt of your letter.

Thank you for your attention to this.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br

xc.    Damone Flowers

A-17

# THOMAS A. PEDERSEN

ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN                                              TELEPHONE (302) 652-7905
MEMBER DE. BAR                                                        FAX (302) 652-1467

Damone Flowers
SBI# 303627
Gander Hill Prison
P.O. Box 9561
Wilmington, DE 19809

Date: 5-29-01

Dear Damone,

        Enclosed please find a letter which I wrote to the prosecutor following our office
conference which took place on May 15, 2001. As you can see, the State has taken a statement
from a witness who has come forth and identified an additional shooter besides you. When I was
advised of this statement, I specifically asked the prosecutor whether or not this witness identified
you as also participating in the shooting that night and was told that the witness did, in fact,
identify you and also identified this additional unnamed person as of now as also participating in
the shooting. Although this information does not exonerate you, I do believe we are entitled to it
under the Brady decision and have therefore requested it. In addition, you will also see that I
have reiterated my request for a copy of the photographic lineup.

        I am in receipt of your letter dated May 10, 2001 in which you have indicated that you
have hired Mr. Maurer and are awaiting his entry of appearance. Based upon this, I have spoken
with Mr. Maurer and he has indicated that he should be out to visit you soon to discuss this issue
with you. Until the entrance of his appearance, I am still your attorney of record and therefore
thought it necessary to file this letter on your behalf. Naturally, if Mr. Maurer does enter his
appearance, I will forward these documents to him.

                                                Very Truly Yours,

                                                Thomas A. Pedersen

Enclosure
TAP/sjh

# THOMAS A. PEDERSEN

ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN
MEMBER DE. BAR

TELEPHONE (302) 652-7905
FAX (302) 652-1467

Jim Rambo
Deputy Attorney General
Dept. of Justice
820 N. French Street
Wilmington, DE 19801

Date: 5-31-01
Re: State of Delaware vs. Damone Flowers, No.: 9808000280

Dear Jim,

On Tuesday, May 15, 2001, there was an office conference held in the above-referenced case. At that time, we were given a trial date of October 23, 2001. More importantly, you indicated at that time that the State had recently come into possession of a tape which was of some Brady Material to the defense.

During the office conference, you indicated that the State had recently come into possession of a videotaped interview conducted with an inmate at Gander Hill in which you were advised that there was an additional shooter besides Mr. Flowers. Obviously, I do view this as Brady Material and ask that you provide it to me as quickly as possible. In addition, I advised you at that time, that although I have requested copies of the photographic lineup shown to the witnesses in this case, I have still yet to receive these copies. Please forward to me copies of the videotape and photographic lineup as quickly as possible.

Following the meeting, we did discuss the proposed plea offer which I had sent to you sometime ago asking that you consider making a plea offer to Mr. Flowers of Murder in the Second Degree. At that time you indicated that you and your co-counsel were considering the offer and you would be in contact with me soon as to your decision. Once again, I ask that you consider this and let me know what your decision is as quickly as possible.

Should you have any questions regarding this letter or my requests, please feel free to give me a call.

Very Truly Yours,

Thomas A. Pedersen

# THOMAS A. PEDERSEN

ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN
MEMBER DE. BAR

TELEPHONE (302) 652-7905
FAX (302) 652-1467

Damone Flowers
P.O. Box 9561
Wilmington, DE. 19809

Date: 8-3-01

Dear Damone,

Thank you for your recent letter dates July 31, 2001. Under separate cover I will be filing a Motion to Withdraw as soon as I receive conformation from the prosecutor that Mr. Swanson is in fact the state's witness. Regarding your observation of the level of my intelligence, I would like to believe that I am the very very intelligent man posed in the beginning of your letter although some would certainly disagree. Regarding your level of intelligence however, I have had several opportunities to make observations of you during the course of our attorney client relationship and your being stupid is not one of them.

As soon as I receive a response from the state, I will be filing the appropriate Motion to Withdraw. If in fact I am permitted to withdraw from your case, please understand that I wish you the very best of luck in obtaining the best possible resolution of your case.

Very Truly Yours,

Thomas A. Pedersen

A-21.

# THOMAS A. PEDERSEN

ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN
MEMBER DE. BAR

TELEPHONE (302) 652-7905
FAX (302) 652-1467

Damone Flowers
Gander Hill
P.O. Box 9561
Wilmington, De. 19809

Date: 8-20-01

Dear Damone,

      Enclosed please find the Motion to Withdraw and rejected correspondence which I have filed in your case. As soon as we have a decision from the court, I will let you know immediately.

Very Truly Yours,

/snd
Thomas A. Pedersen

A-22.

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| | ) I.D.#9808000280 |
| V. | ) |
| | ) |
| | ) |
| DAMONE FLOWERS | ) |
| Defendant | ) |
| | ) |

## MOTION TO WITHDRAW AS COUNSEL

COMES NOW, the defendant, by and through counsel, Thomas A. Pedersen hereby requests that this Honorable Court allow him to withdraw as counsel. In support of this motion, the defendant offers the following:

1.  Counsel was assigned by the Court to represent Mr. Flowers on murder and related charges. Currently the matter is scheduled for trial on October 23rd, 2001.

2.  During an office conference with the Honorable Haile Alford on May 15th, 2001, counsel for the State indicated that they had recently interviewed and taken a taped statement from an unidentified witness whom they intend to call at trial.

3.  Based upon information and belief, counsel believes that not only has the confidential witness been represented by counsel in the past, but that counsel has also discussed the case with this witness and that context of that discussion is directly contrary to the proffer made by the state during the office conference. Counsel has intentionally omitted the name of the proposed witness.

4.  Assuming counsel is correct, the presence of this witness is causes a conflict of interest which cannot be cured by any other means than having counsel withdraw from Mr. Flowers case. Counsel has discussed this situation with Mr. Flowers who is also in agreement with this motion.

A-23.

WHEREFORE, counsel asks that this Honorable Court sign an order allowing counsel to withdraw as counsel of record for the above-referenced defendant.

_____
Thomas A. Pedersen

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) ) ) | I.D.#9808000280 |
| V. | ) ) | |
| DAMONE FLOWERS | ) ) | |
| Defendant | ) ) | |

## ORDER

AND NOW, TO WIT, this _____ day of _____, A.D., 2001, the foregoing Motion having been heard and considered, it is hereby;

ORDERED,

_____

_____

_____

_____

_____

_____

_____.

_____
JUDGE

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

March 25, 2002

James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE 19801

## RE: **State of Delaware v. Damone Flowers**
## ID #9808000280

Dear Jim & Cynthia:

I represent the defendant on the above charge(s). Pursuant to Superior Court Criminal Rule 16, please provide me with the following:

1. Copies of written or recorded statements, confessions or admissions of the defendant and any written record containing the substance or any relevant oral statement as well as the substance of any oral statement which the State intends to offer in evidence at the trial made by the defendant either before or after arrest in response to interrogation then known by the defendant to be a State agent which are within the custody, possession or control of the State.

2. Copies of any notes or reports made by State agents reflecting any such oral or recorded statements.

3. A copy of the defendant's prior criminal record, if any, as is within the possession, custody or control of the State, the existence of which is known or by the exercise of due diligence may become known to the Attorney General.

4. Reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become know, to the State, the existence of which is known, or by the exercise of due diligence may become known, to the State, and which are material to the preparation of the defense or are intended for use by the State as evidence in chief at the trial.

A-26.

James Rambo, Esq.
Cynthia Kelsey, Esq.
March 25, 2002
Page - 2

5.    Any evidence which the State may present at trial under Rules 702,
703 or 705 of the Delaware Uniform Rules of Evidence. This disclosure shall
include the identity of the witness and the substance of the opinions to be expressed.

6.    A listing of and the opportunity to inspect any and all books, papers,
documents, photographs, maps and any other physical evidence which was seized
from the defendant or which the State intends to use against the defendant at trial.

7.    Copies of all applications for, returns from and affidavits in support
of all search warrants (whether executed or unexecuted) in these matters.

8.    Copies of all arrest warrants in this matter, including supporting
affidavits and disclosure of the date, time, place and arresting officer(s) with respect
to any warrantless arrest.

9.    Disclosure of the identity of any and all informants, past or present,
paid or unpaid, who participated in the investigation of this matter.

10.    A statement as to whether any evidence or testimony has been
produced or compelled pursuant to Attorney General subpoena under 29 Del.C.
§2508(a).

11.    The date, time and location of the offense(s).

12.    Disclosure, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), of
all exculpatory information, evidence, or witnesses known to the State or any State
agent, including any information which relates to motions to suppress evidence or to
dismiss the indictment.

13.    Disclosure of all agreements between any agent of the State and any
witness or co-defendant, including whether such individual has been or will be
promised immunity from prosecution or any other consideration in return for
testimony.

14.    Disclosure, per *Boyer v. State*, Del.Supr., 436 A.2d 118, 1126
(1986), of any criminal record of prosecution witnesses accessible to the State and
reflecting on said witness' credibility.

James Rambo, Esq.
Cynthia Kelsey, Esq.
March 25, 2002
Page - 3

    15.      Disclosure of statements, interviews, reports or other information reflecting adversely on the credibility of any prosecution witness, including but not limited to inconsistent statements, reports or prior testimony.

    16.      An opportunity pursuant to *Jencks v. U.S.*, 353 U.S. 657 (1957), to review reports and statements, whether oral, written or recorded, made by persons who will testify at trial, regardless of whether the individual used the statement or report to prepare for examination. I would appreciate it if you could share this information with me prior to trial in order to avoid delay prior to cross-examination.

             Sincerely yours,

             Eugene J. Maurer, Jr.

EJM:br

xc.    Damone Flowers

A-28.

STATE OF DELAWARE   )
                    )   SS
NEW CASTLE COUNTY    )

## **AFFIDAVIT**

### **State of Delaware v. Damone Flowers**
### **ID #9808000280**

       I certify that a Discovery Request in the above captioned case was hand

delivered on March 25, 2002, to:

James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE 19801

EUGENE J.  MAURER, JR.
1201-A King Street
Wilmington, DE  19801
Attorney for Defendant

A-29,

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

February 8, 2002

James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE    19801

RE:    **State of Delaware v. Damone Flowers**
       **ID #9808000280**

Dear Jim & Cynthia:

I have recently had an opportunity to review the above file as well as the materials that have been provided to me by Tom Pedersen. I have numerous requests and inquiries which I will set forth numerically below with respect to information that is needed and steps that I feel need to be taken. These are as follows:

1.    I do not see a copy of the autopsy report. Would you please provide it.

2.    I do not have a copy of the Superior Court search warrant executed on the victim's vehicle. Could you provide it?

3.    I do not have copies of the victim's medical records from the hospital generated prior to his expiration. Could you provide them?

