

ORIGINAL
IN THE UNITED STATES DISTRICT COURT OF DELAWARE
DAMONE FLOWERS,
DEFENDANT, PETITIONER BELOW,
No. 9808000280
06-356
v.
THOMAS CARROLL,
STATE OF DELAWARE, RESPONDENTS,
FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2006 MAY 30 PM 12:

# MOTION FOR EXPANSION OF THE RECORD

NOW COMES, the petitioner, DAMONE FLOWERS, pro se, to request this HONORABLE Court for an "ORDER" for Expansion of the Record pursuant to Rule 7(a) of the rules governing Habeas Corpus proceeding of 28 U.S.C. § 2254. The petitioner offers the following information herewith:

## A. BACKGROUND FOUNDATION

THOMAS A. PEDERSEN ESQ. (PEDERSEN) was appointed to represent the petitioner as a conflict attorney on May 18, 2000. In the course of that representation PEDERSEN attended an office conference on Tuesday, May 15, 2001. At that office conference State prosecutor James (Jim) Rambo indicated to PEDERSEN that the State had recently come into possession of a video taped interview conducted with an inmate at GANDER HILL, in which the State was advised that there was an additional shooter besides the petitioner on the night in question. (Exhibit A). PEDERSEN notified the petitioner of the development by letter dated May 29, 2001. (Exhibit B). Subsequently, PEDERSEN sent a letter to State prosecutor James Rambo dated May 31, 2001, specifically requesting that exculpatory BRADY evidence. (Exhibit C).

By July 2001, the State still had not turned over the exculpatory BRADY statement. There was speculation between PEDERSEN and the petitioner about the identity of the

GANDER HILL witness being an individual named Lamar Marvin Swanson (SWANSON). That speculation centered around the fact that SWANSON had been recently released from GANDER HILL just months after beginning a 5 year LEVEL V sentence following a drug conviction (Exhibit D), and his release suspiciously coincided with the timing of the GANDER HILL witness' statement. IN as much as PEDERSEN, while representing SWANSON in a unrelated case, had explored the possibility with SWANSON of him becoming a defense witness based upon his two August 1, 1998 statements to investigators. (Exhibit E). PEDERSEN would have a potential conflict of interest if SWANSON was indeed the confidential witness from GANDER HILL. As a result PEDERSEN sought confirmation from the State regarding the identity of the GANDER HILL witness and whether this confidential witness was indeed Lamar Marvin Swanson, explaining as much in a letter to the petitioner dated August 3, 2001. (Exhibit F).

ON August 20, 2001, PEDERSEN filed a motion to withdraw as counsel after receiving confirmation from the State that Marvin Swanson was indeed the confidential witness from GANDER HILL, who identified an additional shooter from the night in question. The identity of the second shooter was still being withheld as well as the exculpatory statement made by SWANSON. PEDERSEN's motion to withdraw set forth the facts for the Court. (Exhibit G). The motion was granted on September 21, 2001.

IN October 2001, EUGENE J. MAURER JR., P.A. (MAURER) entered his appearance on behalf of the petitioner. The October 23, 2001 trial was rescheduled for May 7, 2002. IN December 2001, State prosecutor, Cynthia Kelsey, notified defense counsel of the fact that the State had recently interviewed another witness who indicated that the petitioner was not the shooter on the night in question by letter dated December 21, 2001. (Exhibit H). This witness, BRUCE DUNCAN, had also drawn a map for investigators during the interview, a copy of which Mrs. Kelsey enclosed with the December 21, 2001 letter. (Exhibit I). ON January 2, 2002, MAURER sent a reply letter to Mrs. Kelsey, specifically

requesting a copy of the redacted BRADY tape as soon as possible.(Exhibit J). Subsequently, MAURER notified the petitioner of the developments by letter dated January 3, 2002. (Exhibit K).

ON February 8, 2002, MAURER sent a request to the State requesting all discoverable materials. (Exhibit L). With no response from the State, MAURER again sent a request to the State on March 25, 2002 requesting discoverable materials pursuant to Super. Ct. Crim. Rule 16. (Exhibit M). Again with no response from the State and an approaching trial in May 2002, defense counsel filed two motions in the Superior Court on April 15, 2002. ONE motion was for the Production of Brady Material, specifically pertaining to four eyewitnesses, whom had been interviewed by investigators over a 4 year period since the night in question and had provided the State with exculpatory BRADY statements. (Exhibit N). The second motion was to Compel Production of Discoverable Materials. (Exhibit O).

Prior to the filing of the two motions on April 15, 2002, the State had taken a statement from a third witness named BENNIE WRIGHT in which he indicated that the petitioner was not the shooter on the night in question. The State had turned over a redacted tape of the interview to defense counsel prior to the filing of the two April 15, 2002 motions. But because the redacted tape was, in large part, unintelligible defense counsel requested the current or last known address of the witness, copies of all police interview notes reflecting statements of the witness, copies of all transcriptions of the witness' statement and an intelligible copy of the taped statements.

A fourth witness, who was an eyewitness to the shooting resided in BALTIMORE, MARYLAND. IN the supplement report the petitioner was provided with a redacted copy of the police report, which indicated that this witness observed the shooting. And was shown a photographic line-up which included the petitioner. The witness did not identify the petitioner as the shooter on the night in question. (Exhibit P). The petitioner requested the witness' name and address in order to secure the witness' presence at trial through the INTER-STATE

Compact. (Exhibit Q).

Despite the repeated general and specific request for the exculpatory BRADY material, the State withheld the exculpatory material.

B. EXHAUSTED STATE REMEDIES

The petitioner asserts that the State court record clearly reveals that he exhausted his State court remedies within the meaning of 28 U.S.C. § 2254(b)(c) by presenting every issue raised in his habeas corpus petition to the State courts. IRVIN v. DOWD, 359 U.S. 394, 406 (1959). The U.S. Supreme Court has held that the exhaustion requirement must be rigorously enforced. ROSE v. LUNDY, 455 U.S. 509, 518 (1982); SANTANA v. FENTON, 685 F.2d 71, 77 (3d Cir. 1982).

