ORIGINAL

IN THE UNITED STATES DISTRICT COURT OF DELAWARE

DAMONE FLOWERS,
DEFENDANT, PETITIONER BELOW,

No. 9808000280

06-356

v.

WARDEN THOMAS CARROLL,
STATE OF DELAWARE, RESPONDENTS,

2006 MAY 30 PM 12:53

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## MOTION TO INVOKE DISCOVERY

NOW COMES, the petitioner, DAMONE FLOWERS, pro se, to request that this HONORABLE COURT authorize the petitioner leave to conduct discovery under the Federal Rules of Civil Procedure pursuant to Rule 6(a)(b)(c) of the rules governing Habeas Corpus proceedings of 28 U.S.C. § 2254. The petitioner offers the following information herewith:

### A. BACKGROUND FOUNDATION

Thomas A. Pedersen Esq. (PEDERSEN) was appointed as a conflict attorney to represent the petitioner on May 18, 2000. In the course of that representation PEDERSEN received a copy of a supplemental police report on June 2, 2000. (EXHIBIT A - REPORT OMITTED). The police report was the State's response to discovery request pursuant to Super. Ct. Crim. Rule 16. Several pages were missing from the police report and a copy of the photographic line-up that the used in the case was also missing. PEDERSEN made several attempts to obtain the missing materials. (EXHIBIT B).

It has been established that on Tuesday, May 15, 2001, PEDERSEN attended an office conference relating to the petitioner's case. At that office conference, State prosecutor James Rambo indicated to PEDERSEN that the State had recently come into possession of a video taped interview conducted with an inmate at GANDER HILL.

In which the State was advised that there was an additional shooter besides the petitioner on the night in question. It is established that PEDERSEN requested the exculpatory BRADY statement and that the State suppressed it. It has likewise been established that MARVIN SWANSON was indeed the confidential witness from GANDER HILL who identified an additional shooter. As a reward for cooperating with the State, SWANSON was released from GANDER HILL shortly after he made an incriminating but exculpatory statement against the petitioner and agreed to testify at trial. SWANSON had just been convicted and sentenced to 5 years incarceration on drug charges. Specific dates, such as the date of SWANSON's conviction, his sentencing, the date he made his statement, when he was released from GANDER HILL, etc., are unknown due to the States suppression of the evidence.

Subsequently, PEDERSEN was granted leave to withdraw as counsel due to his prior representation of SWANSON in an unrelated case. Therefore, SWANSON's statement and all related information was never turned over to defense counsel or the petitioner. (See ARGUMENT IX - OPENING BRIEF).

The petitioner filed a Rule 61 motion in May 2005, in which he argued, inter alia, a BRADY violation relating to this matter. (See RULE 61 MOTION - GROUND 9). The petitioner also argued that the State extended deals, reduced pleas or leniency to state witnesses, namely MARVIN SWANSON and OTHELLO PREDOUX. As a result of these arguments within the Rule 61 motion, the State re-arrested SWANSON in the 3RD or 4TH quarter of 2005 and attempted to make him serve out the remainder of the 5 year sentence in jail, in an apparent attempt to cover up its corruptive practice of awarding benefits to cooperating witnesses. A fact the State hotly denied at trial. Again, the specific dates are unknown to the petitioner but a hearing was held in Superior Court before the HONORABLE CHARLES TOLIVER IV between June 2005 and February 2006, in the case STATE v. SWANSON; CR.A. No. IN00-02-0191 and 0194. (See ARGUMENT I - OPENING BRIEF).

In December 2001, State prosecutor Cynthia Kelsey notified defense attorney, EUGENE J. MAURER JR., P.A., of the fact that the State had recently interviewed another witness, who indicated that the petitioner was not the shooter on the night in question by letter dated December 27, 2001. The witness' name was BRUCE DUNCAN. Defense counsel's multiple requests for the exculpatory BRADY statement was ignored. (See ARGUMENT IX - OPENING BRIEF).

