# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **DAMONE E. FLOWERS**, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 06-356-GMS |
| | : | |
| **THOMAS C. CARROLL**, | : | |
| Warden, and **CARL C. DANBERG**, | : | |
| Attorney General for the State of Delaware, | : | |
| | : | |
| Respondents. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In April 2000, a Delaware grand jury indicted the petitioner, Damone E. Flowers, for first degree murder, possession of a firearm during the commission of a felony, and possession of a firearm by a person prohibited, all in connection with an August 1, 1998 shooting.  *See* Del. Super. Ct. Crim. Dkt. ("Del. Dkt.") at Item 3 in case no. 9808000280A.  The person prohibited charge was severed, and, in October 2002, a Superior Court jury found Flowers guilty of first degree murder and the remaining weapon offense.  Flowers moved for a new trial, but that motion was denied by Superior Court in February 2003.  *See* Del. Dkt. at Item 86.  On April 25, 2003, Flowers was sentenced to life in prison without the possibility of probation or parole for the murder and ten years in prison for the weapon offense.  *See* D.I. 2 at 2.  Flowers' convictions and sentence were affirmed on appeal.  *Flowers v. State*, 858 A.2d 328 (Del. 2004).

In May 2005, Flowers filed a *pro se* motion for postconviction relief under Superior Court Criminal Rule 61.[1]  *See* Del. Dkt. at Item 103.  Superior Court denied the motion without prejudice on June 28, 2005, to allow Flowers to set forth his claims in summary form as required by the Rule.  *See* Del. Dkt. Item 106 (attached as Exhibit A to D.I. 4).  In September 2005, Flowers filed an amended motion for state postconviction relief under Superior Court Criminal Rule 61.  *See* Del. Dkt. at Item 108.  The court denied the motion in December 2005.  *See* Del. Dkt. Item 110 (attached to D.I. 2).  The state supreme court dismissed Flowers' appeal as untimely on April 4, 2006.  *Flowers v. State*, 2006 WL 889368 (Del. Apr. 4, 2006).  Flowers' federal habeas petition is dated May 24, 2006.  D.I. 2.

<u>Facts</u>

As detailed by the Delaware Supreme Court in *Flowers v. State*, 858 A.2d 328, 330 (Del. 2004), the facts leading to Flowers' arrest and conviction are as follows:

> On August 1, 1998 Alfred Smiley drove a car with two passengers in the area of 22nd and Lamotte Streets in Wilmington.  At some point, Smiley became involved in an argument with people on the street.  A gunshot fired from the sidewalk next to the car struck Smiley in the chest.  The car careened out of control on the street and came to rest against a utility pole.  Wilmington Police responded to the call and took Smiley to the hospital where he died from the gunshot wound.
>
> The State charged Damone Flowers with Smiley's murder and presented five witnesses at trial who were alleged to have been present at the scene of the shooting.  Most of the incriminating evidence was presented through pretrial taped statements.  Flowers presented no witnesses and did not testify.

<u>Discussion</u>

In his petition for federal habeas relief, Flowers raises fifteen grounds for relief:  (1) the offer by prosecutors of favorable plea agreements to potential witnesses who had been arrested in exchange for testimony violated Flowers' right to a fair trial; (2) Flowers' right to a fair trial was

---

[1] Flowers originally attempted to file his postconviction motion in April 2005, but it was rejected for lack of Flowers' original signature.  *See* Del. Dkt. at Item 102.

violated when the prosecutors allowed Othello Predeoux to plead to a reduced charge in exchange for his testimony and the prosecutors failed to disclose the plea agreement; (3) prosecutors deliberately misled the court to delay the trial proceedings to further develop Predeoux as a witness in violation of Flowers' due process rights; (4) the prosecutors improperly suggested that Flowers was a member of the Deuce-Deuce gang and that gang members were intimidating witnesses; (5) the trial judge abused her discretion by not giving, *sua sponte*, a curative instruction after Flowers' family and friend were ejected from the courtroom; (6) the cumulative errors at trial (revelation to the jury of defense counsel's prior representation of a prosecution witness and Flowers' criminal history; admission of hearsay evidence) resulted in a fundamentally unfair trial; (7) Flowers was denied effective cross-examination of Ponetta Sudler, Tyshiek McDougal and Othello Predeoux due to their claimed memory loss at trial in violation of the Confrontation Clause; (8) prosecutors elicited false testimony from Predeoux regarding the disposition of his criminal charges; (9) prosecutors committed a *Brady*[2] violation by failing to turn over exculpatory statements made by four different men in which they indicated that Flowers was not the shooter or identified another shooter in addition to Flowers; (10) the police used suggestive interview techniques that led to unreliable identifications of Flowers by Vernon Mays and Matthew Chamblee; (11) trial counsel did not provide effective assistance because he failed to: hire drug and identification experts; put on the planned defense; object to unreliable identifications and courtroom ejections; address Flowers' flight or request jury instructions regarding flight; and counsel withdrew his motion for a new trial on the day of the scheduled hearing; (12) Ronetta Sudler's videotaped statement should not have been admitted at trial (under DEL. CODE ANN. TIT. 11, § 3507) because it was not voluntarily obtained; (13) the prosecutor

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

recklessly elicited from the State's witness, Adrienne Dawson, that Flowers had been in jail, and the curative instruction was insufficient to cure the prejudice; (14) Predeoux's non-responsive answer to defense counsel's question revealed to the jury that defense counsel had previously represented the witness, destroying counsel's credibility with the jury; and (15) the prosecutor's references in his opening statement to "the double deuce group, the 22nd Street regulars" and a "code of silence" were not supported by the evidence and were extremely prejudicial.  D.I. 2 at 6-33.  Flowers' claims, however, do not provide a basis for relief.

**Claims are time barred**

Flowers is not entitled to relief because the claims presented in his petition are untimely under 28 U.S.C. § 2244(d).  Because Flowers' petition was filed in May 2006, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law by the President on April 24, 1996.  *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 802-03 (D. Del. 1997).  By the terms of § 2244(d)(1), a federal habeas petitioner must file the petition within one year of the date on which the state court judgment became final upon the conclusion of direct review.  *See* 28 U.S.C. § 2244(d)(1)(A); *Calderon v. Ashmus*, 523 U.S. 740, 742-43 (1998).  Thus, the one-year period of limitations began to run when Flowers' conviction became final under § 2244(d)(1)(A).[3]  *See, e.g., Gibbs v. Carroll*, 2004 WL 1376588, *2 (D. Del.).  The Delaware Supreme Court affirmed Flowers' conviction and sentence on August 31, 2004.  *Flowers*, 858 A.2d 328.  Although Flowers did not seek review by the United States Supreme Court, the ninety-day period in which he could have filed a petition for a writ of certiorari

---

[3] Flowers does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. § 2244(d)(1)(B)-(D) are applicable.

expired on November 29, 2004. *See Kapral v. United States*, 166 F.3d 565, 576 (3d Cir. 1999) (holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Flowers thus had until November 29, 2005, to file his federal habeas petition without running afoul of § 2244(d). *See, e.g., Samuel v. Carroll*, 2004 WL 1368845 (D. Del.); *Morales v. Carroll*, 2004 WL 1043723 (D. Del.). Flowers' petition, dated May 24, 2006, is obviously filed past the November 2005 deadline.[4] The petition is thus untimely and must be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

In turn, the tolling mechanism of § 2244(d)(1) does not save Flowers' petition from the running of the limitations period. *See* 28 U.S.C. § 2244(d)(2). When applicable, § 2244(d)(2) tolls the one-year period of § 2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. Although Flowers' postconviction motion acted to toll the limitations period, an aggregate period of more than the one-year limitations period elapsed, and his claims are time barred. In the first instance, 293 days elapsed after November 29, 2004, the date after which the limitations period started to run, before Flowers properly filed a state postconviction motion in Superior Court under Criminal Rule 61 on September 20, 2005. *See* Del. Dkt. at Item 108. Flowers had first attempted to file a postconviction motion on April 27, 2005, but that filing was rejected as non-conforming for failure to have an original signature. *See* Del. Dkt. at Item 102. Flowers' second attempt at filing a postconviction motion, filed on May 3, 2005, was denied without prejudice for failure to comply with Superior Court Criminal Rule 61(b)(2), requiring that a petitioner set forth the facts supporting his grounds for relief in

---

[4] *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (a prisoner's petition is considered filed on the date he delivers it to prison officials for mailing); *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998) (same); *Woods v. Kearney*, 215 F. Supp.2d 458, 460 (D. Del. 2002) (date on petition is presumptive date of mailing and, thus, of filing).

summary form. *See* Del. Dkt. Item at 106 (Exhibit A attached to D.I. 4). Thus, the motion was

not "properly filed" until September 20, 2005.[5] *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000) ("An

application [for state post-conviction relief] is properly filed when its delivery and acceptance

are in compliance with the applicable laws and rules governing filings."); *Fahy v. Horn*, 240 F.3d

239, 243 (3d Cir. 2001) ("we must look to state law governing when a petition for collateral

relief is properly filed"); *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998).

Superior Court ultimately denied the motion on December 13, 2005 as procedurally

barred. Del. Dkt. Item 110 (attached to D.I. 2). Flowers then attempted to appeal this decision,

but his appeal was dismissed as untimely. *See Flowers*, 2006 WL 889368 at *1 (Del. Apr. 4,

2006). Because Flowers' appeal was dismissed as being untimely, the appeal was not properly

filed, and thus did not toll the limitation period. *See Pace v. DiGuglielmo,* 544 U.S. 408, 414

(2005); *Cannon v. Carroll*, 2006 WL 2949302, *3 (D. Del. Oct. 17, 2006). Consequently,

Flowers' postconviction action tolled the limitations period only from September 20, 2005

through January 12, 2006, the date on which the thirty-day period for filing a timely state

postconviction appeal expired. *Cannon*, 2006 WL 2949302 at *3; *Eley v. Snyder*, 2002 WL

441325 at *2-3 (D. Del. Mar. 21, 2002). Another 131 days passed after January 12, 2006 before

Flowers filed his federal habeas petition on May 24, 2006. An aggregate of 424 days elapsed,

and as a result, the one-year limitation period of § 2244 expired. Flowers' claims are thus

untimely and should be dismissed.

Nonetheless, the limitation period may be subject to equitable tolling. *See, e.g., Thomas*

*v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del.) (describing rule). Equitable tolling, however,

---

[5] The question of whether a properly filed postconviction motion can relate back to the date that
the motion was first filed, albeit not properly, is currently before the Third Circuit in *Austin v.*
*Carroll*, No. 04-3811.

applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). In order to trigger equitable tolling, Flowers must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims" and that he was prevented from asserting his rights in some extraordinary way; mere excusable neglect is insufficient. *Id.* at 618-19 (citations omitted); *Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004). Here, Flowers alleges that because he did not receive the Superior Court order denying his state postconviction motion until December 15, 2005 (two days after it was issued), the prison staff was slow to provide various necessary services during the holiday season, and his mail was not sent from the prison in a timely manner, his appeal was untimely. D.I. 4. Presumably, although not articulated in his petition or supporting documents, Flowers believes that but for the rejection of his untimely appeal by the state supreme court, the limitations period would have been tolled while the court reviewed his claims and he could have timely filed his habeas petition.

Regardless of the actions or inaction of the prison staff, the Clerk of the Delaware Supreme Court issued a notice to show cause on January 17, 2006, at which point Flowers was on notice that he had filed an untimely appeal. *See* D.I. 4 at Exhibit E. Under clearly established Delaware law, the timely filing of a notice of appeal is a jurisdictional requirement. *E.g., Eller v. State*, 531 A.2d 951, 952 (Del. 1987). Unless Flowers could show that his failure to file a timely notice of appeal was attributable to the actions of judicial personnel, the appeal would be dismissed. *E.g., Bey v. State*, 402 A.2d 362, 363 (Del. 1979). When Flowers received notice that his appeal was untimely, he could have filed his federal habeas petition to forestall the expiration of the limitations period. *See Pace*, 544 U.S. at 415 ("A prisoner seeking state postconviction relief might avoid this predicament [of discovering too late his motion was not

properly filed], however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted."). Instead, Flowers elected to try to convince the Delaware Supreme Court to excuse the untimely filing of the notice of appeal.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003) (no equitable tolling when petitioner had been informed that his state filing was untimely and yet petitioner elected to file only a state appeal rather than filing his federal habeas petition).  In any case, Flowers' litany of excuses as to why his appeal was untimely does not constitute extraordinary circumstances meriting equitable tolling.  "To the extent that petitioner's failure to timely file his petition was the result of a mistake, a mistake does not constitute an extraordinary circumstance."  *Wilmer v. Carroll*, 2003 WL 21146750, *5 (D. Del.); *see Simpson v. Snyder*, 2002 WL 1000094, order at *3 (D. Del.) (rejecting such an argument made by petitioner).  "In non-capital cases, 'attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling.'"  *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (quoting *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)); *see also Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002).

Further, there is no reason to invoke equitable tolling for the time between when Flowers filed his nonconforming postconviction motion on April 27, 2005 or May 3, 2005 and when he properly filed his postconviction motion on September 20, 2005.  In the first instance, the delay in processing Flowers' filing was not an extraordinary circumstance sufficient to invoke the doctrine of equitable tolling.  The obligation to exercise due diligence does not relate only to the filing of the federal habeas petition, but also requires diligence during the time that the petitioner is exhausting state court remedies.  *See LaCava v. Kyler,* 398 F.3d 271, 277 (3d Cir. 2005); *see also Jones*, 195 F.3d at 160 (no equitable tolling warranted where petitioner failed to show due

diligence in satisfying the exhaustion requirement). Flowers acknowledged that he was aware of the one-year limitations period some time before November 29, 2004, the day before the limitations clock began to run. *See* D.I. 7 at Exhibit R. Having made no attempt to file any motions for more than eight months after his conviction was affirmed by the Delaware Supreme Court, while also being aware that the clock was ticking, Flowers can hardly then complain that a judge might take several weeks to review a post-conviction motion. An eight-week delay in the court system is not an "extraordinary" situation. *Cf. Phillips v. Donnelly*, 216 F.3d 508 (5th Cir. 2000) (holding equitable tolling *may* be available where petitioner alleged receipt of notice denying state writ *four months* after decision). Criminal Rule 61 provides for the clerk to return a non-complying motion "if a judge of the court so directs." DEL. SUPER. CT. CRIM. R. 61(c)(1). Based on the language of the rule, Flowers should have known that there was some potential for his motion to be returned after review by a judge. Certainly, it would have been reasonable for Flowers to expect that a judge would not review his motion immediately. Flowers has not explained how the delay prevented him from filing his federal habeas petition. *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing . . . .").

In *Rainey v. Secretary for the Dep't of Corrections*, 443 F.3d 1323, 1329-30 (11th Cir. 2006), the Eleventh Circuit held that Rainey had not carried his burden of establishing the propriety of equitable tolling where the limitations period of § 2244(d)(1) expired while his state post-conviction motion was pending for seven months before being dismissed for failure to comply with Florida's oath requirement. The court noted that Rainey did not attempt to ascertain the status of his motion during the seven-month period, and thus he "failed to act diligently, and

the untimeliness of his petition was due to circumstances within his control." 443 F.3d at 1330. Flowers, on the other hand, had notice that his motion was deficient before the expiration of § 2244(d)(1)'s limitations period, and yet still he failed to file a timely federal petition. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (*pro se* petitioner who had five days to submit a notice of appeal, but failed to do so was not entitled to equitable tolling). Flowers' assertions simply do not rise to "the rare situation where equitable tolling is demanded." *Jones*, 195 F.3d at 159. In short, Flowers' claims are untimely under § 2244(d), and there is no basis upon which any relevant time should be excluded by virtue of the equitable tolling doctrine.

**Claims 1-11 are procedurally barred**

Alternatively, Flowers' claims 1-3 and 5-11 (*see supra* at 2-3) [6] were not presented to the Delaware Supreme Court and are thus unexhausted. *See Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). Ordinarily, a failure to exhaust a claim results in dismissal of the habeas petition, *Rose v. Lundy,* 455 U.S. 509 (1982), or a stay of the federal habeas proceedings to allow the prisoner to exhaust state court remedies (*Rhines v. Weber*, 544 U.S. 269 (2005)). If, however, there is no available state remedy, then Flowers is excused from the exhaustion requirement with respect to these claims. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989). Because Flowers would now be procedurally barred from raising these claims in state court by Superior Court Criminal Rule 61(i)(4) barring any ground for relief that was formerly adjudicated unless reconsideration is warranted in the interest of justice,[7] exhaustion is excused. *See Teague*, 489 U.S. at 297-98; *Castille*, 489 U.S. at 351-52; *Lines v. Larkin*, 208 F.3d 153, 160 (3d Cir. 2000); *Clark v. Pennsylvania*, 892 F.2d 1142, 1146-47 (3d

---

[6] Claim 4 is essentially the same as Claim 15, and will be discussed at Claim 15.

[7] *See, e.g., McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 512-13 (D. Del. 2003); *Qualls v.Williams*, 2004 WL 2283595 (D. Del. Sept. 29, 2004); *Kennedy v. Kearney*, 1996 WL 534877 (D.Del. Sept. 11, 1996).

Cir. 1989); *Lawrie v.Snyder*, 9 F. Supp. 2d 428, 454 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 804 (D. Del. 1997).

Although deemed exhausted, such claims are still considered to be procedurally barred. *Lines*, 208 F.3d at 160. Thus, because Flowers procedurally defaulted his claims in the state courts, federal habeas review is barred unless he establishes cause for his procedural default in the state courts and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claim. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992); *McLaughlin*, 270 F. Supp. 2d at 513. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986); *Dawson*, 988 F. Supp. at 805. To establish prejudice under the cause and prejudice standard, a petitioner "must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 179 (1982)); *Dawson*, 988 F. Supp. at 804-05.

Flowers asserts the delay in the prison mail system as cause for his procedural default. Flowers apparently placed his notice of appeal from the denial of his postconviction motion in the prison mail on Sunday, January 8, 2006. D.I. 4 at 3. The notice did not reach the Delaware Supreme Court until January 17, 2006. *See* D.I. 4 at Exhibit E. Flowers contends that the prison mail system was an external factor that precluded his compliance with state procedural rules. *See Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) (finding cause for procedural default where *pro se* prisoner had delivered his petition to the prison for mailing five days before the

state's deadline).  Even if the prison mailroom delay is sufficient to establish cause for his procedural default in state court, Flowers cannot establish prejudice for any of his claims.

### Claims 1-3 – prosecutorial misconduct

Flowers alleges prosecutorial misconduct involving the arrests of potential witnesses who were offered favorable plea agreements in exchange for testimony, failure to disclose Predeoux's plea agreement, and misleading the court to delay the trial.  The trial court, having considered these claims either in Flowers' motion for a new trial or in his motion for postconviction relief, properly found that the claims were without merit.  *See* D.I. 6 at 63-71 (order denying Flowers' motion for a new trial); Attachment to D.I. 2 (order denying Flowers' motion for postconviction relief).  There is no reason for this Court to find differently.

In the first instance, Flowers asserts that prosecutors and police "approached criminals from the 22nd & Lamotte Street area in Wilmington, after they had been arrested on serious charges and propositioned these men and women to make damaging statements against the petitioner."  D.I. 5 at 14.  Flowers states that two of these witnesses gave damaging statements and received benefits.  D.I. 5 at 17.  Further, Flowers claims that because he was not provided with *Brady* material regarding Othello Predeoux and Marvin Swanson (Swanson did not testify at trial), the petitioner was precluded from properly cross-examining Predeoux regarding his plea agreement and from calling Swanson as a defense witness.  Had the State not suppressed information that Predeoux had entered into a plea bargain and that Swanson had made a statement, Flowers contends that he could have argued to the jury that the State systematically approached people in a corrupt manner to obtain evidence against him at trial.  D.I. 5 at 16.

The record belies Flowers' claims.  Flowers' counsel withdrew his motion for a new trial in which he had argued that Predeoux received a plea bargain that should have been disclosed at

trial because "I am unable to support the factual allegations initially alleged."  D.I. 6 at A60-61.

Predeoux was cross-examined at length about his pending charges, the plea he had negotiated

regarding his violation of probation and whether he expected to receive a benefit for testifying in

the case.  *See* D.I. 6 at A146-51.  Further, Flowers' trial counsel was aware that Swanson had

spoken to police and that he had stated that someone other than Flowers was the shooter.  *See*

D.I. 6 at 18, 19-20, 73.  Flowers has failed to demonstrate how the police actions regarding

potential witnesses affected his trial.  The jury was at liberty to determine the credibility of the

witnesses, and to consider any benefits the witnesses might be receiving in exchange for their

testimony as part of that credibility determination.  *See United States v. Universal Rehabilitation*

*Services (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (collecting cases).  As noted in *Hoffa v.*

*United States*, 385 U.S. 293 (1966), in the criminal justice system, it is often necessary for

prosecutors to rely upon informers.  385 U.S. at 311.  "[I]t has long been recognized that grants

of immunity, plea agreements, and sentencing leniency are appropriate tools for use in the

criminal justice system."  *United States v. Levenite*, 277 F.3d 454, 461-62 (4th Cir. 2002).

Simply because a witness received a benefit from the State, does not mean that his testimony was

constitutionally inadmissible.  *Hoffa*, 385 U.S. at 311.  Given the testimony of "five eyewitnesses

placing the Defendant at the scene of the murder with a weapon or identif[ying] the Defendant as

the shooter" (D.I. 6 at A70), Flowers' inability to argue a systematic police approach of arresting

potential witnesses was unlikely to have affected the outcome of trial.

The same can be said for Flowers' assertion that the prosecutors intentionally delayed the

trial.  The record shows that after the jury had been selected, but not sworn, prosecutors had

received a proffer from Predeoux's defense counsel the day before as to testimony that Predeoux

could offer at Flowers' trial.  *See* D.I. 6 at A169.  Prosecutors had immediately notified Flowers'

counsel when they learned of the proffer.  D.I. 6 at A168-69.  Because Flowers' counsel had represented Predeoux in a prior criminal matter, the prosecutors moved to have defense counsel disqualified.  D.I. 6 at A168-71.  Ultimately, defense counsel asked the court to either exclude the witness or grant a continuance to allow counsel to argue why he should not be disqualified.  D.I. 6 at A170.  Thus, there is no basis in the record for Flowers' claim that the prosecutors purposely delayed trial, and consequently Flowers cannot demonstrate prejudice.

*Claim 5 – ejection of spectators*

On the third day of trial, two women spectators were ejected from the courtroom by the bailiff.  After their ejection, the jury was removed and the bailiff explained to the court that the women had been communicating with the defendant after having been told several times not to communicate with him.  D.I. 6 at A139.  *See, e.g., United States v. Kobli*, 172 F.2d 919, 922 (3d Cir. 1949) (spectators "must observe proper decorum and if their conduct tends in any way to interfere with the administration of justice in the courtroom they may, of course, be removed.") (collecting cases).  Defense counsel conceded that Flowers had been told by the Department of Correction officers not to communicate with the people in the audience.  *Id.*  Nevertheless, defense counsel was concerned that the jury would associate the women who were ejected with his client in a damaging way.  *Id.* at A140.  Counsel specifically stated that he was not requesting a curative instruction, but would request that if another incident occurred, the jury should be removed prior to any ejection of spectators.  *Id.*  Flowers now complains that the trial judge should have *sua sponte* given the jury a curative instruction.  D.I. 5 at 39-43.  In rejecting the claim in postconviction proceedings, the Superior Court simply found that the record did not support the claim.  *See* Order at ¶16, attached to D.I. 2.

Under the facts of this case, Flowers cannot establish prejudice from the trial court's decision not to instruct the jury after the spectators had been ejected. Although the women had been seated behind the defendant, the jury had no way of knowing whether the women had any relationship with Flowers. Moreover, the record reveals that Flowers had been communicating with the women in direct contravention of the instructions of Department of Correction officers. D.I. 6 at A140 (Flowers "has been observed with his hand signals and verbally. Now, those two young ladies that just came in, he turned and faced them. He communicated with them verbally and that's when I approached the bailiff when she came through and asked to have them removed because he keeps turning around and we can't have it."). Any negative repercussions from the incident flow from his own disorderly conduct. Flowers cannot now expect this Court to find that his trial was unfair due to his disregard of courtroom security procedures.

**Claim 6 – cumulative errors**

During trial, defense counsel moved for a mistrial on three separate occasions: (1) when Adrienne Dawson, Flowers' sister, referred to Flowers' prior incarceration during her testimony; (2) when Predeoux revealed that he had previously been represented by Flowers' counsel; and (3) when the chief investigating officer, Detective Brock, testified regarding interviews with non-testifying witnesses. *See* D.I. 6 at A159, 190-92. Flowers contends that the cumulative effect of these errors amounts to prejudice constituting plain error infecting the entire trial. D.I. 5 at 44-48. Errors that individually do not warrant habeas relief may do so when combined. *Marshall v. Hendricks*, 307 F.3d 36, 94 (3d Cir. 2002). "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Albrecht v. Horn*, --F.3d --, 2006 WL 3392633, *30 (3d Cir. Nov. 21, 2006)

(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Flowers cannot establish actual prejudice.

As noted *infra*, Dawson's single unsolicited reference to the fact that Flowers had been in jail was a mishap, and the trial judge gave the jury a curative instruction.  *See Flowers*, 858 A.2d at 333.  The state supreme court found no abuse of discretion in the trial court's decision to give a curative instruction rather than grant the defense motion for a mistrial.  *Id.*  Predeoux's non-responsive retort to defense counsel's question during cross-examination that defense counsel had previously represented him also failed to affect the outcome of trial.  *See id.* at 334-35.  The state supreme court found "it highly improbable that defense counsel lost significant credibility in the eyes of the jury." *Id.* at 335.

During the direct examination of Detective Brock, the prosecutor asked Brock how many people, other than the testifying witnesses, he had interviewed in this case.  D.I. 6 at A158. Then, the prosecutor asked "And how cooperative - -" before she was interrupted by defense counsel's hearsay objection.  D.I. 6 at A158-59.  After a sidebar and a discussion outside the presence of the jury, the court sustained the objection.  D.I. 6 at A159.  Because the jury never heard the entire question (or an answer, for that matter), Flowers can hardly complain that the abortive question affected the outcome of his trial.

As noted by the Delaware Supreme Court, this case "turned on the credibility of the five eyewitnesses who corroborated the basic facts about the shooting and the shooter." *Flowers*, 858 A.2d at 335. Given the trial court's prompt intervention in each of these three "errors," there can be little doubt that the cumulative effect did not affect the verdict.  Jurors are presumed to follow the court's instructions to disregard inadmissible evidence inadvertently presented to them, unless there is an overwhelming possibility that the jury will be unable to follow the instructions

and there is a strong likelihood that the effect of that evidence on the jury would be devastating to the defendant. *See United States v. Fisher*, 10 F.3d 115, 119 (3d Cir. 1993) (citing *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987)). Flowers thus cannot establish actual prejudice, and this claim must be dismissed.

### Claim 7 – Confrontation Clause

Flowers alleges that he was denied effective cross-examination of Ponetta Sudler, Tyshiek McDougall and Othello Predeoux due to their claimed memory loss at trial, thus violating the Confrontation Clause. The witnesses had made prior statements to the police that were admitted at trial under section 3507 of Title 11 of the Delaware Code, but they each professed to have forgotten the events of August 1, 1998 at the time of trial. The Supreme Court has long recognized that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original); *see United States* ex rel *Hamilton v. Ellingsworth*, 692 F. Supp. 356, 358-59 (D. Del. 1988) (no confrontation problem in admission of prior statement of witness suffering from amnesia). Thus, Flowers cannot establish prejudice from the unproductive cross-examination of the witnesses at trial.

### Claim 8 – prosecutorial misconduct

During the direct examination of Othello Predeoux, the prosecutor asked Predeoux if he had "any promises or agreements with regards to what would happen with your charges" when Predeoux spoke with Detective Brock in July 2002. D.I. 6 at A143. Predeoux answered no. Flowers contends that this particular question was a purposeful elicitation of false testimony on the part of the prosecutor. D.I. 5 at 56. In her closing argument, the prosecutor, while discussing

the testimony of a hostile witness named Ronetta Sudler, remarked that "[t]here is not anybody who definitely say they saw Joe Harris shooting." D.I. 6 at A164. Once again, Flowers contends that this statement was false. D.I. 5 at 56. As a result of these two instances, Flowers argues that he was denied due process because false testimony was used to convict him. D.I. 5 at 57.

Flowers claims that the prosecutors knew before trial that Predeoux had entered into a plea deal concerning both his violation of probation and other pending charges. Therefore, he argues, prosecutors were under an obligation to correct Predeoux's testimony that he did not have an agreement regarding his charges. The record is clear, however, in April 2002, Predeoux had been found to have violated his probation (D.I. 6 at A142), and that he did not enter into a plea agreement concerning his other charges until after Flowers' trial. *See supra* at Claims 1-3. There is simply no basis for this claim in the record. Moreover, defense counsel cross-examined Predeoux at length regarding his outstanding charges and any possible expectations he may have had of a reduced sentence in exchange for his testimony.

