IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DAMONE E. FLOWERS,
PETITIONER,

CIV. ACT. No. 06-356-GMS

V.

THOMAS C. CARROLL, WARDEN,

AND CARL C. DANBERG, A.G.

FOR THE STATE OF DELAWARE,
RESPONDENTS,

## SUPPLEMENTAL MEMORANDUM

NOW COMES, the petitioner, DAMONE E. FLOWERS, pro se, with an additional argument to be considered relating to the petitioner's most recent MOTION(S)/MEMORANDUM IN SUPPORT OF THE HABEAS CORPUS PETITION.

1. ON MAY 17, 2007, or there about, the petitioner filed a MOTION(S)/MEMORANDUM IN SUPPORT OF HABEAS CORPUS PETITION, which was initially filed with the court back in MAY 2006. The latest filing was based on newly discovered evidence in the form of an investigative report sent to the petitioner by private investigator FRED TATE in early MAY 2007. The intrinsic worth of that report and its relationship to allegations of ineffective assistance of counsel raised in the habeas corpus petition were outlined in the MOTION(S)/MEMORANDUM IN SUPPORT OF HABEAS CORPUS PETITION.

2. The DISTRICT COURT is currently considering the habeas corpus petition. As such the circumstances of the petition has bought before the Court the question of whether GROUND/ARGUMENTS I-XI in the petition are procedurally barred from habeas review.

For a full discourse on this issue review the Opening Brief of the habeas corpus petition in addition to the subsequently filed MOTION FOR EXCUSION OF EXHAUSTED BUT PROCEDURALLY DEFAULTED CLAIMS.

3. The petitioner's latest filed MOTION(S)/MEMORANDUM revolved around several constitutional violations raised in the habeas corpus petition. In presenting the newly discovered investigative report from private investigator FRED TATE to the DISTRICT COURT to consider in context to the constitutional violations raised in the habeas petition, the petitioner focused on how that report supported the allegations of ineffective assistance of counsel raised in GROUND XI - THIRD ARGUMENT. By relation the newly discovered evidence had some bearing on GROUNDS I, II, VIII & IX as well.

4. What the petitioner failed to do in the MOTION(S)/MEMORANDUM was to firmly establish how that newly discovered report supports the habeas petition's argument of a gross miscarriage of justice and actual innocence. Again, it is reasonable to conclude that the COURT has pondered the procedural bar issue that exist in this case. As such the petitioner would be doing himself a disservice if he did not make the added argument that the newly discovered report supports his claims of actual innocence, so that refusal to consider his constitutional claims due to a procedural bar would result in a fundamental miscarriage of justice.

5. The investigative report obtained from FRED TATE revealed that defense counsel had knowledge of and/or was aware of a witness, CHAIRMAIN MAYO, who indicated that the petitioner was not the shooter on the night in question several months before the trial commenced. Even more critical was the revelation that MAYO had identified JOE HARRIS as the shooter or the man with a gun on the night in question.

FRED TATE's investigative report also revealed that defense counsel had knowledge of and/or was aware of another witness, BENNIE WRIGHT, who indicated that the petitioner did not shoot into the vehicle driven by the victim and that there was another gunman who fired at the victim's vehicle from the southwest corner of the intersection on 22ND STREET, several months before the trial commenced.

FRED TATE's investigative report additionally revealed that defense counsel directed investigator TATE to stand down on the second day of a trial that was ultimately postponed on MAY 8, 2002, before he could locate two additional witnesses,

LAMAR MARVIN SWANSON, who had identified two shooters and BRUCE DUNCAN, who indicated that JOE HARRIS not the petitioner was the shooter on the night in question.

Despite having knowledge of MAYO and WRIGHT, whom FRED TATE had located and interviewed in addition to two more witnesses, SWANSON and DUNCAN, who could have been critical to the petitioner's claims of innocence, defense counsel elected not to present any defense on the petitioner's behalf at trial. It should be noted that the original trial was postponed on the second day of trial, MAY 8, 2002. The actual trial proceeded on OCTOBER 22, 2002, a full five months later. Defense counsel could have directed FRED TATE to proceed with locating and interviewing SWANSON and DUNCAN.

The DISTRICT COURT must agree that counsel's decision not to pursue this evidence cannot be justified as a strategic decision. The Courts have held that "the decision to interview a potential witness is not a decision related to trial strategy. Rather, it is a decision related to adequate preparation for trial." CHAMBERS v. ARMONTROUT, 907 F.2d 825, 828 (8th Cir. 1990). Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories and development of evidence to support these theories. Counsel has "a duty...to investigate all witnesses who allegedly possessed knowledge concerning the petitioner's guilt or innocence." LAWRENCE v. ARMONTROUT, 900 F.2d 127, 130 (8th Cir. 1990). The Court has stated that "it is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty." ELDRIGE v. ATKINS, 665 F.2d 228, 232 (8th Cir. 1981).