4.    It appears that Tom Pedersen had been requesting a copy of the photographic lineup utilized for the various identifications but that he never received it. Could you provide that?

5.    The witness interview section of Det. Brock's report jumps from Witness No. 3 to Witness No. 5. Was there a witness No. 4 and if so, could you provide me with a summary of his or her statement? If not, could you also advise on that?

James Rambo. Esq.
Cynthia Kelsey, Esq.
February 8, 2002
Page - 2

6.     Although Det. Brock's police report was provided in its entirety, Page 16 was omitted.    Was that intentional or inadvertent and if the latter, can it be provided to me at this time?  If the former, could you advise as to the reason for the omission.

7.     Although reference is made to an evidence detection report prepared by Det. Sammons, it does not appear that report has been provided. This would seem to be fairly significant so I would request that you provide me with a copy of that report.

8.     Although I see in Tom Pedersen's file that you had provided him with an "automatic discovery response", I do not seem to have that.  Could you provide it?

9.     I would like to have an opportunity to review the photographs taken in connection with the case and also would like to obtain a copy of the crime scene photograph which I assume was done.  I am enclosing at this time a blank videotape and requesting that I be provided with a copy of the crime scene video. I would also like to know when I might be able to review the photographs. Please advise.

The following requests are in the nature of *Brady* requests which I am making for the record:

1.     It appears that the witness from Maryland witnessed the shooting and was shown a photographic lineup with the defendant's picture in it.    It further appears that this witness did not make an identification. If you are not going to be calling this witness at trial, please provide me with his name and address so that I can have an appropriate subpoena issued under the interstate compact. This may take some time so I would appreciate a response as soon as possible.

2.     Under *Boyer v. State*, I am requesting that you provide me with the criminal records of the anticipated State's witnesses.

3.     I understand that Tom Pedersen had to withdraw as counsel due to his representation of a witness who was indicating that there was more than one shooter at the scene. I do not have a recollection of who that witness was or of what that witness was saying.  Would you please provide me with all reports regarding this witness and also please provide me with that witness' identity as well.

A-31.

James Rambo, Esq.
Cynthia Kelsey, Esq.
February 8, 2002
Page - 3

     I believe that there also might be some reference made in the record to a supplemental report prepared by Det. Brock and that has not been provided. Although not obviously required by discovery, is there any such report? Also, it seems to me in reviewing the records that were almost all of the witnesses interviewed by the police provided videotaped statements. I must admit that I believe that I know the identities of almost all of these individuals. Since that is the case, would you be willing to provide me with these videotapes well in advance of the trial date so that I might have an opportunity to review them and not have to scramble around at the last minute? Obviously, not providing these statements in advance of trial will certainly drag things out. Since I also have reason to believe that some of these witnesses may be recanting their statements in whole or in part, I will need to review the original tapes. Please advise as to whether you would be willing to do this.

     I think that is all that comes to me at the present time. If I have additional questions or inquiries, I will get in touch with you.

     Would you please let me know whether you are going to resist any of my requests and in particular any of the *Brady* requests. If so, it will be necessary for me to file a motion as soon as possible.

     Thank you for your attention to this.

                                Sincerely yours,

                                  Eugene J. Maurer, Jr.

EJM:br
Enc.

xc.   Damone Flowers

A-32.

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

April 15, 2002

The Honorable Haile L. Alford
Associate Judge
Superior Court
Public Building
Wilmington, DE 19801

RE:    **State of Delaware v. Damone Flowers**
       **ID #9808000280**

Dear Judge Alford:

I am enclosing herein courtesy copies of two Motions which I have filed in
connection with the above case. The issues raised by the Motions could impact on
the trial date which has been scheduled for sometime now. This matter is of some
urgency and I would request that the Court schedule an office conference as soon as
possible to deal with these various matters.

Thank you for your consideration.

Respectfully yours,

Eugene J. Maurer, Jr.

EJM:br
Encs.

xc.    James Rambo, Esq.
       Cynthia Kelsey, Esq.
       Damone Flowers

A-33.

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF MOTION

TO:   James Rambo, Esq.
      Cynthia Kelsey, Esq.
      Deputies Attorney General
      820 N. French Street
      Wilmington, DE 19801

PLEASE TAKE NOTICE that the within Motion for Production of Brady

material will be presented to the Honorable Haile L. Alford for her consideration.

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE   19801
Attorney for Defendant

DATED:   April 15, 2002

A-34.

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | ) ID #9808000280 |
| | ) |
| DAMONE FLOWERS, | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR PRODUCTION OF BRADY MATERIAL

COMES NOW the defendant, through his attorney Eugene J. Maurer, Jr., and moves that he be immediately provided with certain *Brady* materials currently in the possession of the State. The bases of this Motion are as follows:

1.    The State previously provided the defense with the identity of a witness who apparently indicated to the State that there was a second shooter present at the time of the incident in question. This information was contrary to other witness testimony that had previously been provided. With respect to this individual, the defendant requests that he immediately be provided with the following:

      (a)    The identity of this witness;

      (b)    The present or last known address of the witness;

      (c)    Copies of all police notes, transcripts or intelligible tapes of the witness' statements.

2.    The State previously provided to the defense a taped statement of a witness by the name of Bennie Wright which the State indicated was *Brady* material. Counsel has attempted to listen to the taped statement of which he was provided a

copy and the statement is in large part unintelligible. Counsel therefore requests that he immediately be provided with the following:

> (a)     The current or last known address of the
>          witness;
>
> (b)     Copies of all police interview notes reflecting
>          statements of the witness, copies of all
>          transcriptions of the witness' statement and an
>          intelligible copy of the taped statement itself.

3.     The State has also previously advised the defense of the identity of a witness by the name of Bruce Duncan but the State provided defense counsel only with a copy of a map drawn by the witness during an interview conducted on December 19, 2001. The State indicated that they would forward to the defense a taped copy of the interview but despite requests, that copy has not been forthcoming. The defense therefore immediately requires the following information with respect to the following:

> (a)     The current or last known address of the
>          witness;
>
> (b)     Copies of all police interview notes regarding
>          the witness' statement, any transcription of the
>          witness' statement and an intelligible copy of
>          the witness' taped statement.

4.     There is an eyewitness to the shooting in this case who resides in Baltimore, Maryland. The defense was provided with a redacted copy of the police

report indicating that this witness observed the shooting, was shown a photographic lineup which included the defendant and did not identify the defendant as the shooter in the case. The defense has sought on a previous occasion to be provided with the name and address of this witness who resides in Baltimore, Maryland, since counsel must seek to secure the witness' presence through the Interstate Compact. This information has not been provided and counsel needs this information immediately if he is going to be able to secure the presence of the above witness.

5. Trial in this case is scheduled to begin in three weeks and defense counsel is running out of time to be able to properly prepare this matter for trial. In particular, counsel needs to know the identities and locations of the above indicated witnesses together with the information provided if he is going to be able to secure their attendance at trial. Counsel therefore requests an immediate order requiring that the above information be provided.

6. Counsel has reason to believe that many of the State's witnesses have prior criminal records which could be utilized for impeachment purposes. Counsel therefore requests that he immediately be provided with the prior criminal records of all State's witnesses.

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE 19801
Attorney for Defendant

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | )    ID #9808000280 |
| | ) |
| DAMONE FLOWERS, | ) |
| | ) |
| Defendant. | ) |

## ORDER

AND NOW, TO WIT, this      day of             , 2002, the foregoing

Motion for Production of *Brady* Material having been heard and considered, it is

hereby

ORDERED _____

_____

_____

_____

_____
J.

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | )    ID #9808000280 |
| | ) |
| DAMONE FLOWERS, | ) |
| | ) |
| Defendant. | ) |

## NOTICE OF MOTION

TO:    James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE 19801

PLEASE TAKE NOTICE that the within Motion to Compel Production of

Discoverable Materials will be presented to the Honorable Haile L. Alford for her

consideration.

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE 19801
Attorney for Defendant

DATED:    April 15, 2002

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| STATE OF DELAWARE | ) |
|---|---|
| | ) |
| v. | ) ID #9808000280 |
| | ) |
| DAMONE FLOWERS, | ) |
| | ) |
| Defendant. | ) |

### MOTION TO COMPEL RESPONSE TO DISCOVERY

COMES NOW the defendant, through his attorney Eugene J. Maurer, Jr., and moves that this Court enter an Order requiring the State to immediately provide the below listed materials. Counsel has previously requested production of these materials and received no response from the State. A copy of counsel' most recent effort to obtain discoverable materials is attached hereto and is reflected in counsel's letter to the State dated February 8, 2002. Counsel requests the immediate production of the below discoverable materials:

✻1.    A copy of the autopsy report;

2.    A copy of the Superior Court search warrant executed on the victim's vehicle;

✻3.    Copies of the victim's medical records from the hospital generated prior to his death;

✻4.    A copy of the photographic lineup utilized for various identifications and shown to various witnesses in this case;

5.    A copy of an Evidence Detection Report prepared by Det. Sammons;

✻6.    An opportunity to review the photographs taken in connection with

the case together with being provided with a copy of the crime scene videotape. A blank videotape was forwarded to the State accompanying the February 8th letter.

Trial in this case has been scheduled for May 7, 2002. The failure of the State to provide the above requested information together with information sought in an accompanying *Brady* Motion could well jeopardize the ability of the defense to go forward on the schedule trial date.

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE   19801
Attorney for Defendant

EUGENE J. MAURER, JR., P.A.
ATTORNEY AT LAW
1201 KING STREET
WILMINGTON, DELAWARE 19801

(302) 652-7900
FACSIMILE (302) 652-2424

February 8, 2002

James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE   19801

RE:   **State of Delaware v. Damone Flowers**
      **ID #9808000280**

Dear Jim & Cynthia:

I have recently had an opportunity to review the above file as well as the materials that have been provided to me by Tom Pedersen. I have numerous requests and inquiries which I will set forth numerically below with respect to information that is needed and steps that I feel need to be taken. These are as follows:

1.    I do not see a copy of the autopsy report. Would you please provide it.

2.    I do not have a copy of the Superior Court search warrant executed on the victim's vehicle. Could you provide it?

3.    I do not have copies of the victim's medical records from the hospital generated prior to his expiration. Could you provide them?

4.    It appears that Tom Pedersen had been requesting a copy of the photographic lineup utilized for the various identifications but that he never received it. Could you provide that?