Further, the documentation included above clearly demostrates that the petitioner has exhausted all state remedies in attempting to acquire the exculpatory BRADY materials from the State. Suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material to guilt or to punishment, irrespective of good faith or bad faith of prosecution. U.S.C.A. Const. Amend. 14; BRADY v. MARYLAND, 373 U.S. 83 (1963).

In a letter to defense counsel dated November 29, 2004 and a second identical letter dated January 7, 2005, the petitioner specifically asked defense counsel if the State had ever turned over the exculpatory BRADY materials that was the basis of the April 15, 2002 Motion for Production of BRADY materials. (Exhibit R). In response to the petitioner's inquiry, defense counsel informed the petitioner that the State had not turned over that exculpatory BRADY material. (Exhibit S). As a result the petitioner raised this BRADY violation argument in his Rule 61 motion for post-conviction relief. (See RULE 61 Motion-GROUND 9).

In the Rule 61 motion, the petitioner requested that Judge Johnston Expand the Record pursuant to Super. Ct. Crim. Rule 61(g) to include the exculpatory BRADY materials before making a decision on the motion. In the Court's ORDER denying the Rule 61 motion,

Judge Johnston's response to this argument was: "In ground nine of the Rule 61 motion, defendant argues that the State failed to disclose exculpatory BRADY material. However, the defendant's contention that such materials exist, and that they would have been exculpatory, is pure speculation and is not supported by the record. "(Court's Order-pg.9). Judge Johnston went on to deny the Rule 61 motion pursuant to Super. Ct. Crim. Rule 61(i)(4), applicable to any ground formerly adjudicated, although she failed to demostrate when or where this BRADY violation claim had ever been formerly addressed. It is well settled Delaware law that when the prosecution fails to disclose material exculpatory evidence in violation of the BRADY rule, postconviction relief cannot be procedurally barred, as a BRADY violation undermines the fairness of the proceeding leading to the judgment of conviction. See, JACKSON v. STATE, 770 A.2d 506 (Del. 2001).

As forwarded in the Brief in support for excusion of exhausted but procedurally defaulted claims, the Delaware Supreme Court has not addressed this allegation, although the petitioner has exhausted all state remedies within the meaning of 28 U.S.C. § 2254(b)(c). Where State courts refuse to consider petitioner's claim because he failed to comply with independent and adequate State procedural rules, his claims are deemed exhausted but procedurally defaulted unless the petitioner establishes cause and prejudice or a fundamental miscarriage of justice to excuse the default. See, LINES v. LARKINS, 208 F.3d 153 C.A.3(Pa. 2000); JOHNSON v. CARROLL, 2003 WL 1220237 D.Del. 2003. In the BRIEF, the petitioner has satisfied the cause and prejudice standard and has shown that a fundamental miscarriage of justice will occur if the default is not excused.

Accordingly, the petitioner has exhausted all State remedies on this claim and has exhausted all attempts to secure the suppressed exculpatory BRADY material.

C. THE FIFTH AND FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL.

The prosecution's affirmative duty to disclose evidence favorable to a defendant

can trace its origins to early 20TH-CENTURY strictures against misrepresentation and is of course most prominently associated with the Court's decision in **BRADY v. MARYLAND**, 373 U.S. 83(1963). IN **UNITED STATES v. AGURS**, 427 U.S. 97(1976), the Supreme Court distinguished 3 situations in which a **BRADY** claim may arise: **1.** where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured; **2.** where the government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence; and **3.** where the government failed to volunteer exculpatory evidence never requested or requested only in a general way.

The petitioner's **BRADY** violation claim would fall within the second distinguishment. The State volunteered the exculpatory **BRADY** material but then refused to accede to multiple request for disclosure of the specific exculpatory **BRADY** materials. The Supreme Court stated in **AGURS** that "when the prosecutor receives a specific and relevant request, failure to make any response is seldom, if ever excusable." 96 S.Ct. at 2399.

The State's suppression of the exculpatory **BRADY** material prevented the petitioner from: **FIRST**, having knowledge of the exact nature of each eyewitnesses exculpatory statement; **SECOND**, prevented the petitioner from locating the witnesses; **THIRD**, investigating the identity of the second shooter; **FOURTH**, utilizing the eyewitnesses and any resulting information at trial; **FIFTH**, learning of the circumstances that led to these witnesses, namely SWANSON, DUNCAN and WRIGHT becoming witnesses in this case. i.e. whether the State approached these men after they had been arrested on serious charges(See Argument I in the petition); and **FINALLY**, what benefits were awarded to MARVIN SWANSON for his cooperation with the State.

The petitioner has a constitutional right to a fundamentally fair trial. **U.S.C.A. Const. Amend 5 & 14.** Because the prosecution fails to disclose material exculpatory evidence in violation of the **BRADY** rule strikes at the core of a fair trial, the consequences of a failure to comply with **BRADY** must be examined carefully. The disclosure of the suppressed exculpatory **BRADY** material and its utilization at trial could reasonably be taken

erroneous. SUMNER v. MATA, supra.

## E. REMEDY SOUGHT.

WHEREFORE, because the petitioner was denied his 5TH and 14TH AMENDMENT rights to a fair trial. BRADY, id. The petitioner requests that this HONORABLE COURT grant his Habeas Corpus petition, after 90 days if the respondents fail to disclose the suppressed exculpatory BRADY materials.

Further, the petitioner has subsequently filed a Motion to Invoke Discovery pursuant to RULE 6(a)(b) of the rules governing Habeas Corpus proceeding of 28 U.S.C.§ 2254. If the Court grants the motion, the petitioner requests that this HONORABLE COURT to grant him leave to include any relevant materials or information resulting from the Discovery request, into the application for writ of habeas corpus.

MAY 24, 2006

Respectfully submitted,

Damone Flowers

DAMONE FLOWERS

D.C.C.

1181 PADDOCK ROAD

SMYRNA, DE. 19977.

THOMAS A. PEDERSEN
ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN
MEMBER DE. BAR

TELEPHONE (302) 652-7905
FAX (302) 652-1467

Jim Rambo
Deputy Attorney General
Dept. of Justice
820 N. French Street
Wilmington, DE 19801

Date: 5-31-01
Re: State of Delaware vs. Damone Flowers, No.: 9808000280

Dear Jim,

On Tuesday, May 15, 2001, there was an office conference held in the above-referenced case. At that time, we were given a trial date of October 23, 2001. More importantly, you indicated at that time that the State had recently come into possession of a tape which was of some Brady Material to the defense.