Between the years 2001-2002, the State took a statement from another witness named BENNIE WRIGHT, who indicated that the petitioner was not the shooter on the night in question. The State turned over a redacted copy of the taped interview to EUGENE J. MAURER JR. P.A., but because the tape was, in large part unintelligible, defense counsel requested the current or last known address of the witness, copies of all police interview notes reflecting statements of the witness, copies of all transcriptions of the witness' statement and an intelligible copy of the taped statement, in a motion for Production of BRADY MATERIAL filed in Superior Court on April 15, 2002. Again, the specific date on which BENNIE WRIGHT made a statement to investigators is unknown due to the State's suppression of the above requested materials. (See ARGUMENT IX - OPENING BRIEF)

A fourth person was another eyewitness to the shooting who resided in BALTIMORE, MARYLAND. In the supplement report the petitioner was provided with a redacted copy of the police report, which indicated that this witness observed the shooting and was shown a photographic line-up that included the petitioner. The witness did not identify the petitioner as the shooter on the night in question. The State withheld the witness' name and current or last known address, so that the petitioner was prevented from securing the witness' presence at trial through the Inter-State Compact. Eventually, defense counsel was able to ascertain the witness' name, EARL BALTIMORE, through other channels. (See ARGUMENT IX - OPENING BRIEF).

A fifth witness named CHARMAIN MAYO gave a statement to investigators on August 7, 1998. The police report and preliminary hearing testimony indicated that this witness identified the petitioner as the shooter on the night in question. Subsequently, before the petitioner's scheduled May 7, 2002 trial, the State turned over to defense counsel the taped interview conducted with MAYO. Contrary to the State's position for the previous 4 years, MAYO had actually told investigators that the petitioner was not the shooter on the night in question. At the petitioner's trial, the State blamed the error on the chief investigator stated that he misprinted the statement of 2 witnesses in the police report. (See ARGUMENT IX - OPENING BRIEF)

A sixth witness named OTHELLO PREDOUX was approached by the State prosecutors and Dt. Brock on May 6, 2002, one day before the petitioner's May 7, 2002 was set to begin. At the time PREDOUX was approached by the State, he did have 2 sets of serious criminal charges pending against him in Superior Court along with a violation of probation and had been incarcerated for 5 months at GANDER HILL. PREDOUX' charges combined carried a statutory range of a minimum mandatory 8 thru 56 years of jail time if convicted. Subsequently, all of PREDOUX' charges were reduced to probationary sentences after he made a damaging statement against the petitioner and testified at trial. The State presented PREDOUX to the jury as a man with whom "no deals" had been made. (See ARGUMENT II - OPENING BRIEF)

A seventh person, MAROCKA JETER, was interviewed by investigators on August 1, 1998 regarding the shooting of Alfred Smiley. During that interview JETER explained that she was not present on 22ND & LAMOTTE STREET at the time of the shooting. Between the years 2001-2002, JETER was arrested on drug trafficking charges. While out on bail, JETER was at the Wilmington Police Station in 2002 on unrelated matters. While there though JETER was approached by Dt. Brock and propositioned to help the State convict the petitioner in exchange for her charges being reduced or dismissed.

JETER declined the offer and eventually served a LEVEL V sentence on those charges. (See ARGUMENT I - OPENING BRIEF).

### B. EXHAUSTED STATE REMEDIES

The record shows that the petitioner has exhausted his State court remedies within the meaning of 28 U.S.C. § 2254(b)(c) by presenting every issue raised in his habeas corpus petition to the State courts. (See BRIEF IN SUPPORT FOR EXCLUSION).

The record also shows that the petitioner has exhausted all state remedies in the attempt to acquire the suppressed exculpatory BRADY statements and/or materials. (See ARGUMENT IX - OPENING BRIEF).