Flowers contends that Marvin Swanson and Bruce Duncan, who had both been interviewed by police, would have testified that Joe Harris shot Smiley. *See* D.I. 5 at 59. The record does not support Flowers' contention that Swanson would identify Joe Harris as the shooter. *See* D.I. 6 at A82-87. In fact, the record shows that Swanson could not identify the shooter. *See* D.I. 6 at A87. Although several witnesses, including Swanson and Duncan, put Joe Harris at the scene of the shooting, no one identified Harris as the shooter – just as the prosecutor stated in closing argument. D.I. 6 at A164. Flowers has not established any actual prejudice, and these two claims can be dismissed as being procedurally barred.

*Claim 9 – Brady violation*

Once again, Flowers assets that prosecutors withheld *Brady* material, i.e., statements to state investigators made by Marvin Swanson, Bruce Duncan, Benny Wright and Charmaine Mayo. D.I. 5 at 61-68. In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A new trial will be granted for a *Brady* violation only if the defendant can demonstrate both that the prosecution withheld exculpatory evidence, and that the evidence was material, in that the defendant did not receive a fair trial because of its absence. *See Hollman v. Wilson*, 158 F.3d 177, 180 (3d Cir. 1998); *United States v. Pelullo,* 105 F.3d 117, 122 (3d Cir. 1997). Flowers' claim, however, is purely speculative. The record reveals that defense counsel was fully aware of the existence of all four witnesses. *See* D.I. 6 at A72-73, 80. The record also shows that prosecutors supplied defense counsel with statement summaries and other *Brady* material relating to these witnesses. *See, e.g.,* D.I. 6 at A13, A14-16, A17, A35. Flowers points to various defense requests for *Brady* material in support of his contention that the State failed to provide the material. *See generally* D.I. 6. As noted by the Superior Court, Flowers' contention that there existed additional exculpatory materials that the prosecutors failed to provide to the defense is unsupported by the record. *See* Order at ¶20 (attached to D.I. 2). Flowers asserts that these witnesses all made statements to police exonerating him and identifying someone else as the shooter. D.I. 5 at 66. Yet, Flowers has failed to establish that witness statements exist, or that those statements were exculpatory. Without some basis for the claim, Flowers cannot establish actual prejudice. *Cf. Mayberry v. Petsock*, 821 F.2d 179, 185-87 (3d Cir. 1987).

***Claim 10 – unreliable identifications***

Two witnesses, Vernon Mays and Matthew Chamblee, selected Flowers from a photographic lineup as Smiley's shooter. Flowers contends that the identifications were the result of suggestive and corruptive interview techniques. D.I. 5 at 69-75. Based on the transcript of Mays' cross-examination, Flowers asserts that Mays was exposed to information regarding the case that tainted his identification. *Id.* A pretrial identification by photographic array, however, will be set aside only if the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also United States v. Stevens*, 935 F.2d 1380, 1383-84 (3d Cir. 1991). "The general inquiry is whether the procedure was unnecessarily suggestive, and if so, whether its corrupting influence outweighs the reliability of the identification testimony." *Burkett v. Fulcomer*, 951 F.2d 1431, 1448 (3d Cir. 1991) (citing *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977); and *Neil v. Biggers,* 409 U.S. 188 (1972) (factors for determining reliability of identification testimony)).

Detective Brock testified regarding the circumstances surrounding Mays' statement and identification. *See* D.I. 6 at 106-08. Brock reported that Mays was interviewed in a small room, before being moved to a conference room to look at four photo arrays. Mays was alone in the conference room for about fifteen minutes before he identified a picture of Flowers. D.I. 6 at 107. After he selected the photograph, Mays was left in the conference room for more than an hour while police continued their investigations. Brock specifically testified that no one suggested anything to Mays during that time period regarding which hand the shooter used to shoot Smiley. D.I. 6 at 107-08. After the identification, Mays was put back into an interview room so that the identification could be made on videotape. D.I. 6 at 108. During cross-

examination of Mays, defense counsel also questioned Mays regarding the circumstances of his identification of Flowers. Mays testified that he was with several police officers in the conference room before he looked at the photo arrays. D.I. 6 at 114-15. Further, Mays stated that the officers went in and out of the room while he just sat there. D.I. 6 at 115. Contrary to Flowers' allegations, Mays did not testify that the police informed him about the investigations or discussed the case with him. There is no basis in the record to support Flowers' contention that the identification was the result of suggestive or coercive police tactics. Moreover, the circumstances of the identification process were presented to the jury and could be considered by the jury in making a credibility assessment of Mays' identification of Flowers.

Chamblee also identified Flowers as the shooter. D.I. 6 at A130. During cross-examination, defense counsel was successful in getting Chamblee to concede that he couldn't see the shooter's face very well and that he could have been mistaken. D.I. 6 at 135-36. Counsel also highlighted for the jury the fact that Brock had told Chamblee that the shooter was likely to have been someone from the neighborhood. D.I. 6 at A131. There is nothing in the record to suggest that Chamblee was coerced into identifying Flowers. Any inconsistencies between his testimony and that of Mays were resolved by the jury. There was no basis to suppress these identifications, and defense counsel certainly highlighted the weaknesses of the witnesses and their ability to properly identify the defendant. Here too, Flowers has not established actual prejudice for purposes of excusing his procedural default.

### Claim 11 – ineffective assistance of counsel

Flowers claims that his trial counsel's performance was deficient because counsel: failed to hire drug and identification experts; failed to put on the planned defense; failed to object to unreliable identifications by witnesses; failed to object to the courtroom ejection of spectators;

failed to address Flowers' flight or to request jury instructions regarding the flight; and withdrew his second motion for a new trial on the day of a scheduled hearing on the motion. Flowers' claims, however, are unavailing.

To prevail on a claim of ineffective assistance of counsel, a petitioner must first demonstrate that counsel's performance at trial or on appeal fell below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In evaluating whether counsel performed reasonably, a court "must be highly deferential." *Id*. at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (quotation omitted). Second, a petitioner must illustrate that counsel's ineffective performance caused prejudice. *See Strickland*, 466 U.S. at 687. The Third Circuit has stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Strickland*, 466 U.S. at 668); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id*. at 693. *See id.* at 696 (court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors"). In turn, the petitioner must specifically allege prejudice (and substantiate the allegation). *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).

A.   Flowers first asserts that because counsel failed to retain a drug expert to testify regarding the effects of drug use on witnesses known to be drug users, the jury had no foundation upon which to evaluate the witnesses' testimony.  D.I. 5 at 79.  Defense counsel cross-examined the prosecution witnesses regarding their drug use, both historically and at the time of the shooting.  *See, e.g.*, D.I. 6 at A128.  In so doing, counsel was able to elicit from Ronetta Sudler that she sometimes hallucinates and that she was usually in such a state around the time of the shooting.  *Id.*  Tyshiek McDougall also testified that she was a chronic drug user and that she probably would have said anything to the police.  D.I. 6 at A154-55.  Both of these witnesses had made statements to the police that were admitted at trial pursuant to § 3507 of Title 11 of the Delaware Code.  *See* D.I. 6 at A126, A156.  Defense counsel elicited from McDougall that her drug use affects everything, that she wouldn't believe herself on drugs, and that she was clearly on drugs when she gave her statement to police.  D.I. 6 at A157.  Because the jury heard that the witnesses were chronic drug users who hallucinated and were intoxicated at the time of both the shooting and their interviews, Flowers cannot establish that the outcome of his trial would have been different had his counsel hired an expert to discuss the effects of drugs on memory.

B.   Flowers next claims that he was prejudiced by his counsel's decision not to hire an identification expert.  D.I. 5 at 80.  As noted by Flowers, three of the five prosecution witnesses claimed memory loss at trial while "the remaining two eyewitnesses essentially recanted their previous identification of the petitioner."  *Id.*  In light of the inability of the witnesses to recall (at trial) the shooting or their statements to police about the shooting, any expert testimony regarding the stages of memory, the effects of various things on memory, and the changes to memories over time would not have been useful to the defense.  The testimony showed that the witnesses all had different perceptions of the situation and had difficulty remembering the scene

23

at all.  All of this was readily apparent to the jury without the assistance of an expert.  *See Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (expert testimony must assist the trier of fact to understand or determine a fact at issue).  Flowers thus cannot establish prejudice from his attorney's reasonable decision to forego the services of an identification expert.

C.  According to Flowers, counsel did not pursue the defense strategy that had been planned prior to trial.  D.I. 5 at 84.  Flowers asserts that his counsel abandoned him in the midst of trial because he failed to put on a defense case.  Flowers claims that he had several witnesses who would have testified that he was not the shooter, but that his counsel failed to call them.  D.I. 5 at 88.  Flowers did not submit any affidavits from these witnesses, and he admits that some of the witnesses may not have been available.  *See* D. I. 5 at 86.  The State's case relied almost exclusively on eyewitness testimony putting Flowers at the scene of the shooting with a gun in his hand.  Due to the background of the prosecution witnesses, almost all of whom were drug users and had criminal records, defense counsel could effectively create credibility issues through cross-examination.  It was not unreasonable for defense counsel to decide not to call for the defense witnesses who would have had similar credibility issues.  By leaving the presentation of this type of witness to the State, defense counsel was able to avoid having the prosecutors discredit defense witnesses and counsel was able to argue that all of the witnesses were unreliable, without appearing disingenuous.  *See Strickland*, 466 U.S. at 681 (counsel's strategic choices must be respected if based on professional judgment).  Without any evidence that the defense witnesses were either available or credible, Flowers cannot demonstrate that his counsel's decision not to call the witnesses was professionally deficient or affected the outcome.

D.  Flowers complains about his counsel's failure to object to the admission of the out-of-court identifications of Flowers as the shooter by Vernon Mays and Matthew Chamblee.  D.I. 5 at 90.  As noted *supra* at Claim 10, there was no basis upon which defense counsel could have successfully argued to suppress the identifications.  At trial, however, defense counsel pointed to the circumstances surrounding the identifications to demonstrate for the jury the inherent problems with witness identifications.  Because defense counsel would not have succeeded with such a motion, Flowers cannot establish any prejudice from counsel's failure to move to suppress the out-of-court identifications.

E.  Framing his earlier argument concerning the ejection of spectators as an ineffective assistance of counsel claim (*see supra* at Claim 5), Flowers charges that his counsel should have objected to the ejection and requested a curative instruction.  D.I. 5 at 93.  The record shows that Flowers, in direct disregard of the instructions given by Department of Correction personnel, was communicating with members of the audience at trial. Because any curative instruction would have informed the jury that the spectators were linked to the defendant, defense counsel reasonably decided not to request an instruction that would link Flowers to people who were asked to leave the courtroom.  *See, e.g., United States v. Cartagena-Carrasquillo*, 70 F.3d 706, 713 (1st Cir. 1995) ("Whether an instruction will 'cure' a problem or exacerbate it by calling more attention to it than warranted is within the ken of counsel and part of litigation strategy and judgment.").   Flowers cannot establish that his counsel's performance was deficient, nor can he establish prejudice.

F.  The State called Flowers' sister, Adrienne Dawson, to testify regarding Flowers' flight after the shooting.  *See* D.I. 6 at A190.  Dawson testified that prior to the shooting in 1998, Flowers had lived with her and that after the shooting, he had not returned.  *Id*.  The prosecutors

properly used the evidence of Flowers' flight to show consciousness of guilt. *See United States v. Pungitore*, 910 F.2d 1084, 1151 (3d Cir. 1990) ("Evidence of a defendant's flight after a crime has been committed is admissible to prove his consciousness of guilt.") (collecting cases). Flowers complains that his trial counsel failed to argue in his closing remarks that Flowers' flight did not necessarily demonstrate guilt. D.I. 5 at 96-99. Flowers asserts that his counsel should have tried to "humanize" Flowers by arguing that young people often make rash decisions, such as fleeing, but that such decisions were not indicative of bad intentions. Defense counsel emphasized the unreliability of the prosecution witnesses and their questionable ability to tell the truth or remember the shooting. Because the State's case hinged on the credibility of the five eyewitnesses, defense counsel's decision to focus on discrediting those witnesses was certainly a reasonable trial strategy. *See Strickland*, 466 U.S. at 681. The fact that he did not succeed in that strategy does not render counsel's performance deficient. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Moreover, Flowers has not shown actual prejudice, stemming from his counsel's failure to make this particular argument, that would excuse his procedural default.

G. Flowers in turn complains that counsel failed to request a jury instruction regarding misidentification by eyewitnesses based on *Simmons v. United States*, 390 U.S. 377 (1968). D.I. 5 at 100. Both the prosecutors and defense counsel argued in closing regarding the credibility of the various witnesses. Given the focus throughout the trial on the various reasons why each witness's account was or was not credible, Flowers can hardly demonstrate prejudice from defense counsel's failure to request a jury instruction that reminds the jury to evaluate the credibility of the witnesses.

H. Finally, Flowers complains that his counsel withdrew his second motion for a new trial. D.I. 5 at 103. As discussed *supra* at Claim 1, after filing the motion, defense counsel

discovered that he was "unable to support the factual allegations initially alleged." D.I. 6 at A60.

Defense counsel explained to Flowers that in order to prevail on the motion, counsel would need

to rely on statements from Predeoux's attorneys. D.I. 6 at A61. Defense counsel spoke with

those attorneys, neither of whom were able to provide information to support the allegations that

Predeoux had been promised a reduction in charges in exchange for his testimony against

Flowers. *See* D.I. 6 at A61. Flowers cannot establish that his counsel's refusal to proceed on a

motion without any factual basis was an unreasonable exercise of his professional discretion.

Thus, Flowers cannot demonstrate that counsel's performance was deficient under *Strickland*,

and this claim offers no basis to excuse Flowers' procedural default.

### Claim 12 - involuntary witness statement

Flowers asserts that Ronetta Sudler's videotaped statement should not have been admitted

at trial because it was not voluntarily obtained. This claim was presented to the state supreme

court only as a state law claim, however, and thus is not cognizable on federal habeas review. In

his opening brief on direct appeal, Flowers argued that Sudler's statement should not have been

admitted under § 3507 of Title 11 of the Delaware Code, because the standard for admission

under that statute requires that the statement be voluntary. Flowers did not cite to any United

States Supreme Court or federal circuit court cases in his brief. The State's answering brief also

addressed the claim as a challenge to the admission of a statement under § 3507. The Delaware

Supreme Court, in deciding the issue, discussed § 3507 and the trial court's adherence to

Delaware case law regarding the procedure for establishing a foundation for admission of a

statement under that section. *See Flowers*, 858 A.2d at 330-31. Ultimately, the state supreme

court found that the trial judge had properly allowed *voir dire* examination of Sudler concerning

the voluntariness of her statement, and the trial court had made a factual finding supported by the

record that the statement was voluntary. *Id.* at 331. The claim was presented and decided as a state law claim; for Flowers to simply add the language that the admission of Sudler's out-of-court statement violated his federal right to a fair trial does not alter the essence of the claim that the statement was admitted in violation of § 3507. *See Bright v. Snyder*, 218 F. Supp. 2d 573, 578 (D. Del. 2002). Thus, this claim must be dismissed for failure to invoke the jurisdiction of this Court. Moreover, to the extent that Flowers has raised a federal claim, that claim is unavailing. Because Flowers clearly did not present the claim as a federal claim in state court, the federal claim is unexhausted. Flowers has not alleged cause for his failure to raise the federal claim in state court, and the claim can be dismissed on that basis alone. Moreover, the miscarriage of justice does not apply because Flowers has not alleged any facts to establish his actual innocence. *See, e.g., White v. Carroll*, 416 F. Supp. 2d 270, 282 (D. Del. 2006).

## Claim 13 - prosecutorial misconduct

In this claim, Flowers alleges that the prosecutor recklessly elicited from Adrienne Dawson a remark that Flowers had been in jail, and the curative instruction was insufficient to cure the prejudice. Flowers contends that the defense strategy was for Flowers not to testify because he had prior convictions which would have been revealed to the jury if he took the stand. The State called Dawson, Flowers' sister with whom he lived prior to the shooting, to testify that Flowers fled Delaware immediately after the August 1, 1998 shooting. As recounted by the Delaware Supreme Court: "The prosecutor asked Dawson how long Flowers had lived in her house prior to August 1. Dawson responded: 'when he came home from – I don't remember what that was – I don't remember the date, when he came home *from jail*.' Defense counsel immediately objected and moved for a mistrial." *Flowers*, 858 A.2d at 333 (emphasis in original); *see* D.I. 6 at A190. Flowers argues that the trial court erred by giving a curative

instruction instead of ordering a mistrial.  Having presented the claim to the state supreme court on direct appeal from his conviction, Flowers has exhausted the claim.  *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Flowers, however, is not entitled to relief.

Under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998).  "A state court decision is contrary to Supreme Court precedent under § 2254(d)(1) where the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts."   *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) (citations and internal quotations omitted).   A state court decision is an unreasonable application if the court identifies the correct governing legal rule based on Supreme Court precedent but unreasonably applies it to the facts of the particular case.  *Id.* (citations omitted). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary; a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. §§ 2254(d)(2), (e)(1).  *See also Williams v. Taylor*, 529 U.S. 362, 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

In the first instance, the state courts made a factual determination that "the prosecutor did not intend to elicit a response that included reference to Flowers' recent jail time and, in fact, took measures to prevent any reference to it by asking Dawson to respond in terms of time." *Flowers*, 858 A.2d at 333. This factual determination is presumed correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. §§ 2254(e)(1); *Rose v. Duckworth*, 764 F.2d 402, 405 (7th Cir. 1985) (determination of intention is a finding of fact). Flowers has presented no evidence that the prosecutor intentionally solicited the witness to testify that her brother had been incarcerated. Moreover, the remark was not repeated and the jury did not hear anything about why Flowers had been in jail. Such a vague and fleeting remark could hardly have infected the entire trial.

### Claim 14 – prejudicial non-responsive answer by witness

Flowers contends that Predeoux's non-responsive answer to a question by defense counsel revealed that defense counsel had previously represented Predeoux, thus destroying counsel's credibility with the jury rendering the entire trial unfair. D.I. 5 at 118-22. Flowers presented this claim to the state supreme court on direct appeal, thus exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. This claim is entirely without merit.

Before trial, prosecutors moved to disqualify Flowers' defense counsel because defense counsel had previously represented Predeoux. *See Flowers*, 858 A.2d at 333. Defense counsel represented to the trial court that his client was willing to "waive any conflict of interest that exists." State's Appendix at B11 in Del. Supr. Ct. No. 264, 2003. After an office conference and briefing by the parties, the trial judge determined that defense counsel did not have a conflict of interest in representing Flowers because the cross-examination of Predeoux would not reveal information that was not already public record. *Flowers*, 858 A.2d at 333.

30

Predeoux testified that he had given a taped statement to police in which he stated that Flowers was the man who had shot Smiley. Defense counsel conducted a cross-examination designed to impeach Predeoux's credibility.  *Flowers*, 858 A.2d at 333-34.  Defense counsel questioned Predeoux about his statement that he had vomited when he witnessed the shooting because it was upsetting.  *Id.* at 334.  Contrasting that behavior with Predeoux's prior conviction for possession of a deadly weapon by a person prohibited, defense counsel asked Predeoux if Predeoux had had two guns on his person in September 1998. Predeoux answered, "Yes, you represented me."  *Id.*  Defense counsel immediately moved for a mistrial.  The trial judge determined that a mistrial was not merited and that any prejudice could be mitigated by having defense counsel elicit from Predeoux that the earlier representation had resulted in a guilty plea. *Id*.  The state supreme court found that "defense counsel's additional questions appropriately refocused the jury on Predeoux's, and not defense counsel's, credibility."  *Id.*  Moreover, the court held that Predeoux's uninvited response did not affect the outcome of trial:  "Predeoux's fleeting, volunteered, non-responsive answer did not so damage Flowers' overall defense that the extreme remedy of a mistrial was the only meaningful or practical solution to potentially unfair prejudice."  *Id.*  That finding was manifestly correct and thus claim should be dismissed.

### *Claim 15 – prosecutorial misconduct*

In his final claim, Flowers asserts that the prosecutor's references in his opening statement to "the double deuce group, the 22nd Street regulars" and a "code of silence" were not supported by the evidence and were unfairly prejudicial.  *See* D.I. 5 at 123-27.  This claim was presented to the state supreme court and is thus exhausted.  *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295.  After finding that a petitioner has exhausted state remedies, however, this Court "must then assure itself that a habeas petitioner has complied with relevant state

procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989). Flowers presented this claim on direct appeal without having raised the issue at trial. *See Flowers*, 858 A.2d at 332. Under Delaware Supreme Court Rule 8, only claims that have been fairly presented to the trial court may be presented for review, unless required in the interests of justice. Because Flowers raised his challenge to the opening statement for the first time on appeal, he failed to comply with the relevant state procedural requirements. The state supreme court specifically stated that it was reviewing only for plain error. *Id.* Thus, federal habeas review of Flowers' claim is barred unless he establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman*, 501 U.S. at 750-51; *Caswell*, 953 F.2d at 861-62; *Dawson*, 988 F. Supp. at 804-05; *Ellingsworth*, 783 F. Supp. at 218-21. Flowers failed to allege cause for his failure to object to the opening statement at trial, and his claim can be dismissed on that basis alone. In any event, the Delaware Supreme Court found that the record "supports the State's reference to a 'code of silence' among those who witnessed the shooting." *Flowers*, 858 A.2d at 332. Factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Other than his conclusory statement that the prosecutor's gang reference unfairly prejudiced him at trial, Flowers has not demonstrated how the reference distorted the evidence to such an extent that the outcome of the trial was affected. Further, Flowers has not alleged any facts to establish his actual innocence, thus precluding the application of the miscarriage of justice exception. *See, e.g., White v. Carroll*, 416 F. Supp. 2d 270, 282 (D. Del. 2006).

<u>Conclusion</u>

Based upon the Superior Court docket sheet, it appears that transcripts of Flowers' preliminary hearing (Feb. 11, 2000), office conference (May 8, 2002), trial (Oct. 22-25, 28, 2002), and sentencing (Apr. 25, 2003) have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court. No affidavits were filed pursuant to Delaware Superior Court Criminal Rule 61 in this case.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

<div style="margin-left:40%">

<u>/s/ Elizabeth R. McFarlan</u>
Deputy Attorney General
Del. Bar. ID No. 3759
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
elizabeth.mcfarlan@state.de.us

</div>

Date: December 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2006, I electronically filed an answer to a habeas petition with the Clerk of Court using CM/ECF. I also hereby certify that on December 13, 2006, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

Damone E. Flowers
SBI No. 303627
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977


/s/ Elizabeth R. McFarlan
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 3759
elizabeth.mcfarlan@state.de.us

Westlaw.

Not Reported in F.Supp.2d                                                           Page 1
Not Reported in F.Supp.2d, 2004 WL 1376588
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2004 WL 1376588
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Otto GIBBS, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady, Attorney
General of the State of Delaware, Respondents.
**No. Civ.A.03-634-JJF.**

June 17, 2004.

Otto Gibbs, Petitioner, pro se.
Thomas E. Brown , Deputy Attorney General, Delaware
Department of Justice, Wilmington, Delaware, for
Respondents.

*MEMORANDUM OPINION*

FARNAN, J.

## I. INTRODUCTION

**\*1** Petitioner Otto Gibbs is a Delaware inmate in custody at
the Delaware Correctional Center in Smyrna, Delaware.
Currently before the Court is Petitioner's Petition For A
Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and his
supporting Memorandum. (D.I. 2; D.I. 3) For the reasons
that follow, the Court concludes that Petitioner's Petition is
time-barred by the one-year period of limitations prescribed
in 28 U.S.C. § 2244(d)(1).

## II. BACKGROUND

On September 8, 1997, Petitioner was convicted by a
Delaware Superior Court jury of second degree unlawful
sexual intercourse. He was sentenced to 20 years in prison,
suspended after 15 years for probation. The Delaware
Supreme Court affirmed Petitioner's conviction and
sentence on direct appeal. *Gibbs v. State,* 723 A.2d 396
(Del.1998).

On September 24, 1999, Petitioner filed an application for
state post-conviction relief pursuant to Superior Court
Criminal Rule 61. The Delaware Superior Court denied

post-conviction relief on January 7, 2002, and the Superior
Court's denial was affirmed on appeal. *Gibbs v. State,* 804
A.2d 1066 (Del.2002).

## III. DISCUSSION

Petitioner's *pro se* Petition for federal habeas relief and his
supporting Memorandum assert the following nine
ineffective assistance of counsel claims: (1) trial counsel did
not investigate and review all relevant discoverable
documents and failed to inform Petitioner about the legality
of the State's DNA evidence; (2) trial counsel failed to
conduct an independent DNA analysis and failed to hire an
expert to review the victim's medical record; (3) trial
counsel failed to research the law in support of an
affirmative defense of consensual intercourse; (4) trial
counsel improperly relied on an instruction of "voluntary
social companion" status of the alleged victim to support an
affirmative defense of consensual intercourse; (5) trial
counsel misinterpreted Delaware's Rape Shield Laws, and as
a result, he failed to investigate the victim's background of
prior sexual history before trial; (6) trial counsel failed to
object to the State's introduction and reliance on
inadmissible photographic blood evidence through improper
testimony of police officer; (7) trial counsel failed to
cross-examine the police officer about the authenticity of
photographic blood evidence; (8) trial counsel failed to
object to the State's introduction of hearsay testimony from
police party who testified in third party narrative; and (9)
trial counsel failed to impeach any state witness' credibility
on cross-examination. (D.I. 2; D.I. 3.) Petitioner also asserts
that the Superior Court unreasonably summarily denied his
Rule 61 motion without an evidentiary hearing. (D.I. 3 at
J,K.)

On December 18, 2003, Petitioner filed a "Motion to
Amend Habeas [Petition]," asking this Court to apply the
"[a]ctual innocence, or miscarriage of justice, exception to
any and all barred claims" in his Petition. (D.I.18.) The
Court granted this amendment. (D.I.27.)

**\*2** In their Answer, Respondents contend that the entire
petition is time-barred and ask the Court to dismiss the
petition as untimely. (D.I.16.) Petitioner filed a Reply,
asking the Court to view his trial counsel's alleged

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1376588
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

ineffective assistance as "good cause" to excuse his late filing. (D.I.23.) Petitioner's habeas petition is now ripe for review.

### A. One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not allege, nor can the court discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). As such, the one-year period of limitations began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), when a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of review in the United States Supreme Court or when the [90-day] time [period] for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir.1999) ; *Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). In the present case, the Delaware Supreme Court affirmed Petitioner's conviction and sentence on November 19, 1998. Consequently, Petitioner's conviction became final on February 17, 1999.

Thus, pursuant to AEDPA's one-year limitations period, Petitioner needed to file his § 2254 Petition no later than February 17, 2000.

Petitioner's § 2254 Petition is dated July 8, 2003, and it was received by the Court on July 10, 2003. A *pro se* prisoner's habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court. Therefore, the Court adopts July 8, 2003 as the filing date. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir.2003) (the date on which a prisoner transmitted documents to prison authorities is to be considered the actual filing date); *Woods v. Kearney,* 215 F.Supp.2d 458, 460 (D.Del.2002).

*3 Even with July 8, 2003 as the filing date, Petitioner filed his Petition more than 3 years too late. As such, his habeas Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). The Court will discuss each doctrine in turn.

### B. Statutory Tolling

Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitations:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for state post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998). However, a properly filed state post-conviction motion will only toll the federal habeas limitations period if the post-conviction motion itself is filed within the federal one-year filing period. *See Price v. Taylor,* 2002 WL 31107363, at *2 (D.Del. Sept. 23, 2002).

Here, when Petitioner filed his state post-conviction motion, 217 days of AEDPA's limitations period had already expired. Petitioner's Rule 61 motion tolled AEDPA's limitations period until August 28, 2002, the date on which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



the Delaware Supreme Court affirmed the Superior Court's denial of the Rule 61 motion. *See Swartz v. Meyers,* 204 F.3d 417, 421-22 & n. 5 (3d Cir.2000). When AEDPA's limitations period began to run again on August 29, 2002, only 148 days were left in the one-year filing period. Consequently, Petitioner had to file his federal habeas Petition by January 24, 2003 to be timely. Petitioner, however, did not file his Petition until July 8, 2003. As such, the doctrine of statutory tolling does not render the Petition timely.

## C. Equitable Tolling

A court, in its discretion, may equitably toll the one-year filing period when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998) (internal citations omitted). In general, federal courts invoke the doctrine of equitable tolling "only sparingly." *See United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998). The Third Circuit permits equitable tolling for habeas petitions in only four narrow circumstances:

(1) where the defendant actively misled the plaintiff;

(2) where the plaintiff was in some extraordinary way prevented from asserting his rights;

(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or

(4) where [in a Title VII action] the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or the court misled the plaintiff into believing that he had done everything required of him.

*4 *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999).

Generally, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Id.* (quoting *Midgley,* 142 F.3d at 179). In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims"; mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted).

Petitioner asserts his trial counsel's allegedly ineffective assistance as a reason to equitably toll the one-year

limitations period. (D.I.23.) Specifically, Petitioner argues that trial counsel informed him that he had "3 years to file a Rule 61 motion, then file Habeas among other options." *Id.*

As an initial matter, Petitioner's trial counsel correctly informed Petitioner that he had 3 years to file a state post-conviction motion under the state criminal procedural rules. *See* Del.Super. Ct.Crim. R. 61(i)(1). Even if trial counsel erroneously told Petitioner that AEDPA's statute of limitations would not begin until after the 3 year limitations period for Rule 61 motions had expired, this mistake does not warrant equitably tolling. It is well-settled that inadequate research, attorney error, miscalculation, or other mistakes do not qualify as "extraordinary circumstances" sufficient to trigger equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001). Additionally, if Petitioner misinterpreted trial counsel's statement, his failure to independently investigate AEDPA's limitations period constitutes excusable neglect insufficient to warrant equitable tolling.