Defense counsel could not have been exercising an informed tactical judgment in failing to present this evidence. There was everything to be gained, and nothing to loose, from presenting these witnesses. Even though the witness' testimony could reasonably have supported an actual innocence defense or a defense of a lesser included offense. The Court held in LAWRENCE, id., that a tactical decision to pursue one defense does not excuse failure to present another defense that "would bolster rather than detract from" the primary defense. 900 F.2d at 150.

Here defense counsel elected to abandon the preagreed upon defense and alternately failed to present the second available defense of lesser included offense. In __CHAMBERS__, the Court held that failure to pursue the defendants only "realistic" defense constituted ineffectiveness. 907 F.2d at 828-32.

6. Even if this Court can not find cause and prejudice to excuse the procedural default. The petitioner's claim concerning ineffective assistance of counsel exposed a defect at the heart of his conviction. CAUSE need not be shown in an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is "actually innocent." See, MURRAY, 447 U.S. at 498, 106 S.Ct. at 2650; DUGGER v. ADAMS, 489 U.S. 401, 109 S.Ct. 1211, 1217 n.6, 103 L.Ed.2d 435 (1989).

This is not a case in which the evidence against the petitioner is so overwhelming that ineffectiveness of counsel might be deemed harmless. There is a substantial probability that correction of this constitutional error at retrial will effect a different result. In our system of justice, a fundamental miscarriage of justice occurs when a person is found guilty of a crime even though the jury had reasonable doubt about his guilt. The SUPREME COURT has acknowledged that concern for avoiding a fundamental miscarriage of justice, particularly regarding ineffective assistance claims, must outweigh the principles of comity and federalism that form the basis for the procedural bar. CARRIER, 477 U.S. at 498, 106 S.Ct. at 2650. The SUPREME COURT, in applying the actual innocence exception, has looked to whether correction of the constitutional error at retrial probably would result in a different outcome. See, SMITH, 477 U.S. at 538, 106 S.Ct. at 2668.

Here the petitioner argues that the "actual innocence" exception should apply to excuse the procedural bar if it can be determined that a jury considering the evidence presented to the DISTRICT COURT probably would not convict the petitioner of first degree murder.

The petitioner was convicted of first degree murder in a case in which no physical evidence linked him to the crime, no motive was established by the prosecution and the prosecution hinged solely on five witnesses that gave highly uncertain, unclear and contradictionary testimony at trial concerning the identity of the shooter and the events from the night in question.

Additionally the bulk of the State's case came in through TITLE 11 SECTION 3507.

Now it has come to light that the State withheld exculpatory evidence in the form of statements given to investigators for the state by several witnesses, whom indicated that either JOE HARRIS, not the petitioner, was the shooter or that there was two shooters on the night in question. Subsequently, defense counsel had located two of these witnesses, MAYO and WRIGHT several months prior to trial but elected to abandon the preagreed upon defense which would have presented these witnesses to the jury.

The DISTRICT COURT must agree that counsel's decision to abandon the preagreed defense or alternately present a defense of a lesser included offense, in light of the newly discovered report by private investigator FRED TATE, falls below the objective standard of reasonable assistance required under the SIXTH AMENDMENT. The COURT must keep in mind that the jury deliberated in excess of 16 hours over the course of 3 days, indicating that there was reasonable doubt of the petitioner's guilt. Adequate representation probably would have produced a different result.

The jury that convicted the petitioner never knew that at least one, possibly two witnesses, had identified JOE HARRIS, not the petitioner as the shooter. Likewise the jury never knew that the victim had aggressively tried to run over several individuals in the street that night, including the petitioner, with his vehicle which prompted the shooting. At retrial the jury will be confronted with substantial evidence supporting an alternative theory of murder. As such, it would be a fundamental miscarriage of justice to deny review of the habeas corpus petition based on a procedural bar, given the probability that a jury would have reasonable doubt about his guilt if he were tried with effective counsel. HENDERSON v. SARGENT, 926 F.2d 706 (1991).

## CONCLUSION

The petitioner implores the DISTRICT COURT to excuse the procedural default under the "actual innocence" exception pertaining to GROUNDS/ARGUMENTS I-XI because trial counsel was ineffective in his representation. Further, the petitioner implores this Court to include the arguments raised in this supplemental order in context to and not seperate from the habeas corpus petition along with all supporting briefs, memorandums, motions and appendix(s).

JUNE 19, 2007
AUGUST 27, 2007

RESPECTFULLY SUBMITTED,

Damone Flowers

DAMONE FLOWERS

I/M DAMIONE E. FLOWERS

SBI# 303621    UNIT MHU 22 GL8

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977

WILMINGTON DE 197

28 AUG 2007 PM 1 L

OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT

844 N. KING STREET LOCKBOX 18

WILMINGTON DE 19801-3570

19801+3570    C012

LEGAL MAIL