5.    The witness interview section of Det. Brock's report jumps from Witness No. 3 to Witness No. 5. Was there a witness No. 4 and if so, could you provide me with a summary of his or her statement? If not, could you also advise on that?

A-42.

James Rambo, Esq
Cynthia Kelsey, Esq
February 8, 2002
Page - 2

6.    Although Det. Brock's police report was provided in its entirety, Page 16 was omitted.  Was that intentional or inadvertent and if the latter, can it be provided to me at this time?  If the former, could you advise as to the reason for the omission.

7.    Although reference is made to an evidence detection report prepared by Det. Sammons, it does not appear that report has been provided. This would seem to be fairly significant so I would request that you provide me with a copy of that report.

8.    Although I see in Tom Pedersen's file that you had provided him with an "automatic discovery response", I do not seem to have that.  Could you provide it?

9.    I would like to have an opportunity to review the photographs taken in connection with the case and also would like to obtain a copy of the crime scene photograph which I assume was done.  I am enclosing at this time a blank videotape and requesting that I be provided with a copy of the crime scene video.  I would also like to know when I might be able to review the photographs.  Please advise.

The following requests are in the nature of *Brady* requests which I am making for the record:

1.    It appears that the witness from Maryland witnessed the shooting and was shown a photographic lineup with the defendant's picture in it.    It further appears that this witness did not make an identification.  If you are not going to be calling this witness at trial, please provide me with his name and address so that I can have an appropriate subpoena issued under the interstate compact.  This may take some time so I would appreciate a response as soon as possible.

2.    Under *Boyer v. State*, I am requesting that you provide me with the criminal records of the anticipated State's witnesses.

3.    I understand that Tom Pedersen had to withdraw as counsel due to his representation of a witness who was indicating that there was more than one shooter at the scene.  I do not have a recollection of who that witness was or of what that witness was saying.  Would you please provide me with all reports regarding this witness and also please provide me with that witness' identity as well.

A-43.

James Rambo, Esq.
Cynthia Kelsey, Esq.
February 8, 2002
Page - 3

I believe that there also might be some reference made in the record to a supplemental report prepared by Det. Brock and that has not been provided. Although not obviously required by discovery, is there any such report? Also, it seems to me in reviewing the records that were almost all of the witnesses interviewed by the police provided videotaped statements. I must admit that I believe that I know the identities of almost all of these individuals. Since that is the case, would you be willing to provide me with these videotapes well in advance of the trial date so that I might have an opportunity to review them and not have to scramble around at the last minute? Obviously, not providing these statements in advance of trial will certainly drag things out. Since I also have reason to believe that some of these witnesses may be recanting their statements in whole or in part, I will need to review the original tapes. Please advise as to whether you would be willing to do this.

I think that is all that comes to me at the present time. If I have additional questions or inquiries, I will get in touch with you.

Would you please let me know whether you are going to resist any of my requests and in particular any of the *Brady* requests. If so, it will be necessary for me to file a motion as soon as possible.

Thank you for your attention to this.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br
Enc.

xc.    Damone Flowers

A-44.

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, TO WIT, this       day of       , 2002, the foregoing

Motion for Production of *Brady* Material having been heard and considered, it is

hereby

ORDERED _____

_____

_____

_____


_____
J.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | ) ID #9808000280 |
| | ) |
| DAMONE FLOWERS, | ) |
| | ) |
| Defendant. | ) |

## NOTICE OF MOTION

TO:    James Rambo, Esq.
      Cynthia Kelsey, Esq.
      Deputies Attorney General
      820 N. French Street
      Wilmington, DE 19801

PLEASE TAKE NOTICE that the within Motion for New Trial will be

presented to this the Honorable Haile L. Alford for her consideration.

                            EUGENE P. MAURER, JR.
                            1201-A King Street
                            Wilmington, DE   19801
                            Attorney for Defendant

DATED:    November 6, 2002

A-46.

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| STATE OF DELAWARE | ) | |
|---|---|---|
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR NEW TRIAL

COMES NOW the defendant, through his attorney Eugene J. Maurer, Jr., and moves pursuant to Superior Court Criminal Rule 33 for a new trial in the above. The bases of this Motion are as follows:

1. The defendant was convicted by a jury on October 30, 2002, on charges of murder in the first degree and possession of a firearm during the commission of a felony. Sentencing is scheduled for December 20th of this year. The Court is of course familiar with the evidence and counsel will not comment extensively thereon at this time.

2. It was the strategy of the defense from the beginning of the trial that the defendant not testify. The basis of the defense strategy was predicated upon the fact that the defendant had a prior conviction for robbery in the second degree as well as a prior conviction for trafficking in cocaine. It was counsel's opinion that under no circumstances should the defendant testify in this trial since for him to do so would allow the jury to find out that he had a prior criminal record. See, Delaware Rule of Evidence 609.

A-47.

3.    Indeed, counsel stressed this point from the outset of the case and provided the Court with a voir dire question to determine whether or not any of the jurors would react adversely to the fact that the defendant elected not to testify. Indeed, counsel addressed the fact that it was not likely that the defendant would testify in his opening statement. Again, this strategy was calculated to avoid the jury's learning that the defendant had a prior criminal record.

4.    The Court also went to great lengths to assure that the jury would not hear that the defendant had previously been convicted of a felony level offense. Indeed, prior to trial, the defendant filed a Motion for Severance of Charges so as to remove the charge of possession of a deadly weapon by a person prohibited from the jury's consideration. The Court granted counsel's Motion for Severance indicating that given the "gravity of the matter" it was appropriate that the jury not be advised that the defendant had a prior criminal record.

5.    During the course of the trial, the State called the defendant's sister, Adrienne Dawson as a witness. The purpose of calling this witness was to establish for the jury that the defendant had fled subsequent to the incident in question and that he had not returned to her house at any time. The defendant had previously been living with her. Of course, the State had abundant other evidence of this fact and indeed introduced evidence thereon through the testimony of Det. Brock.

6.    During the course of the witness' direct examination, and in an unresponsive answer to the prosecutor's question, counsel was able to divine that the witness was going to calculate how much time the defendant had lived at her home by stating to the jury the date on which the defendant got out of jail. Counsel

immediately objected and the witness did not respond to the question. Prior to the next question being asked counsel then spoke with the prosecutor and advised him what the witness was about to say and indicated to the prosecutor that counsel would have no objection to his leading the witness so as to avoid the introduction of the prejudicial testimony.

7.    Notwithstanding defense counsel's warning, the prosecutor again asked an open-ended question to the witness at which point the witness indicated that the defendant had gotten out of jail on a certain date. Counsel immediately objected, approached side bar and requested a mistrial.

8.    Although the State's actions in eliciting the above indicated testimony cannot be proven to be intentional, the open-ended question propounded to the witness after a warning from defense counsel and the refusal to lead the witness certainly was reckless with regard to the possibility that the complained of information would be made known to the jury.

9.    As a result of the above circumstances, the jury became aware of the fact that the defendant had been incarcerated and therefore inferentially became aware of the fact that the defendant was involved in other criminal activity. This is so since the period of incarceration referred to by the witness preceded the charges that were brought in this case.

10.    Testimony regarding the existence of a prior criminal record or prior criminal activity on the part of the defendant is perhaps the single most prejudicial type of information that can be brought to the attention of the jury. As was noted in *Brookens v. State*, 354 A.2d 422 (Del. 1976),

"While our trial procedure is based on... it is essential

A·49.

> that jurors be insulated as much as possible from the
> irrelevant, particularly as to matters so prejudicial as
> a prior criminal record."

11.      In *Michelson v. United States*, 335 U.S. 469 (1948), the United States

Supreme Court put the matter best in phraseology that is as relevant today as it was

when the case was decided:

> "Our system of justice is single and it functions the
> same for both a first and a many time defendant in a
> criminal prosecution.  To help make that ideal reality
> in a courtroom the law generally circumscribes the
> conditions under which a jury may be informed of a
> defendant's prior criminal record."

12.      The principle on which the defendant relies has been oft repeated both

in decisions from this jurisdiction and others:

> "The state may not show the defendant's prior trouble
> with the law, specific criminal acts or ill name among
> his friends, even though such facts might be
> persuasive that he is by propensity a probable
> perpetrator of the crime.... The inquiry is not rejected
> because character is irrelevant; on the contrary it is
> said to weigh too much with the jury and to so over
> persuade them as to prejudge a defendant with a bad
> general record and deny him a fair opportunity to
> defend against a particular charge." *Cf. Snowden v.
> State*, 677 A.2d 33 (Del. 1996).

As was noted, keeping from the jury the fact that a defendant has a

prior criminal record prevents confusion of issues, surprise and undue prejudice.

See, Delaware Rule of Evidence 403; see also, Delaware Rule of Evidence 404.

13.      The impact of a jury's learning that the defendant has had prior

problems with the law is exacerbated in situations where the defendant does not

testify.   See, *Mosly v. State*, Miss. App., 749 So.2d 1090 (1999); *State v. Moss*,

N.C., 532 S.E.2d 588 (2000).

14.     The defense of a murder first degree case is difficult enough without the jury being exposed to extremely damaging and prejudicial information to the effect that the defendant has a prior criminal record. As noted above, this is perhaps the single most prejudicial piece of information that can come to the jury's attention during the course of a criminal trial.

15.     The reference by the witness to the defendant's prior criminal involvement could have easily been avoided since the testimony was being offered on a non-contested point and counsel had indicated to the prosecution that there would be no objection to leading questions of the witness to avoid exactly what happened.

16.     Although the defendant's objection was immediately sustained, the jury nevertheless heard the reference to the fact that the defendant had prior involvement with the law causing him to be incarcerated. Although the Court did instruct the jury immediately that they were to disregard the remark made by the witness, it is respectfully submitted that such an instruction was insufficient to cure the prejudice that had already occurred. Indeed, this case was close and the jury deliberated over a period of three days before reaching a verdict. It cannot be said with any confidence that the fact that the defendant obviously had prior criminal involvement did not have some influence on the jury's deliberations and in the ultimate determination that was reached. Indeed, the jury might well have believed that the defendant was a "bad man" who had previously been incarcerated and who was more likely to have committed this offense.

17.     The manner in which the information became known to the jury is also problematic in terms of how it affected the defendant's right to the effective

assistance of counsel. It will be recalled that counsel had requested a mistrial based upon the non-responsive answer of the witness Predeoux to the effect that counsel had previously represented him in an unrelated criminal matter. As was argued at the time, it is submitted that defense counsel might well have lost credibility with the jury since counsel was on the one hand attacking Mr. Predeoux as being an individual unworthy of belief while having previously represented him. Counsel had argued that the defendant's right to effective assistance of counsel was compromised by the unresponsive comment and that the confidence of the credibility of counsel's presentation might well have been compromised.