During the office conference, you indicated that the State had recently come into possession of a videotaped interview conducted with an inmate at Gander Hill in which you were advised that there was an additional shooter besides Mr. Flowers. Obviously, I do view this as Brady Material and ask that you provide it to me as quickly as possible. In addition, I advised you at that time, that although I have requested copies of the photographic lineup shown to the witnesses in this case, I have still yet to receive these copies. Please forward to me copies of the videotape and photographic lineup as quickly as possible.

Following the meeting, we did discuss the proposed plea offer which I had sent to you sometime ago asking that you consider making a plea offer to Mr. Flowers of Murder in the Second Degree. At that time you indicated that you and your co-counsel were considering the offer and you would be in contact with me soon as to your decision. Once again, I ask that you consider this and let me know what your decision is as quickly as possible.

Should you have any questions regarding this letter or my requests, please feel free to give me a call.

EXHIBIT A &C

A-19

Very Truly Yours,

Thomas A. Pedersen

THOMAS A. PEDERSEN
ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN
MEMBER DE. BAR

TELEPHONE (302) 652-7905
FAX (302) 652-1467

Damone Flowers
SBI# 303627
Gander Hill Prison
P.O. Box 9561
Wilmington, DE 19809

Date: 5-29-01

Dear Damone,

Enclosed please find a letter which I wrote to the prosecutor following our office conference which took place on May 15, 2001. As you can see, the State has taken a statement from a witness who has come forth and identified an additional shooter besides you. When I was advised of this statement, I specifically asked the prosecutor whether or not this witness identified you as also participating in the shooting that night and was told that the witness did, in fact, identify you and also identified this additional unnamed person as of now as also participating in the shooting. Although this information does not exonerate you, I do believe we are entitled to it under the Brady decision and have therefore requested it. In addition, you will also see that I have reiterated my request for a copy of the photographic lineup.

I am in receipt of your letter dated May 10, 2001 in which you have indicated that you have hired Mr. Maurer and are awaiting his entry of appearance. Based upon this, I have spoken with Mr. Maurer and he has indicated that he should be out to visit you soon to discuss this issue with you. Until the entrance of his appearance, I am still your attorney of record and therefore thought it necessary to file this letter on your behalf. Naturally, if Mr. Maurer does enter his appearance, I will forward these documents to him.

Very Truly Yours,

Thomas A. Pedersen

Enclosure
TAP/sjh

EXHIBIT B
A-18

SHU LAW LIBRARY

(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.
Marvin SWANSON, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 248,2001.**

Submitted Oct. 18, 2001.
Decided Oct. 31, 2001.

Court Below-Superior Court of the State of Delaware, in and for New Castle County, Cr.A. No. IN00-02-0191 and -0194.

Before VEASEY, Chief Justice, WALSH, and STEELE, Justices.

ORDER

***1** This 31st day of October 2001, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1) The defendant-appellant, Marvin Swanson, was convicted, following a Superior Court bench trial, of possession with intent to deliver cocaine and tampering with physical evidence. The Superior Court sentenced Swanson on both charges to a total of nine years at Level V incarceration, suspended after five years for decreasing levels of supervision. At trial, Swanson's defense was mistaken identity. This is Swanson's direct appeal.

(2) Swanson's counsel on appeal has filed a brief and a motion to withdraw pursuant to Rule 26(c). Swanson's counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, Swanson's attorney informed him of the provisions of Rule 26(c) and provided Swanson with a copy of the motion to withdraw and the accompanying brief. Swanson also was informed of his right to supplement his attorney's presentation. Swanson has not raised any issues for this Court's consideration. The State has responded to the position taken by Swanson's counsel and has moved to affirm the Superior Court's decision.

(3) The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation. FN*

FN* *Penson v. Ohio,* 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 442 (1988); *Anders v. California,* 386 U.S. 738, 744 (1967).

(4) This Court has reviewed the record carefully and has concluded that Swanson's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Swanson's counsel has made a conscientious effort to examine the record and the law and has properly determined that Swanson could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

Del.Supr.,2001.
Swanson v. State
784 A.2d 1082, 2001 WL 1388618 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT D
A-96.

Page #7
Case #98-17807
Detective Andrew Brock I/6369

WITNESS INTERVIEW CONTINUATION:

Witness #3 [redacted]

No Telephone

On August 2, 1998 this investigator interviewed the above witness [redacted] at the Wilmington Police Detective Interview Room #1. The witness advised that at approximately 0030 hours on August 1, 1998 he and several of his friends from the 22nd and Lamotte Street area attended a party at the Oais Night Club located at 1600 N. Claymont Street. He stated that while at the party a fight between some boys started for unknown reasons. The police entered the night club and ordered everyone to get out and they shut the party down. He advised that while he was outside attempting to get into his vehicle someone backed their car into the passenger side door of his car. He advised that some words were exchanged between the driver and some of the girls from E. 22nd Street. The girls from 22nd Street and the driver of the car began fighting and the police quickly separated them and them on their way.

[redacted] stated that they eventually returned to E. 22nd Street at approximately 0115 hours. He advised that everybody had been drinking alcohol and upset about the police shutting the down the party early. He then observed a Honda Accord drive up to the corner but, it could not get pass because there was a crowd of people standing in the middle of the Street.

He then heard someone from the car yell out his name. Upon looking into the car he recognized the driver to be a person known to him as "Smiley". He stated that he walked over to the car and shook Smiley's hand and said "What's up?". He also recognized the two passengers in the car from High School but, he could not remember their names at the time. As he started to turn and walk away from the car he heard someone say "Get him". Then he observed either someone throw something into the car or someone threw a punch at the driver. At this point, he heard the driver race the engine of the car as if he were going speed backwards down the street. He then heard several gun shots being fired, so he ducked behind some nearby parked cars for cover. He advised that he did not see the person shooting.

He then observed the victim's vehicle drive west on E. 22nd Street out of sight. At this point, he was not sure if the people in the car had been shot. He then got into his vehicle and fled from the scene accompanied by his cousin [redacted] who is [redacted]

EXHIBIT E
A-82.

WITNESS INTERVIEW CONTINUATION:

Swanson was able to provide a list of names of the people he remembered being present during the shooting.