### C. SUPERIOR COURT CRIMINAL RULE 16 DISCOVERY AND INSPECTION.

Disclosure of evidence by the State (c) Documents and tangible objects. "Upon request of the defendant, the State shall permit the defendant to inspect, copy or photograph.... which are material to the preparation of the defendants defense...."

Suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material to guilt or to punishment, irrespective of good faith or bad faith of prosecution. U.S.C.A. Const. Amend. 14; SEE ALSO, BRADY v. MARYLAND, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963).

### D. PRESUMPTION OF CORRECTNESS

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless:

1. the merits of the factual dispute were not resolved in the State court hearing;
2. the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
3. the material facts were not adequately developed at the State court hearing; and,
4. the applicant did not receive a full, fair and adequate hearing in the State court proceeding. See, SUMNER v. MATA, 449 U.S. 539 (1981).

It has been established that the petitioner did not become aware of the fact that the State did not turn over the suppressed exculpatory BRADY evidence until after his direct appeal had been affirmed. As a result, the petitioner raised the BRADY violation claim in his Rule 61 motion. That motion was denied by Judge Johnston pursuant to Super. Ct. Crim. Rule 61(i)(4). The petitioner has clearly demonstrated that Judge Johnston was in error in determining that this BRADY violation claim had been formerly adjudicated. (See ARGUMENT IX - OPENING BRIEF). The Superior Court having been the highest court in the state to address this claim therefore never ordered the state to turn over the suppressed evidence. (See BRIEF IN SUPPORT FOR EXCUSION).

Because Judge Johnston's decision on the Rule 61 motion was erroneous, the factual dispute pertaining to the BRADY violation was not resolved in the State court hearing. (provision 1 above). SUMNER v. MATA, SUPRA. Because Judge Johnston took no steps to obtain the suppressed exculpatory BRADY material, the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing. (provision 2 above). SUMNER v. MATA, SUPRA. Since new developments have come to light since the Rule 61 motion was filed, the material facts were not adequately developed at the State court hearing, i.e., RULE 61 MOTION, in order for Judge Johnston to render a fair hearing. (provision 3 above). SUMNER v. MATA, SUPRA. And since it is obvious that Judge Johnston did not even attempt to investigate the matter, or

at the least order the State or defense counsel to respond to the allegation before making a decision. The petitioner did not receive a full, fair and adequate hearing in the State court proceeding. (provision 4 above). SUMNER v. MATA, SUPRA.

Therefore, considered as a whole, the State record i.e. Superior Court Order denying the Rule 61 Motion, does not fairly support the factual determination and is thus not a correct record. id.

### E. REMEDY SOUGHT

Wherefore, the petitioner seeks authorization by ORDER of this HONORABLE COURT to conduct discovery under the Federal Rules of Civil Procedure. Specifically, the petitioner seeks the following:

Pertaining to Lamar Marvin Swanson:

1. the current or last known address of the witness.
2. an accurate and full transcription of the exculpatory BRADY statement made by the witness at GANDER HILL IN 2001, depicting the date, time and those present at the time of the interview.
3. the nature of how SWANSON became re-involved in the petitioner's case. i.e. did the State approach the witness after his conviction.
4. the identity of the second shooter, identified by the witness.
5. what benefits the witness received for cooperating with the State. Specifically pertaining to his release from GANDER HILL shortly after making a statement against the petitioner and agreeing to testify at his trial. This should include the date and time of his release and what COURT ORDER or any other paperwork that facilitated his release.
6. a full transcription of the Superior Court hearing held in late 2005 or early 2006 (STATE v. SWANSON, 784 A.2d 1082 (2001); CR.A. No.-IN00-02-0191 and 0194) before Judge Charles Toliver. This after SWANSON was re-arrested following the filing of

the petitioner's Rule 61 motion.

7. the witness' sentencing order and court docket sheet relating to STATE v. SWANSON, CR.A. No. IN00-02-0191 and 0194.

8. copies of all police interview notes reflecting statements of the witness.