Finally, Petitioner appears to assert his actual innocence as a reason for equitably tolling the one-year limitations period. (D.I.18.) However, neither the Third Circuit Court of Appeals, nor the United States Supreme Court, has addressed whether a petitioner's "actual innocence" qualifies as an exception to AEDPA's statute of limitations. *Morales v. Carroll,* 2004 WL 1043723, at *3 (D.Del. Apr. 28, 2004) ; *Devine v. Diguglielmo,* 2004 WL 945156, at *3 & n .4 (E.D.Pa. Apr. 30, 2004) (collecting cases). Even if, arguendo, such an exception did exist, Petitioner's short conclusory request that he "would like the court to apply the actual innocence ... exception to all barred claims" does not persuade the Court that he is actually innocent. *See Morales,* 2004 WL 1043723, at *3 (discussing how a petitioner proves actual innocence). Accordingly, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Petitioner's § 2254 Petition will be dismissed as untimely.

## IV. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1376588
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2) ; *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**\*5** When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The Court concludes that Petitioner's habeas Petition must be dismissed as untimely. Reasonable jurists would not find this conclusion to be unreasonable. Consequently, the Court declines to issue a certificate of appealability.

### VI. CONCLUSION

For the reasons stated, Petitioner's Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is denied. An appropriate Order shall issue.

### ORDER

At Wilmington, this 17th day of June, 2004, consistent with the Memorandum Opinion issued this same day;

IT IS HEREBY ORDERED that:

1. Petitioner Otto Gibbs' Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 2; D.I. 3.)

2. The Court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2004.
Gibbs v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1376588

Briefs and Other Related Documents (Back to top)

• 1:03CV00634 (Docket) (Jul. 10, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1368845
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2004 WL 1368845
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Harry L. SAMUEL, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady, Attorney
General of the State of Delaware, Respondents.
**No. Civ.A.03-487-SLR.**

June 9, 2004.

Harry L. Samuel, petitioner, pro se.
Loren C. Meyers , Chief of Appeals Division, Delaware
Department of Justice, Wilmington, Delaware, for
respondents.

### MEMORANDUM OPINION

ROBINSON, Chief J.

### I. INTRODUCTION

**\*1** Petitioner Harry L. Samuel is a Delaware inmate in
custody at the Delaware Correctional Center in Smyrna,
Delaware. Currently before the court is petitioner's
application for a writ of habeas corpus pursuant to 28
U.S.C. § 2254. (D.I.2) For the reasons that follow, the court
concludes that his application is time-barred by the one-year
period of limitations prescribed in 28 U.S.C. § 2244(d)(1).
Accordingly, the court will dismiss the application as
untimely.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner attacked two counselors at the Plummer House
Work Release Center in Wilmington, Delaware. A grand
jury indictment charged him with attempted murder, second
degree assault, two counts of assault in a detention facility,
and four counts of possession of a deadly weapon during the
commission of a felony. Thereafter, in October 1994, a
Delaware Superior Court jury found petitioner not guilty of
attempted murder, but guilty of the lesser included offense
of first degree assault. The jury also convicted him of the
remaining charges. *See Samuel v. State,* 676 A.2d 906, \* \*1

(Del.1996).

On direct appeal, the Delaware Supreme Court ordered the
two assault convictions to be merged with the two counts of
assault in a detention facility and remanded the case for
re-sentencing. *Id.* Petitioner was re-sentenced on May 31,
1996 to a total of 98 years incarceration. *See Samuel v.
State,* 694 A.2d 48 (Del.1997). These sentences were
affirmed on appeal. *Id.* at \* \*2.

On November 19, 2001, petitioner applied to the Delaware
Superior Court for a copy of the trial transcript. This request
was denied, and petitioner's ensuing appeal was dismissed
for lack of jurisdiction. *Samuel v. State,* 788 A.2d 132
(Del.2001)

On April 28, 2003, the United States Supreme Court denied
petitioner's application for a writ of certiorari seeking
review of his sentences. *Samuel v. Delaware,* 538 U.S. 1004
(2003). Thereafter, on August 11, 2003, petitioner moved
for a reduction of sentence in the Delaware Superior Court.
The Superior Court denied the motion on September 11,
2003, and petitioner did not appeal. (D.I. 13, at ¶ 2)

### III. DISCUSSION

Presently before the court is petitioner's *pro se* application
for federal habeas relief. (D.I.2) He asserts three habeas
claims: (1) the 1996 re-sentencing court erred in denying his
request for a continuance to obtain a psychiatric evaluation;
(2) the judge who re-sentenced him had a closed mind and
relied on impermissible factors in imposing the sentences;
and (3) the weapons offenses related to the assault
convictions should have been vacated because the assault
convictions were merged with the assault in a detention
facility convictions. (D.I.2)

Respondents contend that the entire petition is time-barred
and ask the court to dismiss the petition as untimely.
(D.I.13) Petitioner's habeas petition is now ready for review.

#### A. One-Year Statute of Limitations

**\*2** The Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA") prescribes a one-year period of limitations
for the filing of habeas petitions by state prisoners. 28

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1368845
**(Cite as: Not Reported in F.Supp.2d)**

U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not allege, nor can the court discern, any facts triggering the application of § 2244(d)(1)(B),(C), or (D). As such, the one-year period of limitations began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), when a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of review in the United States Supreme Court or when the [90-day time-period] for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575 (3d Cir.1999) ; *Jones v. Morton,* 195 F.3d 153, 157 (3d Cir.1999). In the present case, the Delaware Supreme Court affirmed petitioner's conviction on April 16, 1997. *Samuel v. State,* 694 A.2d 48 (Del.1997). Consequently, petitioner's conviction became final for the purposes of § 2244(d)(1) on July 15, 1997. Thus, to timely seek habeas relief with this court, petitioner needed to file his § 2254 habeas application no later than July 15, 1998

A *pro se* prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir.2003). Petitioner's habeas application is dated May 17, 2003. Therefore, the court adopts May 17, 2003 as the

presumptive filing date. *See Woods v. Kearney,* 215 F.Supp.2d 458, 460 (D.Del.2002).

With May 17, 2003 as the filing date, petitioner filed his application almost five years too late. As such, his habeas application is time-barred and should be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The court will discuss each doctrine in turn.

### B. Statutory Tolling

Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitations:

    **\*3** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for state post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing," *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998). However, even if a state post-conviction motion is properly filed under state procedural rules, it will not toll or revive the federal habeas limitations period if the post-conviction motion itself is not filed within the federal one-year filing period. *See Price v. Taylor,* 2002 WL 31107363, at \*2 (D.Del. Sept. 23, 2002).

Here, when petitioner filed his motion for sentence reduction on August 11, 2003, the one-year federal habeas limitations period had already expired on July 15, 1998. As such, this motion does not toll, or revive, the federal habeas limitations period. [FN1] *See Lawrence v. Carroll,* 2003 WL 21402509, at \*2 (D. Del. June 10, 2003). Thus, petitioner's habeas application is time-barred unless the one-year time period is equitably tolled.

        FN1. Moreover, the Delaware Superior Court denied the motion for sentence reduction as untimely. Consequently, it was not "properly filed" for purposes of § 2244(d)(2) and could not trigger the statutory tolling doctrine. *See, e.g., Wilmer v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1368845
(Cite as: Not Reported in F.Supp.2d)

Page 3

*Carroll,* 2003 WL 21146750, at *3-4 (D.Del. May 16, 2003).

### C. Equitable Tolling

A court, in its discretion, may equitably toll the one-year filing period when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998) (internal citations omitted). Federal courts invoke the doctrine of equitable tolling "only sparingly," *see United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998), and the Third Circuit permits equitable tolling for habeas applications in only four narrow circumstances:

(1) where the defendant actively misled the plaintiff;

(2) where the plaintiff was in some extraordinary way prevented from asserting his rights;

(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or

(4) where [in a Title VII action] the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or the court misled the plaintiff into believing that he had done everything required of him.

*Jones,* 195 F.3d at 159.

In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims"; mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted). Basically, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Jones,* 195 F.3d at 159.

Petitioner has not alleged, and the court cannot discern, any "extraordinary circumstances" that warrant equitably tolling the one-year limitations period. To the extent petitioner made a mistake or miscalculation regarding the one-year filing period, such mistakes do not justify equitable tolling. *See Simpson v. Snyder,* 2002 WL 1000094, at *3 (D.Del. May 14, 2002). Accordingly, the court concludes that the doctrine of equitable tolling is not available to petitioner on the facts he has presented and, therefore, his § 2254 application will be dismissed as untimely.

### IV. CERTIFICATE OF APPEALABILITY

*4 Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2) ; *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

When a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The court concludes that petitioner's habeas application must be dismissed as untimely. Reasonable jurists would not find this conclusion to be unreasonable. Consequently, the court declines to issue a certificate of appealability.

### V. CONCLUSION

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

D.Del.,2004.
Samuel v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1368845

Briefs and Other Related Documents (Back to top)

• 1:03CV00487 (Docket) (May. 20, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1043723
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Not Reported in F.Supp.2d, 2004 WL 1043723
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Luis MORALES, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady, Attorney
General of the State of Delaware, Respondents.
**No. 03-220-JJF.**

April 28, 2004.

Luis Morales, Petitioner, pro se.
Thomas E. Brown , Deputy Attorney General of the State of
Delaware Department of Justice, Wilmington, Delaware, for
Respondents.

*MEMORANDUM OPINION*

FARNAN, J.
**\*1** Presently before the Court is a Petition Under 28 U.S.C.
§ 2254 for Writ of Habeas Corpus by a Person in State
Custody (D.I.1) filed by Petitioner, Luis Morales. For the
reasons set forth below, the Court will dismiss the Petition
as time-barred by the one-year period of limitation
prescribed in 28 U.S.C. § 2244(d)(1).

BACKGROUND

In January 1996, Petitioner was convicted by a jury in the
Delaware Superior Court of delivery of heroin, possession
with intent to deliver heroin, maintaining a dwelling,
possession of a hypodermic needle and syringe, and
conspiracy. The Delaware Superior Court concluded that
Petitioner was a habitual offender and sentenced him to life
in prison. On direct appeal, the Delaware Supreme Court
affirmed the conviction, but reversed the superior court's
determination that Petitioner was a habitual offender.
*Morales v. State,* 696 A.2d 390 (Del.1997) ("*Morales I*").

Petitioner was resentenced on October 3, 1997. Petitioner
did not appeal his new sentence. On October 10, 2000,
Petitioner filed a motion for state post-conviction relief,
which the Delaware Superior Court denied as time-barred
under the three-year limitations period set forth in Delaware

Criminal Rule 61(i)(1). *State v. Morales,* 2001 WL 1486169
(Del.Super.Oct. 31, 2001) ("*Morales II*" ). On appeal, the
Delaware Supreme Court affirmed the decision of the
Delaware Superior Court. *Morales v. State,* 2002 WL
272307 (Del. Feb. 22, 2002) ("*Morales III*" ).

By his federal habeas Petition, Petitioner raises three claims
for relief: (1) counsel provided ineffective assistance by
failing to obtain an interpreter for Petitioner during trial; (2)
the police conducted an illegal search; and (3) Petitioner's
due process rights were violated because he was precluded
from presenting a mistaken identity defense. In their
Answer Brief, Respondents contend that the Petition is
time-barred under 28 U.S.C. § 2244(d), or in the alternative,
Petitioner's claims are procedurally barred.

DISCUSSION

I. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), Congress amended the federal habeas
statute by prescribing a one-year period of limitation for the
filing of habeas petitions by state prisoners. *Stokes v.
District Attorney of County of Philadelphia,* 247 F.3d 539,
541 (3d Cir.), *cert. denied,* 122 S.Ct. 364 (2001). In
pertinent part, the AEDPA provides:

(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The
limitation period shall run from the latest of -

(A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time
for seeking such review ...

28 U.S.C. § 2244(d)(1).

Petitioner was resentenced on October 3, 1997. Petitioner
did not file a direct appeal of his newly imposed sentence.
Thus, the limitation period began to run upon the expiration
of the time for filing such an appeal. *See Nara v. Frank,* 264
F.3d 310, 314 (3d Cir.2001) (stating that where petitioner
did not file a direct appeal, his conviction became final
when the time for filing a direct appeal expired); *Kapral v.
United States,* 166 F.3d 565, 576 (3d Cir.1999) (stating that
the limitation period begins to run at the expiration of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                          Page 2
Not Reported in F.Supp.2d, 2004 WL 1043723
**(Cite as: Not Reported in F.Supp.2d)**

time for filing a direct appeal if none is filed). Pursuant to 10 Del. C. § 147, Petitioner had thirty days in which to file his direct appeal or until November 2, 1997. *See also* Del.Supr. Ct. R. 6(a)(ii). Applying the one-year limitation period to this date, Petitioner was required to file his federal habeas petition on or before November 2, 1998.

**\*2** A petition is deemed filed on the date it is delivered to prison officials for mailing to the court. *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998). Petitioner does not indicate the date on which the Petition was delivered to prison authorities for mailing. However, absent proof of mailing, this Court has held that the date of the signatures within the petition is the date on which the petition is deemed filed. *See Johnson v. Brewington-Carr,* Civ. Act. No. 99-181-JJF, mem. op. at 4 (D.Del. Feb. 22, 2000).

In this case, the Petition is dated February 5, 2003, which is well past the November 1998 filing deadline. Accordingly, the Court concludes that the Petition is time-barred under Section 2244(d), unless the limitation period has been statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### II. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

In this case, Petitioner filed a motion for post-conviction relief in the Delaware Superior Court on October 10, 2000, nearly two years after the filing deadline for his federal habeas petition. Because the federal limitation period had already expired, it could not be tolled by the filing of Petitioner's post-conviction motion. *Downs v. Carroll,* 2003 WL 716597, \*1 (D.Del. Feb. 25, 2003) (collecting cases); *Whalen v. Kearney,* Civ. Act. No. 99-654-JJF, mem. op. at 5-6 (D.Del. Sept. 29, 2000). Accordingly, the Court concludes that the statutory tolling provision cannot render

the Petition timely filed.

### III. Equitable Tolling

Additionally, the one-year period of limitation may be equitably tolled. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001) ; *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). Equitable tolling applies:

> only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159 (quoting *United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)).

**\*3** In the instant case, Petitioner fails to allege any extraordinary circumstances giving rise to equitable tolling. Petitioner suggests that he has difficulty communicating in English and received poor advice from "jail-house lawyers," and therefore, his Petition should be tolled. However, courts have recognized that the lack of proficiency in English and the lack of sound advice from others in prison are insufficient reasons to equitably toll the one-year limitation period. *See e.g. Tan v. Bennett,* 2001 WL 823869, \*2 (S.D.N.Y. July 20, 2001) (collecting cases); *Chan v. United States,* 2000 WL 1843290, \*2 (E.D.N.Y. Oct. 25, 2000) ; *Martinez v. Kuhlman,* 1999 WL 1565177, \*2,5 (S.D.N.Y. Dec. 3, 1999) ; *Nguyen v. Mervau,* 1998 WL 556628, \*2 (N.D.Cal. Aug. 24, 1998).

In addition, Petitioner alleges in a Reply To State's Answer that he is actually innocent of the crimes for which he was convicted. It appears to the Court that neither the United States Supreme Court nor Third Circuit have ruled on the question of whether actual innocence can equitably toll the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 1043723
**(Cite as: Not Reported in F.Supp.2d)**

one-year limitation period. However, even assuming actual innocence can toll the limitation period, the Court would conclude that Petitioner has not established a sufficient basis to support his claim of actual innocence. To succeed on a claim of actual innocence, the petitioner must demonstrate, in light of all the evidence, that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo,* 513 U.S. 298, 327-328 (1995). Petitioner contends that because of his problems speaking English, his lawyer did not understand his contention that he was the victim of mistaken identity. Petitioner contends that he and his brother resemble each other, and that his brother was actually responsible for the crimes for which Petitioner was convicted. Petitioner's claim, however, is untenable in light of the evidence adduced at trial. The drug transaction forming the basis of Petitioner's convictions involved the purchase of drugs by an undercover officer. (Petitioner's Appendix in *Morales III,* No. 233, 1996 (Del.1997) ( "Petitioner's App.") at A-5-9). The officer purchased three bags of heroin for forty dollars, and the money used by the officer was marked. Shortly after the transaction, the officer observed Petitioner leaving the residence from where the drugs were purchased. Petitioner was stopped by a patrol car, and one of the marked bills was found in Petitioner's possession. (Petitioner's App. at A-12-24). Petitioner was identified by the officer involved in the purchase transaction as the individual from whom the officer purchased the drugs, and evidence was also presented that Petitioner admitted to using drugs and selling to support his habit. (State's Appendix in *Morales III,* No. 233, 1996 at B-1). In these circumstances, the Court cannot conclude that the alleged resemblance between Petitioner and his brother would have made it more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Accordingly, Petitioner has failed to demonstrate that equitable tolling is warranted, and therefore, the Court will dismiss the Petition as time-barred.

### IV. Certificate of Appealability

**\*4** The Court must next determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if Petitioner "has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that reasonable jurists would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, the Court has concluded that the Petition is barred by the one-year period of limitation. The Court is convinced that reasonable jurists would not debate otherwise. Because the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.

### CONCLUSION

For the reasons discussed, the Court will dismiss the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner, Luis Morales, and deny the Writ of Habeas Corpus sought by Petitioner. In addition, the Court will not issue a certificate of appealability.

An appropriate Order will be entered.

### *ORDER*

At Wilmington, this *28* day of April 2004, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (D.I.1) filed by Petitioner, Luis Morales, is DISMISSED and the Writ Of Habeas Corpus is DENIED.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 1043723
**(Cite as: Not Reported in F.Supp.2d)**

2. The Court declines to issue a certificate of appealability
for failure to satisfy the standard under 28 U.S.C. §
2253(c)(2).

D.Del.,2004.
Morales v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1043723

Briefs and Other Related Documents (Back to top)

• 1:03CV00220 (Docket) (Feb. 24, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                Page 1
Slip Copy, 2006 WL 2949302 (D.Del.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Cannon v. CarrollD.Del.,2006.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Alonzo CANNON, Petitioner,
v.
Thomas L. CARROLL, Warden, Respondent.
**No. CIVA 05-577 GMS.**

Oct. 17, 2006.

Alonzo Cannon, petitioner, pro se.
Elizabeth R. McFarlan, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for respondent.

MEMORANDUM OPINION
SLEET, J.

I. INTRODUCTION

**\*1** Petitioner Alonzo Cannon ("Cannon") filed the
pending petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. (D.I.1.) For the reasons that
follow, the court will dismiss Cannon's § 2254
petition as time-barred by the one-year period of
limitations prescribed in 28 U.S.C. § 2244(d)(1).

II. FACTUAL AND PROCEDURAL
BACKGROUND

On October 10, 2000, two probation officers and two
police officers knocked on the door of an apartment
located in Laurel, Delaware. A woman answered the
door, and the officers informed her that they were
looking for Cannon, who was in violation of his
parole-mandated curfew by not being at his own
home after 10 p.m. The officers explained that they
thought that Cannon frequently visited the apartment.
The woman told the officers that she did not think
Cannon was in the apartment but she stated, "you can
come in and check if you want to because I have no
reason to lie." The woman then led the officers
through each of the apartment's rooms. When she
reached the door to her 15 year old daughter's
bedroom, she discovered that the door was locked.
The woman opened the door with hanger, and the
officers discovered the 15-year-old girl and Cannon

naked and in bed together. The girl admitted that she
had snuck Cannon into the apartment and her room
earlier in the evening. Cannon's clothes were at the
foot of the bed and a man's jacket lay on the floor by
the doorway. Officer Gary Layfield gave Cannon
*Miranda* warnings. The officers searched the man's
jacket pockets and found eleven individually
wrapped bags of marijuana and twelve individually
wrapped bags of cocaine. The officers then asked
Cannon if he owned the jacket. Cannon initially
denied owning the jacket and stated it belonged to the
girl's 15-year-old brother. Cannon ultimately
admitted the jacket belonged to him. *Cannon v. State,*
790 A.2d 475 (Table), 2002 WL 188328, at \*1 (Del.
Jan. 31, 2002).

On April 25, 2001, a Delaware Superior Court jury
convicted Cannon of possession with intent to deliver
cocaine, possession with intent to deliver marijuana,
possession of cocaine within 1000 feet of a school,
possession of marijuana within 1000 feet of a school,
criminal impersonation, and possession of drug
paraphernalia. The Superior Court sentenced Cannon
to 41 years incarceration at Level V, suspended after
serving 18 years for 23 years of declining levels of
probation. *See State v. Cannon,* 2004 WL 1551500,
at \*1 (Del.Super. Ct. June 16, 2004). The Delaware
Supreme Court affirmed Cannon's convictions and
sentences on direct appeal. *Cannon,* 2002 WL
188328, at \*2.

In May 2003, Cannon filed a motion for post-
conviction relief pursuant to Delaware Superior
Court Criminal Rule 61 ("Rule 61 motion") in the
Superior Court. The Superior Court denied the Rule
61 motion on June 16, 2004. *Cannon,* 2004 WL
1551500, at \*6. Cannon appealed, and the Delaware
Supreme Court denied the appeal as untimely.
*Cannon v. State,* 858 A.2d 960 (Table), 2004 WL
1965585 (Del. Aug. 27, 2004).

**\*2** Cannon filed the instant petition in August 2005,
asserting the following claims: (1) trial counsel
provided constitutionally ineffective assistance of
counsel; (2) the prosecutor engaged in misconduct by
vouching for the credibility of three witnesses,
allowing perjured testimony to go uncorrected, and
using false testimonial evidence; (3) a police officer
committed perjury at trial; and (4) the police did not
administer *Miranda* warnings or administered
defective *Miranda* warnings. (D.I.1.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 2
Slip Copy, 2006 WL 2949302 (D.Del.)
**(Cite as: Slip Copy)**

The State filed an answer asserting that the petition is untimely. (D.I.8.)

### III. DISCUSSION

#### A. One Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and habeas petitions filed in federal courts after this date must comply with AEDPA's requirements. *See generally Lindh v. Murphy,* 521 U.S. 320, 336 (1997). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cannon's § 2254 petition, filed in 2005, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh,* 521 U.S. at 336. Cannon does not allege, and the court does not discern, any facts triggering the application of § § 2244(d)(1)(B),(C), or (D). Accordingly, the one-year period of limitations began to run when Cannon's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final upon expiration of the ninety-day time period allowed to file a petition for certiorari review. *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir.1999); *Jones v. Morton,* 195 F.3d 153, 158

(3d Cir.1999). Here, the Delaware Supreme Court affirmed Cannon's conviction and sentence on January 31, 2002, and the ninety-day period for seeking certiorari review expired on May 1, 2002. Therefore, the one-year limitations period began to run on May 2, 2002, and, to be timely, Cannon was required to file a § 2254 petition by May 2, 2003. *See Wilson v. Beard,* 426 F.3d 653, 662-63 (3d Cir.2005)(holding that Federal Rule of Civil Procedure 6(a) applies to the calculation of the AEDPA's one-year limitations period); *see, e.g., Harris v. Snyder,* 2002 WL 47895 (D.Del. Jan. 11, 2002).

**\*3** Cannon did not file the instant habeas petition until August 8, 2005. [FN1] Therefore, his habeas petition is time-barred and should be dismissed, unless the time-period can be statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

> FN1. A *pro se* prisoner's habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir.2003); *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998). Cannon's § 2254 petition is dated August 6, 2005, and presumably, he did not deliver it to prison officials for mailing prior to that date. Consequently, the court adopts August 6, 2005 as the filing date.

#### B. Statutory Tolling

Section 2244(d)(2) of AEDPA specifically permits the statutory tolling of the one-year period of limitations:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). A properly filed state post-conviction motion tolls AEDPA's limitations period during the time the time the action is pending in the state courts, including any post-conviction appeals. *Swartz v. Meyers,* 204 F.3d 417, 424-25 (3d Cir.2000).

Here, Cannon filed a Rule 61 motion in the Superior Court on May 2, 2003, the very last day of AEDPA's limitations period. The Superior Court denied the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motion, and Cannon appealed. However, because the Delaware Supreme Court denied the appeal as untimely,[FN2] Cannon never "properly filed" his appeal from the denial of his Rule 61 motion. *See Pace v. DiGuglielmo,* 544 U.S. 408 (2005). Consequently, Cannon's Rule 61 motion tolls the limitations period from May 2, 2003 through July 16, 2004, the date on which the thirty-day period for filing a timely state post-conviction appeal expired; the Rule 61 motion does not toll AEDPA's limitations period for the remaining period during which Cannon's untimely post-conviction appeal was pending before the state supreme court. *See Eley v. Snyder,* 2002 WL 441325, at *2-3 (D.Del. Mar. 21, 2002); *Swartz,* 204 F.3d at 424.

> FN2. Cannon filed his notice of appeal on July 21, 2004, but in order to be timely under Delaware Supreme Court Rule 6, the notice of appeal had to be filed on or before July 16, 2004. *Cannon,* 2004 WL 1965585, at *1.

When the limitations clock started to run again after July 16, 2004, Cannon had one day to file a timely habeas petition. Cannon, however, waited more than one year to file the instant petition. Thus, applying the statutory tolling provision of § 2244(d)(2) does not render Cannon's petition timely.

### C. Equitable Tolling

The Third Circuit has held that AEDPA's limitations period may be subject to equitable tolling in limited circumstances. *Miller v. New Jersey Dept. of Corrections,* 145 F.3d 616 (3d Cir.1998); *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998); *Thomas v. Snyder,* 2001 WL 1555239, at *3-4 (D.Del. Nov. 28, 2001). In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims" and that he was prevented from asserting his rights in some extraordinary way; mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted); *Schlueter v. Varner,* 384 F.3d 69, 77 (3d Cir.2004). Consistent with these principles, the Third Circuit has specifically limited equitable tolling of AEDPA's limitations period to the following circumstances:
**\*4** (1) where the defendant actively misled the plaintiff;
(2) where the plaintiff was in some extraordinary way

prevented from asserting his rights; or
(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999).

Cannon does not assert that any extraordinary circumstances prevented him from timely filing his habeas petition. To the extent Cannon's untimely filing of the instant petition was due to a mistake in computing AEDPA's limitations period, that mistake does not justify equitable tolling. *See Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001). Thus, the court concludes that equitable tolling is not warranted in this case, and the court will dismiss Cannon's petition as time-barred.

### IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The court concludes that Cannon's petition for habeas relief is time-barred. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### V. CONCLUSION

For the reasons stated, Cannon's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.


### ORDER

At Wilmington, this *17ᵗʰ* day of October, 2006, consistent with the Memorandum Opinion issued this same day;

IT IS HEREBY ORDERED that:

1. Petitioner Alonzo Cannon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I.1.)

2. A certificate of appealability will not be issued for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2006.
Cannon v. Carroll
Slip Copy, 2006 WL 2949302 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:05cv00577 (Docket) (Aug. 8, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 441325 (D.Del.)
**(Cite as: 2002 WL 441325 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Herbert ELEY, Petitioner,
v.
Robert SNYDER, Warden, and Attorney General of the
State of Delaware,
Respondents.
**No. CIV.A. 00-34-GMS.**

March 21, 2002.

MEMORANDUM AND ORDER
SLEET, District J.

**\*1** Following a jury trial in the Delaware Superior Court, Herbert Eley was convicted of burglary, theft, and criminal mischief. He is presently incarcerated in the Delaware Correctional Center in Smyrna, Delaware. Eley has filed with the court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As explained below, the court will dismiss Eley's petition as time barred by the one-year period of limitation prescribed in 28 U.S.C. § 2244(d)(1).

I. BACKGROUND

On June 24, 1997, a jury in the Delaware Superior Court found Herbert Eley guilty of second degree burglary, theft, and criminal mischief. The Superior Court (Graves, J.) sentenced Eley on August 21, 1997, to ten years imprisonment to be suspended after four years for decreasing levels of supervision. The Delaware Supreme Court affirmed Eley's conviction and sentence. *Eley v. State,* No. 382, 1997, 1998 WL 123210 (Del. Mar. 9, 1998).

On September 29, 1998, Eley filed in the Superior Court a motion for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure. (D.I. 8, Motion for Postconviction Relief.) The Superior Court concluded that Eley's claims were procedurally barred, and denied the motion on October 20, 1998. *Eley v. State,* Cr. A. No. 97-02-0033 (Del.Super.Ct. Oct. 20, 1998). The Delaware Supreme Court dismissed Eley's appeal for lack of

jurisdiction because the notice of appeal was untimely filed. *Eley v. State,* No. 547, 1998, 1999 WL 86054 (Del. Jan. 14, 1999).

Eley has now filed the current petition for a writ of habeas corpus. In his petition, Eley alleges that: (1) trial counsel rendered ineffective assistance; (2) the prosecutor engaged in misconduct; and (3) the trial court erred by failing to excuse a juror who had been previously represented by defense counsel. (D.I. 3 at 5-6.) The respondents argue that the petition is subject to a one-year period of limitation that expired before Eley filed it. Thus, they ask the court to dismiss the petition as time barred.