18. When the fact became known that the defendant had prior criminal involvement, coupled with the defendant's not testifying, the jury might well have concluded that counsel was also trying to hide this fact from them, further eroding counsel's credibility.

19. To be successful at trial it is crucial that defense counsel retain his credibility with the jury so that they can have confidence in his words and his presentation. Effective advocacy is lost where that bond is broken. It is respectfully submitted that the combination of all of the above factors compromised the defendant's right to elect not to testify, to a fair trial and to the effective assistance of counsel.

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE   19801
Attorney for Defendant

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | ) ID #9808000280 |
| | ) |
| DAMONE FLOWERS, | ) |
| | ) |
| Defendant. | ) |

## ORDER

AND NOW, TO WIT, this      day of            , 2002, the foregoing

Motion for New Trial having been heard and considered, it is hereby

ORDERED_____

_____

_____

_____

_____
                                J.

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

TO:    James Rambo, Esq.
       Cynthia Kelsey, Esq.
       Deputies Attorney General
       820 N. French Street
       Wilmington, DE 19801

PLEASE TAKE NOTICE that the within Motion for New Trial will be

presented to this the Honorable Haile L. Alford for her consideration.

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE 19801
Attorney for Defendant

DATED:    December 18, 2002

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| STATE OF DELAWARE | ) | |
|---|---|---|
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR NEW TRIAL

COMES NOW the defendant, through his attorney Eugene J. Maurer, Jr., and moves pursuant to Superior Court Criminal Rule 33 for a new trial in the above. The bases of this Motion are as follows:

1.    The defendant was convicted by a jury on October 30, 2002, on charges of murder in the first degree and possession of a firearm during the commission of a felony. Sentencing is scheduled for December 20, 2002.

2.    During the course of the trial, the State called as a witness one Othello Predoux. Although Predoux testified adversely to the State's position at trial, he nevertheless had previously provided to the State a taped statement which was admitted into evidence under 11 Del.C. § 3507. This taped statement was highly incriminating of the defendant in that it provided eyewitness testimony to the effect that the defendant was the one who fired the fatal shots. The State relied heavily on the testimony of Predoux in its closing argument to the jury not only for its own intrinsic worth but also as it tended to corroborate the testimony provided by other witnesses in the case.

3.     Although Predoux was uncooperative at trial, the State of course was aware of the fact that in order to get the witness' prior statement into evidence, it was only necessary that he take the stand, testify about the incident in question and indicate an absence of present recollection in order to get the highly damaging testimony in front of the jury. See, *Johnson v. State*, Del.Supr., 338 A.2d 124 (1975); *Feleke v. State*, Del.Supr., 620 A.2d 222 (1993).

4.     At the time that Predoux testified, he did have pending against him charges of possession with intent to deliver cocaine. The State had previously entered into a plea agreement with the witness as a result of which he was given a probationary sentence on a weapons offense. However, the cocaine charges were still pending trial at the time that the Flowers' matter went forward.

5.     Defense counsel attempted to demonstrate to the jury during the course of the trial that Predoux faced the potential, if convicted of the drug offense, of receiving a minimum mandatory jail term of five years. The State on the other hand depicted Predoux as a cooperative witness with whom no deal was made or had been contemplated in exchange for the testimony provided by the witness. Indeed, the jury was left with the impression that Predoux was going to receive a five-year minimum mandatory jail term inasmuch as "no deals" had been made with the witness as of the time of the trial. In that respect, Predoux' testimony and in particular his prior taped statement became more credible.

6.     Contrary to the impression that was left with the jury during the trial, Predoux entered into a plea agreement with the State on November 18, 2002. At that time, Mr. Predoux entered a guilty plea to the lesser included offense of possession

of cocaine and the State dropped the charges of maintaining a dwelling and possession of drug paraphernalia. Therefore, the defendant avoided the five-year minimum mandatory jail term which would have been required had he gone to trial and been convicted on the charge of possession with intent to deliver.

7.      Further, as part of the plea agreement, the State recommended that the defendant be imprisoned for a period of three years which period of imprisonment would be suspended after serving ninety days with the balance at Level III probation. Inasmuch as the defendant had already served ninety days recommended by the State, in reality, the plea was a probation plea. The defendant was ultimately sentenced accordingly by Judge Silverman. The prosecutor who negotiated this plea agreement with Mr. Predoux was none other than Ms. Kelsey, the lead prosecutor in the Flowers' trial. Mr. Predoux was therefore amply rewarded for his efforts in assisting the State in the Flowers' prosecution.

8.      The existence of the plea agreement or "deal" reached with Predoux is newly discovered evidence that the jury was unable to learn about during the course of the trial. This information was critical in evaluating Predoux' version of events and in evaluating the credibility of the prosecution. Had the jury been possessed of this information during the course of the trial, the result in the trial may well have been different. The Court will recall that his was an extremely close case and the jury deliberated in excess of ten hours over a course of three days. For these reasons alone, the Court should order a new trial so as to allow a second jury to understand the full amount of the benefit that was provided to Mr. Predoux for assisting the State in the prosecution. See, *State v. Hamilton*, Del.Super., 406 A.2d 879 (1974); *Smith v. State*, Del.Supr., 248 A.2d 146 (1968).

9.     Further, the prosecutor utilized a tactic in this case which has become increasingly popular over the last couple of years and which presents a distorted and unfair picture to a jury regarding the credibility of State's witnesses. In essence the State will not enter into a formal plea arrangement with its cooperating witnesses prior to their testifying at trial. The prosecutor will have discussed the potential benefits of testifying with the witness' attorney so that both sides have an "off the record" understanding that the witness will profit from testifying on behalf of the State. At the same time, the witness is able to testify that he does not have a formal agreement with the State as to specifically what he will receive in exchange for his testimony, thereby bolstering the witness' credibility in the eyes of the jury.

10.    The jury of course does not have an elaborate understanding as to how the criminal justice system operates in practice. The effect of this technique is to allow there to be presented to the jury at best misleading and at worse untrue representations that the witness will not derive any benefit from his testimony as to the resolution of his pending charges.

11.    The utilization of this tactic worked to perfection in this case. The jury was left with the impression that Predoux would not necessarily receive any benefit for testifying on behalf of the State when everyone associated with the process knew that he would. This was a false impression which could well have affected the jury's deliberations. Of course, Predoux' unwritten compact with the State reached fruition when Ms. Kelsey negotiated a "special circumstances" plea to a lesser included offense on the day of his trial allowing for Mr. Predoux' immediate release.

12.    To the extent that the prosecution had in mind that it would resolve

A-57.

Mr. Predoux' case in a fashion that provided him a benefit, that information should have been provided to the defense since it constituted exculpatory evidence vital to a proper cross-examination of a critical State's witness. See, *Brady v. Maryland*, 373 U.S. 83 (1963). Further, to the extent that this prosecutorial practice presents misleading half truths to the jury, the practice should be condemned as violative of the defendant's right to due process of law and to a fair trial. The prosecution should not be able to have it both ways in cases where benefits are going to be extended to State's witnesses who have pending charges against them. The prosecution should not be permitted on the one hand to allow the jury to infer that the witness may not receive a benefit while on the other hand knowing full well that such a benefit is going to be extended at the appropriate time which will of course be after the defendant's trial has concluded.

13. For all of the above reasons, the defendant respectfully requests that the verdict in this case be vacated and that a new trial be ordered.

EUGENE J. MALMER, JR.
1201-A King Street
Wilmington, DE  19801
Attorney for Defendant

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW, TO WIT, this     day of     , 2002, the foregoing

Motion for New Trial having been heard and considered, it is hereby

ORDERED_____

_____

_____

_____

_____
J.

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

January 21, 2003

Damone Flowers
Gander Hill Prison
P.O. Box 9561
Wilmington, DE   19809

Dear Damone:

Judge Alford has scheduled a hearing on our motion for a new trial for Friday,
January 31, 2003, at 3:30 p.m.   You will be brought over to the courthouse in order
to participate in the hearing on that date.

Should you have any questions at this time, please feel free to contact me.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br

A-59.

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

January 31, 2003

The Honorable Haile Alford
Associate Judge
Superior Court
New Castle County Court House
500 King Street
Wilmington, DE   19801

RE:    **State of Delaware v. Damone Flowers**
       **ID #9808000280**

Dear Judge Alford:

I have now had an opportunity to interview in detail both Mr. Terranova and Mr. Cross who were the former attorneys for Mr. Predoux.    Based upon the information that was provided to me by them, it would now appear that my second motion for a new trial in this matter was improvidently filed.

I am therefore withdrawing the Motion at this time inasmuch as I am unable to support the factual allegations initially alleged.

I apologize to the Court for any inconvenience that was caused in the filing of this Motion. Given the seriousness of the charges against Mr. Flowers and his conviction, I felt it necessary to pursue this but now acknowledge that there is not a factual basis on which to go forward.

Respectfully yours,

Eugene J. Maurer, Jr.

EJM:br

xc.    James Rambo, Esq.
       Cynthia Kelsey, Esq.
       Damone Flowers

A-60.

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

February 12, 2003

Damone Flowers
Gander Hill Prison
P.O. Box 9561
Wilmington, DE   19809

Dear Mr. Flowers:

I am enclosing herein a copy of Judge Alford's Opinion dated February 5, 2003, denying our motion for a new trial. Although I am obviously disappointed at the court's decision, I can't say that I am entirely surprised. The court indicates in its decision that you will be sentenced on March 21, 2003. However, that date will probably be moved back due to the fact that I will not be available at that time.

⭢ ⌐As to the other motion for new trial and the canceled hearing, I wanted to provide you with an explanation. I had filed a second motion for new trial alleging as you are aware impropriety regarding the manner in which Mr. Predoux was presented to the jury. In order to prevail on that motion, I would have needed to show actions on the part of the prosecutor's office calculated to mislead the jury insofar as Mr. Predoux' potential plea bargain was concerned. In order to establish that, I would have to rely on statements from Predoux' counsel. Prior to the hearing, I did interview Tim Terranova, Esq.. who had represented Mr. Predoux at the time that he initially made his statement to the police and Richard Cross, Esq., who was appointed to represent Predoux at a later time. Unfortunately, neither of these attorneys provided me with information which would support the allegations that I was making in support of the motion for new trial. Lacking any evidence to back up the motion that I had filed, I had no alternative but to withdraw it.⌐ ⭢

Obviously, once you are sentenced, we will have the right to appeal to the Supreme Court and an appeal must be filed within thirty days. Given the financial situation which exists, I will not have any alternative but to ask the court to allow me to withdraw as your attorney and appoint either the public defender's office or conflict counsel to represent you in connection with the appeal. I will of course be present with you at the time of the sentencing.