1. [redacted] BFNH-22 DOB:6/20/76
2. [redacted] BFNH-19 DOB:7/29/79 Ronnetta Sudler
3. [redacted] BFNH-18 DOB:2/14/80 Charmaine Mayo
4. [redacted] BFNH-18, DOB:3/21/80
5. [redacted] 19, DOB: 6/10/79 William Berry
6. [redacted] 23, DOB: 9/29/75
7. [redacted] DOB: 7/6/77 Joseph Hood

Witness #5 [redacted]
[redacted]. Baltimore, MD. 21224
(410) [redacted]

On August 4, 1998 this investigator responded to [redacted] Located in Baltimore, MD. and spoke with the above witness [redacted]. During the interview, he advised that on the date and time of occurrence he was in the front door way of his nephew's house located at #31 E. 22nd Street Wilmington, Delaware. While he was standing in the door way he heard a loud argument coming from the corner of 22nd and Lamotte Street. After hearing the commotion he heard several gun shots being fired. He then observed the victim's car ride pass the house heading towards N. Market Street. The witness advised that he did get a look at the person who fired the gun shots but, was not sure if he could identify the suspect. The witness reviewed a Wilmington Police Photographic Line-up but, he was unable to identify the suspect in this incident.

Witness #6 [redacted] 8, DOB:2/14/80
[redacted] Wilmington, De.
[redacted]

Admitted drinking grounds to impeach

On August 7, 1998 this investigator interviewed the above witness [redacted] at the Wilmington Police Detective Division Interview Room #1. During the interview she advised that she was present in the area of E. 22nd Street when the shooting occurred. She stated that there was large crowd standing in the street and they had been drinking beer and liquor. The crowd was hostile because the police had closed the club early due the fight. She believed the time was about 0100 or 0130 hours into Saturday morning when she observed a Honda Accord drive up to the corner.

At this point, the corner was crowded with people and she observed a Honda Accord pull up too the corner. The vehicle was occupied by three people and everybody's attention immediately became focused on the Honda. She remembered observing a subject named [redacted] walk up to the driver of the car. They shook hands and shortly after that someone said "Get him! or Hit him!". She then heard the vehicle's engine race to a high pitch as if the driver was trying to leave the area in a hurry.

INVESTIGATIVE PROCEDURES CONTINUATION:

At 0330 hours this officer along Detective Lt. Freccia responded to 18th and Broom Streets Apartment #1118 and contacted a Mr. Alfred Abrams BMNH-52, who stated that Alfred Smiley is his son. Mr. Abrams later responded to the Christiana Hospital and identified the body as being Alfred Smiley.

At 0355 hours this officer conducted an interview of James Howell at the Wilmington Police Detective Division Room #1. Howell advised that just prior to the shooting Alfred Smiley observed a subject by the name (Lamar Swanson) and they shook hands. Howell advised that he was also familiar with Lamar from his High School days. Howell stated that he did not see the suspect who fired the shots. For further details of the interview refer to the Victim Interview section of this report.

At 0400 hours Cpl. Thomas Harris and his partner towed the victim's 1988 Honda Accord (De. #83638) and the 1985 Honda Accord (De. #61625) which was located in the unit block of E. 22nd Street. For details of Cpl. Harris and Ptlm. Mullin actions refer to their supplement report submitted under this case number (98-17807).

At 0440 hours this officer interviewed Hallowed Davis at the Wilmington Police Detective Interview Room #1. For details of interview refer to the Victim Interview section of this report.

At 0530 this officer completed a check in the CJIS computer system under the nickname file for "Lamar" and the name of Marvin Swanson was returned. This officer completed a criminal history background check and it revealed that he has an arrest history with the Wilmington Police Department. Marvin Swanson also has a WPD arrest photograph under Ident Photograph number (61177). This officer showed the picture to both James Howell and Hallowed Davis and they agreed that the picture was in fact the subject known to them as "Lamar". From the criminal history check this officer obtained an address on Marvin Swanson of 1411 E. 27th Street.

At approximately 0605 hours Det. Simmons and Wyatt responded to [redacted]d attempted to locate [redacted] The officers did located Swanson and transported him to central for an interview.

At 0630 hours this officer conducted an interview with Marvin Swanson at the Wilmington Police Detective Interview room #1. During the interview [redacted] advised that he was present at the time of the shooting, but he did not see the person who did the shooting. [redacted] did however admit to shaking the victims' hand just prior too the shots being fired. He stated that he knew the victim's name to be Alfred Smiley, and was familiar with him from High School.

THOMAS A. PEDERSEN
ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN
MEMBER DE. BAR

TELEPHONE (302) 652-7905
FAX (302) 652-1467

Damone Flowers
P.O. Box 9561
Wilmington, DE. 19809

Date: 8-3-01

Dear Damone,

Thank you for your recent letter dates July 31, 2001. Under separate cover I will be filing a Motion to Withdraw as soon as I receive conformation from the prosecutor that Mr. Swanson is in fact the state's witness. Regarding your observation of the level of my intelligence, I would like to believe that I am the very very intelligent man posed in the beginning of your letter although some would certainly disagree. Regarding your level of intelligence however, I have had several opportunities to make observations of you during the course of our attorney client relationship and your being stupid is not one of them.

As soon as I receive a response from the state, I will be filing the appropriate Motion to Withdraw. If in fact I am permitted to withdraw from your case, please understand that I wish you the very best of luck in obtaining the best possible resolution of your case.

Very Truly Yours,

/s/ SMJ

Thomas A. Pedersen

EXHIBIT F.
A-21.

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | I.D.#9808000280 |
| v. | ) | |
| DAMONE FLOWERS | ) | |
| Defendant | ) | |

## MOTION TO WITHDRAW AS COUNSEL

COMES NOW, the defendant, by and through counsel, Thomas A. Pedersen hereby requests that this Honorable Court allow him to withdraw as counsel. In support of this motion, the defendant offers the following:

1. Counsel was assigned by the Court to represent Mr. Flowers on murder and related charges. Currently the matter is scheduled for trial on October 23rd, 2001.

2. During an office conference with the Honorable Haile Alford on May 15th, 2001, counsel for the State indicated that they had recently interviewed and taken a taped statement from an unidentified witness whom they intend to call at trial.