Pertaining to BRUCE DUNCAN:

1. the current or last known address of the witness.

2. copies of all police interview notes reflecting statements of the witness.

3. an accurate and full transcription of the exculpatory BRADY statement made by the witness on December 19, 2001, including the time, location and those present.

4. the nature of how DUNCAN became involved in the petitioner's case. i.e. did the state approach this witness after his arrest on serious charges.

5. the identity of any other shooter, identified by the witness.

Pertaining to BENNIE WRIGHT:

1. the current or last known address of the witness.

2. copies of all police interview notes reflecting statements of the witness.

3. an accurate and full transcription of the exculpatory BRADY statement made by the witness in 2001, depicting the correct date, time and location of the interview, as well as those present.

4. the nature of how WRIGHT became involved in the petitioner's case i.e. did the state approach the witness after his arrest on serious charges.

5. the identity of any other shooter, identified by the witness.

Pertaining to the Baltimore, Maryland witness:

1. the witness' name.

2. the current or last known address of the witness.

3. copies of all police interview notes reflecting statements of the witness.

4. an accurate and full transcription of the exculpatory statement made by the witness in August 1998, depicting the correct date, time, location of the interview and those present.

5. the identity of the person the witness picked out of the photographic line-up.

Pertaining to CHARMAIN MAYO:

1. the current or last known address of the witness.

2. copies of all police interview notes reflecting statements of the witness.

3. an accurate and full transcription of the exculpatory statement made by the witness on August 7, 1998, depicting location of the interview and those present.

4. the identity of the person, if any, the witness believed to be the shooter.

Pertaining to OTHELLO PREDOUX:

1. the current or last known address of the witness.

2. copies of all police interview notes reflecting statements of the witness.

3. a copy of the reduced plea agreement PREDOUX entered into with the State on July 29, 2002 in Superior Court relating to his weapons charges.

4. a copy of the letter sent from Predoux' lawyer to Mrs. Cynthia Kelsey in September 2002. (Admitted at trial as Defendants Exhibit #6).

5. a copy of the reduced plea agreement PREDOUX entered into with the State on November 18, 2002 in Superior Court relating to his drug charges.

6. what benefits the witness received for cooperating with the State.

Pertaining to MAROCKA JETER:

1. docket sheet and sentencing order of the witness relating to a cocaine trafficking charge

she was arrested for in 2002.

FURTHER, the petitioners seeks:

1. Disclosure of the identity of any and all informants, past or present, paid or unpaid, who participated in the investigation of this matter.

2. A statement as to whether any evidence or testimony has been produced or compelled pursuant to Attorney General Subpoena under 29 Del.C. Section 2508(a).

3. The date, time and location of each and every alleged offense.

4. Disclosure, as mandated by BRADY v. MARYLAND, 373 U.S. 83 (1963), of any and all exculpatory information, evidence, or witnesses known to the State or any State agent, including any such information, evidence, or witnesses known to be significant to the defense, which might create a reasonable doubt as to guilt, or which relates to motions to suppress evidence or dismiss the indictment. See, PIERSON v. STATE, 351 A.2d 860 (Del. 1976).

5. Disclosure of any and all agreements, in any form, between any agent of the State and any witness, including whether such individual(s) has been or will be promised immunity from prosecution or any other consideration in return for testimony.

6. Disclosure, as mandated by BOYER v. STATE, 436 A.2d 1118, 1126 (1981), of any criminal record accessible to the State of prosecution witnesses.

7. Disclosure of statements, interviews, reports or other information relating to the credibility of any prosecution witness, including but not limited to inconsistent statements, reports or prior testimony.

8. An opportunity pursuant to JENCKS v. UNITED STATES, 353 U.S. 657 (1957), to review reports or statements, whether oral, written or recorded, made by persons who testified at trial, regardless of whether the individual used the statement or report to prepare for examination.