II. TIMELINESS

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute by prescribing a one-year period of limitation for the filing of § 2254 habeas petitions by state prisoners. *Stokes v. District Attorney of the County of Philadelphia,* 247 F.3d 539, 541 (3d Cir.), *cert. denied,* 122 S.Ct. 364 (2001). Effective April 24, 1996, the AEDPA provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1).

Eley was convicted on June 24, 1997, and was sentenced on August 21, 1997. The Delaware Supreme Court affirmed his conviction and sentence on March 9, 1998. Eley was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13. Although Eley did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 441325 (D.Del.)
(Cite as: 2002 WL 441325 (D.Del.))

*Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Eley's conviction, therefore, became final on June 7, 1998, ninety days after the Delaware Supreme Court affirmed his conviction.

**\*2** The court's docket reflects that Eley's petition was filed on January 19, 2000. (D.I.3.) A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court dockets it. *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998). Eley has not provided the court with any documentation establishing the date he submitted his petition to prison officials for mailing. The petition itself, however, is dated December 20, 1999. In the absence of proof of the date of delivery, the court deems Eley's habeas petition filed on December 20, 1999, the date he signed it.

Notwithstanding, Eley's habeas petition was filed more than six months after the one-year period expired. That, however, does not end the inquiry because the one-year period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). An application is " 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett,* 531 U.S. 4, 8 (2000).

As described above, Eley filed a Rule 61 motion for postconviction relief on September 29, 1998, which the Superior Court denied on October 20, 1998. Although Eley appealed from the denial of postconviction relief, the Delaware Supreme Court dismissed the appeal as untimely.

The respondents acknowledge, and correctly so, that the filing of the Rule 61 motion tolled the one-year period of limitation under § 2244(d)(2). They argue, however, that the one-year period was tolled only until November 20, 1998, thirty days after the Superior Court denied the Rule 61 motion. After the thirty-day period for filing a notice of appeal expired, they assert, Eley's Rule 61 motion was no longer pending under § 2244(d)(2). They conclude that the one-year period of limitation was not tolled while his untimely appeal was before the Delaware Supreme Court.

The court agrees that Eley's Rule 61 motion was pending from September 29, 1998, until November 20, 1998. In *Swartz v. Meyers,* 204 F.3d 417 (3d Cir.2000), the Third Circuit considered whether a postconviction petition was pending under § 2244(d)(2) during the time in which the petitioner could file a notice of appeal. The Third Circuit concluded that the one-year period is tolled during the time in which a timely postconviction appeal could be filed, even if a timely appeal is not filed. *Id.* at 424. If a timely notice of appeal is not filed, the postconviction motion is no longer pending when the time to appeal expires. *Id.*

**\*3** Here, the Superior Court denied Eley's motion for postconviction relief on October 20, 1998. He had thirty days in which to file a timely notice of appeal. Del. R.S.Ct. 6(a)(iii); *see Carr v. State,* 554 A.2d 778, 779 (Del.1989)(holding that thirty-day limit is jurisdictional). Eley filed his notice of appeal on December 23, 1998, well after the thirty-day limit expired, and the Delaware Supreme Court dismissed the appeal as untimely. *Eley,* 1999 WL 86054 at \* \*1. Because Eley failed to file a timely notice of appeal, his Rule 61 motion was pending until the expiration of the thirty-day period, *i.e.,* November 20, 1998. Accordingly, the one-year period of limitation was tolled from September 29, 1998, until November 20, 1998.

Unfortunately for Eley, applying § 2244(d)(2) does not render his habeas petition timely. After Eley's conviction became final on June 7, 1998, he waited 114 days before filing his Rule 61 motion. After November 20, 1998, when his Rule 61 motion was no longer pending, he waited an additional 395 days before filing his federal habeas petition. Plainly, more than one year lapsed during which no application for postconviction relief was pending.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 441325 (D.Del.)
**(Cite as: 2002 WL 441325 (D.Del.))**

Page 3

In short, the court finds that the statutory tolling provision applies to the period of time during which Eley's Rule 61 motion was pending before the Superior Court, plus the thirty-day period in which he could have filed a timely notice of appeal. Even so, the one-year period expired before Eley filed the current habeas petition on December 20, 1999. The statutory tolling provision, therefore, does not render Eley's habeas petition timely filed.

C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable tolling. *Fahy v. Horn,* 240 F .3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:

> only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159 (quoting *United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)).

In his reply brief, Eley states that he did not receive notice of some unspecified order of the "lower court." (D.I.9, ¶ 4.) Although it is not entirely clear, it appears that Eley argues that the Superior Court's failure to notify him of the denial of his Rule 61 motion warrants the application of equitable tolling. He argued to the Delaware Supreme Court that he did not receive the Superior Court's order denying postconviction relief "until some time in late November [1998]." *Eley,* 1999 WL 86054 at * *1.

**\*4** Whether the doctrine of equitable tolling applies under these circumstances presents an interesting question, but one

the court need not contemplate. Even if this court equitably tolled the entire period of time from September 29, 1998, through January 14, 1999 (the date the Delaware Supreme Court dismissed his postconviction appeal), Eley's petition would still be untimely. As described above, 114 days lapsed from the date his conviction became final until he filed his Rule 61 motion. These 114 days must be counted toward the one-year period of limitation. Then, from January 14, 1999, until December 20, 1999 (the date he filed his habeas petition), an additional 340 days passed. These 340 days must also be counted toward the one-year period of limitation. Even if the court were to equitably toll the period of time his untimely appeal was pending before the Delaware Supreme Court, his habeas petition was nonetheless untimely filed.

For these reasons, the court concludes that Eley's habeas petition was filed after the one-year period of limitation expired. Neither the statutory tolling provision nor the doctrine of equitable tolling alters this conclusion. Accordingly, his habeas petition will be dismissed as untimely.

III. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 441325 (D.Del.)
**(Cite as: 2002 WL 441325 (D.Del.))**

Page 4

For the reasons discussed above, Eley's habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not find its assessments debatable. Eley has, therefore, failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Eley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.

2. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

**\*5** IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2002 WL 441325 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00034 (Docket) (Jan. 19, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Kevin A. THOMAS, Petitioner,
v.
Robert W. SNYDER, Warden, and Attorney General of the
State of Delaware, Respondents.
**No. CIV.A. 98-597-GMS.**

Nov. 28, 2001.

MEMORANDUM AND ORDER

SLEET, District J.
**\*1** Kevin A. Thomas was convicted of first degree murder
and possession of a deadly weapon during the commission
of a felony. He is presently incarcerated in the Delaware
Correctional Center in Smyrna, Delaware, where he is
serving a sentence of life imprisonment. Thomas has filed
with this court a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. As explained below, the court
will dismiss Thomas' petition as time barred by the one-year
period of limitation prescribed in 28 U.S.C. § 2244(d).

I. BACKGROUND

On June 28, 1993, following a jury trial in the Delaware
Superior Court, Kevin A. Thomas was convicted of first
degree murder and possession of a deadly weapon during
the commission of a felony. The evidence at trial
demonstrated that on September 13, 1992, Thomas shot
David Turner in the face and killed him. Thomas was
seventeen years old at the time. He was sentenced to life in
prison without parole on the murder conviction and to a
consecutive sentence of five years in prison on the weapons
conviction. The Delaware Supreme Court affirmed Thomas'
conviction and sentence on September 21, 1994.

On December 18, 1996, Thomas filed in state court a
motion for post-conviction relief pursuant to Rule 61 of the
Delaware Superior Court Criminal Rules. The trial court
summarily dismissed Thomas' Rule 61 motion on December
23, 1996. Thomas appealed to the Delaware Supreme Court.
His subsequent motion to withdraw the appeal was granted
on March 11, 1997. Thomas filed a second Rule 61 motion
for post-conviction relief on March 27, 1997, which was

summarily dismissed on May 9, 1997. Again, Thomas
appealed to the Delaware Supreme Court. The Court
affirmed the order of dismissal on November 24, 1997.

Thomas has now filed with this court the current petition for
a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his
petition Thomas articulates four separate grounds for relief:
(1) The searches of his residence and car were in violation
of the Fourth Amendment, and all evidence seized from
these searches should have been suppressed; (2) The trial
court erred in admitting identification testimony that was the
result of an impermissibly suggestive photographic
identification procedure; (3) The trial court violated his
constitutional right to due process by giving a supplemental
jury instruction pursuant to *Allen v. United States,* 164 U.S.
492 (1896); and (4) His constitutional rights were violated
when police questioned him without a parent or legal
guardian present. The respondents argue that the petition is
subject to a one-year period of limitation that expired before
Thomas filed it. Thus, they request that the court dismiss the
petition as time barred.

II. DISCUSSION

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), Congress amended the federal habeas
statute by prescribing a one-year period of limitation for the
filing of § 2254 habeas petitions by state prisoners. *Stokes v.
District Attorney of the County of Philadelphia,* 247 F.3d
539, 541 (3d Cir.2001). Effective April 24, 1996, the
AEDPA provides:
**\*2** (1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The
limitation period shall run from the latest of -
(A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review....

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible
retroactive application of the one-year period of limitation,
state prisoners whose convictions became final prior to the
enactment of the AEDPA were allowed to file their § 2254

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

petitions no later than April 23, 1997. *See Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998)(prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Thomas' conviction became final prior to the enactment of the AEDPA. He was convicted on June 28, 1993. The Delaware Supreme Court affirmed the judgment of conviction on September 21, 1994. Thomas was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13. Although Thomas did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Thomas' conviction became final on December 20, 1994, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

Ascertaining the precise date Thomas filed his habeas petition with the court is somewhat problematic. The court's docket reflects that the petition was filed on October 21, 1998, the date the clerk's office received his petition and filing fee. A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court receives it. *Id.* at 113. Thomas has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated August 10, 1998. The respondents maintain that the filing date is October 8, 1998, but they provide no documentation to support this conclusion. Under these circumstances, the court will extend Thomas every benefit of the doubt and will consider his habeas petition filed on August 10, 1998, the earliest possible date he could

have delivered it to prison officials for mailing.

**\*3** Obviously Thomas' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d)'s period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thomas filed in state court a Rule 61 motion for post-conviction relief on December 18, 1996, which the Superior Court summarily dismissed on December 20, 1996. As previously noted, Thomas appealed from the order of dismissal. His subsequent motion to withdraw the appeal was granted on March 11, 1997. The respondents concede, and correctly so, that the filing of this motion for post-conviction relief tolled the period of limitation. Thus, the period of time from December 18, 1996, through March 11, 1997, does not count toward the one-year period of limitation.[FN1]

> FN1. The court notes that the one-year period is tolled during the time between the Superior Court's dismissal of Thomas' Rule 61 motion and his timely appeal to the Delaware Supreme Court. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000).

Thomas filed a second Rule 61 motion for post-conviction relief in state court on March 27, 1997, which was summarily dismissed on May 9, 1997. The Delaware Supreme Court affirmed the dismissal on November 24, 1997. Again, the respondents concede that the filing of the second Rule 61 motion tolled the period of limitation.[FN2] Thus, the period of time from March 27, 1997, through November 24, 1997, is excluded from the one-year limitation period.[FN3]



FN2. Only a "properly filed application" for post-conviction review tolls the one-year period under § 2244(d)(2). Whether Thomas' second Rule 61 motion constitutes a "properly filed application" is subject to debate. Under Rule 61, "[a]ny ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred." Super. Ct. R.Crim. P., Rule 61(i)(2). This procedural bar, however, is inapplicable where a motion raises "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.,* Rule 61(i)(5). The court need not, and does not, address whether Thomas' second Rule 61 motion was a "properly filed application" because the respondents concede that the one-year period was tolled while the second Rule 61 motion was pending. Regardless, as discussed herein, Thomas' habeas petition is untimely.

FN3. Thomas could have filed, but did not file, a petition for a writ of certiorari with the United States Supreme Court within ninety days of the Delaware Supreme Court's order. *See* Supreme Court Rule 13. As explained above, on direct review that ninety-day period is excluded from the one-year period of limitation. *See Kapral,* 166 F.3d at 576. In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does *not* toll the one-year period, and the ninety-day period is counted. *Stokes,* 247 F.3d at 543.

Nonetheless, since the date of the enactment of AEDPA, more than one year has passed during which statutory tolling does not apply. First, from April 24, 1996, through December 17, 1996, a period of 238 days, no post-conviction proceedings were pending, and those 238 days are included as part of the one-year period. In addition, from March 12, 1997, through March 26, 1997, no post-conviction relief proceedings were pending, and those fourteen days must be counted. Finally, from November 25,

1997, through August 9, 1998, a period of 258 days, no motion for post-conviction relief was pending, and those 258 days must be counted.

In sum, following the enactment of the AEDPA, 510 days lapsed during which Thomas had no post-conviction proceedings pending for purposes of § 2244(d)(2). This period of time, well in excess of one year, must be counted. The court thus concludes that while the statutory tolling provision applies to certain portions of time since the enactment of the AEDPA, it does not render Thomas' habeas petition timely filed.

### C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable tolling. *Fahy v. Horn,* 240 F .3d 239, 244 (3d Cir.2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:

*4 only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159, *quoting United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998).

In the instant case, Thomas argues that the AEDPA's one-year period of limitation is at odds with the three-year period allowed for filing a Rule 61 motion for post-conviction relief. He contends that because Delaware allows three years in which to file a Rule 61 motion, and petitioners are required to exhaust state remedies before filing habeas petitions in federal court, it is unfair to apply



Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the AEDPA's one-year period of limitation, rather than Delaware's three-year period.

Although Thomas is correct that Delaware generally allows three years in which to file a Rule 61 motion, *see* Super. Ct. R.Crim. P., Rule 61(i)(1), the court is unimpressed by his equitable tolling argument. As explained above, the court has applied § 2244(d)(2)'s tolling provision to exclude the periods of time during which his two post-conviction proceedings were pending before the state courts. These periods of time do not count against Thomas. There is nothing unfair or inequitable in applying the AEDPA's one-year period of limitation to petitioners who wait more than a year before filing a habeas petition in federal court, even if the Delaware rule permits a longer period of time in which to file Rule 61 motions.

More important, Thomas has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. Indeed, he has failed to offer *any* explanation for the delay. He has not provided the court with any reason why, after the AEDPA was enacted, he waited until December 18, 1996, to file his first Rule 61 motion. He has not explained why, after his second Rule 61 proceedings were completed on November 24, 1997, he waited until August 10, 1998, to file his habeas petition with this court.

In short, the court cannot discern any extraordinary circumstances that warrant applying the doctrine of equitable tolling. Thomas' habeas petition will be dismissed as untimely.

### D. Motion for Appointment of Counsel

In a letter to the court dated April 16, 2000, Thomas inquired respecting appointment of counsel in this matter. The court construes this letter as a motion for appointment of counsel. The Sixth Amendment right to counsel does not extend to habeas proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). Additionally, the court has determined that Thomas' habeas petition will be dismissed as untimely. Accordingly, Thomas' letter dated April 16, 2000, construed as a motion for appointment of counsel,

will be denied as moot.

### III. CERTIFICATE OF APPEALABILITY

**\*5** Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Thomas' habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not debate otherwise. Thomas therefore cannot make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Thomas' petition for a writ of habeas corpus pursuant to 28 U .S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.

2. Thomas' letter dated April 16, 2000, requesting appointment of counsel, is construed as a motion for appointment of counsel, and so construed, is DENIED as moot.

3. The court declines to issue a certificate of appealability

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

for failure to satisfy the standard set forth in 28 U.S.C. §
2253(c)(2).

IT IS SO ORDERED.

D.Del.,2001.
Thomas v. Snyder
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21146750
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2003 WL 21146750
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Ronnie D. WILMER, Petitioner,
v.
Thomas L. CARROLL, Warden, and M. Jane Brady,
Attorney General of the State of Delaware, Respondents.
**No. Civ.A. 02-1587-SLR.**

May 16, 2003.

MEMORANDUM ORDER

ROBINSON, J.

### I. INTRODUCTION

*1 Petitioner Ronnie D. Wilmer is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I.2) For the reasons that follow, the court concludes that petitioner's application is time-barred by the one-year period of limitations prescribed in 28 U .S.C. § 2244(d)(1). Accordingly, the court will dismiss the petition as untimely.

### II. BACKGROUND

Petitioner was indicted in July 1994 for three drug offenses. (D.I.11) He pled guilty in October 1994 to trafficking in cocaine and maintaining a vehicle for distributing controlled substances. The Delaware Superior Court sentenced petitioner to a total of eight years imprisonment, which it suspended after five years for three years probation. (*Id.*)

In February 2000, petitioner was arrested for several motor vehicle offenses. (*Id.*) During the execution of a search warrant at the home of petitioner's mother, the Delaware State Police found over 50 grams of crack cocaine. Petitioner subsequently admitted that the drugs belonged to him. In addition, probation officers charged petitioner with violating his curfew. As a result, in March 2000, state probation officers charged petitioner with violating the

terms of his probation and, in April 2000, petitioner was indicted on various drug charges. In August 2000, Petitioner pled guilty to possession of cocaine and maintaining a dwelling for keeping controlled substances, and the Delaware Superior Court found that petitioner had violated his probation stemming from the 1994 conviction. The Superior Court revoked his probation and petitioner was sentenced to two years imprisonment ("VOP sentence"). In connection with another 1994 conviction for which he had also been on probation, the Superior Court sentenced him to two years imprisonment. (*Id.*)

Petitioner did not appeal his conviction or the revocation of his probation. (*Id.*) Rather, on November 3, 2000, petitioner moved to modify his sentence under Rule 35(b) of the Superior Court Rules of Criminal Procedure. The Superior Court denied this motion on November 21, 2000, and petitioner did not appeal that decision. Subsequently, on July 23, 2001, petitioner filed a motion to correct his sentence under Rule 35(a) of the Superior Court Rules of Criminal Procedure, which the Superior Court denied on July 31, 2001. Petitioner appealed and, on February 13, 2002, the Delaware Supreme Court affirmed the Superior Court's decision. Forty-three days later, petitioner moved for post-conviction relief under Rule 61 of the Superior Court Rules of Criminal Procedure. On June 19, 2002, the Delaware Superior Court denied that motion, and the Delaware Supreme Court affirmed this denial on September 27, 2002. (*Id.*)

On October 29, 2002, petitioner filed with this court his application for federal habeas relief, along with a request to proceed *in forma pauperis*. (D.I.2) In his habeas petition, petitioner alleges that his counsel provided ineffective assistance by:[FN1]

> FN1. Petitioner did not write out the grounds for the petition but, rather, he attached a copy of the Delaware Supreme Court's Order affirming the Superior Court's judgment.

*2 (1) failing to inform him about the basis for the State's case, investigate the facts, or meet or communicate with him about the case;
(2) re-scheduling the VOP hearing repeatedly; and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21146750

**(Cite as: Not Reported in F.Supp.2d)**

Page 2

(3) waiving his constitutional right to a preliminary hearing.

(D.I. 2, *Wilmer v. State,* No. 359, 2002, at 2 (Sept. 27, 2002)).

This court granted petitioner's request to proceed *in forma pauperis.* (*Id.*) On November 19, 2002, petitioner simultaneously filed a motion for release pending review (D.I.7) and a motion for the production of documents. (D.I.8) The motion for the production of documents requests copies of "all police reports, probable cause, and physical material evidence leading to the arrest of the petitioner ... [and a] copy of the executed search warrant." (*Id.*)

As to petitioner's application for federal habeas relief, respondents assert that the petition is untimely because petitioner filed it after the expiration of the one-year period of limitation, and they ask the court to dismiss it as time-barred. (D.I.11) They assert that the motion for release pending review should be denied because: (1) the entire petition is time-barred; and (2) petitioner has not satisfied the required standards justifying such action. (D.I.15) Respondents also assert that the motion for the production of documents should be denied because: (1) the entire petition is time-barred; and (2) petitioner has not established "good cause" for discovery. (D.I.14)

On February 10, 2003, petitioner filed a "reply in opposition of respondent's answer to motion for the production of documents" and a reply brief. (D.I.16, 17) Petitioner's reply regarding the motion for the production of documents asserts that the court needs to review the entire state record to determine the validity of his ineffective assistance of counsel claim, and that this mixed question of law and fact is not entitled to the "presumption of correctness" prescribed by § 2254(e)(1). (D.I. 16 at 2-3) Petitioner's reply brief provides additional explanations for his ineffective assistance of counsel claim. (D.I.17) In addition, petitioner requests an evidentiary hearing because facts are in dispute, and he asserts his right to counsel during such evidentiary hearing. (*Id.* at 6)

### III. DISCUSSION

#### A. One-Year Period of Limitation

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitation for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The AEDPA states, in pertinent part:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1). If a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir.1999) ; *Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). If a petitioner does not appeal a state court judgment, then the conviction becomes final on the "date on which the time for filing such an appeal expired." *See Kapral,* 166 F.3d at 577.

**\*3** In the present case, the Delaware Superior Court sentenced petitioner on August 3, 2000. Because petitioner did not appeal his sentence, the one-year period of limitation began to run on the expiration of the time for filing an appeal. Pursuant to Delaware law, a notice of appeal in a direct criminal appeal must be filed within thirty days after a sentence is imposed. *See* 10 Del.Code Ann. § 147; Del.Supr.Ct.R. 6(a)(ii). Consequently, petitioner's conviction became final for the purposes of § 2244(d)(1) on September 5, 2000. [FN2] Thus, to timely file a habeas petition with this court, petitioner needed to file his § 2254 petition no later than September 5, 2001.

> FN2. The thirtieth day was actually September 2, a Saturday. Because Monday, September 4, was Labor Day, the appeal period expired on September 5, 2000. Del.Supr.Ct.R.11(a).

The court's docket indicates that petitioner filed his pending habeas petition on October 29, 2002, one year and fifty four days too late. However, a *pro se* prisoner's habeas petition is considered filed on the date the petition is delivered to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21146750
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

prison officials for mailing, not on the court's docket date. *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998). The pending petition was actually signed and dated October 9, 2002, and stamped as "received" by the District Court Clerk's Office on October 10, 2002. Thus, the court will assume that petitioner mailed the petition on October 9, 2002 and, therefore, will treat October 9, 2002 as the date of filing.

Even if the date of filing is October 9, 2002, the petitioner filed his habeas petition one year and thirty four days after his conviction became final. Nonetheless, if either the doctrine of statutory tolling or equitable tolling applies, then the petition will not be time-barred. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). The court will discuss each doctrine in turn.

## B. Statutory Tolling

Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitation:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for State post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998).

Although the petitioner did not appeal his VOP sentence, he did file three post-conviction motions for review: (1) Rule 35(b) motion to modify sentence, filed November 3, 2000 and denied on November 21, 2000; (2) Rule 35(a) motion to correct sentence, filed July 23, 2001, denied on July 31, 2001, and affirmed by the Delaware Supreme Court on appeal on February 13, 2002; and (3) Rule 61 motion for post-conviction relief, filed on March 28, 2002, denied on June 19, 2002, and affirmed by the Delaware Supreme Court on appeal on September 27, 2002. The respondents assert that the Rule 35(b) motion to modify sentence does not toll the limitations period because it is "little more than a plea to the sentencing judge for leniency." (D.I. 11, citing

*Walkowiak v. Haines,* 272 F.3d 234 (4th Cir.2001); *see Bland v. Hall,* 2002 WL 989532 (D.Mass. May 14, 2002)). While the court agrees that petitioner's 35(b) motion does not toll the one-year period, it disagrees with the respondents' reasoning.

**\*4** Generally, a Rule 35(b) motion does toll the one-year time period because it "qualifies as an application for postconviction or other collateral review under § 2244(d)(2)." *McNeil v. Snyder,* 2002 WL 202100, at \*3 (D. Del. Feb 8, 2002). However, even though a Rule 35(b) motion can toll the one-year period, it can only do so if it was timely filed in the right location. *See Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998) ; 28 U.S.C. § 2244(d)(2). In this instance, the Delaware Superior Court denied the Rule 35(b) motion because it was "filed more than 90 days after imposition of sentence and is therefore timebarred." FN3 (D.I. 13, State's August 16, 2002 App. B2) Because petitioner's motion did not conform to the state's procedural requirements, the motion was not properly filed and, thus, it does not trigger 28 U.S.C. § 2244(d)(2)'s tolling provision.

> FN3. Del.Super. Ct. R. 35(b) requires a motion to reduce a sentence to be "made within 90 days after the sentence is imposed." The Superior Court Criminal Docket indicates that the sentence was imposed on August 3, 2000, but was not signed and filed until August 15, 2000. (D.I. 13, State's Aug. 16, 2002 App. B2) Thus, the 90-day filing period for a Crim R. 35(b) motion commenced on August 3, 2000, the date of sentencing. Petitioner filed his 35(b) motion on November 3, 2000, ninety-two days after sentencing.

The respondents correctly acknowledge that the one-year period was tolled by petitioner's other post-conviction motions. Petitioner filed his 35(a) motion to correct his sentence on July 23, 2001, tolling the time period until the Delaware Supreme Court affirmed the denial of post-conviction relief on February 13, 2002. By the time petitioner filed the Rule 35(a) motion, 321 days of the one-year period had lapsed. The one-year period began to run again on February 13, 2002, but was tolled 43 days later on March 28, 2002 when petitioner filed a motion for post-conviction relief under Rule 61 of the Superior Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21146750
(Cite as: Not Reported in F.Supp.2d)

Rules of Criminal Procedure. The time period was tolled until September 27, 2002, when the Delaware Supreme Court affirmed the denial of post-conviction relief. However, at this point in time, there was only one day left in the limitations period. Thus, to be timely, petitioner had to file his habeas petition by September 28, 2002. Accordingly, because the petition was not filed until October 9, 2002, it is time-barred. The court concludes that the doctrine of statutory tolling does not render the petition timely.

### C. Equitable Tolling

A petitioner may be able to avoid the AEDPA one-year time period by demonstrating that the doctrine of equitable tolling applies to the habeas motion. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001) ; *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998). Equitable tolling is proper when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Id.* at 618 (internal citations omitted). However, the Third Circuit permits equitable tolling for habeas petitions in only four narrow circumstances:

(1) where the defendant actively misled the plaintiff;

(2) where the plaintiff was in some extraordinary way prevented from asserting his rights;

(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or

(4) where [in a Title VII action] the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or the court misled the plaintiff into believing that he had done everything required of him.

**\*5** *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999). Federal courts invoke the doctrine of equitable tolling "only sparingly." *See United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998). In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims;" mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted). For example, in non-capital cases, inadequate research, attorney error, miscalculation, or other mistakes do not qualify as "extraordinary circumstances"

sufficient to trigger equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001). Generally, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Jones,* 195 F.3d at 159 (quoting *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998).

The respondents' answer clearly asserts that the petition is time-barred and must be dismissed, and that the time period is neither statutorily nor equitably tolled. (D.I.11) Despite this explicit argument, petitioner's reply brief does not address the timeliness issue. (D.I.17) Rather, petitioner focuses on the issue of exhaustion of state remedies. [FN4] (*Id.*) Nevertheless, the court broadly construes petitioner's statement that "the respondents breach[ed] ... this court's procedural rules of habeas corpus proceedings, pursuant to 28 U.S.C. § 2249 associated with its obligation to submit to this court all state records of the defendant ... [c]learly it [is] conceivable that this is the respondents' attempt to sabotage the petitioner's efforts to make his claim of ineffective assistance of counsel argument" as a potential equitable tolling argument. (*Id.* at 4) Basically, petitioner appears to argue that the State's failure to respond to his prior requests for copies of the search warrant and police report illustrate that he "was in some extraordinary way prevented from asserting his rights."

> FN4. In fact, the respondents explicitly acknowledge that the petitioner "obviously exhausted state remedies." (D.I. 11 at 2)

The court is not persuaded by this argument. Even if, arguendo, the State were attempting to "sabotage the petitioner's effort to make his claim of ineffective assistance of counsel argument," the failure to produce the requested items did not prevent petitioner from timely filing his habeas petition. To the extent that petitioner's failure to timely file his petition was the result of a mistake, a mistake does not constitute an extraordinary circumstance. Equitable tolling is not triggered by a *pro se* prisoner's mistake or miscalculation of the time period. *See Simpson v. Snyder,* 2002 WL 1000094, at *3 (D.Del. May 14, 2002). In short, the court concludes that the petitioner has not presented any extraordinary circumstances to warrant applying the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21146750
**(Cite as: Not Reported in F.Supp.2d)**

doctrine of equitable tolling. Accordingly, petitioner's § 2254 habeas petition will be dismissed as untimely.

### D. Motion for an Evidentiary Hearing

**\*6** Petitioner asserts that he is entitled to an evidentiary hearing "on his ineffective assistance of counsel claims as a matter of right where the facts are disputed." (D.I. 17 at 6) Although a federal court has discretion to grant evidentiary hearings, the AEDPA permits such hearings only in limited circumstances. *See* 28 U.S.C. § 2254(e) ; *Campbell v. Vaughn,* 209 F.3d 280, 286-87 (3d Cir.2000), *cert. denied,* 531 U.S. 1084 (2001). For example, if a habeas petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, § 2254(e)(2) will not preclude an evidentiary hearing in federal court." *Id.* at 287 (quoting *Cardwell v. Greene,* 152 F.3d 331, 337 (4th Cir.1998). When deciding whether to grant an evidentiary hearing, courts "focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Id.* A petitioner needs to explain how the evidentiary hearing will advance the habeas claim, or " 'forecast any evidence beyond that already contained in the record' that [will] help his cause." *Id.* (quoting *Cardwell,* 152 F.3d at 338).