A-61.

Damone Flowers                    - 2 -                    February 12, 2003

Should you have any questions upon receipt of this letter or upon a review of the court's decision, please feel free to contact me.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br
Enc.

. A·62.

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID # 9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: December 12, 2002
Date Decided: February 5, 2003

## ORDER

## UPON DEFENDANT'S MOTION FOR NEW TRIAL

## DENIED

Cynthia Kelsey, Esq. and James A. Rambo, Esq., Wilmington, Delaware, Attorneys for the State of Delaware.

Eugene J. Maurer, Jr., Esq., Wilmington, Delaware, Attorney for Defendant.

**ALFORD, J.**

A-63.

*State v. Flowers*
I.D. # 9808000280
February 5, 2003
Page 2

On this 5th day of February 2003, upon consideration of the Defendant's Motion

for New Trial, and the record in this case, it appears to the Court that:

(1)   Defendant had a jury trial beginning October 22, 2002, on charges of First

Degree Murder, and Possession of a Firearm During the Commission of a Felony. On

October 30, 2002, the jury rendered verdicts of guilty on both charges. Sentencing is

scheduled for March 21, 2003.

(2)   During the course of the trial, the State called the Defendant's sister,

Adrienne Dawson, as a witness for the purpose of establishing that (i) Defendant had

lived with her and had fled subsequent to the killing of Alfred C. Smiley; and that (ii)

Defendant never returned to his sister's house after the incident. During the State's

direct examination of Ms. Dawson, she provided an unresponsive answer to the State's

question about when the Defendant lived with her. Defendant, in his Motion for New

Trial states that defense counsel anticipated, "... that the witness was going to calculate

how much time the Defendant had lived at her home by stating to the jury the date on

which Defendant got out of jail." Thus, defense counsel immediately objected and the

witness did not respond. Counsel then spoke with the prosecutor and advised him of the

anticipated problem regarding Defendant's previous time in prison and indicated that he

would have no objection to the prosecutor leading the witness in order to avoid the

introduction of this prejudicial testimony. The prosecutor then asked the witness how

A-64.

*State v. Flowers*
I.D. # 9808000280
February 5, 2003
Page 3

long the Defendant had lived with the witness. At which point, Ms. Dawson stated that

the Defendant had been living with her since he had gotten out of jail. Defendant moved

for a mistrial which was denied.

(3)    The Court dismissed the jury. Prior to any further proceedings, gave a

curative instruction stating that the jury was to disregard any reference to Defendant

having been in prison and/or jail and that Ms. Dawson's response was stricken from the

record. Further, the jury was instructed not to utilize it in any way whatsoever during the

course of its deliberations. Defendant concedes that the State's action cannot be proven

intentional. However, Defendant contends that the witness' response was recklessly

obtained because the State asked an open-ended question.

(4)    Defendant argues that the defense strategy from the beginning of the trial

was that Defendant not testify, in order to prevent his previous convictions for robbery in

the second degree and trafficking cocaine from being revealed to the jury. As a result of

Ms. Dawson's unresponsive answer, the jury became aware of the fact that Defendant

had previously been in jail.

(5)    Testimony regarding the existence of a prior criminal record or prior

criminal activity on the part of the Defendant is clearly prejudicial.[1]  Defendant argues

that this is perhaps the single most prejudicial piece of information that can come to the

_____

[1]*Brookens v. State*, 354 A.2d 422 (Del. 1976).

A-65.

*State v. Flowers*
I.D. # 9808000280
February 5, 2003
Page 5

unresponsive answer the Court gave a curative instruction to the jury and the request for a
mistrial was denied *ACTUALLY THE COURT DID NOT GIVE A CURATIVE INSTRUCTION TO JURY* *

(7)    Although the Defendant asserts that the reference to the Defendant being in
prison requires a mistrial, the State argues that the case law indicates otherwise. The
State maintains that a vague reference to the Defendant's incarceration does not require a
mistrial.

In *State v. Outten*,[3] a capitol murder case, the State asked a witness, again in terms
of time, how long had she known the Defendant. The witness responded that she had
known him since he got out of prison the last time. In *Outten*[4] the Court found that the
State did not intend the elicited response, as it was unresponsive to the question. In *State
v. Outten*,[5] the prosecutor was unaware that the witness might answer in this manner.

The Court finds that in the instant case, the State knew of the possibility that Ms.
Dawson might disclose the Defendant's past prison record. However, the State did not
intend to illicit the response given and took measures to avoid it by asking Ms. Dawson to

---

[3]1997 WL 855718, at *36 (Del. Super.).

[4]*Id.*

[5]*Id.*

*State v. Flowers*
I.D. # 9808000280
February 5, 2003
Page 6

respond in terms of time.[6]  Ms. Dawson's answer was unresponsive to the prosecutor's question.

Additionally, in *State v. Outten*,[7] the Court found that because the witness did not state why the Defendant was in prison, this lack of specifics lessened the impact of the testimony.  Thus, the Court found that the Defendant had not shown prejudice.[8]  Similarly, in the instant case, the Defendant's sister did not reveal why the Defendant was in prison or for how long.  She merely made a brief comment that the Defendant had lived with her since he had gotten out of jail.

The Court considered that a prompt cautionary instruction to the jury cured any prejudice to the Defendant in *State v. Outten*.[9]  Similarly, in the instant case, the jury was immediately dismissed and a curative instruction was given prior to any further proceedings.

(8)    The State also relies on *Brookins v. State*,[10] to illustrate that references by a state prosecutor and witnesses to "mug shot" photographs of a Defendant at trial did not

---

[6]In its response, the State incorrectly quoted Mr. Rambo as stating, "just give me a number."  However, the State failed to cite page and line numbers. It appears to the Court that this is not a quote, and should not have been cited as such.

[7]1997 WL 855718, at *36 (Del. Super.).

[8]*Id.*

[9]*Id.*

[10]  354 A.2d 422, 424 (Del. Supr. 1976).

A-68.

*State v. Flowers*
I.D. # 9808000280
February 5, 2003
Page 7

amount to reversible error, particularly given strong and positive in court identification of the Defendant by two eyewitnesses. Given this identification, any error was deemed "harmless beyond a reasonable doubt."[11] The State points out that in *State v. Flowers,*[12] there were five witnesses who put the Defendant at the scene of the killing either with a gun or identified him as the shooter. The State maintains that because the reference to Defendant's previous prison time was vague and unsolicited, and a curative instruction was given, the error was harmless beyond a reasonable doubt.

*Only one with Chambis ID at Flowers at trial.*

(9)     Finally, the State contends that the reference by Mr. Predeoux to his prior representation by the Defendant's attorney was waived by the Defendant's vigorous opposition to the State's efforts to have the Defendant's attorney removed because of the potential conflict of interest. The prosecution relies on *State v. Halko,*[13] for the proposition that the Defendant cannot now claim that the jury's learning of this information prejudiced his interest.

(10)     On motion for new trial the Court must apply the *Hughes* three-part analysis by considering the following factors: 1) the centrality of the issue affected by the alleged error; 2) the closeness of the case; and 3) the steps taken to mitigate the effects of

[11] *Id.* at 425.

[12] *State v. Flowers*, ID No. 9808000280, Alford, J. (October 30, 2002).

[13] 193 A.2d 817, 830 (Del. Super. 1963).

the alleged error.[14] The Court must make an independent determination of whether reversible error was committed.[15] The Delaware Supreme Court has held that a mistrial is only justified when the event is so prejudicial that the Defendant did not receive a fair trial.[16] Additionally, this Court has held that even where error is committed, ordinarily it will be cured by the trial judge's striking of the offending testimony and admonition to the jury to disregard it.[17]

(11) In the instant case, applying the Hughes three-part test, it appears that although the Defendant requests a new trial alleging that two errors occurred during the trial that so greatly prejudiced his defense that he did not receive a fair trial, these alleged errors were cured by prompt cautionary instruction from the Court. Additionally, the State presented five eyewitnesses placing the Defendant at the scene of the murder with a weapon or identified the Defendant as the shooter. Although some witnesses were less forthcoming on the stand, it was for the jury to weigh the evidence and make its decision. At least one witness, who knew the Defendant, clearly identified him as the shooter,

---

[14] *Weddington v. State*, 545 A.2d 607, 612 (Del. Supr. 1988)(citing *Hughes v. State*, 437 A.2d 559, 571 (Del. Supr. 1981).

[15] *Id.* at 612.

[16] *Id.* citing *Edwards v. State*, 320 A.2d 701, 703 (Del. 1974).

[17] *Edwards v. State*, 320 A.2d 701, 702 (Del. 1974)(citing *Donlon v. State*, 293 A.2d 575 (Del. Supr. 1972)); *Crawford v. State*, 245 A.2d 791 (Del Supr. 1968); and *Miller v. State*, 137 A.2d 388 (Del. Supr. 1958).

*State v. Flowers*
I.D. # 9808000280
February 5, 2003
Page 9

during a video taped police interrogation performed shortly after the incident.    Thus, a

new trial is not warranted. It is clear that the jury weighed the evidence before them and

made a decision. Additionally, no prosecutorial misconduct occurred. The Court finds

no prejudicial error denying the Defendant a fair trial.

For the aforementioned reasons, the Defendant's Motion for New Trial is

**DENIED.**

**IT IS SO ORDERED.**

ALFORD, J.

ORIGINAL: PROTHONOTARY'S OFFICE - CRIMINAL DIV.

A-71.

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900
FAX (302) 652-2173

February 8, 2002

Mr. Fred Tate
Tate Investigative Service
P.O. Box 9142
Wilmington, DE   19809

RE:     **State of Delaware v. Damone Flowers**

Dear Fred:

It appears that our meeting was fortuitous and I may be in need of your services if you are willing to provide them. I represent an individual by the name of Damone Flowers who is alleged to have shot and killed a victim by the name of Alfred Smiley on August 1, 1998, at approximately 1:30 a.m. The shooting occurred in the area of 22nd & Lamotte Streets. My client is alleged to have fired multiple shots into a motor vehicle occupied by Smiley and two other individuals causing his death.