3. Based upon information and belief, counsel believes that not only has the confidential witness been represented by counsel in the past, but that counsel has also discussed the case with this witness and that context of that discussion is directly contrary to the proffer made by the state during the office conference. Counsel has intentionally omitted the name of the proposed witness.

4. Assuming counsel is correct, the presence of this witness is causes a conflict of interest which cannot be cured by any other means than having counsel withdraw from Mr. Flowers case. Counsel has discussed this situation with Mr. Flowers who is also in agreement with this motion.

EXHIBIT G

A-23

WHEREFORE, counsel asks that this Honorable Court sign an order allowing counsel to withdraw as counsel of record for the above-referenced defendant.

Thomas A. Pedersen

M. JANE BRADY
ATTORNEY GENERAL

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

NEW CASTLE COUNTY
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

KENT COUNTY
102 West Water Street
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

SUSSEX COUNTY
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-4698

PLEASE REPLY TO : New Castle County

December 21, 2001

Eugene J. Maurer, Jr., P.A.
Attorney At Law
1201-A King Street
Wilmington, DE 19801

RE: <u>State of Delaware v. Damone Flowers</u>
I.D. #9802009823

Dear Gene:

We have interviewed another prisoner who says that your defendant was not the shooter. Attached is the map he drew at the interview. The interview was taped but it also contains substantial amounts of information unrelated to this case. If you would like a copy of the redacted tape, I will provide a copy but I need lots of notice. Thanks.

Very truly yours,

Cynthia Kelsey
Deputy Attorney General

CK/sph

Attachment

cc: James Rambo, Deputy Attorney General
c:\shannon\kelsey\maurereugene.ltr

EXHIBIT H
A-14.

Interview Bruce Duncan – 12/20/01
present Pat Connor, Dave Simmons + me
interview taped. this is the
map. Duncan drew

EXHIBIT I

House
Carport
Building
WAll
Corne
Left
VAN
Right
VAN

EUGENE J. MAURER, JR., P.A.
ATTORNEYS AT LAW
1201-A KING STREET
WILMINGTON, DELAWARE 19801
(302) 652-7900
FAX (302) 652-2173

January 2, 2002

Cynthia Kelsey, Esq.
Deputy Attorney General
820 N. French Street
Wilmington, DE 19801

RE: **State of Delaware v. Damone Flowers**
**ID #9802009823**

Dear Cynthia:

Thank you for your letter dated December 21, 2001, and thank you for providing to me the additional ***Brady*** material enclosed therein. I will of course want a copy of the redacted tape as soon as possible so that I am providing you with notice immediately upon the receipt of your letter.

Thank you for your attention to this.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br

xc. Damone Flowers

EXHIBIT J
A-17

EUGENE J. MAURER, JR., P.A.
ATTORNEYS AT LAW
1201-A KING STREET
WILMINGTON, DELAWARE 19801
(302) 652-7900
FAX (302) 652-2173

January 3, 2002

Damone Flowers
Gander Hill Prison
P.O. Box 9561
Wilmington, DE 19809

Dear Damone:

The State has uncovered another witness who is indicating that you were not the shooter on the evening in question. I am enclosing herein copies of a letter which I received from the State together with a copy of interview notes with a Mr. Bruce Duncan. Do you know this individual?

I anticipate that I will come over to the prison to meet with you in the not-too-distant future. Should you have any questions in the meantime please feel free to contact me.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br
Encs.

EXHIBIT K
A-13.

EUGENE J. MAURER, JR., P.A.

ATTORNEYS AT LAW

1201-A KING STREET

WILMINGTON, DELAWARE 19801

(302) 652-7900

FAX (302) 652-2173

February 8, 2002

James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE   19801

RE:   **State of Delaware v. Damone Flowers**
      **ID #9808000280**

Dear Jim & Cynthia:

I have recently had an opportunity to review the above file as well as the materials that have been provided to me by Tom Pedersen. I have numerous requests and inquiries which I will set forth numerically below with respect to information that is needed and steps that I feel need to be taken. These are as follows:

1.     I do not see a copy of the autopsy report. Would you please provide it.

2.     I do not have a copy of the Superior Court search warrant executed on the victim's vehicle. Could you provide it?

3.     I do not have copies of the victim's medical records from the hospital generated prior to his expiration. Could you provide them?

4.     It appears that Tom Pedersen had been requesting a copy of the photographic lineup utilized for the various identifications but that he never received it. Could you provide that?

5.     The witness interview section of Det. Brock's report jumps from Witness No. 3 to Witness No. 5. Was there a witness No. 4 and if so, could you provide me with a summary of his or her statement? If not, could you also advise on that?

EXHIBIT L.
A-30.

6. Although Det. Brock's police report was provided in its entirety, Page 16 was omitted. Was that intentional or inadvertent and if the latter, can it be provided to me at this time? If the former, could you advise as to the reason for the omission.

7. Although reference is made to an evidence detection report prepared by Det. Sammons, it does not appear that report has been provided. This would seem to be fairly significant so I would request that you provide me with a copy of that report.

8. Although I see in Tom Pedersen's file that you had provided him with an "automatic discovery response", I do not seem to have that. Could you provide it?

9. I would like to have an opportunity to review the photographs taken in connection with the case and also would like to obtain a copy of the crime scene photograph which I assume was done. I am enclosing at this time a blank videotape and requesting that I be provided with a copy of the crime scene video. I would also like to know when I might be able to review the photographs. Please advise.

The following requests are in the nature of ***Brady*** requests which I am making for the record:

1. It appears that the witness from Maryland witnessed the shooting and was shown a photographic lineup with the defendant's picture in it. It further appears that this witness did not make an identification. If you are not going to be calling this witness at trial, please provide me with his name and address so that I can have an appropriate subpoena issued under the interstate compact. This may take some time so I would appreciate a response as soon as possible.

2. Under ***Boyer v. State***, I am requesting that you provide me with the criminal records of the anticipated State's witnesses.

3. I understand that Tom Pedersen had to withdraw as counsel due to his representation of a witness who was indicating that there was more than one shooter at the scene. I do not have a recollection of who that witness was or of what that witness was saying. Would you please provide me with all reports regarding this witness and also please provide me with that witness' identity as well.