9. Page 16 of the Supplemented Police Report.

10. A copy of the photographic line-up used by investigators in this case.

WHEREFORE, because the State withheld critical exculpatory BRADY evidence that prevented the petitioner from utilizing the exculpatory materials and evidence at trial, the petitioner's constitutional right to due process has been violated. BRADY v. MARYLAND, supra; U.S.C.A. Const. Amend. 14.

The petitioner asks this HONORABLE COURT to grant the application for writ of habeas corpus after 90 days if the respondents fail to disclose the suppressed exculpatory BRADY materials and any other relevant material requested above.

DATE: MAY 24, 2006

Respectfully submitted,

*Damone Flowers*

DAMONE FLOWERS
D.C.C.
1181 PADDOCK ROAD
SMYRNA, DE. 19977



M. JANE BRADY
ATTORNEY GENERAL

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

| NEW CASTLE COUNTY | KENT COUNTY | SUSSEX COUNTY |
|---|---|---|
| Carvel State Building | Sykes Building | 114 E. Market Street |
| 820 N. French Street | 45 The Green | Georgetown, DE 19947 |
| Wilmington, DE 19801 | Dover, DE 19901 | (302) 856-5352 |
| Criminal Division (302) 577-8500 | Criminal Division (302) 739-4211 | Fax: (302) 856-5369 |
| Fax: (302) 577-2496 | Fax: (302) 739-6727 | |
| Civil Division (302) 577-8400 | Civil Division (302) 739-7641 | |
| Fax: (302) 577-6630 | Fax: (302) 739-7652 | |

PLEASE REPLY TO:

NEW CASTLE COUNTY

June 2, 2000

Thomas Pedersen, Esquire
727 B North Market Street
Wilmington, DE 19801

RE: **State of Delaware v. Damone Flowers**

Dear Tom:

Enclosed please find the police reports in the above-captioned case.

Very truly yours,

James A. Rambo
Deputy Attorney General

Enclosures
JAR\tjk

EXHIBIT A

# THOMAS A. PEDERSEN
ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN
MEMBER DE. BAR

TELEPHONE (302) 652-7905
FAX (302) 652-1467

James Rambo
Deputy Attorney General
Dept. of Justice
820 N. French Street
Wilmington, DE 19801

Date: 11-16-00
Re: State of Delaware vs. Damone Flowers id# 9808000280, 9808004338

Dear Jim,

Kindly send me a copy of the photographic lineup that the police used to show to the witnesses in the above referenced cases.

I look forward to hearing from you soon.

Very Truly Yours,

Thomas A. Pedersen

EXHIBIT B

# THOMAS A. PEDERSEN
ATTORNEY AT LAW
727-B N. MARKET STREET
WILMINGTON, DELAWARE 19801

THOMAS A. PEDERSEN
MEMBER DE. BAR

TELEPHONE (302) 652-7905
FAX (302) 652-1467

Damone Flowers
Gander Hill Prison
P.O. Box 9561
Wilmington, De. 19809

Date: 8-3-00

Dear Damone,

    I have received your letters and your, "suggestions", for motions which I should be filing. Please understand that we have several months to go prior to your trial. While I agree that it will be beneficial to obtain funds for a private investigator, I will not at this point file a motion to dismiss based upon a failure to bring this case to trial in a timely fashion. I am ethically bound not not file motions which have no realistic chance of being successful. Based upon the fact that it took a long time for the police to get you into their custody as well as the fact that you are currently serving another sentence, we cannot claim any prejudice regarding the fact that the case is not scheduled for trial until April of 2001. However, if for any reason that trial date should be rescheduled, we would then be in a position to pursue that avenue.

    There is currently an office conference scheduled for August 25th, 2000. You will not be brought in at that time, however I will be out to visit you shortly thereafter and advise you of what took place. I am also attempting to track down the missing page of the police report and will hopefully have that for you soon.

Very Truly Yours,

Thomas A. Pedersen

EXHIBIT B