In the present case, petitioner's habeas petition is time barred. The alleged "facts in dispute" to which petitioner refers involve the search warrant and police reports for the 2000 conviction. (D.I. 17 at 4,6) Any information contained in these requested documents would not alter the court's decision that the petition is time barred.[FN5] Accordingly, the court will deny petitioner's request for an evidentiary hearing.

> FN5. The court notes that this request was included in petitioner's reply brief. As such, he was aware of the respondents' assertion that the petition is time-barred and, therefore, he could have identified what evidence, if any, could be produced to challenge the time-bar issue.

### E. Motions for the Production of Documents and for Release

Petitioner asks the court for leave to conduct discovery, seeking to obtain copies of the police reports related to the 2000 offenses and a copy of the search warrant executed by state police. (D.I.8) Petitioner also requests that the court order his release pending disposition of his habeas petition. (D.I.7) Because the court will dismiss his habeas petition as untimely, petitioner's requests for discovery and release are now moot.

Even if petitioner's requests were not moot, he has failed to satisfy the standards justifying the granting of the two motions. First, a federal court may grant leave to conduct discovery only if the party establishes "good cause" for such discovery. Rule 6(a) of the Rules Governing Section 2254 Actions. In order to establish "good cause," the applicant must state the "point to specific evidence that might be discovered that would support a constitutional claim." *Marshall v. Hendricks,* 103 F.Supp.2d 749, 760 (D.N.J.2000), *rev'd in part on other grounds,* 307 F.3d 36 (3d Cir.2002) (citing *Deputy v. Taylor,* 19 F.3d 1485, 1493 (3d Cir.1994)).

Although petitioner specifically identifies the documents requested for discovery, he does not articulate the information he expects to uncover in the reports or how the reports would support his constitutional claim. His unsupported conclusory allegation that "had this evidence been disclosed in state court proceedings, the results would have been different" fails to provide "good cause." As such, even if not moot, the request for the production of the police reports and the search warrant would be denied.

**\*7** Second, with regard to his motion for release pending disposition of his habeas petition, petitioner erroneously asserts Rule 23(c) of the Federal Rules of Appellate Procedure as authorizing such release. (D.I.7) This rule governs requests for bail pending review by an appellate court of an order of the district court granting a writ of habeas corpus, not this situation where petitioner requests bail pending the district court's review of an application for habeas relief. *See Landano v. Rafferty,* 970 F.2d 1230, 1239 (3d Cir.1992). In order for a district court to grant bail pending review of the habeas petition of a state prisoner, the court must find "extraordinary circumstances." *Id.* (citing *Lucas v. Hadden,* 790 f.2d 365, 367 (3d Cir.1986).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21146750
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

Accordingly, even if not moot, the court would deny the motion because petitioner has failed to articulate any extraordinary circumstances that would allow the court to order his release from state custody.

### IV. CERTIFICATE OF APPEALABILITY

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability because the petitioner "has [not] made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A court will grant a certificate of appealability in such a case only if the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated above, the court concludes that petitioner's habeas petition is barred by the one-year period of limitation. Neither the statutory tolling provision nor the doctrine of equitable tolling applies. Moreover, the court is convinced that reasonable jurists would not find these conclusions unreasonable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

### V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. Petitioner Ronnie D. Wilmer's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.2) is DISMISSED, and the relief requested therein is DENIED.
2. Petitioner's motion for release pending review and decision (D.I.7) is DENIED.
3. Petitioner's motion for the production of documents (D.I.8) is DENIED.
4. Petitioner's request for an evidentiary hearing and the

appointment of counsel (D.I. 17 at 6) is DENIED.
**\*8** 5. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2003.
Wilmer v. Carroll
Not Reported in F.Supp.2d, 2003 WL 21146750

Briefs and Other Related Documents (Back to top)

• 1:02CV01587 (Docket) (Oct. 29, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Charles W. SIMPSON, Petitioner,
v.
Robert W. SNYDER, Warden, and Attorney General of the
State of Delaware, Respondents.
**No. CIV.A. 00-737-GMS.**

May 14, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

**\*1** Following a jury trial in the Delaware Superior Court,
Charles W. Simpson was convicted of rape, attempted rape,
and unlawful sexual contact. He was sentenced to three
consecutive terms of life in prison plus seven years.
Simpson has now filed with the court a petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254. As explained
below, the court will dismiss Simpson's petition as time
barred by the one-year period of limitation prescribed in 28
U.S.C. § 2244(d)(1).

I. BACKGROUND

On July 3, 1990, a jury in the Delaware Superior Court
found Charles W. Simpson guilty of two counts of first
degree rape, attempted first degree rape, and unlawful
sexual contact in the second degree. The victim was the
minor daughter of Simpson's girlfriend. On September 21,
1990, the Superior Court sentenced Simpson to three terms
of life in prison plus seven years. The Delaware Supreme
Court affirmed Simpson's conviction and sentence on
December 19, 1991. *Simpson v. State,* No. 340, 1990, 1991
WL 316959 (Del. Dec. 19, 1991).

On December 15, 1994, Simpson filed in the Superior Court
a motion for postconviction relief pursuant to Rule 61 of the
Superior Court Rules of Criminal Procedure. The Superior
Court found that some of Simpson's claims were
procedurally barred, and that the remaining claims were
without merit. *State v. Simpson,* Crim. A. No.
IN-89-03-1657-R1, 1995 WL 562163 (Del.Super.Ct. Sept.
8, 1995). The Delaware Supreme Court affirmed the

Superior Court's order denying Rule 61 relief. *Simpson v.
State,* No. 421, 1995, 1996 WL 554233 (Del. Sept. 20,
1996). Simpson filed a second Rule 61 motion on October
3, 1997, which the Superior Court denied on the ground that
each of his claims was procedurally barred. *State v.
Simpson,* Crim. A. No. IN89-031657R2, 1998 WL 735882
(Del.Super.Ct. Sept. 1, 1998). The Delaware Supreme Court
again affirmed. *Simpson v. State.* No. 429, 1998, 1999 WL
636630 (Del. July 30, 1999).

Simpson has now filed the current petition for federal
habeas corpus relief pursuant to 28 U.S.C. § 2254. In his
petition, Simpson raises six claims for relief. The
respondents argue that the petition is subject to a one-year
period of limitation that expired before Simpson filed it.
Thus, they ask the court to dismiss the petition as time
barred.

II. DISCUSSION

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), Congress amended the federal habeas
statute by prescribing a one-year period of limitation for the
filing of habeas petitions by state prisoners. *Stokes v.
District Attorney of County of Philadelphia,* 247 F.3d 539,
541 (3d Cir.), *cert. denied,* 122 S.Ct. 364 (2001). Effective
April 24, 1996, the AEDPA provides:

(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The
limitation period shall run from the latest of -

**\*2** (A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review ...

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible
retroactive application of the one-year period of limitation,
state prisoners whose convictions became final prior to the
enactment of the AEDPA were allowed to file their § 2254
petitions no later than April 23, 1997. *See Burns v. Morton,*
134 F.3d 109, 111 (3d Cir.1998)(prohibiting dismissal of
petitions filed on or before April 23, 1997, as untimely
under § 2244(d)(1)(A)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Simpson's conviction became final prior to the enactment of the AEDPA. He was sentenced on September 21, 1990. The Delaware Supreme Court affirmed the judgment of conviction on December 19, 1991. Simpson was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13.1. Although Simpson did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Simpson's conviction became final on March 19, 1992, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

The court's docket reflects that Simpson's habeas petition was filed on August 10, 2000. (D.I.1.) A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court dockets it. *Id.* at 113. Attached to Simpson's petition is a certificate of service certifying that he placed it in the prison mail on August 3, 2000. Thus, the court deems Simpson's petition filed on August 3, 2000.

Obviously Simpson's habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d)'s period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted

toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

**\*3** As described above, Simpson filed in the Superior Court his first Rule 61 motion for postconviction relief on December 15, 1994, prior to the enactment of the AEDPA. His Rule 61 motion was pending until September 20, 1996, when the Delaware Supreme Court affirmed the denial of postconviction relief. Respondents acknowledge, and correctly so, that the one-year period was tolled while Simpson's first Rule 61 motion was pending until September 20, 1996.

More than one year later, on October 3, 1997, Simpson filed his second Rule 61 motion in the Superior Court. By that time, however, the one-year period had expired. Simpson's second Rule 61 motion, filed after the one-year period expired, has no effect on the timeliness inquiry in the current matter.

In short, the one-year period of limitation was tolled while Simpson's first Rule 61 motion was pending. Nonetheless, the one-year period expired before Simpson filed his federal habeas petition.

### C. Equitable Tolling

In addition to statutory tolling, the one-year period of limitation may be subject to equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:
only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159 (quoting *United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)).

Here, Simpson has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. He has not explained why he waited until October 3, 1997, to file his second Rule 61 motion. Nor has he explained why he waited until August 3, 2000, to file the current petition. His only explanation is that some unidentified individual at the prison assured him that he would have one year following the conclusion of his second Rule 61 proceedings in which to file a federal habeas petition. (D.I.18.)

Unfortunately for Simpson, his unfamiliarity with federal habeas filing requirements does not excuse his failure to comply with the one-year period of limitation. An incarcerated pro se petitioner's lack of legal knowledge does not constitute an extraordinary circumstance warranting equitable tolling of the one-year period of limitation. *See Delaney v. Matesanz,* 264 F.3d 7, 15 (1st Cir.2001); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir.2000), *cert. denied,* 531 U.S. 1194 (2001); *United States v. Cicero,* 214 F.3d 199, 203 (D.C.Cir.2000); *Felder v. Johnson,* 204 F.3d 168, 171 (5th Cir.), *cert. denied,* 531 U.S. 1035 (2000). Likewise, "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes" are not extraordinary circumstances giving rise to equitable tolling. *Fahy,* 240 F.3d at 244. The purpose of the one-year period of limitation is to "considerably speed up the habeas process while retaining judicial discretion to equitably toll in extraordinary circumstances." *Miller,* 145 F.3d at 618. Applying the doctrine of equitable tolling simply because a pro se petitioner is unfamiliar with the intricacies of federal habeas procedures would seriously undermine this purpose.

**\*4** Moreover, even if someone at the prison erroneously assured Simpson that he could file a federal habeas petition within one year of the conclusion of his second Rule 61 proceedings, the court cannot conclude that his habeas petition was timely filed. Simpson's second Rule 61 motion was "pending" under § 2244(d)(2) until July 30, 1999, when the Delaware Supreme Court affirmed the Superior Court's

order denying it. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000). Simpson filed his habeas petition more than one year later on August 3, 2000.

In short, the court can discern no circumstances which would permit applying the doctrine of equitable tolling. Simpson's habeas petition will be dismissed as untimely.

### III. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Simpson's habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled. The court is convinced that reasonable jurists would not debate otherwise. Simpson has, therefore, failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Charles W. Simpson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                     Page 4
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

2. The court declines to issue a certificate of appealability
for failure to satisfy the standard set forth in 28 U.S.C. §
2253(c)(2).

IT IS SO ORDERED.

D.Del.,2002.
Simpson v. Snyder
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00737 (Docket) (Aug. 10, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F.3d ----                                                                Page 1
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Briefs and Other Related Documents

Albrecht v. HornC.A.3 (Pa.),2006.Only the Westlaw citation is currently available.

United States Court of Appeals,Third Circuit.
Alfred ALBRECHT, Sr., Appellant in No. 04-9006
v.
Martin HORN, Commissioner, Pennsylvania Department of Corrections, Appellant in No. 04-9005.
**Nos. 04-9005, 04-9006.**

Argued June 29, 2006.
Filed Nov. 21, 2006.

On Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. No. 99-cv-01479). District Judge: Honorable Bruce W. Kauffman.

Stuart B. Lev, Esq. (Argued), Defender Association of Philadelphia, Federal Capital Habeas Corpus Unit, Philadelphia, PA, Counsel for Alfred Albrecht, Sr.
David W. Zellis, Esq., Stephen B. Harris, Esq. (Argued), Colin D. Dougherty, Esq., Office of the District Attorney, Doylestown, PA, Counsel for Martin Horn, Commissioner, Pennsylvania Department of Corrections.

Before: SLOVITER, AMBRO and COWEN, Circuit Judges.

OPINION

COWEN, Circuit Judge.
*1 Alfred Albrecht, Sr. was found guilty by a Bucks County, Pennsylvania, Court of Common Pleas jury of first degree murder, two counts of second degree murder, and arson for causing the death of his wife, his mother, and his daughter by setting the family home on fire on the morning of May 1, 1979. He was sentenced to death for the murder of his wife. He also received two life sentences for the second degree murder convictions for the deaths of his mother and daughter, and a sentence of ten to twenty years imprisonment for arson, each sentence to run consecutively to the other and the sentence of death.

In an order entered on April 21, 2004, the District Court granted a writ of habeas corpus and vacated the death sentence pursuant to *Mills v. Maryland,* 486

U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), because of an ambiguous jury instruction concerning whether mitigating circumstances had to be found unanimously. The District Court, applying Third Circuit precedent at that time, determined that *Mills* could be applied retroactively because it did not announce a new rule of constitutional law, *Banks v. Horn,* 316 F.3d 228 (3d Cir.2003) (addressing *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). Although we agree that a *Mills* violation occurred in Albrecht's case, subsequent to the District Court's granting the writ our decision in *Banks* was reversed by the United States Supreme Court in *Beard v. Banks,* 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004), which held that *Mills* announced a new rule of constitutional law that would not apply retroactively to any case, such as this one, that became final prior to *Mills.*

The Commonwealth did not argue the nonretroactivity defense in the District Court, but we hold that the defense was properly raised for the first time in the brief on appeal, with specific reliance upon *Beard v. Banks,* and thus it is not waived. Because the District Court did not have the benefit of the Supreme Court's 2004 *Beard* decision when it granted the writ on the basis of *Mills,* we will not reverse; instead, we will vacate the order granting the writ, and the matter will be remanded. On remand, the District Court should apply *Teague's* ban on retroactive application of new rules of constitutional law and deny relief on the *Mills* claim. The Court should consider the remaining sentencing-phase issues, which it initially denied as moot. The District Court's determination that the guilt-phase issues do not warrant habeas relief will be affirmed.

I. Background & Procedural History

On May 1, 1979, a neighbor saw smoke coming from the Albrecht home and called the fire department. When one of the firemen responding to the fire entered the burning structure he discovered the charred remains of Carolyn Albrecht, appellant's wife, Anita Albrecht, his seven-year-old daughter, and Marian Albrecht, his elderly mother. All three died as a result of the fire. Albrecht was arrested in January 1980 after the arson investigation was completed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Page 2

**\*2** The Commonwealth sought to prove that the fire was arson, and that the identity of the arsonist could be inferred from the violence and hostility Albrecht had directed toward Mrs. Albrecht in the months before the fire. The trial court permitted the Commonwealth to introduce evidence that, in the seven months prior to the fire, Mrs. Albrecht had been physically abused by Albrecht, and that Albrecht was having an extramarital affair. Some of the abuse testimony was dramatic, such as testimony that Mrs. Albrecht had been burned about the head with a cigarette and had bald spots on her scalp where her hair had been yanked out.

We summarize that evidence here. Patricia Fullmer, a friend of Mrs. Albrecht's, testified that Albrecht ridiculed Mrs. Albrecht about her weight, and he admitted he had a girlfriend, Linda Bethman. Fullmer saw Mrs. Albrecht with her hair torn out and burn marks on her face. Fullmer testified:

She had a bruise on her chest about the size of a saucer, and she was kicked in the legs and she had bruises on her calf and he had banged her head against the refrigerator, and she said her head was numb so she didn't feel it when he burned her face with a cigarette.

Supp.App.1990. Mrs. Albrecht's co-workers, Sara Joraskie and Bonita Waitl, also testified to seeing first-hand Mrs. Albrecht's battered appearance in the months before the fire.

Attorney Marc Steinberg represented Mrs. Albrecht and filed a Protection from Abuse Petition in the Court of Common Pleas of Bucks County. The state court issued a restraining order barring Albrecht from the house and directing him to refrain from abusing his wife for one year. On February 7, 1979, Steinberg again saw his client, and she complained that Albrecht had beaten her the night before. Steinberg testified that Mrs. Albrecht had black and blue marks on both her arms, a black eye, and bare spots on her scalp where her hair had been pulled out.

Carol and Terry Kuhns, neighbors, testified that, one day in January 1979, Mrs. Albrecht went to their home asking to be hidden in their basement because she was nervous and afraid. She told them she was not wearing her dentures because she was afraid Albrecht would hit her so hard she would swallow them. Carol Kuhns noticed black and blue marks on her face, neck, and legs, burn marks on her face, and bare spots on her scalp where her hair had been pulled out of her head. Later that evening, Albrecht came over to the Kuhns' residence and demanded to be told the whereabouts of his wife. The Kuhns would not oblige by giving him that information. On February 1, 1979, Mrs. Albrecht again went to the Kuhns' residence; Terry Kuhns observed that she was battered and bruised, and had "blotches" of hair missing.

Valerie Cullingford, a bartender at Herb and Joyce's Park Tavern, where Albrecht drank, testified that, in December 1978, she observed Albrecht kissing and holding hands with a woman named Linda. Cullingford overheard Albrecht ask the woman to leave with him so he could "make a little love to her." Supp.App.2032-33. Cullingford further testified that, the night before the fire, Albrecht came into the bar and drank five or six beers at a rate that seemed faster than usual. He complained about how he was having problems with his wife, and said that if she tried to remove him from the house again "he would sooner burn the god damn thing down." Supp.App.2036-38.

**\*3** George Weaver, a neighbor, testified that one day in January 1979 he overheard Albrecht talking in the Whitehorse Bar and referring to his wife as "that dumb bitch. I'm going to get her." Supp.App. 1637. Approximately seven months after the fire, Weaver again saw Albrecht at the Whitehorse Bar and overheard him say he was "glad it's over" and that he was "glad they're gone and that the house was burned." Supp.App. 1638-39.

Larry Wimmer, a friend of Albrecht's, testified that Albrecht complained to him in April 1979, in Herb and Joyce's Park Tavern, that he was being forced to move out of his house because he had hit his wife, and that he would kill her if he could not get back into it. Within a month of the fire, Albrecht told Wimmer that "he had a good lawyer, he would get away with it, [and] nobody would prove it." Supp.App.1975.

A few days prior to the fire, John Wheeler, an employee at Herb and Joyce's Park Tavern, observed Mrs. Albrecht with a bruise around her eye and heard Albrecht state he would rather burn down his house than let his wife have it. Prior to this conversation, Albrecht told Wheeler that if his wife gave him any trouble he would take care of her. Donald Weaver, one of Albrecht's neighbors, testified that, while at the Whitehorse Bar and two or three days before the fire, he heard Albrecht say he was going to go home and "shoot the old lady and burn the house down." Supp.App. 1578. Paul Serocki testified that, a few days before the fire and while at the Whitehorse Bar,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

he overheard Albrecht say he was going to burn down his house.

On the evening prior to the fire, Perkasie Borough police officer Barry Heckenswiler was summoned to the Albrechts' home in response to a call by Albrecht's fifteen-year-old son, Alfred Jr. Upon his arrival, Officer Heckenswiler smelled alcohol on Albrecht's breath and noticed his elderly mother sweeping up glass from a broken lamp. Mrs. Albrecht told Officer Heckenswiler that she and Albrecht had argued, that Albrecht had threatened to burn her dress, and that she wanted to go to a hospital or local psychiatric facility. Subsequently, the situation calmed and Officer Heckenswiler left.

The next morning all but Albrecht and his son were dead from a fire. Alfred Jr. escaped the fire by jumping out of a second story window. As described by the state Supreme Court, "soon after the firemen had the blaze under control, the Fire Marshall [sic] and state police roped off the property for investigation purposes. Included in the roped-off area was a driveway in which a car was parked approximately fifteen feet from the house with the keys in the ignition. This vehicle, along with another vehicle parked in the roped-off area, were later found to be registered" to Albrecht. *Commw. v. Albrecht,* 510 Pa. 603, 511 A.2d 764, 768 (Pa.1986).

On May 2, 1979, the morning after the fire, Albrecht "allow[ed] investigators to search his premises for the purpose of determining the cause of the fire." *Id.* Later that day, Alfred Jr. "was questioned by the State Fire Marshall [sic] regarding the whereabouts of any gas cans on the premises." *Id.* Alfred Jr. showed the Marshal a can located in the garage that "obviously had not been used in some time." *Id.* The Marshal then asked Alfred Jr. "if he knew of any other gas cans," to which Alfred Jr. "replied, 'There's a hydraulic oil can in the trunk of my father's car.' " *Id.* At the Marshal's request, Alfred Jr. "removed the keys from the ignition and opened the trunk where the can was located." *Id.* This can, which usually held hydraulic oil for Albrecht's paving machine, had soot on it, and tested positive for gasoline. Importantly, a local gas station employee testified at the trial about Albrecht's attempt to purchase gasoline to put in a can the day before the fire.

**\*4** To further prove that the fire was arson, the Commonwealth presented the testimony of the Fire Marshal and fire expert, Trooper William York. York testified that the fire started in the kitchen, and that it was started by igniting gasoline that had been poured

on the floor. He believed this to be true [b]ecause of the char patterns on the walls, the char patterns on the floor, the char patterns on the doorway between the kitchen and the livingroom [sic] ..., the low burning ... at the various locations in the room ..., the terrific damage to the refrigerator, the meltdown of the inside of the refrigerator, the char on the underside of the table and the char on the underside of the chairs.

Supp.App. 843-45.

The defense presented the testimony of fire expert, Professor Paul Kacznarczik, whose theory was that the fire started in the living room accidentally as a result of a cigarette left to smolder in an upholstered chair for a lengthy period. Kacznarczik explained that the living room was "preheated for a considerable length of time. There was a lot of unburned gases in there from the pyrolyzed solid furniture such that when the air came in [from the front door being opened], these gases being above their auto-ignition temperature, they just exploded ...." Supp.App. 2761. He described the fire as a "flash over type of a fire." Supp.App. 2763.

Kacznarczik disputed Trooper York's conclusion about the use of a liquid accelerant, testifying that:
Well, as I said before, there was not a very big fire in the house. There was a lot of damage but it's relatively a small fire considering what could have happened. If gasoline were used, they would have lost the house. That's my opinion. If the fire had started in the kitchen, that fire load being all wood and it was [a] really roaring ongoing fire, they wouldn't have been able to blanket it down that quickly plus the fact that the chimney effect over by the stairway, that fire would have definitely been up to the second floor with that drafting up the stairway. The fire was not really that much of a rolling fire in the kitchen.

Supp.App. 2763-64.

Alfred Jr. testified on behalf of his father that he heard a slat fall from his father's bed upstairs and thus believed that his father got out of bed after the fire started. However, his testimony also helped to establish the damaging fact that the can found in Albrecht's trunk immediately after the fire, which tested positive for gasoline, was normally used for hydraulic oil, and only a week before the fire, it had no gasoline in it. This contradicted Albrecht's testimony that gasoline had been in the hydraulic oil can (instead of hydraulic oil) for a month before the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fire. Alfred Jr. also testified that, the day before the fire, his father hit his mother and threatened to burn her dress, and he found it necessary to summon the police.

Albrecht testified, and although he denied setting the fire, and denied trying to purchase gasoline the day before the fire, he admitted that he "smacked" Mrs. Albrecht in the face and "pulled some of her hair" when asked by the prosecutor if he was responsible for his wife's February 1979 injuries. Supp.App. 2558-60.

**\*5** The jury convicted Albrecht on all counts after a trial that lasted nearly three weeks. A capital sentencing proceeding was conducted immediately following the verdict. The Commonwealth rested on its trial evidence at sentencing, while Albrecht presented the testimony of a psychiatric expert, Dr. Robert Sadoff. The jury found that the sole aggravating factor, Albrecht knowingly created a grave risk of death to another person in addition to the victim during the commission of the offense, 42 Pa. Cons.Stat. Ann. § 9711(d)(7), outweighed the mitigating factors established to the jury's satisfaction, which were three: no significant history of prior criminal convictions, 42 Pa. Cons.Stat. Ann. § 9711(e)(1), extreme mental or emotional disturbance, (e)(2), and "good worker," (e)(8) (catchall).

On direct appeal, the state Supreme Court affirmed the judgment of sentence. *Albrecht,* 510 Pa. 603, 511 A.2d 764. Albrecht's petition for writ of certiorari to the United States Supreme Court was denied on March 30, 1987. Albrecht filed a petition under the state post-conviction relief act, 42 Pa. Cons.Stat. Ann. § § 9541-9546 (West 1998 and Supp.2005), in the Bucks County Court of Common Pleas, which the trial court denied. The state Supreme Court affirmed. *Commw. v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (Pa.1998).

Albrecht filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in United States District Court for the Eastern District of Pennsylvania in 1999, raising the *Mills* claim, an innocence claim, and numerous other sentencing and guilt-phase claims. The Commonwealth submitted an answer, and with respect to the *Mills* claim it did not assert a nonretroactivity defense. The District Court conducted an evidentiary hearing, primarily on the innocence claim, at which Richard L. Custer, a forensic fire protection engineer, testified. The District Court granted Albrecht's habeas petition on

the basis of *Mills* and vacated the death sentence. Albrecht's guilt-phase claims, and a newly added claim pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), all were denied with prejudice.[FN1] Because the Court found that the *Mills* claim required that Albrecht's sentence be vacated, it did not reach the other sentencing claims, which were denied as moot.[FN2]

## II. Jurisdiction & Standard of Review

The District Court granted a certificate of appealability on the *Mills* issue and all claims it had denied with prejudice. The Commonwealth has appealed the *Mills* determination, and Albrecht has cross-appealed, limiting his appeal to the following seven guilt-phase grounds for relief: (1) he is actually innocent and the presentation of inaccurate fire science expert testimony at his trial violated due process; (2) the prosecutor failed to disclose, or failed to timely disclose, exculpatory witness statements in violation of *Brady* and/or trial counsel was ineffective for failing to make effective use of timely disclosed statements; (3) trial counsel was ineffective for failing to request a limiting instruction with respect to the evidence of spousal abuse, and the absence of such an instruction violated due process; (4) admission of Mrs. Albrecht's statements to her physician, her attorney, and two other women, concerning the source of her physical injuries, violated the Confrontation Clause, and trial counsel was ineffective for failing to object to admission of the Kuhns' recollection of Alfred Jr.'s statement; (5) appellate counsel was ineffective for failing to challenge the trial court's ban on attorney-client consultation just prior to and during cross-examination; and (6) the cumulative prejudice from the many errors denied him his constitutional right to due process.[FN3] At oral argument, Albrecht's counsel confined his remarks to the most substantial and serious issues presented by this appeal: the *Mills* and innocence issues, and the claim that trial counsel was ineffective for failing to request a limiting instruction with respect to the evidence of spousal abuse.

**\*6** We have appellate jurisdiction pursuant to 28 U.S.C. § § 1291 and 2253(a). We conduct a plenary review of the District Court's legal conclusions and review its factual conclusions for clear error. *Whitney v. Horn,* 280 F.3d 240, 249 (3d Cir.2002). Our review is also plenary as to the District Court's determinations regarding exhaustion and procedural default, and nonretroactivity.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### III. The *Mills* Claim

The District Court granted relief on Albrecht's claim that the sentencing instructions given to the jury were defective under *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384. The Court concluded that our opinion in *Banks v. Horn,* 271 F.3d 527 (3d Cir.2001), *rev'd on other grounds,* 536 U.S. 266, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002), compelled the conclusion that the instructions given in Albrecht's case were unconstitutionally ambiguous with respect to whether mitigating factors must be found unanimously. The District Court reasoned that the jury instruction at Albrecht's trial emphasized jury unanimity in close proximity to the mitigating circumstances clause. In addition, the instructions emphasized the difference between the relative burdens of proof for showing aggravating circumstances and mitigating circumstances, but did not mention any differences in the unanimity requirements. Identical language was used in the *Banks* case, in which we found that these two elements were likely to create confusion in a juror's mind.

The Commonwealth has appealed this decision. Because the *Mills* claim has unquestionable merit, we will discuss it in detail. Ultimately, however, and even though Albrecht can successfully overcome all of the other habeas procedural hurdles, we are obliged to sustain the Commonwealth's appeal because *"Teague's* nonretroactivity principle acts as a limitation," *Banks v. Beard,* 542 U.S. at 412, on our power to grant habeas corpus relief to a state prisoner such as Albrecht whose conviction became final before *Mills* was decided.

#### 1. Exhaustion & Procedural Default

The *Mills* claim falls into a group of claims raised by Albrecht's initial state post-conviction counsel but abandoned by replacement post-conviction counsel prior to the trial court's decision denying post-conviction relief. The initial public defender appointed to the case filed an amended post-conviction petition, raising seventy-two claims of error. He withdrew, and replacement post-conviction counsel explicitly waived all but three issues, including the *Mills* issue. *Albrecht,* 720 A.2d at 698. On appeal to the state Supreme Court, new appellate post-conviction counsel, the Center for Legal Education, Advocacy and Defense Assistance, raised the *Mills* issue, and, anticipating a waiver problem,

argued that replacement post-conviction counsel was ineffective for abandoning the claim at the trial court level.