There were numerous witnesses to the shooting but this being a typical Wilmington case, not all of them cooperated. A surprising number did however. The names and most recent addresses that I have of the witnesses are as follows:

1.      Vernon Mays
        123 Concord Avenue
        Wilmington, DE   19802

2.      Michael Chamblee
        33 E. 22nd Street
        Wilmington, DE   19802

3.      Charmaine Mayo
        1113 Cedar Tree Court
        Claymont, DE   19809

4.      Lois Ronneta Sudler McNeal
        Woman's Correctional Institute
        660 Baylor Road
        New Castle, DE   19720

Mr. Fred Tate                    - 2 -                    February 8, 2002

    5.    Tyshiek McDougal
          2235 N. Pine Street
          Wilmington, DE   19802

    6.    Marvin Swanson
          1411 E. 27th Street
          Wilmington, DE   19802

        I am enclosing herein summaries of statements that were provided by five of
these individuals to Det. Brock of the Wilmington Police Department who is the
chief investigating officer.  The sixth witness who is Marvin Swanson originally
indicated that he could not identify the shooter but I believe subsequently stated that
there was a second shooter on the scene. This information has not been corroborated
by any other witness.  I have also been provided with the identity of one or possibly
two witnesses who provide exculpatory information and I may want you to interview
them at a later time. They are presently incarcerated I believe.

        As so often happens in this situation, some or all of the witnesses know
Flowers and have since expressed a willingness to recant information previously
provided to the police.    For that reason, I did want to have these witnesses
interviewed by someone other than myself to see whether or not they are willing to
recant and if so, what they are saying at this time.  Additionally, I would want to go
into the reasons why they initially provided the police with information against the
defendant and are now changing their stories. I believe that these witnesses may not
be friendly in the first instance and someone for Mr. Flowers has indicated a
willingness to act as a "go between" in setting up the interviews. If you are willing
to assist me on this project, we can discuss that further.

        Would you please get in touch with me and let me know whether you are
willing to be of assistance. If so, I will need to know what your retainer requirement
is and how you will go about billing.

        I look forward to hearing from you on this.  It was good to see you again after
all of these years.

                                    Sincerely yours,

                                    Eugene J. Maurer, Jr.

EJM:br
Enc.
xc.    Damone Flowers

                              A-73.

## *MEMORANDUM*

TO:        **Damone Flowers File**

FROM:    **Gene**

DATE:     **February 8, 2002**

RE:        **Summary of Witness Interviews**

Vernon Mays - Witness indicated that on August 1st at approximately 1:30 a.m. he was walking in the unit block of E. 22nd St. and noticed a large group standing in the street between parked cars. After talking to two individuals seated on 31 E. 22nd St. he heard a male voice saying "I am not afraid of them. Give me the gun, I'll put a cap in his ass". He then observed the suspect fire 6 or 7 shots into a vehicle and the suspect then ran into an alley between 39 E. 22nd St. with the gun. Suspect then returned to the sidewalk and fled the area east on 22nd St. out of sight. Mays advised he had a clear and unobstructed view of the witness who was identified as an individual that he knew by the name of Mookie or Moon. He described the individual as being a black male, 20 to 25 years of age, 6' tall with a medium built and a medium complection wearing a blue tee shirt and white shorts. Witness identified defendant's photograph upon reviewing a Wilmington Police suspect photograph catalog for a black males born between 1974 and 1978.

Michael Chandlee - Witness indicated that he was standing on his front steps when he observed a large group standing on the corner of 22nd & Lamotte Sts. Some people were driving a Honda Accord. He looked toward Carter St. and observed a male subject wearing a black beanie type hat, yellow tinted glasses, no shirt and black pants and shooting a gun at the people inside the car. He advised that

A-74.

the suspect then ducked into the alleyway between 39 E. 22" St. Witness later identified Damone Flowers from a photographic lineup.

Charmaine Mayo - Witness was in the vicinity and observed a suspect walk up to the driver of the car and shake hands. After that she heard someone saying "get him or hit him". She observed Damone Flowers standing on the north sidewalk opposite the victim's vehicle and observed him fire several gun shots from an unknown type of handgun in the direction of the victim's car. Damone Flowers left the area in an unknown direction.

Tyshiek McDougal - Witness indicates that she was helping Damone Flowers sell $10 bags of crack on the date of the incident and approximately I a.m. At 1: 15 she observed Sean McNeal run up to Damone and tell him that Bootsie and Ronneta had been involved in a fight. Damone ran inside of 33 E. 23rd St. He retrieved what she believed to be a .9 millimeter handgun. She stated that Damone had removed his burgundy shirt and had it wrapped around his hand. She stated that Damone said "Somebody is going to get shot tonight". He then ran down to the corner of E. 22nd & Lamotte along with Sean McNeal. After 3 minutes she heard several gun shots. Minutes later two individuals returned to the front porch of 33 E. 23rd St. sweating and looking for Damone. She said that Damone later called the apt. and had a conversation with her aunt. Has not seen Damone since that time.

Ronneta. Sudler - Provides background as to fight that had occurred earlier at the Oasis Night Club. She then responded to the E. 22nd St. area. She saw the victim park his vehicle at the comer. "Pookie" walked over to the car and shook hands with the driver and someone from within the car said get out of the way,

Somewhere from the crowd said "Hit him" and she observed "TeeTee" reach into the car and punch the victim in the face. The victim races the engine and tries to back up. She observed Damone standing on the sidewalk near a van and a parked car on the north side of the block. She observes Damone fire several shots.

EUGENE J. MAURER, JR., P.A.
ATTORNEYS AT LAW
1201-A KING STREET
WILMINGTON, DELAWARE 19801

(302) 652-7900
FAX (302) 652-2173

February 8, 2002

Damone Flowers
Gander Hill Prison
P.O. Box 9561
Wilmington, DE   19809

Dear Damone:

Although I have several things I wanted to talk to you about and I will be doing that in the not-too-distant future, I noted in reviewing your file that you had requested the return of your preliminary hearing transcript. I am enclosing that transcript at this time.

I hope to be speaking with you in the not-too-distant future. I am in the process of having an investigator speak with some of the witnesses and will keep you posted as to developments in that regard.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br
Enc.

EUGENE J. MAURER, JR., P. A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-7173

April 29, 2002

Raphael Williams. Warden
Gander Hill Prison
P.O. Box 9561
Wilmington, DE   19809

RE:     **State of Delaware v. Damone Flowers**

Dear Mr. Williams

Mr. Tate, the holder of this letter, is an investigator hired by me in connection with the defense of the above case. I am attaching a Court Order signed by Judge Alford allowing Mr. Tate to enter the prison for the purposes of interviewing two witnesses in the case. I would appreciate whatever consideration could be given to him.

Thank you for your assistance on this. Please call should you have any questions.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br

A-78.

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-7173

April 29, 2002

The Honorable Haile L. Alford
Associate Judge
Superior Court
Public Building
Wilmington, DE 19801

RE:   **State of Delaware v. Damone Flowers**
      **ID #9808000280**

Dear Judge Alford:

Enclosed herein please find an Order which I prepared in connection with the
above case. Your Honor had indicated that you would sign this upon presentation
so that counsel's investigator can interview witnesses in the prison.

Thank you for your consideration. I would appreciate it if you could advise
me when the Order has been signed so that I might pick up a certified copy for Mr.
Tate to take to the prison with him.

Respectfully yours,

Eugene J. Maurer, Jr.

EJM:br
Enc.

xc.   James Rambo, Esq.
      Cynthia Kelsey, Esq.

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

AND NOW, TO WIT, this    day of            , 2002, it appearing that

it is necessary for the defense in this case to interview certain witnesses who are

incarcerated, it is hereby

ORDERED as follows:

1.    Fred Tate, investigator for Eugene J. Maurer, Jr., attorney for the

defendant may enter the Gander Hill Prison and interview the below witnesses:

(a)    Benny Wright;

(b)    Bruce Duncan.

_____
J.

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

April 15, 2002

Damone Flowers
Gander Hill Prison
P.O. Box 9561
Wilmington, DE   19809

Dear Damone:

I am enclosing herein copies of Motions which I have filed this week with the
court which are self-explanatory. I will keep you posted as to developments with
regard to those Motions.

Additionally, I have secured the services of an investigator who I hired a
couple of weeks ago and I am assuming that he is following up on the instructions
which I have provided to him. I will keep you posted as to developments there also.

I have not been meeting with you regularly since you do not seem to require
it and also since it would not appear to me to be likely that you would be testifying
at trial. I do however think it would be good idea for me to get together with you to
discuss where things stand at this time and whether there are any additional
investigative steps you wish me to undertake in advance of the trial date.

With regard to the financial end of things, I have received no payments for
quite some time.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br
Encs.

A-81.

Page #7
Case #98-17807
Detective Andrew Brock I/6369

WITNESS INTERVIEW CONTINUATION:
   Witness #3 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
              ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
              No Telephone

     On August 2, 1998 this investigator interviewed the above
witness ▓▓▓▓▓▓▓▓▓▓▓▓▓ at the Wilmington Police Detective
Interview Room #1. The witness advised that at approximately 0030
hours on August 1, 1998 he and several of his friends from the 22nd
and Lamotte Street area attended a party at the Oais Night Club
located at 1600 N. Claymont Street. He stated that while at the
party a fight between some boys started for unknown reasons. The
police entered the night club and ordered everyone to get out and
they shut the party down. He advised that while he was outside
attempting to get into his vehicle someone backed their car into
the passenger side door of his car. He advised that some words were
exchanged between the driver and some of the girls from E. 22nd
Street. The girls from 22nd Street and the driver of the car began
fighting and the police quickly separated them and them on their
way.
     ▓▓▓▓▓▓▓stated that they eventually returned to E. 22nd Street
at approximately 0115 hours. He advised that everybody had been
drinking alcohol and upset about the police shutting the down the
party early. He then observed a Honda Accord drive up to the corner
but, it could not get pass because there was a crowd of people
standing in the middle of the Street.
     He then heard someone from the car yell out his name. Upon
looking into the car he recognized the driver to be a person known
to him as "Smiley". He stated that he walked over to the car and
shook Smiley's hand and said "What's up?". He also recognized the
two passengers in the car from High School but, he could not
remember their names at the time. As he started to turn and walk
away from the car he heard someone say "Get him". Then he observed
either someone throw something into the car or someone threw a
punch at the driver. At this point, he heard the driver race the
engine of the car as if he were going speed backwards down the
street. He then heard several gun shots being fired, so he ducked
behind some nearby parked cars for cover. He advised that he did
not see the person shooting.
     He then observed the victim's vehicle drive west on E. 22nd
Street out of sight. At this point, he was not sure if the people
in the car had been shot. He then got into his vehicle and fled
from the scene accompanied by his cousin ▓▓▓▓▓▓▓▓▓▓▓▓ who is
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

A-82.