I believe that there also might be some reference made in the record to a supplemental report prepared by Det. Brock and that has not been provided. Although not obviously required by discovery, is there any such report? Also, it seems to me in reviewing the records that were almost all of the witnesses interviewed by the police provided videotaped statements. I must admit that I believe that I know the identities of almost all of these individuals. Since that is the case, would you be willing to provide me with these videotapes well in advance of the trial date so that I might have an opportunity to review them and not have to scramble around at the last minute? Obviously, not providing these statements in advance of trial will certainly drag things out. Since I also have reason to believe that some of these witnesses may be recanting their statements in whole or in part, I will need to review the original tapes. Please advise as to whether you would be willing to do this.

I think that is all that comes to me at the present time. If I have additional questions or inquiries, I will get in touch with you.

Would you please let me know whether you are going to resist any of my requests and in particular any of the ***Brady*** requests. If so, it will be necessary for me to file a motion as soon as possible.

Thank you for your attention to this.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br
Enc.

xc. Damone Flowers

EUGENE J. MAURER, JR., P.A.
ATTORNEYS AT LAW
1201-A KING STREET
WILMINGTON, DELAWARE 19801
(302) 652-7900
FAX (302) 652-2173

March 25, 2002

James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE 19801

RE: **State of Delaware v. Damone Flowers**
**ID #9808000280**

Dear Jim & Cynthia:

I represent the defendant on the above charge(s). Pursuant to Superior Court Criminal Rule 16, please provide me with the following:

1. Copies of written or recorded statements, confessions or admissions of the defendant and any written record containing the substance or any relevant oral statement as well as the substance of any oral statement which the State intends to offer in evidence at the trial made by the defendant either before or after arrest in response to interrogation then known by the defendant to be a State agent which are within the custody, possession or control of the State.

2. Copies of any notes or reports made by State agents reflecting any such oral or recorded statements.

3. A copy of the defendant's prior criminal record, if any, as is within the possession, custody or control of the State, the existence of which is known or by the exercise of due diligence may become known to the Attorney General.

4. Reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become know, to the State, the existence of which is known, or by the exercise of due diligence may become known, to the State, and which are material to the preparation of the defense or are intended for use by the State as evidence in chief at the trial.

EXHIBIT M
A-26.

5. Any evidence which the State may present at trial under Rules 702, 703 or 705 of the Delaware Uniform Rules of Evidence. This disclosure shall include the identity of the witness and the substance of the opinions to be expressed.

6. A listing of and the opportunity to inspect any and all books, papers, documents, photographs, maps and any other physical evidence which was seized from the defendant or which the State intends to use against the defendant at trial.

7. Copies of all applications for, returns from and affidavits in support of all search warrants (whether executed or unexecuted) in these matters.

8. Copies of all arrest warrants in this matter, including supporting affidavits and disclosure of the date, time, place and arresting officer(s) with respect to any warrantless arrest.

9. Disclosure of the identity of any and all informants, past or present, paid or unpaid, who participated in the investigation of this matter.

10. A statement as to whether any evidence or testimony has been produced or compelled pursuant to Attorney General subpoena under 29 Del.C. §2508(a).

11. The date, time and location of the offense(s).

12. Disclosure, pursuant to ***Brady v. Maryland***, 373 U.S. 83 (1963), of all exculpatory information, evidence, or witnesses known to the State or any State agent, including any information which relates to motions to suppress evidence or to dismiss the indictment.

13. Disclosure of all agreements between any agent of the State and any witness or co-defendant, including whether such individual has been or will be promised immunity from prosecution or any other consideration in return for testimony.

14. Disclosure, per ***Boyer v. State***, Del.Supr., 436 A.2d 118, 1126 (1986), of any criminal record of prosecution witnesses accessible to the State and reflecting on said witness' credibility.

15. Disclosure of statements, interviews, reports or other information reflecting adversely on the credibility of any prosecution witness, including but not limited to inconsistent statements, reports or prior testimony.

16. An opportunity pursuant to ***Jencks v. U.S.***, 353 U.S. 657 (1957), to review reports and statements, whether oral, written or recorded, made by persons who will testify at trial, regardless of whether the individual used the statement or report to prepare for examination. I would appreciate it if you could share this information with me prior to trial in order to avoid delay prior to cross-examination.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br

xc. Damone Flowers

STATE OF DELAWARE )
) SS
NEW CASTLE COUNTY )

**AFFIDAVIT**

**State of Delaware v. Damone Flowers**
**ID #9808000280**

I certify that a Discovery Request in the above captioned case was hand delivered on March 25, 2002, to:

James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE 19801

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE 19801
Attorney for Defendant

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

MOTION FOR PRODUCTION OF BRADY MATERIAL

COMES NOW the defendant, through his attorney Eugene J. Maurer, Jr., and moves that he be immediately provided with certain ***Brady*** materials currently in the possession of the State. The bases of this Motion are as follows:

1. The State previously provided the defense with the identity of a witness who apparently indicated to the State that there was a second shooter present at the time of the incident in question. This information was contrary to other witness testimony that had previously been provided. With respect to this individual, the defendant requests that he immediately be provided with the following:

(a) The identity of this witness;

(b) The present or last known address of the witness;

(c) Copies of all police notes, transcripts or intelligible tapes of the witness' statements.

2. The State previously provided to the defense a taped statement of a witness by the name of Bennie Wright which the State indicated was ***Brady*** material. Counsel has attempted to listen to the taped statement of which he was provided a

copy and the statement is in large part unintelligible. Counsel therefore requests that he immediately be provided with the following:

(a) The current or last known address of the witness;

(b) Copies of all police interview notes reflecting statements of the witness, copies of all transcriptions of the witness' statement and an intelligible copy of the taped statement itself.

3. The State has also previously advised the defense of the identity of a witness by the name of Bruce Duncan but the State provided defense counsel only with a copy of a map drawn by the witness during an interview conducted on December 19, 2001. The State indicated that they would forward to the defense a taped copy of the interview but despite requests, that copy has not been forthcoming. The defense therefore immediately requires the following information with respect to the following:

(a) The current or last known address of the witness;

(b) Copies of all police interview notes regarding the witness' statement, any transcription of the witness' statement and an intelligible copy of the witness' taped statement.