The state Supreme Court would not consider the *Mills* claim on the merits, holding for the first time that Pennsylvania's "relaxed" waiver doctrine no longer applied in capital post-conviction appeals. *Albrecht,* 720 A.2d at 700. Finding that there were adequate safeguards to ensure the fairness of verdicts in capital cases, and that the relaxed waiver doctrine impeded the goal of finality of judgments, the Court held that: "Henceforth, a PCRA petitioner's waiver will only be excused upon a demonstration of ineffectiveness of counsel in waiving the issue." *Id.*

*\*7* With respect to replacement post-conviction counsel's having abandoned the *Mills* claim, the state Supreme Court held that the relief available "to an appellant for a claim that PCRA counsel's judgment was exercised in a legally ineffective manner is an evaluation of the claims prior counsel has foregone for a determination of ineffectiveness." *Id.* at 701 (citing *Commw. v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 367-68 (Pa.1995)). The Court would grant relief only if Albrecht could show that "counsel's conduct, by action or omission, was of questionable legal soundness; that the conduct complained of had no reasonable basis designed to effectuate [his] client's interest; and that counsel's conduct had an adverse effect on the outcome of the proceedings." *Id.* (quoting *Commw. v. Clark,* 551 Pa. 258, 710 A.2d 31, 35 (Pa.1998)). The Court did a prejudice analysis of the *Mills* issue, and concluded that replacement post-conviction counsel's conduct in abandoning it in the trial court did not constitute ineffective assistance. *Id.* at 706.

Thus, there was a state procedural default with respect to the *Mills* issue insofar as it was abandoned at the trial court level, *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (habeas petitioner must show that he fairly presented federal claim at each level of state court system), and the state Supreme Court held that it was waived. However, the claim is not barred due to a procedural default, *Coleman v. Thompson,* 501 U.S. 722, 752-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), because a defaulted claim may be reviewed in federal habeas upon a showing that the procedural rule applied was not "independent" and "adequate." *See Harris v. Reed,* 489 U.S. 255, 260-61, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

A state rule provides an independent and adequate

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

basis for precluding federal review of a claim if the "rule speaks in unmistakable terms[,] all state appellate courts refused to review the petitioner's claims on the merits[, and] the state courts' refusal [was] consistent with other decisions," that is, the procedural rule was "consistently and regularly applied." *Doctor v. Walters,* 96 F.3d 675, 683-84 (3d Cir.1996). Whether the rule was firmly established and regularly applied is determined as of the date the default occurred, and not as of the date the state court relied on it, *id.* at 684, because a petitioner is entitled to notice of how to present a claim in state court, *Ford v. Georgia,* 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991).

The waiver rule applied for the first time on November 23, 1998 in *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, is not independent and adequate as to Albrecht. *Harris,* 489 U.S. at 260-61. Albrecht committed his default either when he failed to raise the *Mills* issue on direct appeal, or, at the latest, when replacement post-conviction counsel abandoned the issue, which occurred some time before the post-conviction petition was denied on January 24, 1996. *Albrecht,* 720 F.3d at 698. Either way, the default occurred before the state Supreme Court held on November 23, 1998 in his case that the relaxed waiver doctrine no longer applied in capital post-conviction appeals.

**\*8** At the time of Albrecht's direct appeal, and at the time replacement post-conviction counsel abandoned the *Mills* issue, the state Supreme Court was still applying the relaxed waiver rule. The "unforgiving" waiver rule was not "consistently and regularly applied" at the time of Albrecht's default. *Doctor,* 96 F.3d at 683-84. *Cf. Bronshtein v. Horn,* 404 F.3d 700, 708-09 (3d Cir.2005), *cert. denied,* 126 S.Ct. 1320 (2006) (Pennsylvania post-conviction statute of limitations not firmly established nor regularly applied until November 23, 1998, at the earliest, when *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998), was decided).[FN4] Accordingly, neither the exhaustion nor procedural default doctrines bars consideration of the *Mills* claim.

### 2. Scope of review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits federal habeas relief on any claim "adjudicated on the merits in state court proceedings," unless adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U .S.C. § 2254(d)(1). However, the "unreasonable application" prong of section 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of a petitioner's case, or if it unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor,* 529 U.S. 362, 407-08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A federal habeas court may not issue the writ simply because it concludes in its independent judgment that the state court applied clearly established law incorrectly. *Williams,* 529 U.S. at 410. "Rather, that application must also be unreasonable." *Id.*

The state Supreme Court did not, of course, address the *Mills* issue on the merits in the ordinary sense; instead, it examined the merits in the context of the prejudice prong of an ineffective assistance of post-conviction counsel claim, *Albrecht,* 720 A.2d at 701 n. 8. Albrecht does not argue that this issue may be reviewed *de novo* under these circumstances, nor would such an argument have merit. The state Supreme Court identified the correct governing legal principle, *id.* at 706, and then purported to apply it, which constitutes an adjudication on the merits sufficient for purposes of the statute. *Cf. Priester v. Vaughn,* 382 F.3d 394, 398 (3d Cir.2004) (deference under AEDPA does not even require citation to Supreme Court cases), *cert. denied,* 543 U.S. 1093, 125 S.Ct. 974, 160 L.Ed.2d 906 (2005). We turn then to whether the state courts unreasonably applied *Mills.*

### 3. The *Mills* Standard & Merits Analysis

In addition to establishing that Albrecht had no significant criminal history and was a worker of good character, the defense established through the testimony of a psychiatrist that Albrecht was under extreme mental or emotional disturbance at the time of the offense. In *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384, the Supreme Court vacated a death sentence after concluding that there was a "substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Id.* at 384. The Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

held that the Constitution prohibits states from requiring jurors to find mitigating factors unanimously. *See McKoy v. North Carolina,* 494 U.S. 433, 444, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990); *Mills,* 486 U.S. at 374-75.

**\*9** Two years later, the Supreme Court decided *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), and established a test for reviewing an ambiguous jury instruction. *Id.* at 380. "[A] petitioner's *Mills* claim alleging juror confusion as to unanimity must be examined under *Boyde* to determine whether there is a reasonable likelihood (as opposed to merely a possibility) that jurors have applied the challenged instruction in a way that prevents the consideration of constitutionally relevant mitigating evidence." *Hackett v. Price,* 381 F.3d 281, 291 (3d Cir.2004), *cert. denied,* 544 U.S. 1062, 125 S.Ct. 2514, 161 L.Ed.2d 1114 (2005).

We examined instructions in *Frey v. Fulcomer,* 132 F.3d 916, 923-24 (3d Cir.1997), a pre-AEDPA case, and *Banks,* 271 F.3d at 547-48, an AEDPA case, and found *Mills* violations in both. Without question, *Frey* and *Banks* compel a conclusion that the instructions given in Albrecht's case were constitutionally infirm.[FN5] A side-by-side comparison of the *Frey, Banks,* and Albrecht instructions shows that they are virtually identical, as follows:

| *Banks Instructions* | *Albrecht Instructions* |
| --- | --- |
| Members of the jury, you must now decide whether the defendant in this case is to be sentenced to death or to life imprisonment on each of the Informations upon which you have returned a verdict of guilty of murder in the first degree. The sentence you will impose will depend on your findings concerning aggravating and mitigating circumstan | Members of the jury, ... it now becomes your duty to decide whether or not the sentence imposed upon the defendant ... will be death or life imprisonment .... [Y]our sentence will depend upon your findings concerning aggravating and mitigating circumstances. The Crimes Code provides that the verdict must be a sentence of death if the |

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
Page 8
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

ces. The Crime Code in this Commonwealth provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstance or circumstances.

* * *

Remember, under the law of this Commonwealth, your verdict must be a sentence of death if you unanimously find at least one aggravating circumstance and no mitigating circumstance, or if

jury unanimously finds at least one aggravating circumstance and no mitigating circumstances or if the jury unanimously finds [sic] more aggravating circumstances which outweigh any and all mitigating circumstances. In all other cases, the verdict must be a sentence of life imprisonment.

* * *

Remember that your verdict must be a sentence of death if you unanimously find at least one aggravating circumstance and no mitigating circumstances or if you unanimously find one

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

you unanimously find one or more aggravating circumstances which then outweigh any mitigating circumstances. In all other cases, your verdict would be life imprisonment.

or more aggravating circumstances, and there is only one in this case, one submitted to you which outweighs any and all mitigating circumstances. In all other cases, your verdict must be a sentence of life imprisonment.

* * *

* * *

Once again, the Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. The defendant has the burden of proving mitigating circumstances by a preponderance of the evidence. *Banks,* 271 F.3d at 546-47; *see also Frey,* 132 F.2d at 922-23 (similar).

Now, the burden of proving aggravating circumstances is upon the Commonwealth. The Commonwealth must convince you, beyond a reasonable doubt, that the aggravating circumstance exists in this case.

[T]he burden of proving mitigating circumstances is on the defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Page 10

.... The burden is by preponderance of the evidence. Supp.App. 2990-92; 2995-98.

**\*10** Like the instructions in *Banks,* the instructions at Albrecht's trial emphasized the importance of unanimity. The phrase is used frequently and in much too close proximity to the mitigating circumstances clause. 271 F.2d at 549. Furthermore, the verdict slip is confusing. It stated in pertinent part:

1. We, the jury, unanimously sentence the defendant to:
   X death
   _____ life imprisonment
2. (to be used if the sentence is death):

   _  The mitigating circumstance(s)(is)(are)
      (1) No Significant History, Prior Convictions
   _  (2) Extreme Mental & Emotional Disturbance
   _  (3) Good Worker

Supp.App. 347 (emphasis added).

The verdict slip is virtually identical to the verdict slip in *Banks,* which we found confusing and more likely suggestive. The "lead-in language" regarding unanimity implies that everything that followed was found unanimously. 271 F.2d at 550. As in *Banks,* "[w]hat follows is a reference both to aggravating and to mitigating circumstances, with no additional language that would imply that there is a different standard for aggravating circumstances than there is for mitigating circumstances." *Id.* Nor was there any language anywhere else on the form "from which the jury could infer that a

We, the jury, *have found unanimously*

_____ one aggravating circumstance which outweighs any and all mitigating circumstances. The aggravating circumstance is *a Grave Risk Of Death To Another Person in Addition to Victim*

mitigating circumstance might be marked if only one juror had found that circumstance to exist." *Id.*

Moreover, this case is not like *Hackett,* 381 F.3d 281, where we concluded that there was no *Mills-Boyde* violation. *Id.* at 301-02. In *Hackett,* there was no reasonable likelihood that the jurors misunderstood their task. According to that jury verdict form, "the jury unanimously found no mitigating circumstance. Because the jury found no mitigating circumstance, it did not proceed to determine whether any mitigating circumstance outweighed the aggravating circumstances it unanimously found, as did the juries in *Zettlemoyer,* [923 F.2d 284 (3d Cir.1991)], *Frey,* and *Banks.*" *Id.* at 303. In

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Albrecht's case, in contrast, the jury found three mitigating circumstances, and had to weigh them against one aggravating circumstance.

The Commonwealth has argued that we denied habeas relief to a capital defendant in *Zettlemoyer* on a similar instruction. We disagree that the instructions in *Zettlemoyer* are similar. The relevant portion of the jury charge in Albrecht's case emphasized the importance of a unanimous finding, using the phrase frequently and in close proximity to, that is, within six or seven words of (in several places), the mitigating circumstances clause. In *Zettlemoyer*, the separation was by seventeen words, and we found the *Zettlemoyer* instructions to require unanimity in the ultimate conclusion, and not in the interim findings leading to that conclusion. 923 F.2d at 308.

**\*11** We thus conclude, as did the District Court, that the jurors in Albrecht's case well may have thought they were precluded from considering any mitigating evidence unless all twelve jurors agreed on the existence of a particular such circumstance. *Mills,* 486 U .S. at 384; *see also Frey,* 132 F.3d at 923-24, *Banks,* 271 F.3d at 547-48. Our conclusion that *Mills* was violated does not end the discussion, however, because this is an AEDPA case.

### 5. Deference Under AEDPA

The District Court determined that the state Supreme Court's determination of the *Mills* issue constituted an unreasonable application of that case. We agree with that conclusion. The State Supreme court decided the *Mills* issue, in its entirety, as follows:

This court has instructed that the Pennsylvania capital sentencing statute, 42 Pa.C.S. § 9711, does not require unanimity as to any particular mitigating factor before it can be given effect in the sentencing determination and therefore does not unduly restrict the jury's decision as proscribed on Eighth Amendment grounds in *Mills.* The instruction given here substantially tracked the language of 42 Pa.C.S. § 9711(c)(1), and did not explicitly or implicitly require that each mitigating factor be unanimously agreed upon by the jury in order to be weighed against the aggravating circumstance found in this case. The verdict slip in this case ... also did not violate the principles expressed in *Mills.* The slip clearly required unanimity upon only the existence of the sole aggravating factor advanced by the prosecution, the determination that this aggravating factor outweighed any and all mitigating factors, and the sentence of death. The verdict slip does not express or imply a requirement that mitigating circumstances must be unanimously found to be considered and therefore did not violate the Eighth

Amendment.

*Albrecht,* 720 A.2d at 706 (citations omitted).

This is an unreasonable application of *Mills,* because the Court ignored *Mills'* teachings and focused instead on the meaning of the state statute and whether it was subject to a reasonable construction, rather than on the issue of jury confusion. *Banks,* 271 F.3d at 544-45. As in *Banks,* the state court should have focused on whether the need for unanimity was a conclusion that a reasonable juror could have drawn from the instruction and verdict slip. *Id.* at 547. In Albrecht's case, our caselaw holds there is a reasonable likelihood that a reasonable juror could have assumed the existence of a unanimity requirement with respect to mitigating circumstances. *Id.* at 548-49. Moreover, the state Supreme Court's statement that the verdict slip clearly required unanimity only upon the existence of the sole aggravating factor advanced by the prosecution is objectively unreasonable and not just incorrect, *Williams,* 529 U.S. at 410. The verdict slip used in Albrecht's case is virtually identical to the confusing verdict slip disapproved of in *Banks,* 271 F.3d at 549-50.

**\*12** Accordingly, this habeas procedural hurdle, section 2254(d)(1) of AEDPA, is also one that Albrecht can overcome. We come, however, to the end of the line.

### 6. *Mills* is New Law and the *Teague* Defense is Properly Before Us

The next issue we must consider is whether *Teague's* prohibition against the retroactive application of new rules of constitutional law should bar granting Albrecht's petition for a writ of habeas corpus. At the time that Albrecht filed his writ of habeas corpus, this Court had not yet considered whether *Mills* was retroactive. The Commonwealth did not raise *Teague* as a defense at the District Court level. While the writ of habeas corpus was pending before the District Court, this Court held in *Banks v. Horn,* 316 F.3d at 235, that *Mills* could be applied retroactively because *Mills* did not announce a new rule of constitutional law. The District Court then issued its decision and considered the *Teague* issue sua sponte, holding that *Mills* is retroactive pursuant to our decision in *Banks II.* After the District Court rendered its decision granting habeas relief on the *Mills* issue, the United States Supreme Court reversed our holding in *Banks II* and held in *Beard v. Banks,* 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494, that *Mills* announced a new rule of constitutional law that would not apply retroactively to any case that became final prior to the *Mills* decision. Albrecht's case became final prior to *Mills.*

In the present appeal, the Commonwealth raised a *Teague* defense in its opening brief before us, contending that *Mills* should not be applied retroactively pursuant to *Beard.* Albrecht argues that the Commonwealth waived the *Teague* defense at the District Court level, and *Beard* should not bar habeas relief.

A federal court has the discretion to raise the *Teague* issue sua sponte when the State fails to raise the defense. *See, e.g., Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) ("[A] federal court may, but need not, decline to apply *Teague* if the State does not argue it."); *Schiro v. Farley,* 510 U.S. 222, 229, 114 S.Ct. 783, 127 L.Ed.2d 47 (acknowledging that the Court "undoubtedly [had] the discretion to reach" a *Teague* defense not raised by the State below). The *Teague* defense promotes the interests of comity to state court adjudications and the finality of criminal judgments. *See Lewis v. Johnson,* 359 F.3d 646, 653 (3d Cir.2004).

In the present case, we will allow the *Teague* defense even though the State failed to raise the defense with the District Court. The Commonwealth's failure to raise the *Teague* defense had absolutely no effect on how the District Court ruled in the matter, because the District Court considered the issue of *Teague* sua sponte (and noted that our decision in *Banks II* permitted the retroactive application of *Mills* ). Because the District Court considered the *Teague* defense sua sponte, appellate review of the issue is appropriate. *See Wilkerson v. Whitley,* 28 F.3d 498, 504 (5th Cir.1994) (electing to consider *Teague* defense even though the state failed to raise issue in its original brief before the panel because *Teague* was the primary reason given by the district court for its judgment). Moreover, the parties have fully briefed *Teague* as well as the issue of waiver in the briefs before us. There is no prejudice to either party in our consideration of *Teague.*

**\*13** As noted above, the Supreme Court held in *Beard* that *Mills* is not retroactive. Because we are applying *Teague* in the present case, we must vacate the District Court's order granting relief pursuant to *Banks II,* and remand so the District Court can address Albrecht's other sentencing issues that were initially deemed moot.

### IV. The Innocence Claim

Albrecht argued in his habeas petition that new developments in fire science prove his claim of actual innocence. In *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), the Supreme Court observed that a claim of innocence based on newly discovered evidence has never been a basis for federal

habeas relief absent an independent constitutional violation occurring in the state trial. *Id.* at 398-99. *See also Fielder v. Varner,* 379 F.3d 113, 122 (3d Cir.2004). In her concurrence, however, Justice O'Connor noted that: Nowhere does the Court state that the Constitution permits the execution of an actually innocent person. Instead, the Court assumes for the sake of argument that a truly persuasive demonstration of actual innocence would render any such execution unconstitutional and that federal habeas relief would be warranted if no state avenue were open to process the claim.

*Herrera,* 506 U.S. at 427 (O'Connor, J., concurring).

The District Court permitted Albrecht's habeas attorneys to present testimony at an evidentiary hearing from Richard Custer, a privately retained fire protection engineer. Custer testified that all of the observations relied on by Trooper York to support his conclusion that the fire was set in the kitchen using gasoline, for example, the burn patterns on the floor, the damage to the underside of the chairs and the table, the "V" patterns on the walls, the heavy damage to the refrigerator, and the blistering of wood ("alligatoring"), are now understood to be equally consistent with an accidental fire that resulted in full room involvement.

The District Court concluded that Albrecht had convincingly shown that the fire science presented by the Commonwealth at his trial has since been discredited insofar as it provided an unreliable basis for the conclusion that a liquid accelerant had definitely been used and that the fire could only have been arson. However, the new evidence was legally insufficient under *Herrera* to prove that Albrecht was actually innocent, because Custer's testimony established only that the fire might have been accidental. There was sufficient other evidence that the fire was not accidental, including the hydraulic oil can found in Albrecht's car which tested positive for gasoline, the evidence that Albrecht repeatedly abused his wife, and the threats he made to Larry Wimmer, John Wheeler, Valerie Cullingford, and Carol Kuhns to harm his wife and burn down the house.

Albrecht has appealed the District Court's ruling on this guilt-phase issue, which raises substantial questions about whether it is cognizable in federal habeas, and, if it is, whether it was exhausted in the state courts. We address each threshold question in turn, but the ultimate claim of innocence is lacking in merit.

### 1. Cognizability

**\*14** The Supreme Court recently revisited Justice

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

O'Connor's *Herrera* concurrence in *House v. Bell*, --- U.S. ----, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). In *House*, the Court reaffirmed that the *Schlup* standard, *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), applies to federal habeas petitions claiming actual innocence, when the petitioner cannot show cause and prejudice for a defaulted claim. *See also Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). In *Schlup*, the Court adopted a rule to implement the "miscarriage of justice" exception as follows: A petitioner asserting a miscarriage of justice must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. 513 U.S. at 327. The rule ensures that a petitioner's case is truly "extraordinary," a point that Justice Kennedy emphasized in *House*, stating "it bears repeating that the *Schlup* standard is demanding and permits review only in the extraordinary case." *House*, 126 S.Ct. at 2077.

The Supreme Court found in *House* that the *Schlup* standard had been satisfied, but, importantly for our purposes here, it once again left open the question whether truly persuasive freestanding innocence claims in capital cases warrant federal habeas relief if no state avenues of relief remain open. *House*, 126 S.Ct. at 2086. The Court explained:

We conclude here, much as in *Herrera*, that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it. To be sure, House has cast considerable doubt on his guilt-doubt sufficient to satisfy *Schlup's* gateway standard for obtaining federal review despite a state procedural default. In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as "extraordinarily high." [506 U.S. at 417, 113 S.Ct. at ----]. *Herrera* requires more convincing proof of innocence than *Schlup*. It follows, given the closeness of the *Schlup* question here, that House's showing falls short of the threshold implied in *Herrera*.

*Id.* at 2087.

The District Court assumed that Albrecht's freestanding innocence claim would be cognizable in federal habeas if he could meet that threshold implied in *Herrera*. We take this approach as well since we are persuaded that Albrecht cannot even satisfy the *Schlup* gateway standard.[FN6]

### 2. Exhaustion and Procedural Default

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-(A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Albrecht's federal habeas claim that he is actually innocent is now supported by the affidavit of a privately retained modern fire science expert. The claim was presented at both levels, trial court and state Supreme Court, during post-conviction proceedings, *Albrecht*, 720 A.2d at 706-08, but without this evidentiary support. Instead, in state court the claim was accompanied by a request for public funds to pay for an expert.

**\*15** The District Court concluded that the federal habeas claim was different, but that Albrecht could show cause and prejudice for his failure to bring the "substantive" aspect of the claim in state court. The Court reasoned that, because Albrecht could not prove his case without expert testimony, and the state courts would not provide the funds for an expert, the state courts prevented him from substantiating his claim. Moreover, Albrecht demonstrated that fire science actually had changed.

Whether the freestanding innocence claim is unexhausted, such that a procedural default analysis is required, presents a close question. A habeas petitioner must present a federal claim's factual and legal substance to the state courts. *Bronshtein*, 404 F.3d at 725 (citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.1999)). However, the only difference between the state post-conviction version of the claim and the federal habeas version of the claim is the existence of evidentiary support in the form of an expert report and testimony. The sum and substance of it was presented to the state court.

In his state petition, Albrecht contended that due process required the provision of public funds to establish his claim that after-discovered evidence had undermined the reliability of his conviction. He "alleged that advances in fire investigation science, not widely known or available at the time of his trial, indicate[d] that certain burn patterns once considered a tell-tale sign of a fire started by means of a liquid accelerant are equally consistent with the effects of a 'flashover' fire of innocent origin ." *Albrecht*, 720 A.2d at 707. Although Albrecht now has an expert, this is much the same claim he raised in his federal habeas petition.

The state supreme court analyzed whether Albrecht was entitled to public money for an expert under 42 Pa. Cons.Stat. Ann. § 9543(a)(2)(vi), the provision of the state post-conviction relief act dealing with claims of innocence based on after-discovered evidence, and also *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), where the United States Supreme Court held that a defendant has a due process right to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

assistance of experts necessary to prepare a defense. *Albrecht,* 720 A.2d at 707. The Court addressed the new science and considered whether or not the verdict was reliable in view of the new developments.

The Court explained:
Appellant contends that the PCRA court abused its discretion because "[t]he fact that the *concept* of flashover had been discussed at trial merely underscores the importance of the post-trial scientific discovery that evidence once thought to be consistent only with a flammable liquid fire is now known to be indicative of a flashover fire." *Initial Brief of Appellant, at 35* (emphasis in original). Appellant argues that new scientific knowledge could establish that the fire may have been started by a smoldering cigarette in a living room chair, as he contended at trial, and spread to the kitchen by means of a flashover.
*16 Here, Appellant presented no more than anecdotal support for his motion. Nevertheless, we find Appellant's submissions sufficient to indicate that fire investigation science has made significant strides in the period subsequent to his trial. Appellant has not demonstrated, however, that an expert in the field existed who was willing to assist in developing this claim of innocence if funds became available. More importantly, Appellant has not established by factual analysis or argument that the trial court's denial of funds prejudiced him.

*Id.* (footnote omitted).

The Court went on to explain the nature of "the flashover phenomenon," and to express its disbelief that the surrounding circumstances, and Albrecht's testimony about how he was able to get out of the house, could support that theory. *Id.* at 707-08. The Court concluded:
On the basis of the record presented in the PCRA court, Appellant has failed to establish that the court abused its discretion in denying his application for expert witness funds. Due process principles did not require the PCRA court to provide public funds for expert assistance because nothing submitted by Appellant established that the scientific knowledge could have been exploited under the facts of this case. See *Ake v. Oklahoma, supra.* Accordingly, we find no abuse of discretion in the trial court's order denying Appellant's request.

*Id.* at 708 (footnote omitted).

Granted the expert who testified at Albrecht's habeas hearing provided additional evidence (over and above Kacznarczik's trial testimony) in support of the asserted facts and legal theory of this claim, and, as a result, the theory of a smoldering chair and subsequent flashover was less speculative, *Albrecht,* 720 A.2d at 707

(observing that trial court denied request for funds due to speculative nature of claim), but only by a matter of degree. Ultimately, the state post-conviction claim was not very different from the federal habeas claim. The essential factual and legal substance of the innocence/unreliable fire science claim was presented at both the trial and state Supreme Court levels. We thus conclude that the claim was fairly presented, *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), and meets the requirements for exhaustion. Thus, a procedural default analysis is unnecessary.[FN7]

### 3. The Merits of the Actual Innocence Claim

With respect to the merits, we agree with the District Court that Albrecht has not shown that he is actually innocent.[FN8] Custer testified that the fire could have been accidental in origin. He reasoned that, once hot gases produced by a fire reach the ceiling, they begin to move back down toward the floor. The heat then sets the floor on fire and causes damage to the full room, including at low levels. He further testified that "you can get complete destruction on floor covering materials from a non incendiary fire." Supp.App. 3063. Thus, fire scene evidence of an accidental fire that has reached full room involvement is indistinguishable from the evidence seen after an incendiary fire that likewise affected the full room.

*17 When fairly read, however, Custer's opinion was that, although modern fire science could lead one to a different conclusion, he could not conclude one way or another; he left open the possibility that the fire was, as Trooper York concluded, intentionally set. In short, Custer simply could not rule out the possibility that the fire was incendiary in origin. Because he did not conclude that the fire was accidental, and because, as the District Court concluded, there was ample other evidence of guilt, Albrecht's new evidence falls short of showing that he is actually innocent, even under the Schlup gateway standard.

House does not change our view that the *Schlup* gateway standard is not met here. *House* turned on DNA evidence that would have prevented reasonable jurors from placing significant reliance on the blood evidence presented against the defendant, House. Importantly, the case involved the existence of another suspect, the victim's husband, who had made incriminating statements about her murder and who had a history of abusing her. The prosecution's case was based in large part on what FBI testing showed-that semen consistent with House's was present on the victim's nightgown and panties, and that small bloodstains consistent with her blood, but not House's, appeared on the jeans belonging to House.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
(Cite as: --- F.3d ----)

*House,* 126 S.Ct. at 2072. This physical evidence linked House to the crime. The prosecution, when challenged that House had no motive, strongly suggested that the motive was rape. *Id.* at 2075.

In direct contradiction of the evidence presented at trial, new DNA testing established that the semen on the victim's nightgown and panties came from her husband, and not from House, *id.* at 2078-79; and new evidence showed that the bloodstains on House's pants could have come from carelessly spilled autopsy samples rather than directly from the victim as a result of a violent crime, *id.* at 2079-82. The Supreme Court believed this to be important because, "[f]rom beginning to end the case is about who committed the crime. When identity is in question, motive is key." *Id.* at 2079. The new DNA evidence effectively destroyed the theory of rape as the motive for the murder. *Id.* Without the blood evidence, House did not have a motive, but the victim's husband did. *Id.* at 2083-85.

In Albrecht's case, in contrast, even if we assume that Trooper York's testimony has been discredited like the blood evidence in *House,* identity was not in question and motive was amply established. Moreover, the substantial remainder of the Commonwealth's case has not been discredited and provides ample evidence of guilt. Custer's testimony did nothing to undermine the Commonwealth's damaging evidence of Albrecht's pattern of hostility and violence directed toward Mrs. Albrecht, his attempt to purchase gasoline to put in a can the day before the fire, the immediate discovery of the empty hydraulic oil can in the trunk of his car which tested positive for gasoline, and his numerous threats to burn down the house and do further harm to his wife.

*18 Moreover, Custer's testimony did bear at least some similarity to the testimony of defense expert Kacznarczik, which was argued to the jury and rejected. Kacznarczik was emphatic that the fire did not involve the use of a liquid accelerant, that is, gasoline. He explained away the presence of petroleum distillates by noting that all "modern day buildings" contain plastic materials which are "effectively solid gasoline" or "petroleum distillates." Supp.App. 2737-38. Furthermore, in support of his conclusion that the fire did not start in the kitchen, he noted the "great structural damage," Supp.App. 2748, in the living room and, in particular, the smoldering chair and drywall near it which were completely destroyed. On cross-examination, Custer could not disagree that Kacznarczik's testimony was based on a theory that superheated gases in the living room were ignited by oxygen, just as his was.

Albrecht has argued on appeal that Trooper York

repeatedly told the jury that the evidence provided unequivocal proof that the fire was started with the use of a liquid accelerant. This may indeed sum up Trooper York's testimony on direct, but it ignores the success defense counsel had on cross-examination. The defense featured an extensive cross-examination of Trooper York that lasted three days and covers 298 pages of the trial transcript. Trial counsel had some success in establishing facts that supported the defense theory that the fire started in the living room, in a chair where a cigarette was smoldering, and not in the kitchen. He established that the front door to the living room was burned through almost completely, the front porch was badly charred, items in the kitchen cabinets were unaffected by the intense heat of the fire, there were indeed intense flames in the living room, and York had no idea what the wind velocity was on the day of the fire despite his reliance on the wind as an explanation for the intensity of the fire in the living room.