Page #15
Case #98-17807
Detective Andrew Brock I/6369

INVESTIGATIVE PROCEDURES CONTINUATION:

At 1715 hours this officer spoke with          BMNH-21, DOB: 7/6/77, address of       , (H)       Harris stated that he was home at the time of the incident. Harris was very uncooperative and refused to give complete and truthful answers as to his exact location during the incident.

('SHAWN'.

At 1730 hours this officer spoke with Clyde McNeill BMNH-20, DOB: 11/4/77, address of 808 Vandever Ave., (H)302-655-5737. McNeill advised that he was not at the scene at the time of the shooting. McNeill advised that he is currently on probation and as a 10 o'clock curfew check every night.

At 2130 hours this officer conducted a follow-up interview with both James Howell and Hollowed Davis. During the interview no further investigative leads could be developed at this time. There were no significant changes in either victim's statement.

On August 2, 1998 at 0715 hours, Detectives Wyatt and Simmons responded to 1411 E. 27th Street and located Marvin Swanson. Swanson agreed to come down to the Police Station to answer several more question about the shooting incident. Swanson was transported to central where after being interviewed he advised that he spoke with subject by the name of (Vernon Mays). He advised that      informed him that he witnessed the shooting and he may possibly know who did the shooting. Swanson was unable to give any further details about what Vernon seen but, he was able to direct the Detectives to 123 Concord Ave. Wilmington, DE, which is the home address of Vernon Mays. Swanson was then transported back to central where he was later taken to his residence.

At 0930 hours, Detectives Wyatt and Simmons responded to     Concord Ave. And spoke with a      . She advised that      was not at home but, he could be located at his job        . Wyatt and Simmons then respond to Philadelphia Pike and picked up      Mays advised that officers that he was glad to see them and he had witnessed the entire shooting at 22nd Lamotte Street.    agreed to come into the police station and give a statement.

At 1439 hours this officer along with Detective Ray Wyatt conducted an interview of      at the Wilmington Police Detective Interview Room #1. Mays advised that he witnessed to the shooting incident at 22nd and Lamotte Street. He advised that he is familiar with the person responsible for the shooting and he was positive that he could identify him from a photograph.    later reviewed a Wilmington Police suspect photograph catalog. The photographs were of black males born in the year of 1974 to 1978. After approximately 15 minutes,    positively identified the picture of Damone Flowers (WPD #63416) as being the perpetrator.

Page #17
Case #98-17807
Detective Andrew Brock I/6369

INVESTIGATIVE PROCEDURES CONTINUATION:

Apartment complex employee and showed them a picture of Damone
Flowers. The person advised that at approximately 0830 hours they
observed a subject matching the general build and likeness of
Flowers leaving the Apartment Complex in a small blue Mazda MX-6
with tinted windows. They also stated that the vehicle has white
Delaware temporary tags and was being operated by his sister
(██████████████). This officer immediately suspected that Adrienne
Dawson may have had contact with Damone Flowers, and responded to
her work place which is the Beneficial Bank located at the Super
Thriftway on Route 202. Upon making contact with Adrienne it was
later determined that the person in the vehicle was her husband
(████████████) She was transported into Central and interviewed by
Damone Flowers' Probation Officer (██████████████). No further
leads on Flowers whereabouts were developed at this time.

At 1530 hours this officer along with Detective David Simmons
conducted an interview with (██████████████) BNNH-16, at the
Wilmington Police Detective Division Interview Room #1. Chamblee
advised that he witnessed the shooting incident that occurred at
22nd and Lamotte Street. He gave this officer a description of the
suspect and advised that he could possibly identify a picture of
the suspect. (██████) reviewed a six picture Photographic Line-up
and he positively identified Damone Flowers photograph as being the
perpetrator in this crime. For additional details of interview see
witness section of this report along with the transcripts.

On August 4, 1998 this officer responded to (██████████████).
Baltimore, MD, and interviewed (██████████) BMNH-11. During the
interview he advised that he witnessed the shooting incident that
occurred on August 1, 1998 in the area of 22nd and Lamotte Street.
Earl advised that he observed the subject shooting the gun, but he
was sure if he could remember what the person looked like. He then
reviewed a six picture WPD Photographic Line-up and he was unable
to identify the suspect. For additional details refer to the
Witness Interview section of this report along with audio
transcripts.

On August 4, 1998 at 2000 hours this officer along with
Detective Anthony Harris spoke with Catherine Collins BFNH-37,
address of 33 E. 23rd Street at the Wilmington Police Detective
Interview Room #1. She advised that when she learned about the
shooting that occurred at 22nd and Lamotte Street and that Damone
Flowers was accused of committing the crime, she immediately
contacted the police. She stated that Damone Flowers could not have
committed the crime because at the reported time of occurrence he
was in the bed with her. She stated that he comes to visit her ever
night at 12 o'clock midnight, and on this date he was home with
her.

Page #20
Case #98-17807
Detective Andrew Brock I/6369

INVESTIGATIVE PROCEDURES CONTINUATION:

ON August 7, 1998 this officer interviewed Charmaine Mayo at the
Wilmington Police Detective Interview Room #1. During the interview
she advised that she was present at the time the shots were fired.
She observed Damone Flowers shooting a unknown type handgun at the
victim's Honda Accord. For further information on the interview
refer to the witness interview section of this report.

On August 10, 1998 this officer spoke with Brenda Bryant at the
Wilmington Police Detective Interview Room #1. During the interview
she advised that she was not at home when the shooting occurred.
She did however, state that she allowed Shawn McNeill to stay
inside her house while she was away. She stated that she returned
home at 0230 hours and observed the police in the area. She advised
that Shawn was just leaving her house when she returned. For
additional details refer to the video taped interview and
transcripts.

On August 11, 1998 this officer responded to 500 Rodney Street
Apartment #2 and located Ronnetta Sudler. She agreed to come down
to the police station and answer questions. This officer
interviewed Ronnetta Sudler at the Wilmington Police Detective
Interview Room #1. During the interview she advised that she
witnessed the shooting incident that occurred at 22nd and Lamotte
Street. She advised that she observed Damone Flowers firing a
unknown type handgun toward the victim's vehicle. She also observed
just prior to the shooting a subject by the name of "Meatball" and
K.O. who are from the riverside area. She stated that they were
trying to calm everybody down because of the fight that happened
earlier at the Oais Night Club. She advised that after the shooting
she went to the Thunderguards Club and she overheard "Meatball" aka:
Kevin White, speaking to another subject. Meatball stated that the
cops were all over 22nd and Lamotte Street. He further stated that
he helped Damone Flowers get rid of the gun and took him to his
grandmother's house. For additional details refer to the video
taped interview and the transcripts.

On August 12, 1998 this officer re-interviewed Shawn McNeill at
the Wilmington Police Station. For details of interview refer to
video taped interview and the transcripts.

On August 12, 1998 this officer spoke with ▓▓▓▓▓▓▓▓▓▓ at the
Wilmington Police Station Interview room #1. During the interview
she advised that she had just arrived to the corner of 22nd and
Lamotte Street when the shots were fired. She stated that she did
not see anything and was very uncooperative with the questioning.

Page #8
Case #98-17807
Detective Andrew Brock I/6369

WITNESS INTERVIEW CONTINUATION:

Swanson was able to provide a list of names of the people he remembered being present during the shooting.

1. ▓▓▓▓▓▓▓ BFNH-22 DOB:6/20/76
2. ▓▓▓▓▓▓ BFNH-19 DOB:7/29/79 Ronnetta Sudler
3. ▓▓▓▓▓▓▓▓ BFNH-18 DOB:2/14/80 Charmaine Mayo
4. ▓▓▓▓▓▓▓ BFNH-18, DOB:3/21/80 Brooke Foster
5. ▓▓▓▓▓▓▓19, DOB: 6/10/79 William Berry
6. ▓▓▓▓▓▓23, DOB: 9/29/75
7 ▓▓▓▓▓▓▓ DOB: 7/6/77 Joseph Haces

Witness #5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
             ▓▓▓▓▓▓. Baltimore, MD. 21224
             (410)▓▓▓▓▓▓▓

On August 4, 1998 this investigator responded to ▓▓▓▓▓▓▓ Located in Baltimore, MD. and spoke with the above witness ▓▓▓▓ ▓▓▓▓▓▓. During the interview, he advised that on the date and time of occurrence he was in the front door way of his nephew's house located at #31 E. 22nd Street Wilmington, Delaware. While he was standing in the door way he heard a loud argument coming from the corner of 22nd and Lamotte Street. After hearing the commotion he heard several gun shots being fired. He then observed the victim's car ride pass the house heading towards N. Market Street. The witness advised that he did get a look at the person who fired the gun shots but, was not sure if he could identify the suspect. The witness reviewed a Wilmington Police Photographic Line-up but, he was unable to identify the suspect in this incident.

Witness #6 ▓▓▓▓▓▓▓▓▓▓▓8, DOB:2/14/80
            ▓▓▓▓▓▓▓▓▓Wilmington, De.

On August 7, 1998 this investigator interviewed the above witness ▓▓▓▓▓▓▓ at the Wilmington Police Detective Division Interview Room #1. During the interview she advised that she was present in the area of E. 22nd Street when the shooting occurred. She stated that there was large crowd standing in the street and they had been drinking beer and liquor. The crowd was hostile because the police had closed the club early due the fight. She believed the time was about 0100 or 0130 hours into Saturday morning when she observed a Honda Accord drive up to the corner.

At this point, the corner was crowded with people* and she observed a Honda Accord pull up too the corner. The vehicle was occupied by three people and everybody's attention immediately became focused on the Honda. She remembered observing a subject named ▓▓▓▓▓▓▓▓▓▓ walk up to the driver of the car. They shook hands and shortly after that someone said "Get him! or Hit him!". She then heard the vehicle's engine race to a high pitch as if the driver was trying to leave the area in a hurry.

Page #13
Case #98-17807
Detective Andrew Brock I/6369

## INVESTIGATIVE PROCEDURES CONTINUATION:

At 0330 hours this officer along Detective Lt. Freccia responded to 18th and Broom Streets Apartment #1118 and contacted a Mr. Alfred Abrams BMNH-52, who stated that Alfred Smiley is his son. Mr. Abrams later responded to the Christiana Hospital and identified the body as being Alfred Smiley.