4. There is an eyewitness to the shooting in this case who resides in Baltimore, Maryland. The defense was provided with a redacted copy of the police

report indicating that this witness observed the shooting, was shown a photographic lineup which included the defendant and did not identify the defendant as the shooter in the case. The defense has sought on a previous occasion to be provided with the name and address of this witness who resides in Baltimore, Maryland, since counsel must seek to secure the witness' presence through the Interstate Compact. This information has not been provided and counsel needs this information immediately if he is going to be able to secure the presence of the above witness.

5.    Trial in this case is scheduled to begin in three weeks and defense counsel is running out of time to be able to properly prepare this matter for trial. In particular, counsel needs to know the identities and locations of the above indicated witnesses together with the information provided if he is going to be able to secure their attendance at trial. Counsel therefore requests an immediate order requiring that the above information be provided.

6.    Counsel has reason to believe that many of the State's witnesses have prior criminal records which could be utilized for impeachment purposes. Counsel therefore requests that he immediately be provided with the prior criminal records of all State's witnesses.

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE 19801
Attorney for Defendant

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID #9808000280 |
| | ) | |
| DAMONE FLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW, TO WIT, this day of , 2002, the foregoing Motion for Production of ***Brady*** Material having been heard and considered, it is hereby

ORDERED ______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________
J.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
)
v. ) ID #9808000280
)
DAMONE FLOWERS, )
)
Defendant. )

**MOTION TO COMPEL RESPONSE TO DISCOVERY**

COMES NOW the defendant, through his attorney Eugene J. Maurer, Jr., and moves that this Court enter an Order requiring the State to immediately provide the below listed materials. Counsel has previously requested production of these materials and received no response from the State. A copy of counsel' most recent effort to obtain discoverable materials is attached hereto and is reflected in counsel's letter to the State dated February 8, 2002. Counsel requests the immediate production of the below discoverable materials:

*1. A copy of the autopsy report;

2. A copy of the Superior Court search warrant executed on the victim's vehicle;

*3. Copies of the victim's medical records from the hospital generated prior to his death;

*4. A copy of the photographic lineup utilized for various identifications and shown to various witnesses in this case;

5. A copy of an Evidence Detection Report prepared by Det. Sammons;

*6. An opportunity to review the photographs taken in connection with

the case together with being provided with a copy of the crime scene videotape. A blank videotape was forwarded to the State accompanying the February 8th letter.

Trial in this case has been scheduled for May 7, 2002. The failure of the State to provide the above requested information together with information sought in an accompanying *Brady* Motion could well jeopardize the ability of the defense to go forward on the schedule trial date.

EUGENE J. MAURER, JR.
1201-A King Street
Wilmington, DE 19801
Attorney for Defendant

EUGENE J. MAURER, JR., P.A.
ATTORNEY AT LAW
[illegible] STREET
WILMINGTON, DELAWARE 19801
[illegible] 2900
FAX [illegible]

February 8, 2002

James Rambo, Esq.
Cynthia Kelsey, Esq.
Deputies Attorney General
820 N. French Street
Wilmington, DE 19801

RE: **State of Delaware v. Damone Flowers**
**ID #9808000280**

Dear Jim & Cynthia:

I have recently had an opportunity to review the above file as well as the materials that have been provided to me by Tom Pedersen. I have numerous requests and inquiries which I will set forth numerically below with respect to information that is needed and steps that I feel need to be taken. These are as follows:

1. I do not see a copy of the autopsy report. Would you please provide it.

2. I do not have a copy of the Superior Court search warrant executed on the victim's vehicle. Could you provide it?

3. I do not have copies of the victim's medical records from the hospital generated prior to his expiration. Could you provide them?

4. It appears that Tom Pedersen had been requesting a copy of the photographic lineup utilized for the various identifications but that he never received it. Could you provide that?

5. The witness interview section of Det. Brock's report jumps from Witness No. 3 to Witness No. 5. Was there a witness No. 4 and if so, could you provide me with a summary of his or her statement? If not, could you also advise on that?

6. Although Det. Brock's police report was provided in its entirety, Page 16 was omitted. Was that intentional or inadvertent and if the latter, can it be provided to me at this time? If the former, could you advise as to the reason for the omission.

7. Although reference is made to an evidence detection report prepared by Det. Sammons, it does not appear that report has been provided. This would seem to be fairly significant so I would request that you provide me with a copy of that report.

8. Although I see in Tom Pedersen's file that you had provided him with an "automatic discovery response", I do not seem to have that. Could you provide it?

9. I would like to have an opportunity to review the photographs taken in connection with the case and also would like to obtain a copy of the crime scene photograph which I assume was done. I am enclosing at this time a blank videotape and requesting that I be provided with a copy of the crime scene video. I would also like to know when I might be able to review the photographs. Please advise.

The following requests are in the nature of ***Brady*** requests which I am making for the record:

1. It appears that the witness from Maryland witnessed the shooting and was shown a photographic lineup with the defendant's picture in it. It further appears that this witness did not make an identification. If you are not going to be calling this witness at trial, please provide me with his name and address so that I can have an appropriate subpoena issued under the interstate compact. This may take some time so I would appreciate a response as soon as possible.

2. Under ***Boyer v. State***, I am requesting that you provide me with the criminal records of the anticipated State's witnesses.

3. I understand that Tom Pedersen had to withdraw as counsel due to his representation of a witness who was indicating that there was more than one shooter at the scene. I do not have a recollection of who that witness was or of what that witness was saying. Would you please provide me with all reports regarding this witness and also please provide me with that witness' identity as well.

I believe that there also might be some reference made in the record to a supplemental report prepared by Det. Brock and that has not been provided. Although not obviously required by discovery, is there any such report? Also, it seems to me in reviewing the records that were almost all of the witnesses interviewed by the police provided videotaped statements. I must admit that I believe that I know the identities of almost all of these individuals. Since that is the case, would you be willing to provide me with these videotapes well in advance of the trial date so that I might have an opportunity to review them and not have to scramble around at the last minute? Obviously, not providing these statements in advance of trial will certainly drag things out. Since I also have reason to believe that some of these witnesses may be recanting their statements in whole or in part, I will need to review the original tapes. Please advise as to whether you would be willing to do this.