In addition, we do not find Albrecht's "other evidence of innocence" argument that Alfred Jr.'s testimony was exculpatory persuasive. Alfred Jr.'s testimony that he heard his father get out of bed contradicts the Commonwealth's theory that Albrecht had started the fire by the time Alfred Jr. woke up. However, as the prosecutor argued in his closing, Alfred Jr. was "a son trying to hold onto his father. His mother is dead, and his sister's dead, and his [grandmother is] dead. [He] is trying to put his best foot forward and protect his father ...." Supp.App. 2888. In addition, as explained above, much of Alfred Jr.'s testimony actually was damaging.[FN9]

In sum, Albrecht cannot exploit the new scientific knowledge, assuming for the sake of argument that it is new, because of ample other evidence of guilt. He has not shown that he is actually innocent, even under the *Schlup* gateway standard, because we cannot conclude that, had the jury heard all the conflicting testimony, it is more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt. *Schlup,* 513 U.S. at 327. Thus, habeas relief is unavailable on the innocence claim.[FN10]

### IV. Trial Counsel's Failure to Request a Limiting Instruction

*19 Albrecht has argued that trial counsel was ineffective for failing to request a limiting instruction with respect to the evidence of spousal abuse. He argues that the Commonwealth's evidence of spousal abuse carried with it the possibility that the jury would use the evidence to conclude, improperly, that he had a bad character and a propensity to commit the crime. This claim was exhausted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on direct appeal. *Albrecht,* 511 A.2d at 775-76.

Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a petitioner claiming ineffective assistance of counsel must demonstrate (1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client. *Id.* at 689-92. In order to show prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The state Supreme Court, applying its own precedent and commenting that its standard for determining ineffective assistance of counsel claims was the same as *Strickland,* held that there could be no ineffectiveness in not asking for a limiting instruction, because the evidence of prior misconduct was admissible to show motive, malice, and ill will. *Albrecht,* 511 A.2d at 775-76. When the deceased victim's spouse is the defendant, evidence of continual abuse is plainly admissible. *Id.* Specifically, the state Supreme Court determined that counsel's conduct was not substandard. *Id.* It did not reach the prejudice question.

The District Court concluded that counsel's conduct in not requesting a limiting instruction was deficient, and that the state court's decision to the contrary was not entitled to deference under section 2254(d)(1). The Court could not find any valid strategic reason for trial counsel to have chosen not to request a limiting instruction, because the evidence of abuse was not briefly or fleetingly presented, but instead was a substantial portion of the Commonwealth's case. The Court also emphasized that the Commonwealth's closing argument harped on "what type of man" Albrecht was. Once the Commonwealth did that, the danger of inadvertently highlighting the evidence, which might have presented a valid reason for not seeking a limiting instruction, had passed.

We agree with the District Court that the fact that evidence is admissible does not decide the question whether a limiting instruction should still have been requested by counsel, and that counsel's failure to seek a limiting instruction in Albrecht's case was substandard performance. Trial counsel is not constitutionally required to request a limiting instruction any time one could be given, because counsel might reasonably conclude that such an instruction might inadvertently call attention to the evidence of prior bad acts. *See Buehl v. Vaughn,* 166 F.3d 163, 170 (3d Cir.1999). In Albrecht's case, however, we do not believe that counsel might reasonably have concluded that it was strategically preferable to omit the request. As the District Court explained, the evidence of spousal abuse was not briefly or fleetingly presented.

*\*20* The Commonwealth's case against Albrecht was based on plentiful evidence that Mrs. Albrecht was a battered wife. Evidence that a defendant has committed prior criminal acts is highly prejudicial. *See, e.g. Old Chief v. United States,* 519 U.S. 172, 180-81, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Although the evidence was admitted for a legitimate purpose, that is, to show Albrecht's motive for deliberately starting the fatal fire, it carried with it the danger that the jury would use it for an improper purpose, that is, as evidence of Albrecht's bad character and criminal propensity. *Id.* at 181. The large quantum of evidence of spousal abuse at Albrecht's trial should have been a "red flag" for counsel. Evidence of prior bad acts "is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Id.* (quoting *Michaelson v. United States,* 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948)).

The inflammatory nature of the evidence in Albrecht's case clearly did not exceed its evidentiary value so as to violate due process. *Lesko v. Owens,* 881 F.2d 44, 52 (3d Cir.1989). Moreover, the trial judge appropriately limited the evidence of spouse abuse and infidelity to those acts that occurred within seven months of the fire. *See Albrecht,* 511 A.2d at 771-72. However, just as clearly, the jury should have been provided with a limiting instruction. Where evidence of a defendant's prior bad acts is admitted, a defendant's interests are protected by a limiting instruction, which mitigates the possibility of prejudice. *Spencer v. Texas,* 385 U.S. 554, 561-62, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). The Pennsylvania Supreme Court has held that "it [is] extremely important that the jury understand *in every case* the limited purpose of such evidence." *Commw. v. Billa,* 521 Pa. 168, 555 A.2d 835, 841 (Pa.1989) (quoting *Commw. v. Amos,* 445 Pa. 297, 284 A.2d 748, 750 (Pa.1971)).

In Albrecht's case, the need for a limiting instruction was not hypothetical. In closing, the prosecutor improperly related the evidence of spousal abuse to Albrecht's character when he stated that: "If this man were capable of doing this for such a thing, carry it on to its logical conclusion, what type of man is Al Albrecht." Supp.App. 2894. In doing so, the prosecutor did not limit his use of the bad acts evidence to proving motive. Instead, he explicitly called upon the jury, by asking "what type of man is Al Albrecht," to view the evidence of prior bad acts as evidence of Albrecht's bad character and propensity to commit this crime.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

*Strickland,* however, requires more than just a showing of substandard performance. A Sixth Amendment claim cannot be made out if Albrecht was not prejudiced by counsel's substandard conduct. Prejudice is established when, but for counsel's error, there was a reasonable probability that the outcome of the proceeding would have been different, and, thus, that confidence in the outcome is undermined. *Id.* at 694. In this case, the bad acts evidence was a central part of the Commonwealth's case. The jury was not cautioned against its use as propensity evidence, and, in fact, it was urged by the prosecutor during closing argument, without objection from defense counsel, to consider Albrecht's character and propensity for violence against his wife. This would be a potent combination of circumstances establishing prejudice if our confidence in the verdict was undermined, but it is not.

**\*21** We have considered the prejudicial effect of the prosecutor's closing argument in conjunction with the lack of instruction. Even so, we agree with the District Court that the prejudice prong of *Strickland* cannot be satisfied.[FN11] We find this issue to be a very close one, but "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." *Buehl,* 166 F.3d at 172. The ample if not overwhelming evidence of Albrecht's guilt, his attempt to purchase gasoline the day before the fire, the discovery of the hydraulic oil can which should not have tested positive for gasoline but did, and his numerous threats to a variety of people that he would kill his wife and/or burn down the house, supports the conclusion that he suffered no prejudice as a result of counsel's deficient performance in not seeking a limiting instruction.

Albrecht also raises a due process violation resulting from the trial court's failure to provide an appropriate limiting instruction on its own.[FN12] Habeas relief for a due process violation concerning an absent or defective jury instruction is available only when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness. *Cupp v. Naughton,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). In Albrecht's case, the required objection was not made. In addition, an "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155. Albrecht does not argue that the trial court misstated the law by instructing, for example, that the jury could disregard the evidence and convict him on the basis of criminal propensity, or that the prosecution need not

prove guilt beyond a reasonable doubt. We are left then with the following well established evidence: Albrecht had a motive to kill Mrs. Albrecht, he was living at home and continuing to abuse her in violation of a court order, and he made numerous threats to harm her and burn down the house, and, as a result, we are not persuaded that the absence of a limiting instruction infected the entire trial with unfairness. *See Duckett v. Godinez,* 67 F.3d 734, 745 (9th Cir.1995) (whether constitutional violation has occurred will depend upon evidence in case and overall instructions given to jury).

### V. The *Brady* Claim

During the habeas proceedings, the District Court granted Albrecht leave to pursue a *Brady* claim based on the late disclosure, or nondisclosure, of the statements of witnesses Allen Doelp, Thomas Jacob, Carol Frick, Elwood Steich, Valerie Cullingford, Jeffrey Doelp (Allen's son), and Nancy Mohr. Robert Goldman, Esquire, the prosecutor, testified at the evidentiary hearing as to what statements he actually, or likely, turned over at the time of trial. The testimony showed that Jeffrey Doelp and Nancy Mohr did not testify at trial, and his practice was nondisclosure with respect to non-testifying witnesses. The District Court ordered the Commonwealth to produce the statements of Jeffrey Doelp and Mohr. There was no real dispute that the statements of Allen Doelp, Carol Frick, Elwood Steich, and Valerie Cullingford all were disclosed, at a minimum, prior to their cross-examinations, again in keeping with the prosecutor's usual practices. The District Court also found that Thomas Jacob's statement had to have been turned over at the time of trial.

**\*22** Once the District Court made findings about what had been turned over and what needed to be turned over, it concluded that Albrecht's *Brady* claim with respect to the statements of Allen Doelp, Jacob, Frick, Steich, and Cullingford was barred due to a procedural default. This claim was not raised at any level in state court, either on direct appeal or during post-conviction proceedings. Albrecht could not show cause for this failure, because these statements were available at the time of his direct appeal and state post-conviction case, and Albrecht could have pursued the claim at that time. With respect to the statements of Jeffrey Doelp and Mohr, the *Brady* claim, although unexhausted because it had not been pursued on direct appeal or in post-conviction proceedings, was not barred due to a procedural default. The District Court reasoned that Albrecht could show cause for his failure to bring this claim earlier because the Commonwealth had previously asserted that it had disclosed everything it was required to disclose.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
(Cite as: --- F.3d ----)

With respect to the merits of the *Brady* claim that could be considered, the District Court rejected Albrecht's assertions that the undisclosed statements of Jeffrey Doelp and Mohr were material. Albrecht theorized that testimony at trial that he was less sooty was damaging because it implied that he was not in bed when the fire started. Jeffrey Doelp, Allen Doelp's son, gave a statement to police that Albrecht was all black from soot. Nancy Mohr, an ambulance driver, gave a statement to police that both Albrecht and Alfred Jr. were all covered with soot. Albrecht contended that several of the Commonwealth's other witnesses testified inconsistently with their pretrial statements that he and Alfred Jr. were equally sooty.

The District Court disagreed that the undisclosed statements were material, reasoning that the presence or absence of soot was not a significant part of the Commonwealth's case. Moreover, it was undisputed that Albrecht escaped the fire prior to Alfred Jr. The jury could have determined that Alfred Jr. had a greater exposure to the rising black smoke over a longer period of time than did Albrecht, and, thus, his son necessarily would have had more soot on him, regardless of how the fire started.

We conclude that the *Brady* claim will not support habeas relief. There is no basis for disturbing the District Court's finding that Thomas Jacob's statement must have been disclosed at the time of trial, because we review the District Court's factual findings only for clear error. *Whitney,* 280 F.3d at 249. Albrecht's trial counsel's stipulation that he had no recollection of whether he received the statement is inadequate to show that the statement was not disclosed in accordance with the prosecutor's usual practices. The prosecutor's testimony at the evidentiary hearing credibly establishes that Jacob's statement was turned over.

Moreover, we agree with the District Court that the *Brady* claim concerning statements actually disclosed at the time of trial, or found to have been disclosed at the time of trial, is barred due to a procedural default. Albrecht's failure to raise this claim in state court constitutes a state procedural default that bars federal habeas review. *Coleman,* 501 U.S. at 729-30. The bar to review on the merits is lifted only upon a showing of cause for the state procedural default and actual prejudice resulting there from. *Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Albrecht cannot show cause for his failure to bring this claim on direct appeal or in his post-conviction case. In addition, there are no state remedies left for Albrecht to pursue, because a new state post-conviction petition raising this claim surely would be

held to be untimely filed. *See Commw. v. Banks,* 556 Pa. 1, 726 A.2d 374 (Pa.1999) (post-conviction petition time limits are jurisdictional and not subject to judicial relaxation). In certain exceptional cases involving a compelling claim of actual innocence, the procedural default rule is not a bar to habeas relief, *Schlup,* 513 U.S. at 319-322, but, as we have already explained, this is not such a case. Therefore, the statements of Allen Doelp, Thomas Jacob, Carol Frick, Valerie Cullingford, and Elwood Steich may not be considered on the merits.

**\*23** With respect to the statements of Jeffrey Doelp and Nancy Mohr, we agree that no *Brady* violation occurred. To establish a violation of due process under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, Albrecht must show not only that the evidence was suppressed, but also that it was material and favorable. *Id.* at 87. Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

The soot evidence from the statements of Jeffrey Doelp and Mohr was not material in the sense that its absence from the trial resulted in a verdict unworthy of confidence. *Kyles,* 514 U.S. at 434. Witnesses testified that Alfred Jr. was sooty in appearance following the fire. This was consistent with his testimony that he just barely escaped death by jumping from a second story window. The issue of the presence, or absence, of soot on Albrecht was discussed at trial by various witnesses. One of the Commonwealth's own witnesses, Trooper Donald Lauriha, testified that Albrecht had soot all over his face and also on his arms. However, Commonwealth witnesses Allen Doelp and Thomas Jacob did not testify consistently with their original statements that Albrecht was covered in soot. Thomas Jacob, for example, gave a statement that Albrecht and Alfred Jr. were "black with soot," Supp.App. 3183, but he testified at trial that there was very little soot if any on Albrecht while Alfred Jr. was covered with soot.

Nevertheless, although Albrecht contends that testimony that he was not as sooty as Alfred Jr. was damaging, as explained by the District Court, there was an explanation for his having less soot on him that had nothing to do with how the fire started. Alfred Jr.'s testimony was that Albrecht had exited the fire before him. He looked out a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

second floor window, and saw his father run out the kitchen door. He then saw his father run to his bedroom window. Albrecht urged him to jump, but Alfred Jr. did not jump right away, and instead he crawled to his sister's bedroom to try to save her. He saw that she was not in her room, and he could not check other bedrooms down the hall because there was too much smoke. He then crawled back to his own window, which Albrecht was still standing under, and jumped. In short, Alfred Jr. had a longer exposure to smoke, and thus would have had more soot on him even if Albrecht was still in bed when the fire started.

In arguing that the statements were material, Albrecht contends on appeal that his appearance following the fire was a significant part of the Commonwealth's case, and he notes that the state Supreme Court remarked on it, *see Albrecht,* 720 A.2d at 705, in addressing the prejudice prong of an ineffective assistance of counsel claim. We see no error. The prosecutor did not comment in his closing argument on the presence or absence of soot as evidence of guilt, and while it is true that in arguing its case on appeal the Commonwealth has made reference to the almost complete absence of soot on Albrecht himself, that argument is not evidence.

**\*24** It is also true that the state Supreme Court remarked generally, without mentioning soot, on Albrecht's "appearance" following the fire in evaluating the evidence, *Albrecht,* 720 A.2d at 705, but the state court's determination that there was ample evidence of guilt did not rest to any great extent on Albrecht's appearance following the fire. It rested instead on the pattern of hostility and violence Albrecht exhibited toward his wife, his attempt to purchase gasoline the day before the fire, the discovery of the hydraulic oil can which should not have tested positive for gasoline but did, and his numerous threats to a variety of people that he would kill his wife and/or burn down the house. *Id.* Accordingly, we agree with the District Court that the trial resulted in a verdict worthy of confidence, *Kyles,* 514 U.S. at 434, notwithstanding the absence of more testimony that Albrecht too had soot on him.

It necessarily follows that this claim too is barred due to a procedural default. Even assuming that Albrecht could show cause for his failure to bring this *Brady* claim in state court earlier insofar as the claim arose during federal habeas proceedings, he cannot show prejudice, *Wainwright,* 433 U.S. at 90, because the claim lacks merit. "The analysis of prejudice for the procedural default of a *Brady* claim is identical to the analysis of materiality of a *Brady* claim itself." *Slutzker v. Johnson,* 393 F.3d 373, 385 (3d Cir.2004) (citing *Strickler v. Greene,* 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286

(1999)). If the withheld evidence was not material to Albrecht's trial, then barring his federal habeas claim on procedural grounds would not create prejudice. *Id.* Moreover, Albrecht cannot show a miscarriage of justice sufficient to overcome the procedural bar, because he has not made the required showing of actual innocence, *see Schlup,* 513 U.S. at 326-27, for the reasons already discussed.

Finally, in the context of his *Brady* claim, Albrecht has argued that trial counsel was ineffective for failing to present the favorable soot evidence from the statements of Thomas Jacob, Allen Doelp, Carol Frick, Valerie Cullingford, and Elwood Steich, and ineffective for failing to make enough use of the favorable soot evidence from Alfred Jr.'s statement. The District Court concluded in its January 10, 2003 order granting Albrecht an evidentiary hearing that these two ineffective assistance of counsel claims are unexhausted and subject to the same procedural default analysis that applies to the *Brady* claim concerning statements found to have been turned over at the time of trial. We agree that these ineffectiveness claims also are barred. *See Coleman,* 501 U.S. at 729-30.

## VI. Mrs. Albrecht's Statements Concerning the Source of Her Injuries

Albrecht argues that admission of Mrs. Albrecht's hearsay statements to her attorney Mark Steinberg, physician Dr. George Young, friend Patricia Fullmer, and co-worker Sara Joraskie, concerning the source of her physical injuries, violated the Confrontation Clause, because none of these witnesses had any first-hand knowledge that Albrecht had caused the injuries they observed, and the statements did not have the required particularized guarantees of trustworthiness. Albrecht does not contend that the statements at issue are testimonial under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), but rather that there is no "firmly rooted hearsay exception" applicable to them, and they lack any "particularized guarantees of trustworthiness," as required by *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

**\*25** Steinberg testified that Mrs. Albrecht confided in him on two occasions that she had been abused and beaten by Albrecht. Dr. Young testified that Mrs. Albrecht consulted him on January 16, 1979 and told him "that her husband had punched, beat and kicked her the night before." Supp.App. 1720. Ms. Fullmer testified that Mrs. Albrecht told her that Albrecht had banged her head against the refrigerator and burned her face with a cigarette. Ms. Joraskie testified that the bruise she saw on Mrs. Albrecht's leg resulted from Albrecht kicking her.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
(Cite as: --- F.3d ----)

The state courts did not decide a Confrontation Clause claim. A claim concerns the admissibility of evidence of the source of Mrs. Albrecht's physical injuries was decided under state law on direct appeal. *Albrecht,* 511 A.2d at 772.[FN13] The state Supreme Court also decided on direct appeal a claim that trial counsel was ineffective for failing to object to the admissibility, on hearsay grounds, of the testimony of Mrs. Albrecht's doctor and attorney. *Id.* at 775-76.[FN14] The Court concluded that Dr. Young's and attorney Steinberg's testimony was admissible for the purpose of showing a course of conduct, counsel had no basis for objecting to it, and thus his performance was not deficient. *Id.*

A claim concerning the admissibility of the testimony of Ms. Fullmer and Ms. Joraskie was among those claims abandoned by replacement post-conviction counsel. *Albrecht,* 720 A.2d at 705. The state Supreme Court considered it on appeal during post-conviction proceedings in the context of addressing whether replacement post-conviction counsel rendered ineffective assistance in abandoning it. The Court concluded that Fullmer's and Joraskie's testimony was cumulative of other evidence offered at trial, and that Albrecht suffered no prejudice as a result of its having been admitted. *Id.*

The District Court held that the statements unquestionably exhibited the required "particularized guarantees of trustworthiness." The Court did not find it necessary to reach the question whether any firmly rooted hearsay exceptions applied. Instead, the Court reasoned that numerous witnesses testified to the physical manifestations of abuse, including the bruising and cigarette burns. Alfred Jr. testified that his father hit his mother on the night before the fire. The police report from the night before the fire suggested a domestic disturbance, and the Protection From Abuse order represented a judicial finding of spousal abuse. Furthermore, Albrecht's admissions' guaranteed trustworthiness. The court observed that Albrecht's suggestion that Mrs. Albrecht was falsely complaining of abuse "strain[ed] credulity." If admission of the statements concerning the source of Mrs. Albrecht's injuries did violate the Confrontation Clause, the error was harmless.

We will address the merits of the claim.[FN15] *Crawford* changed the legal landscape for determining whether the admission of testimonial hearsay statements violated the accused's rights under the Confrontation Clause. In *Crawford,* the Supreme Court, partially abrogating *Roberts,* rejected the argument that, so long as the testimonial hearsay was subject to an exception or bore "indicia of reliability," the Confrontation Clause was not violated, saying that it " 'commands, not that evidence be

reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." ' *United States v. Gonzalez-Lopez,* --- U.S. ----, ----, 126 S.Ct. 2557, 2562, 165 L.Ed.2d 409 (2006) (quoting *Crawford,* 541 U.S. at 61).

*26 Albrecht does not contend that the statements at issue here are testimonial. Thus, we do not consider the admissibility of the statements under *Crawford.* As to nontestimonial statements, the Confrontation Clause does not preclude their admission if they are subject to a firmly rooted exception or bear an adequate indicia of reliability. *United States v. Hendricks,* 395 F.3d 173, 179 (3d Cir.2005) (addressing *Roberts* ). Unless and until the Supreme Court holds otherwise, *Roberts* still controls nontestimonial statements. *Id.*

We agree with the District Court's ultimate conclusion that the statements bore the necessary indicia of reliability. The "particularized guarantees of trustworthiness," *Roberts,* 448 U .S. at 66, "must be shown from the totality of the circumstances, but ... the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief," *Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). "In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." *Id.* at 820. *See also Lee v. Illinois,* 476 U.S. 530, 544, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (determining reliability from circumstances surrounding making of statement).

We have "considerable leeway" in making the determination, *Wright,* 497 U.S. at 822, so long as the factors we use relate to whether the declarant was particularly likely to be telling the truth when the statement was made. We conclude that Mrs. Albrecht was worthy of belief on the issue of the identification of her husband as the source of her injuries. *Wright,* 497 U.S. at 819. She identified Albrecht in the course of seeking medical care, *cf.* Fed.R.Evid. 803(4), and legal assistance in the form of a restraining order, which meant that her statement to her attorney would have to be verified in a court of law. Her statements to Ms. Fullmer and Ms. Joraskie present a closer question, but the state Supreme Court determined that their testimony was cumulative and thus prejudice could not be shown. Even if we conclude that there was a Confrontation Clause error, we must defer to this harmless error holding because it was not in "conflict with the reasoning or holdings of [Supreme Court] precedent" and the court did not "appl[y] harmless-error review in an 'objectively unreasonable'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Page 21

manner." *Mitchell v. Esparza,* 540 U.S. 12, 17-18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (applying 28 U.S.C. § 2254(d)(1) to harmless error analysis).

Albrecht also argues that appellate counsel was ineffective for failing to contend on direct appeal that the Kuhns' recollection of Alfred Jr.'s statement was inadmissible hearsay. Carol and Terry Kuhns, neighbors, testified that Alfred Jr. appeared at their door the night before the fire and said that his father was hitting his mother again and threatening to burn down the house. Alfred Jr. testified that what he really said was that his father was hitting his mother again and threatening to burn her dress. The ineffective assistance of appellate counsel claim concerning Carol Kuhns' testimony was among those claims abandoned by replacement post-conviction counsel, and addressed by the state Supreme Court in the context of ineffective assistance of replacement post-conviction counsel. *Albrecht,* 720 A.2d at 704.

**\*27** The state Supreme Court concluded that the trial court had erred in admitting this hearsay statement as an excited utterance over counsel's objection, *id.* (citing Pa. R. Evid. 803(2)), but Albrecht was not prejudiced by replacement post-conviction counsel's conduct in abandoning the issue, and thus the appellate counsel ineffectiveness claim was waived. *Id.* at 705. The Court reasoned that there was considerable other testimony of threats to burn down the house, and Alfred Jr. testified, corroborating the statement to the extent of the threats and refuting it to the extent of what exactly his father had threatened to burn. Moreover, Alfred Jr.'s version of his statement, and not the Kuhns' version, was corroborated by Officer Heckenswiler. *Id.*

Thus, as with the *Mills* claim, there was a state procedural default with respect to this ineffective assistance of appellate counsel claim insofar as it was abandoned at the trial court level, *O'Sullivan,* 526 U.S. at 844-45, and the state supreme court held that it was waived. However, the claim is not barred due to a procedural default, because the new waiver rule applied for the first time in *Albrecht,* 554 Pa. 31, 720 A.2d 693, is not independent and adequate as to Albrecht, *Doctor,* 96 F.3d at 683-84. Like the *Mills* claim, the doctrine of procedural default does not bar consideration of this claim.

The District Court assumed that appellate counsel's performance was deficient, but concluded that Albrecht had failed to prove prejudice. Alfred Jr. denied making the statement, and, even if the jury credited the Kuhns' testimony, there was ample other evidence on which to base the conviction. We conclude that deference is owed to the state court's prejudice analysis, 28 U.S.C. §

2254(d)(1), because it is not contrary to, nor an unreasonable application of, federal law. The state Supreme Court identified Sixth Amendment standards, *Albrecht,* 720 A.2d at 701 n. 8, and then purported to apply them. *Cf. Priester,* 382 F.3d at 398.

The state Supreme Court's conclusion that appellate counsel's conduct in not raising this issue on direct appeal did not prejudice Albrecht is not objectively unreasonable. *Williams,* 529 U.S. at 410. There was ample other testimony of threats to burn down the house, and the Court wisely noted that, when Alfred Jr. testified, he refuted the statement to the extent of what exactly Albrecht had threatened to burn, and his testimony concerning what he really said to the Kuhns was corroborated by Officer Heckenswiler. *Albrecht,* 720 A.2d at 705. Thus the jury was unlikely to credit the Kuhns' testimony over Alfred Jr.'s on the sole point of what Albrecht had threatened to burn.

### VII. Ineffective Assistance of Appellate Counsel

Albrecht next contends that appellate counsel rendered constitutionally defective assistance in failing to challenge on direct appeal the trial court's ban on attorney-client contact before and during cross-examination. According to Albrecht, the ban on attorney consultation was a clear violation of state constitutional law, constitutes reversible error, and does not require a showing of prejudice. *See Commw. v. Werner,* 206 Pa.Super. 498, 214 A.2d 276, 277 (Pa.Super.Ct.1965); *Commw. v. Vivian,* 426 Pa. 192, 231 A.2d 301, 304 (Pa.1967); *Commw. v. Logan,* 456 Pa. 508, 325 A.2d 313 (Pa.1974).

**\*28** Albrecht testified in his own defense, beginning on August 4, 1980. At the end of the day, and before direct examination had concluded, the trial court adjourned and declared a recess until 9:30 a.m. the following day. The prosecutor asked the court to instruct Albrecht not to discuss past and future testimony. Trial counsel began to object, "Your Honor, I think he cannot-," when the trial court interrupted, stating, "That is improper instruction. While he is on direct examination that is all right. While on direct examination he has the right to confer with his counsel." Supp.App. 2493.

Albrecht resumed his testimony on August 5. The trial court declared a recess in the morning just prior to cross-examination, which the parties appear to agree was about fifteen minutes, and instructed Albrecht not to talk with his attorney. Trial counsel did not object. During cross-examination, another recess was declared for lunch, which Albrecht asserts lasted about two hours. The trial court reminded Albrecht that he was not speak to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
**(Cite as: --- F.3d ----)**

Page 22

"anyone" during the lunch break. Again trial counsel did not object.

An ineffective assistance of trial and appellate counsel claim concerning the ban on attorney-client communication was raised for the first time on appeal to the state Supreme Court during post-conviction proceedings, and not raised at all in the *pro se* or amended post-conviction petitions. *Albrecht,* 720 A.2d at 703-04. Thus, the claim is unexhausted because it was not presented to the trial court. *O'Sullivan,* 526 U.S. at 844-45. The state Supreme Court held that the claim was waived, and because ineffective assistance of post-conviction counsel was not alleged, the Court did not do a prejudice analysis. *Albrecht,* 720 A.2d at 704. Accordingly, like the *Mills* claim, this claim is not barred due to a procedural default, because the waiver rule applied for the first time in *Albrecht,* 554 Pa. 31, 720 A.2d 693, is not independent and adequate as to Albrecht, *Doctor,* 96 F.3d at 683-84. Unlike the *Mills* claim, no deference is owed under 28 U.S.C. § 2254(d)(1), because the state Supreme Court did not do a prejudice analysis.

The District Court addressed a claim of trial counsel ineffectiveness. Noting that the failure to object on state law grounds may form the basis of a Sixth Amendment ineffective assistance of counsel claim, *see Carpenter v. Vaughn,* 296 F.3d 138, 159 (3d Cir.2002), the District Court observed that, for many years, the state Supreme Court had held that no limitation on consultation was permissible. *Vivian,* 231 A.2d at 304 (no justification for imposing restriction of silence between accused and counsel during trial recess); *Commw. v. Barber,* 250 Pa.Super. 427, 378 A.2d 1011, 1012-13 (Pa.Super.Ct.1977). In fact, the state Supreme Court never officially overruled those decisions.