At 0355 hours this officer conducted an interview of James Howell at the Wilmington Police Detective Division Room #1. Howell advised that just prior to the shooting Alfred Smiley observed a subject by the name (Lamar Swanson) and they shook hands. Howell advised that he was also familiar with Lamar from his High School days. Howell stated that he did not see the suspect who fired the shots. For further details of the interview refer to the Victim Interview section of this report.

At 0400 hours Cpl. Thomas Harris and his partner towed the victim's 1988 Honda Accord (De. #83638) and the 1985 Honda Accord (De. #61625) which was located in the unit block of E. 22nd Street. For details of Cpl. Harris and Ptlm. Mullin actions refer to their supplement report submitted under this case number (98-17807).

At 0440 hours this officer interviewed Hallowed Davis at the Wilmington Police Detective Interview Room #1. For details of interview refer to the Victim Interview section of this report.

At 0530 this officer completed a check in the CJIS computer system under the nickname file for "Lamar" and the name of Marvin Swanson was returned. This officer completed a criminal history background check and it revealed that he has an arrest history with the Wilmington Police Department. Marvin Swanson also has a WPD arrest photograph under Ident Photograph number (61177). This officer showed the picture to both James Howell and Hallowed Davis and they agreed that the picture was in fact the subject known to them as "Lamar". From the criminal history check this officer obtained an address on Marvin Swanson of 1411 E. 27th Street.

At approximately 0605 hours Det. Simmons and Wyatt responded to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓d attempted to locate ▓▓▓▓▓▓▓▓▓▓▓▓▓. The officers did located Swanson and transported him to central for an interview.

At 0630 hours this officer conducted an interview with Marvin Swanson at the Wilmington Police Detective Interview room #1. During the interview ▓▓▓▓▓▓ advised that he was present at the time of the shooting, but he did not see the person who did the shooting. ▓▓▓▓▓▓▓did however admit to shaking the victims' hand just prior too the shots being fired. He stated that he knew the victim's name to be Alfred Smiley, and was familiar with him from High School.

**Page #14**
**Case #98-17807**
**Detective Andrew Brock I/6369**

<u>INVESTIGATIVE PROCEDURES CONTINUATION:</u>

Swanson was able to give a list of names of the people he remembered being present at the time of the shooting. The list is as follows: ⬛⬛⬛⬛, William Berry, ⬛⬛⬛⬛, ⬛⬛⬛⬛, ⬛⬛⬛⬛, ⬛⬛⬛⬛, and female known to him as ⬛⬛. For additional details of his subsequent interviews refer to the witness section of this report.

At 0915 hours this officer responded to the Medical Examiners Office and spoke with Medical Investigator John Ingle. He advised this officer that he took possession of the victims' body at 0820 hours. He also advised this officer that Dr. Gerald Fulda of the Christiana Hospital Staff pronounced the victim dead at 0318 hours.

At 0930 hours Medical Examiner Dr. Greg McDonald began the autopsy on Alfred Smiley. Present during the autopsy was his assistant Richard Pitts and EDU Officers Joseph Dempsey and Roger Cresto. Dr. McDonald completed the autopsy at 1135 hours. Dr. McDonald advised this officer that the bullet entered the victim's body on his right side just beneath his right arm pit. The bullet traveled through the chest cavity from right to left. The bullet pierced through the right and left lungs, and also through his heart which caused the victim's death. There is no exit wound on the victim's body. EDU Officer Dempsey advised that during the surgery of the victim at the Christiana Hospital a lead projectile was recovered from the victim's left upper shoulder by the Doctors performing the surgery. The projectile is suspected to be that of a 9mm caliber handgun. For additional details of the autopsy findings refer to the ME's autopsy report filed under (ME-98-1106).

4:30
At approximately 1630 hours this officer along with assisting units responded to the area of E. 22nd Street and attempted to locate possible witnesses from the list of names provided by Marvin Swanson. These officers located Marocka Jeter, Joseph Harris, and Clyde McNeill. All four subjects were transported to the Wilmington Police Station for interview purposes.

At 1645 hours this officer spoke with Marocka Jeter BFNH-19, DOB: 7/29/79, address of 815 Vandever Ave. Wilmington, DE. Home telephone number of (302)-652-5682. During the interview she advised that on Friday, July 31, 1998 at 2300 hours she responded to the Oais Night Club located at 16th and Claymont Street with her younger sister Yolunda Jeter BF-15. She stated that during the party two boys started fighting for unknown reasons and the police came in and closed the club down. She and her sister walked home and she remained in the house for the rest of the evening. She stated that she did not witness the shooting and only found what happen when she came outside this morning. She was unable to provide any details about the incident.

A-206.

Brock - cross 30

year-old female on August 11th. And she had indicated that a fight had broken out at the Oasis Club, is that correct?

A. Yes.

Q. Did she tell you any details as to what transpired during that fight?

A. The fight was a result of someone backing a car into Swanson's vehicle, which was parked on the exterior of the club. The gentleman that was operating a '88 tan Honda Accord backed his vehicle into Swanson's car, and that ignited, ignited a fight.

Q. And did anyone indicate whether my client had anything to do with that altercation?

A. No.

Q. Now, is it my understanding that this witness suggested that the crowd that blocked the traffic was basically a crowd that had just left the Oasis Club?

A. Yes.

Q. How far is this from Oasis?

A. I'm going to say maybe nine to ten city blocks.

Q. Were there any reports on RECOM regarding the crowd

A-88.

Brock - cross                                    35

and Lamotte, is that not correct?

A.    Yes, that's correct.

Q.    And that individual indicated that he heard words stated
before the shooting?

A.    Yes.

Q.    Does that individual have any familiarity, based on your
interview, with my client?

A.    Through his interview, he stated that he was familiar with him
from being in the neighborhood, and he knew him as Mone or Monie or
Moonie.

Q.    And did he state his exact proximity to the alleged shooter?

A.    Well, it was determined that he was approximately two and a
half car lengths away from the shooter.

Q.    And on what side of the street was this purported witness?

A.    The witness was on the north side of the street.

Q.    When you conducted your interview of several of the
individuals at the scene, did any of them either state or confirm that Mr.
Smiley had actually gotten through the crowd and actually backed back
into the crowd at a high speed?

Brock - cross                    36

A.    Yes, there was some indication that that had happened.

Q.    Okay. Tell us about the indication of that. That's...

A.    Through speaking with several of the witnesses from the crowd, they advised that after Swanson had shook hands with Smiley, someone yelled out, get him or hit him, meaning hit Smiley. At that point, the black female, who was eighteen, either threw a punch or actually hit him. At that point, Smiley raced the engine to back up his car. And after he backed up, that's when the shots were fired.

Q.    Do we have any indication of the speed of the vehicle when it was headed back in reverse through this crowd?

A.    No.

Q.    Okay. Was it, did anybody say if it was fast, or if it was...

A.    No. They said he really raced the engine to back up. And at that point he did that, that's when gunshots were fired and then the car took, thrusted forward and took off up the street, took off up the street.

Q.    So as far as we know, at least a moment before the gunshots were fired, the vehicle was racing backwards into the crowd?

A.    The engine was racing at a high pitch. And due to indications was that the car was trying to back up to get away from the blows from the

Brock - cross                                37

female, and that's when the gunshots were fired and the car sped off up the
street.

Q.     Did your witnesses make a fine delineation between whether it
was just the engine making noise or whether the car was going backwards?

A.     I can't tell you that right now.

Q.     Did they say whether the car was going backwards?  Please
look at your notes, if you can.

A.     I can't say for sure right now.

Q.     How many individuals did you talk to, officer, that discussed
that issue?

A.     I talked to approximately six to seven individuals.

Q.     And looking at your notes there, do you have their reports
there in front of you?

A.     Yes.

Q.     I'd ask you to review them for a moment or two, and I have a
few questions I'm going to ask about those.

A.     (Witness complies.)

          MR. RAMBO:     Your Honor, I would ask that the question
be focused a little bit more.  It seems to me that he's looking at six or seven

Brock - cross                                    38

statements. And if there's one individual in particular...

THE COURT:    I think it would help, Mr. Facciolo, if we

could do that.

BY MR. FACCIOLO:

Q.    Could you look at the first witness that discussed this with you

and their statement?

A.    (Witness complies.) Okay.

Q.    Okay. And what did that person tell you with regard to the

vehicle?

THE COURT:    Will somebody get them, whatever she

wants to hand to the clerk, please?

MS. WOLOSHIN:    Thank you, Your Honor.

THE WITNESS:    The first witness stated that he heard

someone say, get him or hit him. At that point, he observed someone throw

something into the car, or throw a punch at the person in the car. He

heard the engine race. Then he observed the car going backwards, as if the

car was going to hit him or trying to run him over.

BY MR. FACCIOLO:

Q.    Could you tell us what the second witness said about the

Brock - direct                                    13

eastern direction, on the north side of the street.  He advised that as he was

approaching the corner of 22nd and Lamotte, he observed a large crowd

standing in the middle, in, in the, in the roadway blocking the flow of

traffic.  He couldn't hear what was going on, but he knew it was some kind

of commotion, like they were surrounding either a vehicle or somebody.

Q.    Okay.

A.    As he was standing on the north sidewalk, he observed a

subject come around the corner, heard some words to the effect that, I'm

not afraid of him.  I'll pop a cap in his ass, give me the gun.  After those

words were stated, he looked up and he saw this male firing shots into the

direction of the crowd and also what they were surrounding.

Q.    Based upon your investigation of the car, how many shots

were fired into the car, if you recall?

A.    There were three --

Q.    I see.

A.    -- three to four shots.

Q.    And, and were they fired into the windshield or elsewhere?

A.    They were fired into the front dashboard.  There was also a

shot to the driver's side door.  And, apparently, one of the shots went

Brock - direct                    14

through the window.

Q.    Okay.  Now, that individual that you interviewed on August
the 2nd of '98 in the afternoon, did he tell you that he had a clear
unobstructed view or not?

A.    Yes, he did.  He stated that his view was unobstructed.  There
was also a streetlamp that was illuminating the, the incident.

Q.    Did he know, to, to the best of your knowledge, the person that
he observed do the shooting by any name or nickname?

A.    He said that he immediately recognized the subject who was
doing the shooting as, by the nickname of Mone or Monie.

Q.    Okay.  And did he subsequently pick someone out from a
photo identification?

A.    Yes, he did.

Q.    Where did that take place?

A.    That took place at the Wilmington Police Department
interview room.

Q.    And how many photos were observed by that person?

A.    Approximately, thirty photographs.

Q.    Okay.  And whose photograph did he pick out as the shooter