I think that is all that comes to me at the present time. If I have additional questions or inquiries, I will get in touch with you.

Would you please let me know whether you are going to resist any of my requests and in particular any of the *Brady* requests. If so, it will be necessary for me to file a motion as soon as possible.

Thank you for your attention to this.

Sincerely yours,

Eugene J. Maurer, Jr.

EJM:br
Enc.

xc. Damone Flowers

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
)
v. ) ID #9808000280
)
DAMONE FLOWERS, )
)
Defendant. )

**ORDER**

AND NOW, TO WIT, this day of , 2002, the foregoing Motion for Production of ***Brady*** Material having been heard and considered, it is hereby

ORDERED ______________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

______________________________
J.

Page #17
Case #98-17807
Detective Andrew Brock I/6369

INVESTIGATIVE PROCEDURES CONTINUATION:
Apartment complex employee and showed them a picture of Damone Flowers. The person advised that at approximately 0830 hours they observed a subject matching the general build and likeness of Flowers leaving the Apartment Complex in a small blue Mazda MX-6 with tinted windows. They also stated that the vehicle has white Delaware temporary tags and was being operated by his sister ([redacted]. This officer immediately suspected that Adrienne Dawson may have had contact with Damone Flowers, and responded to her work place which is the Beneficial Bank located at the Super Thriftway on Route 202. Upon making contact with Adrienne it was later determined that the person in the vehicle was her husband [redacted]) She was transported into Central and interviewed by Damone Flowers' Probation Officer [redacted]. No further leads on Flowers whereabouts were developed at this time.

? what done?

At 1530 hours this officer along with Detective David Simmons conducted an interview with [redacted] BNNH-16, at the Wilmington Police Detective Division Interview Room #1. Chamblee advised that he witnessed the shooting incident that occurred at 22nd and Lamotte Street. He gave this officer a description of the suspect and advised that he could possibly identify a picture of the suspect. [redacted] reviewed a six picture Photographic Line-up and he positively identified Damone Flowers photograph as being the perpetrator in this crime. For additional details of interview see witness section of this report along with the transcripts.

On August 4, 1998 this officer responded to [redacted]. Baltimore, MD, and interviewed [redacted] BMNH-11. During the interview he advised that he witnessed the shooting incident that occurred on August 1, 1998 in the area of 22nd and Lamotte Street. Earl advised that he observed the subject shooting the gun, but he was sure if he could remember what the person looked like. He then reviewed a six picture WPD Photographic Line-up and he was unable to identify the suspect. For additional details refer to the Witness Interview section of this report along with audio transcripts.

On August 4, 1998 at 2000 hours this officer along with Detective Anthony Harris spoke with Catherine Collins BFNH-37, address of 33 E. 23rd Street at the Wilmington Police Detective Interview Room #1. She advised that when she learned about the shooting that occurred at 22nd and Lamotte Street and that Damone Flowers was accused of committing the crime, she immediately contacted the police. She stated that Damone Flowers could not have committed the crime because at the reported time of occurrence he was in the bed with her. She stated that he comes to visit her ever night at 12 o'clock midnight, and on this date he was home with her.

EXHIBIT P
A-84.

DAMONE FLOWERS
D.C.C.
1181 PADDOCK RD.
SMYRNA, DE. 19977

EUGENE MAURER
1201-A KING ST.
WILMINGTON, DE. 19802

11-24-04

Dear Mr. Maurer,

Thank you for the copies of the transcripts you had in your possession. It has taken me a little time to review everything and compare my notes with the trial transcripts. I took an overview approach in analyzing the case and asked questions regarding areas of interest. Now I am loosely researching case law and Superior Court Rules with an eye towards pairing questionable areas with case law.

In this way I've come up with several questions that I need you to answer and some materials that I'll need from you.

1. On April 15, 2002, you filed 2 motions in Superior Court. One was a Motion for Production of Brady material and the other was a Motion to Compel. The Production of Brady motion requested information of a exculpatory nature. Did the State ever turn over any of that material? If they did, can you forward the transcribable portions to me.

2. There was a letter mentioned from Predeaux's attorney Mr. Cross that was sent to Cynthia Kelsey discussing plea agreements, among other things, we asked for that letter. Did we ever get it? If so, I would like a copy of that letter.

3. In a letter dated October 3, 2002, from you to Rambo & Kelsey. You made mention of a draft Motion that you contemplated filing if the state couldn't refute some allegations regarding their courtship of Predeaux.

EXHIBIT R.

You sent me a copy of the letter but you never sent me a copy of that draft motion. Please send me a copy of that motion. (Im thinking it was a Motion to Dismiss).

4. You interviewed Attorney's Cross and Terranova in context of the Motion for a New Trial that was subsequently withdrawn. Is there a transcription of these interviews? If not, can you give me an account of what transpired, to the best of your recollection?

As of right now that's all the questions I need answered but I may need you again in the near future. I just recently found out about The Antiterrorism and Effective Death Penalty Act of 1996 and the one-year limitation it established on filing habeas corpus petitions. More importantly when that year is being counted. I reviewed a few cases, but correct me if I'm wrong, the year counts when you are not actively seeking post conviction relief in the state courts?, i.e. right now.

In any event, my best wishes to you and the family during the holiday season. I look forward to hearing from you in the near future.

Sincerely yours,

DAMONE FLOWERS

EUGENE J. MAURER, JR., P.A.
ATTORNEYS AT LAW
1201-A KING STREET
WILMINGTON, DELAWARE 19801
(302) 652-7900
FAX (302) 652-2173

March 4, 2005

Mr. Damone Flowers
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dear Damone:

Thank you for your most recent letter dated January 7, 2005 which I received on January 21, 2005. I apologize to you for the delay in responding.

To the extent that I am able, I will answer your questions as follows:

1. I do not believe that there was any response to the Motion for Production of ***Brady*** material and there is no transcript with regard to this issue;

2. I will have to check the file to see if there is any letter in the file;

3. Provided;

4. There is no transcription of the interviews. The best that I can do is tell you that the information that was provided to me did not give rise, in my view, to any basis on which to file a Motion for a new Trial.

I hope that these answers, however sketchy, are of assistance to you.

Sincerely yours,

Eugene J. Maurer, Jr.

EXHIBIT S