However, *Vivian,* 426 Pa. 192, 231 A.2d 301, based the absolute right to consultation on an interpretation of federal constitutional law. In *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the United States Supreme Court held that a defendant cannot be precluded from consulting with counsel during an overnight recess. That interpretation was called into doubt in *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), where the Supreme Court held that "in a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice." 488 U.S. at 284. The recess at issue in *Perry* was fifteen minutes in length, as was the recess in Albrecht's case that was taken just before cross-examination began. With respect to the two-hour recess that occurred during cross-examination, the District Court concluded that it was more akin to the recess in *Perry* than the overnight

recess in *Geders.* The Court believed that the only topics of discussion would be either the testimony itself or issues which bore directly on it. Accordingly, Albrecht's right to consultation was not abridged, and trial counsel was not ineffective in failing to raise an objection.

**\*29** Ineffective assistance of appellate counsel is judged by the *Strickland* standard. *United States v. Mannino,* 212 F.3d 835, 840 n. 4 (3d Cir.2000). To establish that appellate counsel was ineffective, Albrecht must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U .S. at 687-88. We judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 690. We are not persuaded that the issue had clear merit under Pennsylvania law. We point out as an initial matter that the issue of the ban on attorney-client contact was before the state Supreme Court in Albrecht's case during post-conviction proceedings, and the Court declined to reach it on the merits.

In any event, appellate counsel might reasonably have concluded, as did the District Court, that Pennsylvania courts would likely overrule their prior decisions and apply the United States Supreme Court's analysis from *Perry* if the issue were presented to them. In *Perry,* the Supreme Court reasoned that the truth-seeking function of cross-examination might be impeded by consultation prior to cross-examination, *id.* at 282, and thus it did not disapprove of the fifteen minute prohibition occurring just before the commencement of cross-examination. "[C]ross examination of a witness who is uncounseled between direct-examination and cross-examination is more likely to lead to the discovery of truth than is cross-examination of a witness who is given time to pause and consult with his attorney." *Id.* As explained by the District Court, the fifteen minute prohibition on consultation just prior to cross-examination is permitted by *Perry.* In addition, the two-hour prohibition over lunch time, which occurred in the middle of cross-examination, likely is tolerable under *Perry* insofar as the sole topic of discussion would have been the testimony itself.

Furthermore, *Commonwealth v. Scoleri,* 432 Pa. 571, 248 A.2d 295, 296-98 (Pa.1969), might have given appellate counsel pause, because Albrecht's trial counsel did not object to the restrictions imposed on August 5. In *Scoleri,* the state Supreme Court found that the trial court erred in instructing the defendant not to confer with counsel during a noontime recess following an adjournment occurring during direct examination. *Id.* at 575-76. However, the Court held that the issue was waived on appeal because trial counsel failed to object. *Id.* at 578-79. Like the attorney in *Scoleri,* Albrecht's trial counsel did

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not make a request for consultation on August 5 and did not raise an objection.[FN16]

Finally, appellate counsel argued numerous guilt-phase issues on direct appeal, including that the search of Albrecht's vehicle and confiscation of the gas can were illegal, *Albrecht,* 511 A.2d at 768-69, that the trial court erred when jurors were excluded for cause because they expressed a conscientious objection to the death penalty, *id.* at 769, that Albrecht was denied his right under the United States and Pennsylvania Constitutions to a jury comprised of a fair cross-section of the community, *id.* at 770, that the trial court erred in admitting evidence regarding his prior misconduct toward his wife, *id.* at 771-72, and that the trial court erred in failing to require sequestration of an expert witness, *id.* at 772. In addition, appellate counsel raised seven ineffective assistance of trial counsel claims, including that trial counsel was ineffective for failing to seek a limiting instruction concerning the prior bad acts evidence. He also raised numerous sentencing phase issues. *Id.* at 773-75. In view of the number and seriousness of the issues appellate counsel chose to pursue on direct appeal, trial counsel's failure to object to the consultation ban, and the probable lack of merit to this claim under federal constitutional law, we conclude that there was a reasonable and strategic basis for appellate counsel not to have raised the issue of the consultation ban on direct appeal. *Mannino,* 212 F.3d at 844.

## VIII. Cumulative Prejudice

**\*30** Last, Albrecht contends that, if none of the errors individually are sufficiently prejudicial to require relief, the cumulative prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. The District Court rejected the claim of cumulative prejudice. The Court reasoned that Albrecht had a motive to kill. In addition, he was living at home and continuing to abuse Mrs. Albrecht in violation of a court order. There was significant physical evidence against him, including his attempt to purchase gasoline the day before the fire and the discovery of the hydraulic oil can which should not have tested positive for gasoline but did. Finally, he made numerous threats to a variety of people that he would kill his wife and/or burn down the house. Thus, even though the trial was not error-free, the verdict was not unreliable.

We recognize that errors that individually do not warrant habeas relief may do so when combined. *Marshall v. Hendricks,* 307 F.3d 36, 94 (3d Cir.2002).[FN17] Here we consider the guilt-phase errors we have identified, *id.* at 94 n. 43, including that trial counsel erred in not seeking a

limiting instruction with respect to evidence of spousal abuse and the prosecutor improperly argued during closing that Albrecht had a propensity to commit these crimes. We consider that the Commonwealth's evidence of an incendiary origin was contested at trial, and that Trooper York's scientific reasoning, if not his conclusion, has been discredited.

The standard for evaluating harmless error on collateral review is set forth in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). This is the standard applicable here, because "a cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Darks v. Mullin,* 327 F.3d 1001, 1018 (10th Cir.2003). Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish "actual prejudice." *Brecht,* 507 U.S. at 637. *See Whitney,* 280 F.3d at 258-59 & n .18 (*Strickland* prejudice and *Brecht* harmless error are essentially same standard).

Once again, however, we agree with the District Court that Albrecht has not shown that the cumulative prejudice resulting from the errors we have identified undermined the reliability of the verdict. Albrecht had a motive, he continued to abuse Mrs. Albrecht in violation of a court order, there was physical evidence against him, and he made numerous serious threats to a variety of people that he would kill his wife and/or burn down the house. Thus, the verdict was not unreliable.

## IX. Conclusion

**\*31** For the reasons stated, the judgment of the District Court entered on April 21, 2004 will be vacated to the extent that the writ was granted on the *Mills* issue. The matter will be remanded to the District Court. On remand, the District Court should apply *Teague* in conjunction with *Beard* and deny relief on the *Mills* claim. The Court should consider the remaining sentencing-phase issues, which it initially denied as moot. The Court's determination that the guilt-phase issues do not warrant habeas relief will be affirmed.

> FN1. The District Court agreed to hear a claim pursuant to *Brady,* which was not included in the original petition. It arose, at least to some extent, as a result of witness statements disclosed for the

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
(Cite as: --- F.3d ----)

first time during the federal habeas case.

FN2. The other sentencing claims included, but were not limited to, the claim that counsel was ineffective at sentencing in presenting mitigating evidence of Albrecht's mental and physical impairments and his difficult life history.

FN3. These are the issues we will address. An issue that is not discussed in the briefs is waived. *See Skretvedt v. E.I. DuPont De Nemours,* 372 F.3d 193, 202-03 (3d Cir.2004).

FN4. The District Court appears to have concluded that the *Mills* issue, Count XI in the habeas petition, was not in the group of claims subject to the above analysis. The court conducted the above analysis with respect to several other claims, and arrived at the same conclusion we have arrived at, but evidently did not believe that the *Mills* issue was one of the issues abandoned by replacement post-conviction counsel. We disagree with the District Court on this minor procedural point, *see Albrecht,* 720 A.2d at 706, which ultimately has no bearing on the outcome of the case.

FN5. Our decision in *Banks,* 271 F.3d 527, to grant relief under *Mills* is no longer precedential on the *Teague* issue given the Supreme Court's holding in *Beard,* 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494. Nevertheless, our discussion regarding the *Mills* issue is "instructive and relevant to our current inquiry," *Hackett,* 381 F.3d at 294 n. 9.

FN6. We are not persuaded by Albrecht's argument that the claim may be cognizable anyway because an independent constitutional violation occurred in his state trial. He has argued that expert testimony based on unreliable science would have constitutional significance if it resulted in a fundamentally unfair trial. *See Estelle v. McGuire,* 502 U.S. 62, 68-70, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir.2001). Moreover, a claim under the fundamental fairness standard would arise if the probative value of the evidence, although relevant, was greatly outweighed by the prejudice to the accused from its admission. *Bisaccia v. New Jersey Attorney General,* 623 F.2d 307, 313 (3d Cir.1980). The problem for Albrecht in relying on such an argument is that Trooper York's fire science was reliable at the time of trial. Even his

new expert, Custer, opined at the evidentiary hearing that he would have arrived at a similar conclusion in 1980 based on what was known at the time. We are left then with the Supreme Court's admonition that federal habeas courts are not fora in which to relitigate state trials. *Herrera,* 506 U.S. at 400-01. Because the new expert evidence here does not show actual innocence, we leave for another day the question whether advances in scientific reasoning can support a fundamental fairness argument.

FN7. In any event, prejudice is not shown by the mere fact that fire science has changed. To overcome the procedural bar, if there is one, "[t]he habeas petitioner must show not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier,* 477 U.S. 478, 494 (1986) (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. *Id.* As the District Court ultimately concluded, this is not a showing that Albrecht can make.

FN8. Because the state Supreme Court did not review the testimony of Richard Custer, no deference is owed under section 2254(d)(1).

FN9. Albrecht's additional assertion that the Commonwealth's fire investigation was inadequate finds no support in the record.

FN10. Because we conclude that not even the *Schlup* standard has been met, it necessarily follows that Albrecht's claim of innocence is insufficient to overcome *Teague,* even if we accept his argument, raised in the brief and at oral argument, that there is a fundamental miscarriage of justice exception to *Teague,* just as there is when a petitioner cannot show cause and prejudice for a defaulted claim.

FN11. Because we find no prejudice and therefore agree with the state court that there was no Sixth Amendment violation, whether deference is owed to the state Supreme Court's determination that counsel's conduct was not deficient need not be decided.

FN12. We were advised by counsel at oral

--- F.3d ----
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))
(Cite as: --- F.3d ----)

argument that the due process claim was raised during post-conviction proceedings and is exhausted. It was not addressed by the state courts.

FN13. In concluding that evidence of ill will is admissible to show motive, the state Supreme Court stated:

[W]e note the existence of numerous instances of violent and hateful conduct between Appellant and his wife. Had there been only an isolated incident, that evidence would have been inadmissible. *Commonwealth v. Baker,* 466 Pa. 382, 353 A.2d 406 (1976). We are not confronted, however, with an isolated incident. Rather, the Commonwealth produced a chain of evidence illustrating Appellant's continual abuse of his wife. Several witnesses testified to marital problems Appellant and his wife experienced on the very night of the killings. Photographs illustrating the wife's battered condition, including cigarette burns on her face, were admitted into evidence after witnesses testified to her continuous gruesome appearance. Appellant not only admitted to slapping his wife occasionally, but that he was under court order to forego the physical abuse of his wife. The trial court ruling admitting evidence of Appellant's actions towards his wife for a period of seven months prior to the house burning was proper as it went to showing his ill-will and malice towards her, establishing his homicidal motive
....
*Id.*

FN14. Albrecht sought to raise the claim again on appeal to the state Supreme Court during post-conviction proceedings, but the Court declined to revisit it. *Albrecht,* 720 A.2d at 705.

FN15. The Commonwealth has addressed the issue in its brief on appeal on the merits and does not argue that it is unexhausted, and we conclude that it does not warrant habeas relief.

FN16. Certiorari was granted in *Scoleri v. Pennsylvania,* 408 U.S. 934, 92 S.Ct. 2852, 33 L.Ed.2d 747 (1972), and the death sentence was vacated and the case remanded for further proceedings consistent with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *Scoleri's* reasoning continued to be influential, however. In *Barber,* 250 Pa.Super. 427, 378 A.2d 1011, the Pennsylvania Superior Court discussed and distinguished *Scoleri* in

holding that a restriction on the scope of counsel's consultation with a defendant during a ten minute recess following direct examination was reversible error. *Id.* at 1013.

FN17. The state courts did not address a claim of cumulative prejudice flowing from the errors we have identified, and thus no deference is owed under 28 U.S.C. § 2254(d)(1).

C.A.3 (Pa.),2006.
Albrecht v. Horn
--- F.3d ----, 2006 WL 3392633 (C.A.3 (Pa.))

Briefs and Other Related Documents (Back to top)

• 04-9006 (Docket) (May 7, 2004)
• 04-9005 (Docket) (May 5, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Qualls v. WilliamsD.Del.,2004.Only the Westlaw
citation is currently available.
        United States District Court,D. Delaware.
             Luther QUALLS, Petitioner,
                          v.
       Raphael WILLIAMS, Warden, Respondent.
                **No. Civ.A. 02-1257-KAJ.**

                     Sept. 29, 2004.

Luther Qualls. Petitioner, pro se.
Loren C. Meyers, Chief of Appeals Division,
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

              MEMORANDUM OPINION
JORDAN, J.

                 I. INTRODUCTION

*1 Petitioner Luther Qualls is a Delaware inmate in
custody at the Delaware Correctional Center in
Smyrna, Delaware. Currently before the Court is
Qualls' petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. (D.I. 2; D.I. 7; D.I. 19.) For
the reasons that follow, I will dismiss Qualls' § 2254
petition.

          II. FACTUAL AND PROCEDURAL
                    BACKGROUND

In July 2000, a Delaware Superior Court grand jury
indictment charged Qualls with aggravated
menacing, attempted second degree assault,
possession of a deadly weapon during the
commission of a felony, two counts of third degree
unlawful sexual contact, and resisting arrest. These
charges stemmed from an altercation occurring on
June 3, 2000 at a restaurant/bar located in
Wilmington, Delaware.

In January 2001, a Delaware Superior Court jury
convicted Qualls of aggravated menacing, the
weapons offense, and resisting arrest. The Superior
Court judge dismissed one count of unlawful sexual
contact, and the prosecution entered a *nolle prosequi*
on the attempted assault charge and the remaining
count of unlawful sexual contact. In April 2001, the
Superior Court sentenced Qualls to 26 years
imprisonment, suspended after 7 1/2 years, for a
total of 14 3/4 years at a halfway house and on
probation. The Delaware Supreme Court affirmed
the convictions and sentence on direct appeal.
*Ryons v. State,* No.190,2001 (Del. Oct. 17, 2001).

In January 2002, Qualls filed a motion for
post-conviction relief pursuant to Delaware
Superior Court Criminal Rule 61.[FN1] He alleged:
(1) various ineffective assistance of counsel claims;
(2) the Superior Court erred in denying his motion
to dismiss counsel; (3) the jury was racially biased
and he was prevented from taking part in the jury
selection process; (4) various evidentiary errors;
and (5) prosecutorial misconduct. (D.I. 18, Rule 61
Motion in *State v. Ryons (aka Qualls),* filed Jan. 14,
2002). The Superior Court summarily dismissed the
claims alleging trial errors as barred by Delaware
Superior Court Rule 61(d)(4) because he should
have raised these claims during his direct appeal.
(D.I. 18, *State v. Ryons,* ID# :0006002195, Order
(Del.Super.Ct. Jan. 30, 2002)). However, the
Superior Court ordered trial counsel to answer the
ineffective assistance of counsel allegations. *Id.* On
March 11, 2002, the Superior Court issued a Final
Order dismissing the entire Rule 61 motion, finding
that Qualls' trial counsel had provided effective
assistance of counsel. (D.I. 18, *State v. Ryons,* ID#
:0006002195, Final Order (Del.Super.Ct. Mar. 11,
2002)). Qualls did not appeal.

            FN1. Qualls filed a Rule 61 motion in
            April 2001, while his appeal was pending.
            The Superior Court denied the motion
            without prejudice, holding that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

pendency of Qualls' direct appeal divested it of jurisdiction.

In June and July of 2002, Qualls filed an initial § 2254 petition and a second petition in this Court. (D.I. 2; D.I. 3.) After the State filed its Answer, (D.I.16.), Qualls filed an amended petition. (D.I.19.) The State filed an Answer to the Amended Petition, (D.I.25.), and Qualls filed a "Motion of Opposition to Respondent [sic] Answer." [FN2] (D.I.28.)

> FN2. Because Qualls' "Motion in Opposition" is really a Traverse, I will refer to it as a Traverse rather than as a motion.

**\*2** Quall's § 2254 petition is now ready for review.

### III. EXHAUSTION AND PROCEDURAL DEFAULT

A federal district court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When seeking habeas relief from a federal court, a state petitioner must first exhaust remedies available in the state courts. According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B) (i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192

(3d Cir.2000).

To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim was fairly presented to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, at \*2 (D.Del. Dec. 22, 2000). However, if the petitioner raised the issue on direct appeal in the correct procedural manner, then the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1996); *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230 (3d Cir.1992) (citations omitted).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir.2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are still considered to be procedurally defaulted. *Lines,* 208 F.3d at 160. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1999); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir.1992).

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

**\*3** Alternatively, a federal court may excuse a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3

procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). In order to demonstrate a miscarriage of justice, the petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). A petitioner establishes actual innocence by proving that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir.2002).

### IV. DISCUSSION

Qualls filed an initial § 2254 petition, (D.I.2.), a second petition, (D.I.3.), and an amended petition. (D.I.19.) The State correctly asserts that the amended petition merely supplements the claims raised in Qualls' two previous petitions. (D.I.25.) Viewed together, these petitions allege six claims: (1) the prosecution failed to disclose all favorable evidence to Qualls, constituting prosecutorial misconduct and violating Qualls' due process and equal protection rights; (2) Qualls' trial counsel provided ineffective assistance by failing to object to inadmissible evidence, by failing to argue on the basis of the Delaware Rules of Evidence and other rules of law, and by failing to conduct a DNA investigation; (3) Qualls' conviction is illegal because the grand or petit jury was unconstitutionally selected and impaneled; (4) Qualls' conviction is illegal because the Delaware police officers never tagged all articles as evidence, thereby violating his due process rights; (5) the Superior Court violated Qualls' constitutional rights by refusing to appoint new trial counsel; and (6) his punishment for an offense for which he was acquitted constitutes a double jeopardy violation.

The State correctly asserts that Qualls has not exhausted state remedies. Qualls raised the same claims he asserts in his § 2254 petition to the Delaware Superior Court in his Rule 61 motion, but

he never appealed the Superior Court's denial of the motion to the Delaware Supreme Court. His failure to exhaust state remedies is excused, however, because state procedural rules would prevent him from pursuing further state court relief. *See Coleman,* 501 U.S. at 750; *Lines,* 208 F.3d at 160. First, any attempt now to file an appeal with the Delaware Supreme Court would be dismissed as untimely. *See* Del.Supr. Ct. R. 6(a)(iii) (A notice of appeal must be filed within thirty days after entry of an order denying post-conviction relief); *Carr v. State,* 554 A.2d 778, 779 (Del.1989) (Failure to file a notice of appeal within the thirty-day time limit deprives the Delaware Supreme Court of jurisdiction to hear the appeal). Second, because Qualls raised these claims in his 2002 Rule 61 motion, he cannot now assert these claims in a new Rule 61 motion to the Delaware Superior Court in an effort to appeal from the resulting decision. *See* Del.Super. Ct.Crim. Rule 61(i)(4)(preventing further state review of claims formerly adjudicated); *Kendall v. Attorney General of Delaware,* 2002 WL 531221, at *4 (D.Del. Mar. 26, 2002).

*\*4 Although Qualls' failure to exhaust state remedies is excused, these claims are still procedurally defaulted. Consequently, federal habeas review is foreclosed unless Qualls establishes cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court refuses to hear the claims. *See Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Harris,* 489 U.S. at 262; *Caswell v. Ryan,* 953 F.2d 853, 860-61 (3d Cir.1992).

In his Traverse, Qualls contends that he did not deliberately bypass state procedural rules when he failed to appeal the Superior Court denial of his Rule 61 motion. Rather, he blames his procedural default on his lack of legal knowledge and misinformation given to him by the prison paralegal. (D.I. 28 at ¶ 2.) To the extent these assertions are his attempt to establish cause for his default, they fail. "Generally, 'cause' cannot be based on the mere inadvertence of the petitioner or the petitioner's counsel to take an appeal." *Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002). Qualls' failure to demonstrate cause obviates any need to reach the issue of prejudice. *See Smith v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

*Murray,* 477 U.S. 527, 533 (1986).

Finally, even though Qualls contends that he is innocent, his conclusory statement fails to satisfy the miscarriage of justice exception to the procedural default doctrine. (D.I. 28 at ¶¶ 3, " Conclusion"). In order to establish actual innocence sufficient to demonstrate a miscarriage of justice, a petitioner must assert "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Hubbard v. Pinchak,* 378 F.3d 333, 339-40 (3d Cir.2004). Here, Qualls does not present any new evidence; rather, his Traverse merely reasserts the claims he raised in his § 2254 petitions. Thus, because Qualls has failed to provide any reason to excuse his procedural default, I will dismiss his § 2254 petition as procedurally barred.

### V. CERTIFICATE OF APPEALABILITY

Finally, I must decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2) ; *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

**\*5** I conclude that Qualls' habeas petition must be

dismissed as procedurally barred. Reasonable jurists would not find this conclusion to be unreasonable. Thus, I will not issue a certificate of appealability.

### V. CONCLUSION

For the reasons stated, Qualls' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate Order shall issue.

### ORDER

At Wilmington, this 29 th day of September, 2004, consistent with the Memorandum Opinion issued this same day;

IT IS HEREBY ORDERED that:

1. Petitioner Luther Qualls' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 2; D.I. 7; D.I. 19.)

2. The Court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2004.
Qualls v. Williams
Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV01257 (Docket) (Jul. 01, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                    Page 1

Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Kennedy v. Richard KearneyD.Del.,1996.Only the
Westlaw citation is currently available.
United States District Court, D. Delaware.
John B. KENNEDY, Jr., Petitioner,
v.
Richard KEARNEY, Warden, Sussex Correctional
Institution and M. Jane Brady, Attorney General of
the State of Delaware, Respondents.
**Civ. A. No. 95-613-SLR.**

Sept. 11, 1996.

John B. Kennedy, Jr., petitioner, *pro se.*
Timothy J. Donovan, Jr., Esquire, Deputy Attorney
General, Delaware Department of Justice,
Wilmington, Delaware, attorney for respondents.

MEMORANDUM OPINION
SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 On January 9, 1992, petitioner was sentenced to
a twenty year term of imprisonment after pleading
guilty to one count of first degree unlawful sexual
intercourse. In his application for federal habeas
corpus relief, presently pending before this court, he
claims that his plea was not intelligently and
voluntarily made and that the assistance he received
from counsel was constitutionally deficient.
Respondents have filed their answer, claiming that
petitioner's claims are barred by his unexcused
procedural default in presenting his claims to the
state courts. For the reasons discussed below, the
court will deny the requested relief and dismiss the
petition.

II. BACKGROUND

In May 1991, a grand jury indicted petitioner on

nine separate felony counts related to the sexual
molestation of petitioner's daughter over a period of
three years. (D.I. 3 at Ex. C) Petitioner appeared in
Superior Court on January 9, 1992, for the purpose
of pleading guilty to one of the counts of the
indictment. In exchange for petitioner's guilty plea,
the State agreed to dismiss the other felony counts
as well as charges of lewdness, indecent exposure,
assault, and endangering the welfare of a child
which were pending against petitioner in Family
Court. (D.I. 3 at Ex. A3)

Before the plea colloquy began, petitioner's counsel
notified the court that, due to petitioner's illiteracy,
counsel had filled out the relevant forms for
petitioner and had explained them to him. (D.I. 3 at
Ex. A3-A4) In response to the court's questions,
petitioner indicated that he wished to enter a guilty
plea, that he understood the consequences of
waiving a jury trial, and that he was aware of the
range of penalties he could receive. (D.I. 3 at Ex.
A4-A7) Petitioner stated, regarding his attorney, "
He explained everything to me, went over
everything.... He read everything over with me and
my wife, went over everything real good, so I
understand what I was doing." (D.I. 3 at Ex.
A5-A6) Based on petitioner's responses, the court
stated its finding that petitioner's plea was "
knowingly, intelligently and voluntarily made."
(D.I. 3 at Ex. A10) The court sentenced petitioner
to a twenty-year term of incarceration, fifteen of
which were to be mandatory. (D.I. 3 at Ex. A13)

In November 1994, petitioner filed a Rule 61
postconviction motion, in which he claimed that his
representation by counsel had been deficient, that
his guilty plea was defective, and that the warrant
for his arrest had been based on false information.
(D.I. 3 at Ex. D) The Superior Court denied the
motion on the merits. (D.I. 3 at Ex. E) Petitioner
did not appeal.

Petitioner filed a second Rule 61 motion in Superior
Court on January 17, 1995. (D.I. 3 at Ex. D) In that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 2

Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

motion, petitioner restated the grounds he had raised in his first motion for postconviction relief. The court denied the motion on procedural grounds, pursuant to Rule 61(i)(4), which provides:

Any ground for relief that was formerly adjudicated, whether in the proceeding leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

**\*2** Because each of petitioner's claims had been adjudicated in his previous Rule 61 motion, the court denied the second motion. (D.I. 3 at Ex. E) Petitioner appealed, and the Delaware Supreme Court affirmed. *Kennedy v. State,* No. 39, 1995 (Del. July 25, 1995).

### III. DISCUSSION

#### A. Exhaustion Requirement

Before the court can review petitioner's claims, the court must ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b). In making this determination, the court should inquire as to whether there is an "absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must have raised in the state courts the factual and legal premises of the claims for relief he asserts in the federal proceeding. *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986).

"It is not enough that the petitioner presents to the state court the issue upon which a federal claim is based." The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

*O'Halloran v. Ryan,* 835 F.2d 506, 508 (3d Cir.1987) (citations omitted).

In the petition presently before the court, plaintiff

has presented two grounds for relief: 1) ineffective assistance of counsel; and 2) a defective guilty plea. Petitioner has previously raised precisely the same claims before the state courts. His state remedies, therefore, are exhausted.

#### B. Procedural Default

The Delaware Supreme Court did not have an opportunity to rule on the merits of petitioner's claims because he failed to appeal the Superior Court's denial of his first postconviction motion. Petitioner's second postconviction motion was denied on procedural grounds. When petitioner appealed the denial of the second motion, the Delaware Supreme Court was barred from reaching the merits by Rule 61(i)(4).

Allowing applicants for federal habeas corpus relief to proceed in federal court where, as here, their own default is responsible for the absence of available state remedies would undermine the principles of comity and federalism that underlie the exhaustion requirement. *Coleman v. Thompson,* 501 U.S. 722 (1991). The United States Supreme Court has held that a state court ruling resting on an independent and adequate state procedural ground will bar federal review absent a showing of cause for and prejudice from the default. *Wainwright v. Sykes,* 433 U.S. 72, 81-82 (1977). The state courts' application of Rule 61(i)'s procedural default provision is a "plain statement" under *Harris v. Reed,* 489 U.S. 255 (1989), that the state court decisions rest on independent state grounds. Rule 61(i)(4) and similar rules in other states have also been held adequate to bar federal review under *Wainright. See Bond v. Fulcomer,* 864 F.2d 306 (3d Cir.1989); *Beatty v. Patton,* 700 F.2d 110, 112-13 (3d Cir.1983); *Woodlin v. Snyder,* C.A. No. 95-138-JJF (D.Del. June 16, 1995).

**\*3** Because the state courts based their denial of petitioner's postconviction motion on an independent and adequate state procedural ground, this court may not consider the merits of petitioner's ineffective assistance of counsel claim unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 3

Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

federal law, or demonstrate that failure to consider the claims[ ] will result in the fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that " 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him...." *Id.* at 753, *citing Murray v. Carrier,* 477 U.S. 478, 488 (1986) (emphasis in original).

Petitioner seeks to explain his failure to appeal the denial of his first postconviction motion by stating that the trial court refused to supply him with a free transcript "to verify facts." (D.I. 2) As a result, petitioner contends, the Superior Court dismissed his motion in a summary fashion without benefit of the record of petitioner's plea. Petitioner does not explain why the lack of a transcript, while not deterring him from filing a Rule 61 motion in Superior Court, would prevent him from appealing the denial of that motion. As respondents point out, if petitioner believed that the decision to deny him the transcript was erroneous, or that the lack of a transcript caused the wrongful dismissal of his postconviction motion, he had all the more reason to file an appeal. Petitioner's explanation, therefore, does not constitute cause. Because petitioner has failed to show cause for his default, it is not necessary for this court to address the issue of prejudice.

Petitioner also contends that the state courts should have excused his procedural default "in the interest of justice," and that their failure to do so constitutes a "substantial miscarriage of justice." (D.I. 10) Where a petitioner has defaulted his state remedies and has not demonstrated cause and prejudice, a federal court may entertain a petition for habeas corpus only if the petitioner makes a showing of " actual innocence." *Sawyer v. Whitley,* 112 S.Ct. 2514, 2519 (1992); *Murray,* 477 U.S. at 496. Petitioner has made no claim that he is actually innocent, and has articulated no facts that would support such a claim. His procedural default, therefore, is not excused.

IV. CONCLUSION

For the reasons set forth above, the court will dismiss the application for habeas corpus relief and deny the writ of habeas corpus. An appropriate order will be entered.

D.Del.,1996.
Kennedy v. Richard Kearney
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:95CV00613 (Docket) (Oct. 13, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.